# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

DON GIBSON, LAUREN CRISS, JOHN MEINERS, and DANIEL UMPA, on behalf of themselves and all others similarly situated,

        Plaintiffs,

    v.

NATIONAL ASSOCIATION OF REALTORS, et al.,

        Defendants.

Civil Action No. 4:23-cv-00788-SRB

[Consolidated with 4:23-cv-00945-SRB]

**PLAINTIFFS' MOTION AND SUGGESTIONS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS REDFIN AND ENGEL & VÖLKERS; CERTIFICATION OF SETTLEMENT CLASSES; AND APPOINTMENT OF CLASS REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL**

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 1

II.  BACKGROUND – MOEHRL AND BURNETT .............................................. 2

III. BACKGROUND – GIBSON AND UMPA .................................................... 6

   A.  THE LITIGATION ............................................................................................ 6
   B.  SETTLEMENT NEGOTIATIONS ....................................................................... 7
   C.  SUMMARY OF SETTLEMENT AGREEMENTS WITH REDFIN AND ENGEL & VÖLKERS ............ 8
      1.  Settlement Classes ................................................................................. 8
      2.  Settlement Amounts ............................................................................... 9
      3.  Practice Changes ................................................................................. 10
      4.  Release of Claims Against Settling Defendants ................................... 11
      5.  Application for Award of Attorney Fees, Costs, and Class Representative Incentive Awards .............................................................................................. 12

IV. THE CLASS DEFINITIONS CONTEMPLATED BY THE SETTLEMENTS SATISFY RULE 23, AND THE CLASSES SHOULD BE CERTIFIED .............................. 12

   A.  THE SETTLEMENT CLASS DEFINITIONS SATISFY THE REQUIREMENTS OF RULE 23(A) AND 23(B)(3). ACCORDINGLY, PLAINTIFFS REQUEST THAT THE COURT GRANT CERTIFICATION OF THE SETTLEMENT CLASSES FOR SETTLEMENT PURPOSES ONLY. ........................................ 12
   B.  LEGAL STANDARD FOR MODIFYING THE CLASS DEFINITION ......................... 14
   C.  THE PROPOSED SETTLEMENT CLASSES SATISFY RULE 23(A) ........................ 14
      1.  Numerosity ........................................................................................... 15
      2.  Commonality ........................................................................................ 15
      3.  Typicality ............................................................................................. 16
      4.  Adequacy ............................................................................................. 17
   D.  THE PROPOSED SETTLEMENT CLASSES SATISFY RULE 23(B)(3) ..................... 18
      1.  Predominance ...................................................................................... 19
      2.  Superiority of a Class Action ............................................................. 21

V.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS ...... 23

   A.  THE MERITS OF THE PLAINTIFFS' CASES, WEIGHED AGAINST THE TERMS OF THE SETTLEMENTS ............................................................................................ 24
   B.  DEFENDANTS' FINANCIAL CONDITIONS .................................................... 26
   C.  THE COMPLEXITY AND EXPENSE OF FURTHER LITIGATION ......................... 26
   D.  THE AMOUNT OF OPPOSITION TO THE SETTLEMENTS .................................. 27
   E.  THE SETTLEMENTS ALSO SATISFY THE RULE 23(E) FACTORS ..................... 27

VI. THE COURT SHOULD APPOINT INTERIM CO-LEAD CLASS COUNSEL IN THIS CASE AS CO-LEAD COUNSEL FOR THE SETTLEMENT CLASSES ............... 29

VII.  CLASS NOTICE SHOULD PROCEED IN A SUBSTANTIALLY SIMILAR MANNER AS IN THE SETTLEMENTS WITH ANYWHERE, RE/MAX, AND KELLER WILLIAMS IN THE BURNETT CASE .................................................................. 30

VIII.  CONCLUSION ................................................................................... 31

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................. 17, 19, 23

*Bishop v. DeLaval Inc.*, 2022 WL 18957112 (W.D. Mo. July 20, 2022) .................................... 28

*Burnett v. Nat'l Ass'n of Realtors*, 2022 WL 1203100 (W.D. Mo. Apr. 22, 2022) .............. Passim

*Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) ...................................................... 14

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) ............................................................ 24

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ......................................................................... 14

*D&M Farms v. Birdsong Corp.*, 2020 WL 7074140 (E.D. Va. Dec. 1, 2020) ............................ 16

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) .............................................. 17, 24

*Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977) ........................................................ 17

*Ebert v. Gen. Mills, Inc.*, 823 F.3d 472 (8th Cir. 2016) ............................................................ 19

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ................................................................ 17

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ............................................. 24

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003) ........................................... 18

*Hand v. Beach Entertainment KC, LLC*, 456 F. Supp. 3d 1099 (W.D. Mo. 2020) ..................... 15

*Holt v. CommunityAmerica Credit Union*, 2020 WL 12604383 (W.D. Mo. Sept. 4, 2020) .. 19, 28

*Hughes v. Baird & Warner, Inc.*, 1980 WL 1894 (N.D. Ill. Aug. 20, 1980) .............................. 16

*Hyland v. Homeservices of Am., Inc.*, 2008 WL 4858202 (W.D. Ky. Nov. 7, 2008) ................ 17

*In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652 (D.D.C. 1979) ................................................ 25

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) .................................... 24

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ............................... 18

*In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.*, 357 F.3d 800 (8th Cir. 2004) .......................... 14

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ........................................19

*In re IPO Sec. Litig.*, 226 F.R.D. 186 (S.D.N.Y. 2005) ...............................................................25

*In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152 (S.D.N.Y. 2018) ..........14

*In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015)..............................................................21

*In re Packaged Seafood Prod. Antitrust Litig.*, 15-MD-2670, 2023 WL 2483474 (S.D. Cal. Mar. 13, 2023) ......................................................................................................................................30

*In re Pre-Filled Propane Tank Antitrust Litig.*, 2019 WL 7160380 (W.D. Mo. Nov. 18, 2019) 19, 28

*In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221 (S.D. W.Va. 2005).........................................22

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057 (8th Cir. 2013) ......................................................................................................................................23

*In re Wireless Telephone Federal Cost Recover Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ........24

*In re Zurn Pex Plumbing Prod. Liab. Litig.*, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ..........19

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011) ...............................19

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No.*, 921 F.2d 1371 (8th Cir. 1990)..23

*Marcus v. Kansas*, 209 F. Supp. 2d 1179 (D. Kan. 2002) ............................................................26

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015).................................................23

*Moehrl v. Nat'l Ass'n of Realtors*, 2023 WL 2683199 (N.D. Ill. Mar. 29, 2023)............ 15, 16, 18

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) .........................................................15

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ...................................................20, 23

*Rannis v. Rechia*, 380 Fed. App'x 646 (9th Cir. 2010) ...............................................................15

*Sanderson v. Unilever Supply Chain, Inc.*, 2011 WL 5822413 (W.D. Mo. Nov. 16, 2011) ........23

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988).................................................................24, 27

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................................15

- iii -

**Statutes**

15 U.S.C. § 1 ...............................................................................................................3

**Rules**

Fed. R. Civ. P. 23(a)(1) ...........................................................................................15

Fed. R. Civ. P. 23(e)(1)(B) .......................................................................................23

Fed. R. Civ. P. 23(e)(2) ............................................................................................28

Fed. Rule Civ. Proc. 23(b)(3)(D) .............................................................................23

Fed R. Civ. P. 23(g) .................................................................................................29

Federal Rule of Civil Procedure 23(e) ....................................................................23

FRE 408 ......................................................................................................................8

Rule 23(a) ................................................................................................ 12, 13, 14, 15

Rule 23(a)(2) ....................................................................................................... 15, 16

Rule 23(a)(3) ....................................................................................................... 16, 17

Rule 23(a)(4) ....................................................................................................... 17, 18

Rule 23(b)(3) ........................................................................................ 12, 18, 19, 21

Rule 23(b)(3)(A–D) ..................................................................................................19

Rule 23(c)(2)(B) ................................................................................................. 30, 31

**Other Authorities**

4 Newberg on Class Actions § 11.41 ........................................................................23

# I.   INTRODUCTION

After extensive litigation in this action, as well as the related *Moehrl* and *Burnett* actions, and arms-length negotiations, Plaintiffs Don Gibson, Lauren Criss, John Meiners, and Daniel Umpa ("Gibson Plaintiffs" or "Plaintiffs"), on behalf of themselves and the proposed Settlement Classes (defined herein), have reached Settlements with the following Defendants (the "Settling Defendants"):

1. Defendant Redfin Corporation ("Redfin"), and

2. Engel & Völkers GmbH and Engel & Völkers Americas, Inc., and their affiliate Engel & Völkers New York Real Estate LLC (collectively "Engel & Völkers").[1]

These two Settlements are in addition to five previous Settlements that have received preliminary approval in the above-captioned case, as well as four other settlements that have received preliminary or final approval in *Burnett*. Like the prior settlements, the proposed Settlements resolve on a nationwide basis Plaintiffs' claims for damages and injunctive relief against the Settling Defendants for their alleged anticompetitive practices in the nationwide market for residential real estate brokerage services.

The Settlement Agreements with Redfin and Engel & Völkers provide for meaningful practice changes, cooperation in litigation against non-settling defendants, and payments of $9.25 Million from Redfin and $6.9 Million from Engel & Völkers.  These payments are in addition to over $962 million already obtained from other Defendants in this action and the *Burnett* and *Moehrl* actions, for a total recovery of over $978 million for home sellers to date. Each Settlement was the product of intensive negotiations, facilitated by an experienced mediator, following years of aggressive discovery, litigation, and settlement negotiations with other Defendants in the related

---

[1] The Settlement Agreements are attached as Exhibits A and B to the Declaration of Steve Berman, Ex. 1 ("Berman Decl.").

*Burnett* and *Moehrl* actions. The Settlements were informed by weighing the substantial monetary, practice change, and cooperation relief against the risks, cost, and delay of further litigation (including appeals), as well as limitations on Settling Defendants' ability to pay the full amount of any trial judgment entered against them. The Settlements are fair, adequate, reasonable, and beneficial to the Settlement Classes.

Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlements with Redfin and Engel & Völkers; (2) certifying Settlement Classes; (3) appointing Plaintiffs as Settlement Class Representatives; (4) appointing Settlement Class Counsel as defined below; and (5) appointing JND as the notice administrator and directing notice to the classes. The Court should grant this motion for the same reasons it granted preliminary approval of prior settlements in this case with Compass, Real Brokerage, Realty ONE, @properties, and Douglas Elliman. (*See* Doc. 163).

## II.    BACKGROUND – *MOEHRL* AND *BURNETT*

After five years of hard-fought litigation in related cases *Burnett v. National Association. of Realtors*, Case No. 4:19-cv-00332-SRB (W.D. Mo.) ("*Burnett*"), and *Moehrl v National Association of Realtors*, Case No. 1:19-cv-01610-ARW (N.D. Ill.) ("*Moehrl*"), a jury trial and intensive settlement negotiations, *Burnett* and *Moehrl* Plaintiffs have reached global settlements with all Defendants in those actions, that provide monetary relief totaling at least $876.5 million[2] (not including later settlements in this action) and require historic practice changes that will ultimately benefit future home sellers and buyers. Economists and other market experts have predicted that the Settlements could ultimately save consumers tens of billions of dollars per year.[3]

---

[2] This figure includes a pending $250 million settlement with the HomeServices Defendants.

[3] *See, e.g.*, Julian Mark, Aaron Gregg & Rachel Kurzius, *Realtors' Settlement Could Dramatically Change Cost of Housing Sales*, WASH. POST (Mar. 15, 2024), https://www.washingtonpost.com/business/2024/03/15/nar-real-estate-commissions-settlement/.

The *Moehrl* class action was filed in the Northern District of Illinois on March 6, 2019, on behalf of home sellers who paid a broker commission in connection with the sale of residential real estate listed on 20 Covered MLSs spanning 19 states. (*Moehrl* Doc. 1). The *Burnett* action was filed in this Court on April 29, 2019, on behalf of home sellers who paid a broker commission in connection with the sale of residential real estate listed on one of four Subject MLSs in Missouri. (*Burnett* Doc. 1).

The plaintiffs in both actions alleged that NAR and the nation's largest real estate brokerage firms entered into an unlawful agreement in violation of the Sherman Act, 15 U.S.C. § 1, to artificially inflate the cost of commissions in residential real estate transactions. *Moehrl* and *Burnett* Plaintiffs alleged a longstanding conspiracy among Defendants to agree to NAR rules (a) requiring home sellers to make blanket unilateral offers of compensation to real estate brokers working with buyers, (b) restraining negotiation of those offers, (c) denying buyers information on the commissions being offered, (d) allowing buyer agents to represent that their services are "free," and (e) incentivizing and facilitating steering by brokers towards high commission listings and away from discounted listings (together, the "Challenged Rules"). *Moehrl* and *Burnett* Plaintiffs claimed that the Challenged Rules are anticompetitive and caused them to pay artificially inflated broker commissions when they sold their homes. Defendants have denied the allegations.

Defendants filed motions to dismiss the *Burnett* action on August 5, 2019, and this Court denied their motions on October 16, 2019. (*Burnett* Doc. 131). Similarly, Defendants filed motions to dismiss the *Moehrl* action on August 9, 2019, and the Court in that action denied their motions on October 2, 2020. (*Moehrl* Doc. 184). The parties proceeded with discovery.

On April 22, 2022, this Court granted the *Burnett* Plaintiffs' motion for class certification; appointed Scott and Rhonda Burnett, Jerod Breit, Ryan Hendrickson, Jeremy Keel, and Scott

Trupiano as class representatives; and appointed Ketchmark & McCreight, Boulware Law LLC, and Williams Dirks Dameron LLC as Co-Lead Class Counsel. (*Burnett* Doc. 741). Shelly Dreyer, Hollee Ellis, and Frances Harvey joined as class representatives in the *Burnett* action with the Third Amended Complaint (*Burnett* Doc. 759).

On March 29, 2023, Judge Wood granted the plaintiffs' motion for class certification in the *Moehrl* action, appointed Christopher Moehrl, Michael Cole, Steve Darnell, Jack Ramey, Daniel Umpa, and Jane Ruh as class representatives, and appointed Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Susman Godfrey LLP as co-lead class counsel. (*Moehrl* Doc. 403).

The parties in both actions completed over four years of extensive fact and expert discovery, including propounding and responding to multiple sets of interrogatories and requests for production, followed by the production of well over 5 million pages of documents from the parties and dozens of non-parties across both actions. *Moehrl* and *Burnett* Plaintiffs briefed numerous discovery motions and other disputes relevant to obtaining evidence supporting their claims. The parties conducted around 100 depositions in the *Moehrl* action and over 80 depositions in the *Burnett* action. *Moehrl* Plaintiffs engaged six experts and *Burnett* Plaintiffs engaged five experts supporting their claims and in rebuttal to the nine experts retained by Defendants in each case. Moreover, most experts were deposed in connection with the submission of 24 expert reports in *Moehrl* and 19 expert reports in *Burnett*. The plaintiffs in both cases have also briefed summary judgment, and the Plaintiffs in *Burnett* proceeded to trial, including against NAR, and briefed post-trial motions. (Berman Decl. ¶ 15; Dirks Decl., Exhibit 2 at ¶¶ 11–12). Much of the discovery focused on the nationwide rules and practices of NAR and its members. Class Counsel and experts in *Burnett* and *Moehrl* analyzed rules, policies, practices, and transaction data, including on a

nationwide basis. (Berman Decl. ¶ 16; Dirks Decl. ¶ 12). They also evaluated whether those policies and practices differed among the various MLSs. The information and data were not limited to the *Burnett* and *Moehrl* Defendants, but rather focused on the entire industry. *Id.*

After years of aggressive litigation and settlement negotiations, *Moehrl* and *Burnett* Plaintiffs, and the defendants in those cases, entered into settlement Agreements that require those defendants to make important Practice Changes, provide Cooperation in the ongoing litigation, and pay the following amounts:

1. National Association of Realtors ("NAR"): at least $418 million;
2. HomeServices Defendants: $250 million;
3. Anywhere Real Estate, Inc. (f/k/a Realogy Holdings Corp.) ("Anywhere"): $83.5 million;
4. RE/MAX LLC ("RE/MAX"): $55 million; and
5. Keller Williams Realty, Inc. ("Keller Williams"): $70 million.

(Berman Decl. ¶ 17; Dirks Decl. ¶ 8). This Court, in *Burnett*, has granted final approval of the settlements with Anywhere, RE/MAX, and Keller Williams,[4] and preliminary approval of the Settlement with NAR.[5] In connection with all of these settlements, this Court appointed the following firms Co-Lead Class Counsel:

1. Ketchmark & McCreight,
2. Boulware Law LLC,
3. Williams Dirks Dameron LLC,
4. Cohen Milstein Sellers & Toll PLLC,
5. Hagens Berman Sobol Shapiro LLP, and
6. Susman Godfrey LLP.[6]

---

[4] *See Burnett* Doc. 1487.
[5] *See Burnett* Doc. 1460. This Court has also granted preliminary approval of additional settlements in this action.
[6] *See Burnett* Docs. 1460 and 1487.

### III. BACKGROUND – *GIBSON* AND *UMPA*

#### A. The Litigation

The *Moehrl* and *Burnett* actions together initially raised claims against five defendant families on behalf of home sellers who listed their properties on one of 24 covered MLSs. Following on the crucial groundwork laid in *Burnett* and *Moehrl*, Plaintiffs Don Gibson, Lauren Criss, John Meiners, and Daniel Umpa, filed the above-captioned case ("*Gibson*") to bring the same claims against additional Defendants on behalf of a nationwide class of home sellers. The cases were originally filed as two related actions, *Gibson, et al. v. NAR, et al.*, Case No. 4:23-CV-788-SRB ("*Gibson*") on October 31, 2023, and *Umpa v. NAR, et al.*, Case No. 4:23-CV-945-SRB ("*Umpa*") on December 27, 2023. On April 23, 2024, the Court granted Plaintiffs' motion to consolidate the *Gibson* and *Umpa* matters and to file a consolidated class action complaint under the *Gibson* caption. *Gibson* Docs. 145–146; *Umpa* Docs. 245–246.

The six law firms appointed Co-Lead Class Counsel in *Moehrl* and *Burnett* also represent Plaintiffs and the putative class in the consolidated *Gibson* action. The Court appointed them as Interim Co-Lead Class Counsel in this case, with responsibility "for any settlement negotiations with Defendants." (Doc. 180). The Court also appointed these six firms as Co-Lead Counsel for the Settlement Classes in the first five *Gibson* Settlements. *See* Doc. 163. With their successful track record, Class Counsel brings substantial knowledge and expertise to the prosecution of the *Gibson* action. Plaintiffs and their counsel have worked diligently to advance the litigation in *Gibson* and *Umpa*. Prior to filing these actions, class counsel undertook significant research into the Settling Defendants, their participation in NAR, their enforcement of the Mandatory Offer of Compensation Rule, and their market share and market presence. Counsel reviewed publicly available information, including SEC filings, company websites, third party websites, YouTube videos, and other sources in order to investigate the connection between these companies and the

practices found to be antitrust violations in *Burnett*. (Dirks Decl. ¶ 13). Counsel believed that each of the Defendants in this action followed and enforced the Mandatory Offer of Compensation Rule and/or similar rules of non-NAR MLSs. *Id.* Plaintiffs and their counsel then filed detailed complaints against the Defendants and have diligently prosecuted the case through its early stages to date. Plaintiffs' counsel have worked cooperatively, including moving to consolidate the *Gibson* and *Umpa* complaints for purposes of efficiency. Plaintiffs' counsel also handled various early steps in the case, including negotiating a scheduling order, working on preparing ESI and protective orders and serving discovery. (Berman Decl. ¶ 19).

Plaintiffs and their counsel have previously reached settlements totaling over $86 million in this case with Defendants Compass, Real Brokerage, Realty ONE, @properties, and Douglas Elliman, plus additional contingent payments. The extensive work in *Moehrl* and *Burnett*, as well as in this case, paved the way for the recent $16.15 million settlements with Redfin and Engel & Völkers. (Berman Decl. ¶ 15-19; Dirks Decl. ¶ 9–12). Currently, including the two proposed settlements and prior settlements in *Burnett* and *Gibson,* the total recovery on behalf of home sellers is at least $978.65 million,[7] in addition to meaningful practice changes and cooperation in the litigation.

## B. Settlement Negotiations

The parties reached each of these settlements through extensive negotiations. For both Settlements, the parties engaged in negotiations through the assistance of a nationally recognized and highly experienced mediator, Greg Lindstrom, who has worked on numerous settlement-related matters for these cases. In each of these matters, the parties had an all-day mediation, attended by lead counsel for Plaintiffs and lead counsel for Redfin and Engel & Völkers. For each

---

[7] This figure does not include up to $10 million in additional contingent payments from Douglas Elliman.

settlement, the parties reached agreement only after numerous hours of negotiation. (Berman Decl. ¶¶ 7, 12; Dirks Decl. ¶¶ 14–15). As part of the negotiations, the parties provided mediation briefs and statements. Defendants also provided detailed financial records, pursuant to FRE 408, that the Plaintiffs carefully reviewed to determine Defendants' ability to pay. *Id.*

The parties reached the Settlement Agreements after considering the risks and costs of litigation. Plaintiffs and Class Counsel believe the claims asserted have merit and that the evidence developed to date supports the claims. Plaintiffs and counsel, however, also recognize the myriad of risks and delay of further proceedings in a complex case like this, and believe that the Settlements confer substantial benefits upon the Settlement Class Members. (Berman Decl. ¶¶ 10–11; Dirks Decl. ¶ 17). Moreover, Plaintiffs and counsel conducted a thorough financial analysis of the ability to pay, and whether each of them could withstand a greater monetary judgment, which directly affected the monetary amounts that it was feasible to recover from the Settling Defendants. (Berman Decl. ¶ 12; Dirks Decl. ¶¶ 14–16).

The Settling Defendants deny the material allegations of the Complaint and any wrongdoing but wish to avoid the time, expense, uncertainty, and risk attendant with further litigation.

## C. Summary of Settlement Agreements with Redfin and Engel & Völkers

### 1. Settlement Classes

The proposed Settlement Class with respect to Redfin is: All persons who sold a home that was listed on a multiple listing service anywhere in the United States where a commission was paid to any brokerage in connection with the sale of the home in the following date ranges:

- Homes in Nevada: January 15, 2018 to the date of Class Notice;

- Homes in California: October 2, 2019 to date of Class Notice; and

- For all other homes: October 31, 2019 to date of Class Notice.

(Redfin ¶ 15).

The proposed Settlement Class with respect to Engel & Völkers is: All persons who sold a home that was listed on a multiple listing service anywhere in the United States where a commission was paid to any brokerage in connection with the sale of the home in the following date ranges:

- Homes in Arkansas, Kentucky, and Missouri: October 31, 2018 to date of class notice;
- Homes in Alabama, Georgia, Indiana, Maine, Michigan, Minnesota, New Jersey, Pennsylvania, Tennessee, Vermont, Wisconsin, and Wyoming: October 31, 2017 to date of class notice; and
- For all other homes: October 31, 2019 to date of Class Notice.

(Engel & Völkers ¶ 15).

The Settlement Agreements provide for "a nationwide class with a nationwide settlement and release." (Redfin ¶ 15; Engel & Völkers ¶ 15). The Classes encompass persons who sold homes on any multiple listing service nationwide, regardless of affiliation with NAR or not, including, for example, NWMLS, WPMLS, and REBNY/RLS. (*See id; Burnett* Doc. 1487 at ¶¶ 63, 46).

### 2. Settlement Amounts

The proposed Settlements provide that the Settling Defendants will pay the following amounts for the benefit of the Settlement Classes:

- Redfin: $9.25 million; and
- Engel & Völkers: $6.9 million.

(Redfin ¶ 18, Engel & Völkers ¶ 18). These amounts are inclusive of all costs of settlement, including payments to class members, attorney fees and costs, service awards for current and former class representatives, including Settlement Class Representatives, and costs of notice and administration. (*Id.*)

The Settlement Amounts are non-reversionary: once the Settlements are finally approved by the Court and after administrative costs, litigation expenses, and attorney fees are deducted, the net funds will be distributed to Settlement Class Members with no amount reverting back to the Settling Defendants, regardless of the number of Opt-Out Sellers or claims made. (Redfin ¶ 38, Engel & Völkers ¶ 38).

**3. Practice Changes**

The proposed Settlements provide for Redfin and Engel & Völkers, and their subsidiaries and affiliates, to make the following Practice Changes, to the extent they are not already implemented, within six months after the Settlements become effective:

i.    advise and periodically remind company-owned brokerages, franchisees (if any), and their agents that there is no company requirement that they must make offers to or must accept offers of compensation from cooperating brokers or that, if made, such offers must be blanket, unconditional, or unilateral;

ii.    require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable (i) in their listing agreement if it is not a government or MLS-specified form, (ii) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (iii) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents are a government or MLS-specified form, then Settling Defendant will require that any company owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

iii.    prohibit all company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that franchisees and their agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free;

iv.    require that company-owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

    v.    prohibit company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict MLS listings that are searchable by and displayed to consumers based on the level of compensation offered to any cooperating broker unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

    vi.    advise and periodically remind company-owned brokerages and their agents of their obligation to (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of cooperative compensation offered provided that each such property meets the buyer's articulated purchasing priorities; and

    vii.    for each of the above points, for company-owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

(Redfin ¶ 49, Engel & Völkers ¶ 49). If not automatically terminated earlier by their own terms, these practice changes will sunset five years after the Effective Date of the Settlement Agreements. (*Id.* at ¶ 50.)

### 4. Release of Claims Against Settling Defendants

Upon the Effective Date, Plaintiffs and the Settlement Classes will release and discharge the Settling Defendants, and their respective subsidiaries, related entities, affiliated franchisees, independent contractors, and other representatives from any and all claims arising from or relating to "conduct that was alleged or could have been alleged in the Actions based on any or all of the same factual predicates for the claims alleged in the Actions, including but not limited to commissions negotiated, offered, obtained, or paid to brokerages in connection with the sale of any residential home." (Redfin ¶¶ 7, 11–13, 28–30; Engel & Völkers ¶¶ 7, 11–13, 28–30). The complete terms of the releasees are contained in the Settlement Agreements.

The Settlement Agreements, however, do nothing to abrogate the rights of any member of the Settlement Classes to recover from any other Defendant. (Redfin ¶ 59, Engel & Völkers ¶ 59). The Settlement Agreements also expressly exclude from the Release a variety of individual claims

that class members may have concerning product liability, breach of warranty, breach of contract, or tort of any kind (other than a breach of contract or tort based on any factual predicate in this Action). Also exempted are any "individual claims that a class member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence, or other tort claim, other than a claim that a Class Member paid an excessive commission or home price due to the claims at issue in these Actions." (Redfin ¶ 30; Engel & Völkers ¶ 30).

5. **Application for Award of Attorney Fees, Costs, and Class Representative Incentive Awards**

The Settlements authorize Settlement Class Counsel to seek to recover their attorney fees and costs incurred in prosecuting the Actions, as well as to seek service awards for current and former class representatives, including the Settlement Class Representatives. (Redfin ¶¶ 32, 35; Engel & Völkers ¶¶ 32, 35). Following the Court's preliminary approval of the Settlements, Class Counsel will submit an application to the Court for an award of attorney fees, costs, and potentially for service awards, to be paid out of the Settlement Fund.

## IV. THE CLASS DEFINITIONS CONTEMPLATED BY THE SETTLEMENTS SATISFY RULE 23, AND THE CLASSES SHOULD BE CERTIFIED

**A. The Settlement Class definitions satisfy the requirements of Rule 23(a) and 23(b)(3). Accordingly, Plaintiffs request that the Court grant certification of the Settlement Classes for settlement purposes only.**

For the Settlement with Redfin, the proposed Settlement Class definition, pursuant to Rule 23(b)(3) is as follows (the "Redfin Settlement Class"):

> All persons who sold a home that was listed on a multiple listing service anywhere in the United States where a commission was paid to any brokerage in connection with the sale of the home in the following date ranges:
>
> • Homes in Nevada: January 15, 2018 to the date of Class Notice;
>
> • Homes in California: October 2, 2019 to date of Class Notice; and

- For all other homes: October 31, 2019 to date of Class Notice.

(Redfin ¶ 15).

For the Settlement with Engel & Völkers, the proposed Settlement Class definition is as follows (the "Engel & Völkers Settlement Class"):

> All persons who sold a home that was listed on a multiple listing service anywhere in the United States where a commission was paid to any brokerage in connection with the sale of the home in the following date ranges:
>
> - Homes in Arkansas, Kentucky, and Missouri: October 31, 2018 to the date of class notice;
>
> - Homes in Alabama, Georgia, Indiana, Maine, Michigan, Minnesota, New Jersey, Pennsylvania, Tennessee, Vermont, Wisconsin, and Wyoming: October 31, 2017 to date of class notice; and
>
> - For all other homes: October 31, 2019 to date of Class Notice.

(Engel & Völkers ¶ 15).

The Settlement Agreements provide for "a nationwide class with a nationwide settlement and release." (Redfin ¶ 15; Engel & Völkers ¶ 15). The Classes encompass persons who sold homes on any multiple listing service nationwide, regardless of affiliation with NAR or not, including, for example, NWMLS, WPMLS, and REBNY/RLS. (*See id; Burnett* Doc. 1487 at ¶¶ 63, 46).

The Settlements are conditioned upon the Court certifying a class for settlement purposes that is slightly broader than the class definition in the *Gibson* complaint, including (a) sellers who paid a commission to any brokerage (rather than limited to brokerages affiliated with Corporate Defendants), and (b) a slightly expanded time range.

The Settlement Class definitions satisfy the requirements of Rule 23(a) and 23(b)(3) for the reasons discussed below. Thus, class certification is warranted for settlement purposes.

**B. Legal Standard for Modifying the Class Definition**

The Court has authority under Rule 23 to certify the proposed Settlement Classes here. Even in the litigation context, courts may certify a class broader than the one alleged in the complaint. *See, e.g.*, *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (Easterbrook, J.) (explaining that the "obligation to define the class falls on the judge's shoulders" and "motions practice and a decision under Rule 23 do not require the plaintiff to amend the complaint."); *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 212 (S.D.N.Y. 2018) ("[C]onsistent with the certifying court's broad discretion over class definition," adopting "the class definition that Plaintiffs propose in their motion for class certification [even though] it expands upon the definition found in the Amended Complaint.").

In the settlement context, courts regularly certify broader classes. *See, e.g.*, *Burnett* Doc. 1321, ¶ 7 (certifying a "settlement class [that] is broader than the class alleged in the complaint"); *Burnett* Doc. 1487 at 6 (granting final approval of settlement with broader class than as alleged in the litigation); *Gibson* Doc. 163 (certifying a nationwide settlement class that is broader than the class alleged in the complaint); *In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.*, 357 F.3d 800, 805 (8th Cir. 2004) ("There is no impropriety in including in a settlement a description of claims that is somewhat broader than those that have been specifically pleaded. In fact, most settling defendants insist on this."); *Smith v. Atkins*, 2:18- cv-04004-MDH (W.D. Mo.).

**C. The Proposed Settlement Classes Satisfy Rule 23(a)**

The Settlement Classes must satisfy the four requirements of Rule 23(a) and one of the subsections of Rule 23(b). *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Burnett v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332, 2022 WL 1203100, at *4 (W.D. Mo. Apr. 22, 2022). The Court should grant provisional certification here because the proposed Settlement Classes satisfy Rule 23(a) and (b)(3). Provisional certification will allow the Settlement Classes to receive notice

of the Settlements and its terms, including the rights of class members to submit a claim and recover a class award if the Settlements are finally approved, to object to and/or be heard on the Settlements' fairness at the Fairness Hearing, or to opt out.

## 1. Numerosity

Rule 23(a)(1) requires "the class be so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A] plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Hand v. Beach Entertainment KC, LLC*, 456 F. Supp. 3d 1099, 1140 (W.D. Mo. 2020) (quotation omitted). Although the Eighth Circuit has not established strict requirements regarding the size of a proposed class, *see Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982), class sizes as small as 40 have satisfied this requirement. *Rannis v. Rechia*, 380 Fed. App'x 646, 651 (9th Cir. 2010).

Here, Plaintiffs estimate that Settlement Class Members number in the tens of millions, dispersed across the United States. Moreover, this Court in *Burnett* and the *Moehrl* Court have previously held that litigation classes smaller than the Settlement Classes at issue here satisfied the numerosity requirement. *See Burnett*, 2022 WL 1203100, at *5; *Moehrl v. Nat'l Ass'n of Realtors*, No. 1:19-cv-01610, 2023 WL 2683199, at *11 (N.D. Ill. Mar. 29, 2023). Thus, the Settlement Classes plainly satisfy Rule 23(a)(1)'s numerosity requirement.

## 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim; "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (quotation omitted); *see also Paxton*, 688 F.2d at 561 (8th Cir. 1982) ("The rule does not require that every question of law or fact be common to every member of the class"). "In the antitrust context, courts have

generally held that an alleged conspiracy or monopoly is a common issue that will satisfy Rule 23(a)(2) as the singular question of whether defendants conspired to harm plaintiffs will likely prevail." *D&M Farms v. Birdsong Corp.*, No. 2:19-cv-463, 2020 WL 7074140, at *3 (E.D. Va. Dec. 1, 2020).

In the related *Burnett* case, this Court previously held that there are many issues common to the *Burnett* classes, including (1) whether Defendants engaged in a conspiracy to artificially inflate the cost of commissions in residential real estate transactions; (2) whether the conspiracy violates Section 1 of the Sherman Act; (3) the duration, scope, extent, and effect of the conspiracy; (4) whether a per se or rule of reason analysis should apply; and (5) whether *Burnett* Plaintiffs and other members of the Classes are entitled to, among other things, damages, and/or injunctive relief. *See Burnett*, 2022 WL 1203100, at *5. Similarly, the *Moehrl* Court found that the commonality requirement was met based on the common question "whether Defendants conspired to artificially inflate the buyer-broker commissions paid by the class by adopting the Challenged Restraints, in violation of § 1 of the Sherman Act." *Moehrl*, 2023 WL 2683199, at *11. These common issues exist with respect to the proposed Settlement Classes in *Gibson* as they did with respect to the classes initially certified in *Burnett* and *Moehrl. See, e.g., Gibson* Doc. 163; *Hughes v. Baird & Warner, Inc.*, No. 76-cv-3929, 1980 WL 1894, at *2 (N.D. Ill. Aug. 20, 1980) ("The obvious question of fact common to the entire class is whether or not a conspiracy existed. This question will most probably predominate the entire lawsuit."). In particular, the conduct of Redfin and Engel & Völkers that is being challenged in *Gibson* generally centers on rules adopted nationwide and applying to Realtors nationwide.

### 3. Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "The burden of demonstrating typicality is fairly easily met so long as other class members

have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *Burnett*, 2022 WL 1203100, at *6. Rule 23(a)(3) "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977). "In the antitrust context, typicality is established when the named plaintiffs and all class members alleged the same antitrust violations by defendants. Specifically, named plaintiffs' claims are typical in that they must prove a conspiracy, its effectuation, and damages therefrom – precisely what the absent class members must prove to recover." *Hyland v. Homeservices of Am., Inc.*, No. 3:05-cv-612, 2008 WL 4858202, at *4 (W.D. Ky. Nov. 7, 2008) (internal citations and quotations omitted); *Burnett*, 2022 WL 1203100, at *6.

In the related *Burnett* case, this Court previously held that *Burnett* Plaintiffs' claims are typical of members of the *Burnett* classes. Likewise, in prior settlements in this case, the Court found that *Gibson* Plaintiffs' claims are typical of members of the proposed Settlement Classes. (*See* Doc. 163). Each Settlement Class Member sold a home that was listed on a multiple listing service in the United States. Settlement Class Members' claims arise out of a common course of misconduct by Defendants; they all paid a commission when they sold their homes that was inflated by Defendants' conduct. As such, Rule 23(a)(3) is satisfied.

### 4. Adequacy

Rule 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58, n.13 (1982)). For a conflict to defeat class certification, the conflict "must be more than merely speculative or hypothetical," but rather "go

to the heart of the litigation." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430–31 (4th Cir. 2003) (citation omitted).

As with the settlement classes earlier certified in this action (Doc. 163) and the related *Burnett* and *Moehrl* actions, *Burnett*, 2022 WL 1203100, at *1, *7; *Moehrl*, 2023 WL 2683199, at *11, there is no conflict here; the interests of Plaintiffs are aligned with those of Settlement Class Members. Plaintiffs, like all Settlement Class Members, share an overriding interest in obtaining the largest possible monetary recovery, the most effective practice changes, and the most helpful cooperation from Redfin and Engel & Völkers. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes."). Moreover, because a narrower settlement would have left the Settling Defendants exposed to litigation involving claims exceeding their ability to pay, the only feasible means for Plaintiffs to obtain *any settlement at all* was to settle on a comprehensive basis on behalf of the entire Settlement Classes. Finally, Plaintiffs are not afforded any special or unique compensation by the proposed Settlement Agreements. As such, Rule 23(a)(4) is satisfied.

**D.   The Proposed Settlement Classes Satisfy Rule 23(b)(3)**

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must demonstrate that the proposed Settlement Classes satisfy Rule 23(b)(3). Specifically, Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs have done so.

### 1. Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . and goes to the efficiency of a class action as an alternative to individual suits." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 479 (8th Cir. 2016) (internal quotations and citations omitted). The predominance question at class certification is not whether Plaintiffs have already proven their claims through common evidence. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011). Rather it is whether questions of law or fact capable of resolution through common evidence predominate over individual questions. *Id.*

"[W]hether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019). "[T]he predominance requirement is relaxed in the settlement context[.]" *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567, 2019 WL 7160380, at *4 (W.D. Mo. Nov. 18, 2019); *see also Holt v. CommunityAmerica Credit Union*, No. 4:19-cv-00629, 2020 WL 12604383, at *4 (W.D. Mo. Sept. 4, 2020). When a class is being certified for settlement, "a district court need not inquire whether the case, if tried, would present intractable management problems[.]" *Amchem*, 521 U.S. 591 at 620. Therefore, as courts in this circuit recognize, "When a class is being certified for settlement, the Court need only analyze the predominance of common questions of law and the superiority of class action for fairly and effectively resolving the controversy; it need not examine Rule 23(b)(3)(A–D) manageability issues, because it will not be managing a class action trial." *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, at *5 (D. Minn. Feb. 27, 2013). For example, in *Zurn Pex*, the district court found that common issues predominated because class representatives and members of the settlement class all sought to remedy a "shared legal grievance[.]" *Id.*

Indeed, the Eighth Circuit, in rejecting objections to another class action settlement, stated that "the interests of the various plaintiffs do not have to be identical to the interests of every class member[.]" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999). Instead, the Eighth Circuit emphasized that certification of a settlement class was appropriate where "all of the plaintiffs seek essentially the same things: compensation for damage already incurred, restoration of property values to the extent possible, and preventive steps to limit the scope of future damage." *Id.*

Here, all Plaintiffs seek to remedy the same shared legal grievance—widespread conduct by Corporate Defendants and NAR throughout the United States that has resulted in supra-competitive broker commission rates. This conduct includes nationwide policies enacted by the various Defendants to perpetuate the challenged conduct—including requirements that agents and brokerages affiliated with the Corporate Defendants belong to NAR, participate in both NAR-affiliated and non-NAR affiliated multiple listing services and/or follow NAR's Code of Ethics and MLS Handbook. It also includes nationwide policies enacted by NAR, including NAR's Code of Ethics. Indeed, Defendants' requirements that their subsidiaries and franchises comply with relevant NAR rules and/or belong to NAR raise issues that are common to the Settlement Classes. Such evidence will come from Defendants' files, statements, policies, contracts, records, and employees, and is not specific to individual class members. Also at issue are specific multiple listing service rules, including rules mandating blanket unilateral offers of compensation to cooperating brokers, that are present in multiple listing services throughout the United States—including in multiple listing services that are not directly or indirectly affiliated with NAR. All Plaintiffs seek the same relief—compensation for the higher broker rates that they have had to pay, as well as systemic reforms that address the underlying conduct.

Common issues also predominate for each element that Plaintiffs must prove to prevail in an antitrust case: (1) a violation of the antitrust laws; (2) the impact of the unlawful activity; and (3) measurable damages. *See, e.g.*, *Gibson* Doc. 163 at ¶ 5; *Burnett*, 2022 WL 1203100, at *10. First, as discussed above, all members of the Settlement Classes share the same legal grievance— a violation of the antitrust laws by Defendants. Second, as in the *Burnett* action, "the fact of antitrust impact can be established through common proof . . . ." *Burnett*, 2022 WL 1203100, at *11 (quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 18 (1st Cir. 2015)). *Burnett* and *Moehrl* Plaintiffs have "shown the existence of common questions concerning antitrust impact that can be answered with common evidence" (*Moehrl*, 2023 WL 2683199, at *19; *Burnett*, 2022 WL 1203100, at *10–12, *18), including expert opinions, analysis of residential real estate transactions in foreign benchmark countries, and transaction data from defendants and MLSs. The same common questions are at issue in *Gibson*. At bottom, evidence of impact from the fact that commissions in the United States are higher than international markets is evidence common to the nationwide Settlement Classes in *Gibson*. Third, all members of the proposed Settlement Classes have been damaged by paying inflated commissions as a result of the Challenged Rules or other similar rules or by paying any commission to a buyer broker. Experts in the *Burnett* and *Moehrl* actions presented reliable methods of measuring damages as the difference between the amount class members paid for buyer agent commissions in the actual world versus what they would have paid in the but-for world. (*Moehrl* Doc. 403; *Burnett* Doc. 741) The same type of methodology could be used for the broader Settlement Classes in *Gibson*.

## 2. Superiority of a Class Action

In addition to the predominance of common questions, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Factors relevant to the superiority of a class action under

Rule 23(b)(3) include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

In this case, the first three factors weigh heavily in favor of class certification. First, class members have little economic incentive to sue individually based on the amount of potential recovery involved, and any Settlement Class Member who wishes to opt out will have an opportunity to do so. Second, there is just a small handful of other lawsuits filed by individual Settlement Class Members, all of which were filed after the initial *Gibson* complaint and none of which have made significant progress in litigation to date. Settlement Class Members will retain the ability to opt out of the Settlement Classes if they wish to pursue their claims individually. Third, judicial efficiency is served by approving the Settlements. It would be inefficient—for both the Court and the parties—to engage in millions of individual trials involving similar claims. "Requiring individual Class Members to file their own suits would cause unnecessary, duplicative litigation and expense, with parties, witnesses and courts required to litigate time and again the same issues, possibly in different forums." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 240 (S.D. W.Va. 2005).

Proceeding as a class action, rather than a host of separate individual trials, would provide significant economies in time, effort, and expense, and permit Settlement Class Members to seek damages that would otherwise be too costly to pursue.

Finally, the Supreme Court has found that when certifying a settlement class "a district court need not inquire whether the case, if tried, would present intractable management problems,

*see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Such is the case here. If approved, the Settlement Agreements would obviate the need for a trial against the Settling Defendants, and thus questions concerning that trial's manageability are irrelevant. Accordingly, the Court should certify the Settlement Classes.

## V.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS

Federal Rule of Civil Procedure 23(e) sets out a two-part process for approving class settlements. This case is at the first stage of the approval process, often called "preliminary approval," where the Court decides if it is "likely" to approve the settlements such that notice of the settlements should be sent to the class. Fed. R. Civ. P. 23(e)(1)(B). At this stage, the Court does not make a final determination of the merits of the proposed settlements. Full evaluation is made at the final approval stage, after notice of the settlements has been provided to the members of the class and those class members have had an opportunity to voice their views of the settlements. At this first stage, the parties request that the Court grant "preliminary approval" of the Settlements and order that notice be sent to the Settlement Classes.

As a general matter, "the law strongly favors settlements. Courts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990). Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11.41; *see also Petrovic*, 200 F.3d at 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."); *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'" (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)); *Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011) (crediting the

- 23 -

judgment of experienced class counsel that settlement was fair, reasonable, and adequate). The presumption in favor of settlements is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quotation and citation omitted).

The standard for reviewing a proposed settlement of a class action is whether it is "fair, reasonable, and adequate." *In re Wireless Telephone Federal Cost Recover Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). The Eighth Circuit has set forth four factors that a court should review in determining whether to approve a proposed class action settlement: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Id.* (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975); *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). "The views of the parties to the settlement must also be considered." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

## A. The Merits of the Plaintiffs' Cases, Weighed Against the Terms of the Settlements

The parties naturally dispute the strength of their claims and defenses. The Settlements reflect a compromise based on the parties' educated assessments of their best-case and worst-case scenarios, and the likelihood of various potential outcomes. Plaintiffs' best-case scenario is prevailing on the merits at trial in *Gibson*, and upholding their award on appeal. But "experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). The same is true for post-trial motions and appeals. And being liable alone for the alleged damages in either of these cases would bankrupt the Settling Defendants.

Against this risk, the Settlements provide for a recovery of $16.15 million from just two of many Defendants, for a combined total of relief from all Settling Defendants of over $978 million, to date. As discussed in detail below, these settlements are supported by the financial condition of the Settling Defendants, who lack the ability to pay the damages alleged.

The Settlements further provide important changes to the Settling Defendants' business practices to protect class members who sell homes in the future. Among other things, the Settling Defendants have committed to take steps to educate their affiliated agents that, among other things, the companies do not require listing agents to make offers of compensation to buyer agents and commissions are negotiable. *Gibson* Plaintiffs, along with *Burnett* and *Moehrl* Plaintiffs, have entered into a separate proposed settlement with NAR to achieve additional injunctive relief—including changes to the challenged rules. And the Settlements to do not preclude Plaintiffs from obtaining additional relief from the non-settling Defendants.

Toward that end, Plaintiffs further secured cooperation from the Settling Defendants to assist Plaintiffs with prosecuting their claims against the remaining defendants at trial—where Plaintiffs will strive to secure additional monetary and non-monetary relief. As courts recognize, this is a factor in approving settlements. *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement in light of settling defendant's "assistance in the case against [a non-settling defendant]"); *see generally In re IPO Sec. Litig.*, 226 F.R.D. 186, 198–99 (S.D.N.Y. 2005) (recognizing the value of cooperating defendants in complex class action litigation).

Finally, the Settlement terms were reached as the product of arm's length negotiations over a period of over a month, facilitated by a well-respected mediator, following over four years of hard-fought litigation and settlement negotiations in the related *Burnett* and *Moehrl* actions. (Berman Decl. ¶ 7; Dirks Decl. ¶ 14). "When a settlement is reached by experienced counsel after

negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

## B.  Defendants' Financial Conditions

The Settlements are fair and reasonable in light of the financial condition of Redfin and Engel & Völkers, and the limited resources available to each to satisfy a settlement as compared to the size of the potential damages. Pursuant to Federal Rule of Evidence 408, Plaintiffs received and carefully reviewed analyzed financial records from each of the Settling Defendants, including analysis by one of Plaintiffs' counsel, a certified public accountant with training in financial forensics. (Berman Decl. ¶ 12; Dirks Decl. ¶¶ 14–16). The monetary settlements were reached with due consideration for the Defendants' limited ability to pay. (*Id.*) Furthermore, the entire real estate industry has faced significant financial headwinds over the past 2 years due to challenging financial conditions including high interest rates. In 2023, just 4.09 million existing homes were sold in the United States, the lowest number since 1995.[8] This has caused understandable financial difficulties for Defendants, whose businesses are directly tied to the number of home sales.

## C.  The Complexity and Expense of Further Litigation

Plaintiffs' claims raise numerous complex legal and factual issues under antitrust law. This is reflected in the voluminous briefing to date in the related cases, including extensive class certification and summary judgment briefing in *Moehrl* and *Burnett*, as well as post-trial briefing in *Burnett*. In addition, the parties in those actions have engaged in extensive appellate briefing, including (rejected) Rule 23(f) petitions in both *Moehrl* and *Burnett* as well as two separate appeals in the *Burnett* litigation concerning arbitration issues. Litigation in *Gibson* could prove to be

---

[8] Brooklee Han, *Just 4.09 million existing homes were sold in 2023*, HOUSINGWIRE (Jan. 19, 2024), https://www.housingwire.com/articles/just-4-09-million-existing-homes-were-sold-in-2023/#:~:text=Existing%20home%20sales%20dropped%20to,sold%2C%20the%20fewest%20since%201995.

similarly arduous and costly as Plaintiffs must pursue discovery and prove their claims against a different and larger set of Defendants.

By contrast, the Settlements ensure a recovery to the Settlement Classes that will be allocated and distributed in an equitable manner. In light of the many uncertainties of litigation, an equitable and certain recovery is highly favorable, and weighs in favor of approving the proposed Settlements. (Berman Decl. ¶¶ 10-11; Dirks Decl. ¶ 17).

**D. The Amount of Opposition to the Settlements**

Class Counsel have discussed the Settlement Agreements with the Class Representatives, who have approved them. (Berman Decl. ¶ 13; Dirks Decl. ¶ 18). Notice regarding the Settlements has not yet been distributed. In the event any objections are received after notice is issued, they will be addressed by counsel as part of the final approval process.

**E. The Settlements Also Satisfy the Rule 23(e) Factors**

In addition to the *Van Horn* factors set forth by the Eighth Circuit, courts in this District also routinely consider the overlapping Rule 23(e)(2) factors:

(A) the Class Representatives and Class Counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i)     the costs, risks, and delay of trial and appeal;
>
> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[9]

The Settlements satisfy each of these factors. First, Settlement Class Representatives and Class Counsel have adequately represented the classes. Settlement Class Representatives approved the terms of each settlement. Settlement Class Representatives also approved the filing of the *Gibson* and *Umpa* complaints and are prepared to represent the consolidated *Gibson* class as litigation continues against the remaining Defendants. (Berman Decl. ¶¶ 13, 20; Dirks Decl. ¶ 18). Indeed, both this Court, in *Burnett*, and the *Moehrl* Court previously appointed proposed Settlement Class Counsel as class counsel on behalf of the related *Burnett* and *Moehrl* classes at the class certification stage. And this Court has appointed them as Co-Lead Counsel for the Settlement Classes in the first five *Gibson* Settlements as well as Interim Co-Lead Class Counsel in the ongoing *Gibson* litigation. *See Gibson,* Docs. 163, 180. Second, as discussed above, the Settlements were negotiated at arm's length. Third, for the reasons stated above, the relief provided to the Classes is adequate. The Settlements provide for a significant financial recovery for the Settlement Classes, especially considering Settling Defendants' limited financial resources. Furthermore, the Settlements include practice changes that benefit consumers. Fourth, the Settlements treat Class Members fairly and equitably relative to each other. An allocation plan that ensures an equitable distribution of monetary funds amongst the Settlement Classes will be submitted to the Court for approval in due course.

---

[9] *See generally Bishop v. DeLaval Inc.*, No. 5:19-cv-06129, 2022 WL 18957112, at *1 (W.D. Mo. July 20, 2022) (Bough, J.); *Holt v. CommunityAmerica Credit Union*, No. 4:19-cv-00629, 2020 WL 12604383, at *2 (W.D. Mo. Sept. 4, 2020); *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567, 2019 WL 7160380, at *1–2 (W.D. Mo. Nov. 18, 2019).

## VI. THE COURT SHOULD APPOINT INTERIM CO-LEAD CLASS COUNSEL IN THIS CASE AS CO-LEAD COUNSEL FOR THE SETTLEMENT CLASSES

Fed R. Civ. P. 23(g) requires a court certifying a case as a class action to appoint class counsel. Plaintiffs respectfully request that the Court appoint the law firms who currently serve as Interim Co-Lead Class Counsel in this case, as Settlement Class Counsel—namely Ketchmark & McCreight, Boulware Law LLC, Williams Dirks Dameron LLC, Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Susman Godfrey LLP. Proposed Settlement Class Counsel are highly experienced in the areas of antitrust and class action litigation. They have tried antitrust class actions to verdict and prosecuted and settled numerous others. (Berman Decl. ¶¶ 4–6; Dirks Decl. ¶¶ 2–3).

Moreover, as detailed above, Proposed Settlement Class Counsel are the same attorneys who originally brought the *Moehrl* and *Burnett* actions in early 2019. They have diligently prosecuted those cases for over five years, handling, among other things, motions to dismiss, protracted fact discovery from parties and non-parties, review and synthesis of millions of pages of documents, expert discovery, discovery disputes, class certification, depositions of fact and expert witnesses; and they prevailed in the *Burnett* trial. (Berman Decl. ¶¶ 15-16,18, 21; Dirks Decl. ¶¶ 4, 7, 11–12). Both the *Burnett* and *Moehrl* Courts have already recognized Lead Counsels' effective prosecution of those cases by appointing them as Class Counsel for the *Burnett* and *Moehrl* Classes, respectively, as part of their rulings on class certification.

Proposed Settlement Class Counsel later filed the *Gibson* and *Umpa* actions to encompass additional defendants and a broader class, in order to maximize the monetary and injunctive relief available for home sellers who allegedly overpaid for real estate commissions. (Berman Decl. ¶ 18; Dirks Decl. ¶ 8). Proposed Settlement Class Counsel have worked hard to manage the litigation. (Berman Decl. ¶ 19; Dirks Decl. ¶¶ 13–14) And they have participated in a lengthy

settlement negotiation process with Redfin and Engel & Völkers to achieve the best possible result for the Settlement Classes. (Berman Decl. ¶¶ 7–14; Dirks Decl. ¶¶ 14–15).

**VII.    CLASS NOTICE SHOULD PROCEED IN A SUBSTANTIALLY SIMILAR MANNER AS IN THE SETTLEMENTS WITH ANYWHERE, RE/MAX, AND KELLER WILLIAMS IN THE *BURNETT* CASE**

Rule 23(e) requires that, prior to final approval of a settlement, notice must be provided to class members who would be bound by it. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs propose that the form of notice of the proposed Settlements with Redfin and Engel & Völkers be substantially similar to the notice provided with the Anywhere, RE/MAX and Keller Williams Settlements in connection with the *Burnett* action—which this Court approved. (*See Gibson* Doc. 163 (approving notice plan); *Gibson* Doc. 161 (motion to approve notice plan); *Gibson* Doc. 161-8 (Keough Declaration in support of proposed notice plan); *see also Burnett* Doc. 1321 (approving notice plan); *Burnett* Doc. 1319-1 (Keough Declaration in support of proposed notice plan); *Burnett* Doc. 1365 and 1371 (motions to approve form of notices)).[10] As this Court previously held in this case and  in *Burnett*, JND's proposed notice plan provides for the "best notice practicable and satisfies the requirements of due process." *Burnett* Doc. 1321; s*ee also Gibson* Doc. 163; *In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670, 2023 WL 2483474, at *2 (S.D. Cal. Mar. 13, 2023) (approving notice plan with estimated reach of at least

---

[10] Plaintiffs and Settling Defendants have agreed that the timing of a request to disseminate notice to the Settlement Classes of the Settlement Agreements is at the discretion of proposed Co-Lead Settlement Class Counsel and may be combined with notice of other settlements in the *Gibson* actions and/or the *Burnett* and *Moehrl* actions. Plaintiffs intend to notice these two Settlements with the previous five *Gibson* settlements for which the Court has already granted preliminary approval (Doc. 163). If they are unable to provide notice simultaneously, they will provide notice in similar fashion and augment postcard notice with any new contact information obtained from these Settling Defendants.

70% and observing that "[c]ourts have repeatedly held that notice plans with similar reach satisfy Rule 23(c)(2)(B)" (citing cases)). This plan, pursuant to Rule 23(c)(2)(B), provides the "best notice practicable" to all potential Settlement Class Members who will be bound by the proposed Settlements. Accordingly, the Court should appoint JND as the notice administrator and authorize the proposed notice plan.

## VIII. CONCLUSION

The Settlement Agreements with Redfin and Engel & Völkers provide an immediate, substantial, and fair recovery for the Settlement Classes. Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlements; (2) certifying the Settlement Classes for settlement purposes only; (3) appointing *Gibson* Plaintiffs as Settlement Class Representatives; (4) appointing Settlement Class Counsel as identified above; and (5) appointing JND as the notice administrator and ordering that notice be directed to the Settlement Classes in a form substantially similar to that issued in conjunction with the Anywhere, RE/MAX, and Keller Williams Settlements in the *Burnett* action.

DATED: July 12, 2024

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Rio S. Pierce (*pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
riop@hbsslaw.com

Jeannie Evans (*pro hac vice*)
Nathan Emmons (Mo. Bar. No. 70046)
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
jeannie@hbsslaw.com
nathane@hbsslaw.com

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Benjamin D. Brown (*pro hac vice*)
Robert A. Braun (*pro hac vice*)
Sabrina Merold (*pro hac vice*)
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
smerold@cohenmilstein.com

Daniel Silverman (*pro hac vice*)
769 Centre Street, Suite 207
Boston, MA 02130
Telephone: (617) 858-1990
dsilverman@cohenmilstein.com

Respectfully submitted by:

**WILLIAMS DIRKS DAMERON LLC**

*/s/ Eric L. Dirks*
Eric L. Dirks                  MO # 54921
Michael A. Williams      MO # 47538
Matthew L. Dameron     MO # 52093
1100 Main Street, Suite 2600
Kansas City, MO 64105
Tele: (816) 945 7110
Fax: (816) 945-7118
dirks@williamsdirks.com
mwilliams@williamsdirks.com
matt@williamsdirks.com

**BOULWARE LAW LLC**
Brandon J.B. Boulware    MO # 54150
Jeremy M. Suhr               MO # 60075
Erin D. Lawrence            MO # 63021
1600 Genessee Street, Suite 416
Kansas City, MO 64102
Tele:   (816) 492-2826
Fax:   (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com
erin@boulware-law.com

**KETCHMARK AND MCCREIGHT P.C.**
Michael Ketchmark          MO # 41018
Scott McCreight              MO # 44002
11161 Overbrook Rd. Suite 210
Leawood, Kansas 66211
Tele:   (913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

***Attorneys for Plaintiffs and the Class***

**SUSMAN GODFREY L.L.P.**
Marc M. Seltzer (*pro hac vice*)
Steven G. Sklaver (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Beatrice C. Franklin (*pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8330
bfranklin@susmangodfrey.com

Matthew R. Berry (*pro hac vice*)
Floyd G. Short (*pro hac vice*)
Alexander W. Aiken (*pro hac vice*)
401 Union St., Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
mberry@susmangodfrey.com
fshort@susmangodfrey.com
aaiken@susmangodfrey.com

***Attorneys for Plaintiffs and the Class***