**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI**

DON GIBSON, LAUREN CRISS,
JOHN MEINERS, and DANIEL UMPA,
individually and on behalf of all others
similarly situated,

    Plaintiffs,

  v.

NATIONAL ASSOCIATION OF
REALTORS, et al.

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 4:23-cv-00788-SRB
[Consolidated with 4:23-cv-00945-SRB]

**PLAINTIFFS' COMBINED SUGGESTIONS IN OPPOSITION TO
CERTAIN DEFENDANTS' MOTIONS TO DISMISS
BASED ON PERSONAL JURISDICTION AND/OR VENUE**

**[DOC. NOS. 299, 301, 305, 309, 317, 318, 331, 335, 354, 357]**

# TABLE OF CONTENTS

Table of Authorities ............................................................................................ iii

I. Introduction ...................................................................................................... 1

II. Legal Standards ............................................................................................... 4

   A. Venue challenges ......................................................................................... 4

   B. Section 12 of the Clayton Act ................................................................... 4

      1. The independent and integrated approaches ........................................ 4

      2. Standards for assessing when a defendant "transacts business" in a District
         under Section 12 of the Clayton Act ................................................... 6

III. Factual Background ......................................................................................... 8

IV. Argument ........................................................................................................ 9

   A. The Court should adopt the broad or independent approach to the Clayton Act ................. 9

   B. Personal jurisdiction and venue are proper under the independent approach
      to the Clayton Act .................................................................................... 17

   C. Venue is also proper under the integrated approach to the Clayton Act because most
      moving Defendants transacts business in this District ............................... 20

      1. Baird & Warner Real Estate, Inc. ..................................................... 22

      2. Berkshire Hathaway Energy Company ............................................. 22

      3. Crye-Leike, Inc. ................................................................................ 26

      4. Hanna Holdings, Inc. ........................................................................ 27

      5. John L. Scott, Inc. and John L. Scott Real Estate Affiliates, Inc. ..... 29

      6. K Company Realty, LLC d/b/a/ LoKation .......................................... 29

      7. Real Estate One, Inc. ........................................................................ 29

      8. William L. Lyon & Associates, Inc. ................................................. 30

      9. William Raveis Real Estate, Inc. ...................................................... 31

      10. Windermere Real Estate Services Company, Inc. ............................. 31

D.  The Court should reject Howard Hanna's request to transfer this case to the
    Western District of Pennsylvania ..................................................................................32

IV.  Conclusion ...........................................................................................................................35

# TABLE OF AUTHORITIES

**Cases**

*1st Tech., LLC v. Digital Gaming Sols. S.A.*,
  No. 4:08 CV 586 DDN, 2008 WL 4790347 (E.D. Mo. Oct. 31, 2008) ...................................21

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
  368 F.3d 1174 (9th Cir. 2004) ................................................................ 5, 11, 12, 13

*Bhd. of Maint. of Way Emps. Div./IBT v. Union Pac. R.R. Co.*,
  485 F. Supp. 3d 1048 (D. Neb. 2020) ..................................................................34

*Black v. Acme Markets, Inc.*,
  564 F.2d 681 (5th Cir. 1977) .................................................................................7

*Brandt v. Renfield Importers, Ltd.*,
  278 F.2d 904 (8th Cir. 1960) ...........................................................................7, 20

*Brigdon v. Slater*,
  100 F. Supp. 2d 1162 (W.D. Mo. 2000)...................................................................4

*Burnett v. Nat'l Ass'n of Realtors, et al.*,
  No. 19-cv-332 (W.D. Mo. Oct. 31, 2023), Doc. 1294 ...........................................3, 9

*Campos v. Ticketmaster Corp.*,
  140 F.3d 1166 (8th Cir. 1998) ......................................................................7, 23, 24

*Catipovic v. Turley*,
  No. 11-3074-MWB, 2012 WL 2089552 (N.D. Iowa June 8, 2012) ...............................*passim*

*City of Philadelphia v. Morton Salt Co.*,
  289 F. Supp. 723 (E.D. Pa. 1968) ..............................................................20, 22, 27

*Continental Grain Co. v. The FBL–585*,
  364 U.S. 19 (1960).................................................................................................35

*Cox v. CoinMarketCap OPCO, LLC*,
  --- F.4th ----, 2024 WL 3748982 (9th Cir. Aug. 12, 2024)...........................................13

*Daniel v. Am. Bd. of Emergency Med.*,
  428 F.3d 408 (2d Cir. 2005) ....................................................................................5

*Delong Equip. Co. v. Washington Mills Abrasive Co.*,
  840 F.2d 843 (11th Cir. 1988) ...........................................................................5, 14

*Diem LLC v. BigCommerce, Inc.*,
  2017 WL 6729907 (E.D. Tex. Dec. 28, 2017).........................................................33

Case 4:23-cv-00788-SRB   Document 443   Filed 09/13/24   Page 4 of 46

*Epps v. Stewart Info. Servs. Corp.*,
   327 F.3d 642 (8th Cir. 2003) ..........................................................................22

*ESAB Group, Inc. v. Centricut, Inc.*,
   126 F.3d 617 (4th Cir. 1997) ..........................................................................13

*Eskenazi v. Rural Cmty. Hosps. of Am., LLC*,
   No. 4:18-CV-00307-SRB, 2018 WL 6436266 (W.D. Mo. Dec. 7, 2018) ...............................4

*Ferko v. Nat'l Ass'n of Stock Car Racing*,
   No. 4:02CV50, 2002 WL 34477591 (E.D. Tex. Oct. 4, 2002)..................................6

*Gen. Comm. of Adjustment GO-386 v. Burlington N. R.R.*,
   895 F. Supp. 249 (E.D. Mo. 1995).................................................................33

*Gen. Elec. Co. v. Bucyrus-Erie Co.*,
   550 F. Supp. 1037 (S.D.N.Y. 1982)...............................................................10

*GMAC/Residential Funding Corp. v. Platinum Co. of Real Est. & Fin. Servs.*,
   2003 WL 1572007 (D. Minn. Mar. 13, 2003) .......................................................34

*Go-Video, Inc. v. Akai Elec. Co.*,
   885 F.2d 1406 (9th Cir. 1989) ..........................................................1, 5, 10, 12

*Grappone, Inc. v. Subaru of Am., Inc.*,
   403 F. Supp. 123 (D.N.H. 1975).....................................................24, 26, 28

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000).................................................................2, 5

*Health Care Equalization Comm. of Iowa Chiropractic Soc. v. Iowa Med. Soc.*,
   501 F. Supp. 970 (S.D. Iowa 1980).................................................................7

*Helicopter Helmet, LLC v. Gentex Corp.*,
   No. 1:17-CV-00497, 2018 WL 2023489 (D. Del. May 1, 2018) ...........................................14

*Henry v. Bush Lewis, PLLC*,
   2009 WL 10693534 (S.D. Tex. July 31, 2009).......................................................34

*Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*,
   244 F. Supp. 3d 705 (M.D. Tenn. 2017) ......................................................2, 6, 14

*Icon Indus. Controls Corp. v. Cimetrix, Inc.*,
   921 F. Supp. 375 (W.D. La. 1996);.................................................................6

*In re Auto. Refinishing Paint Antitrust Litig.*,
   358 F.3d 288 (3d Cir. 2004) ..........................................................1, 5, 12, 15

iv

*In re Blue Cross Blue Shield Antitrust Litig.*,
225 F. Supp. 3d 1269 (N.D. Ala. 2016) ..........................................................................*passim*

*In re Fed. Fountain, Inc.*,
165 F.3d 600 (8th Cir. 1999) ...................................................................................2, 17

*In re New Motor Vehicles Canadian Exp.*,
307 F. Supp. 2d 145 (D. Me. 2004) .......................................................................5, 6, 10

*In re Polyester Staple Antitrust Litig.*,
No. MDL 3:03CV1516, 2008 WL 906331 (W.D.N.C. Apr. 1, 2008) ....................................24

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc).........................................................................33

*Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
410 F. Supp. 2d 592 (E.D. Ky. 2006)...............................................................6, 13, 17, 18

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
725 F.3d 718 (7th Cir. 2013) ........................................................................................5

*Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*,
519 F.2d 634 (8th Cir. 1975) .......................................................................................22

*Leroy v. Great W. United Corp.*,
443 U.S. 173 (1979) ............................................................................................11, 17

*LG Elecs. Inc. v. Advance Creative Computer Corp.*,
131 F. Supp. 2d 804 (E.D. Va. 2001)..............................................................................34

*Lisak v. Mercantile Bancorp, Inc.*,
834 F.2d 668 (7th Cir. 1987) .......................................................................................13

*Lodsys, LLC v. Brother Int'l Corp.*,
2013 WL 1338767 (E.D. Tex. Jan. 14, 2013).....................................................................34

*Markson v. CRST Int'l, Inc.*,
No. 517CV01261, 2018 WL 6380748 (C.D. Cal. Oct. 22, 2018) .......................................2, 17

*MM Glob. Servs. Inc. v. Dow Chem. Co.*,
404 F. Supp. 2d 425 (D. Conn. 2005) .............................................................................20

*MNG 2005, Inc. v. Paymentech, LLC*,
2020 WL 6582660 (E.D. Mo. Nov. 9, 2020).................................................................6, 16

*Neirbo Co. v. Bethlehem Shipbuilding Corp.*,
308 U.S. 165 (1939) ...................................................................................................11

v

*Pecoraro v. Sky Ranch for Boys, Inc.*,
  340 F.3d 558 (8th Cir. 2003) ...................................................................................17

*Phone Directories Co., Inc. v. Contel Corp.*,
  786 F.Supp. 930 (D. Utah 1992)................................................................. 24, 26, 28

*Pohlmann v. Bil-Jax, Inc.*,
  176 F.3d 1110 (8th Cir. 1999) .................................................................................21

*S. Appalachian Biodiversity Project v. U.S. Forest Serv.*,
  162 F. Supp. 2d 1365 (N.D. Ga. 2001) ...................................................................35

*S.E.C. v. Carrillo*,
  115 F.3d 1540 (11th Cir. 1997) .................................................................................2

*Samsung Elecs. Co. v. Rambus, Inc.*,
  386 F. Supp. 2d 708 (E.D. Va. 2005)......................................................................34

*Sanzone v. Mercy Health*,
  954 F.3d 1031 (8th Cir. 2020) .................................................................................16

*Setco Enter. v. Robbins*,
  19 F.3d 1278 (8th Cir. 1994) ...................................................................... 17, 18, 19

*Sitzer v. Nat'l Ass'n of Realtors*,
  No. 4:19-CV-332-SRB, 2019 WL 3892873 (W.D. Mo. Aug. 19, 2019)....................... 6, 9, 18

*Steen v. Murray*,
  770 F.3d 698 (8th Cir. 2014) ...................................................................................18

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*,
  119 F.3d 688 (8th Cir. 1997) .............................................................................32, 35

*Thompson v. Titus Transp., LP*,
  No. 11-CV-1338-EFM-KMH, 2012 WL 5933075 (D. Kan. Nov. 27, 2012)................. 4, 23, 28

*Tiger Trash v. Browning-Ferris Indus., Inc.*,
  560 F.2d 818 (7th Cir. 1977) ......................................................................24, 26, 28

*Transocean Grp. Holdings Pty Ltd. v. S. Dakota Soybean Processors, LLC*,
  505 F. Supp. 2d 573 (D. Minn. 2007) ......................................................... 4, 23, 28

*United States v. Orshek*,
  164 F.2d 741 (8th Cir. 1947) .....................................................................................4

*United States v. Scophony Corp.*,
  333 U.S. 795 (1948) .........................................................................................1, 3, 7

vi

*United States v. Topco Assocs., Inc.*,
   405 U.S. 596 (1972) ...................................................................................................11

*Van Ornum v. Am. Med. Ass'n*,
   No. 14-CV-921, 2017 WL 9481020 (D. Utah Mar. 16, 2017) ............................6, 10

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
   2018 WL 4620636 (E.D. Tex. May 22, 2018) .......................................................33

*Wheeling–Pittsburgh Steel Corp. v. U.S. EPA*,
   1999 WL 111459 (E.D. Pa. 1999) ........................................................................34

*Willis Electric Co., Ltd. v. Polygroup Macau Ltd (BVI)*,
   437 F. Supp. 3d 693 (D. Minn. 2020) ...............................................................6, 15

*Woodke v. Dahm*,
   70 F.3d 983 (8th Cir. 1995) ..................................................................................18

*Zeavision, LLC v. Bausch & Lomb Inc.*,
   No. 4:21CV1487-HEA, 2022 WL 17092453 (E.D. Mo. Nov. 21, 2022) ............6, 16

*Zero Techs., LLC v. Clorox Co.*,
   2024 WL 343169 (E.D. Pa. Jan. 30, 2024) ...........................................................33

**Statutes**

15 U.S.C. § 22 .............................................................................................................4, 10

28 U.S.C. § 1391 ...............................................................................................................17

28 U.S.C. § 1404(a) ..........................................................................................................32

28 U.S.C. §§ 1406(a) and 1631 .......................................................................................32

**Other Authorities**

15 Charles Alan Wright et al., *Federal Practice & Procedure* § 3851 (3d ed. 2007)................34

1992 U.S.C.C.A.N. 3103, 3118) ......................................................................................13

1992 U.S.C.C.A.N. 3179, 3192; S. Rep. No. 102-22 (Mar. 12, 1991) ..........................13

2 Kintner, *Legislative History of the Federal Antitrust Laws and Related Statutes,* 1651–54
   (1978) ....................................................................................................................12

51 Cong. Rec. 9607–09, 63d Cong., 2d Sess. (July 1, 1914) ..........................................12

H.R. Conf. Rep. No. 102-978 (Oct. 2, 1992)...................................................................13

*Webster's Third International Dictionary* (unabr. 1963) ...........................................................10

## I.  Introduction

Plaintiffs' combined Suggestions in Opposition address ten Motions to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (Doc. 232, "**Complaint**" or "**Compl**.") that raise challenges to personal jurisdiction or venue.[1] These ten motions span hundreds of pages but boil down to a simple question: how should this Court interpret the Clayton Act and its nationwide service of process provision alongside the general federal venue statue, 28 U.S.C. § 1391? Under the proper legal standards adopted by the majority of courts, that question is easily answered: the Clayton Act provides personal jurisdiction over each Defendant, and venue in this District is proper under § 1391 and/or the Clayton Act.

Congress enacted Section 12 of the Clayton Act to replace "the older, 'hair-splitting legal technicalities' of the Sherman Act" with "broad, practically-founded venue tests." *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1410 (9th Cir. 1989) (quoting *United States v. Scophony Corp.*, 333 U.S. 795, 806–08 (1948). "The reason for the broad scope of the Clayton Act venue provisions was to give plaintiff the widest possible selection of venue for his benefit, to promote a 'private attorney general' type policy for exposing and policing combinations in restraint of trade." *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 295 (3d Cir. 2004).[2]

While courts take two approaches to evaluating when venue is proper for an antitrust claim, courts agree that the latter portion of Section 12, by providing for nationwide service of process, "confers personal jurisdiction in any federal district" so long as the defendant has "minimum contacts with the **United States**," which each Defendant certainly has. *Markson v. CRST Int'l, Inc.*,

---

[1] The relevant briefs or suggestions in support are: Doc. Nos. 299, 301, 305, 309, 317, 318, 331, 335, 354, and 357. All page numbers in this Opposition refer to the pagination automatically generated by CM/ECF.

[2] Unless otherwise noted, citations and quotations are omitted.

1

No. 517CV01261, 2018 WL 6380748, at *2 (C.D. Cal. Oct. 22, 2018) (emphasis added); *see also In re Fed. Fountain, Inc.*, 165 F.3d 600, 602 (8th Cir. 1999) (en banc) (noting "Congress has in fact quite frequently exercised its authority to furnish federal district courts with the power to exert personal jurisdiction nationwide").[3] Courts diverge, however, when it comes to deciding how antitrust plaintiffs may show venue: under the general venue statute (§ 1391),[4] or ***only*** under Section 12 of the Clayton Act, if the plaintiff relies on Section 12's nationwide service of process provisions to establish personal jurisdiction.[5]

As argued below in Section IV.A, this Court should join the majority approach and adopt the "independent" or broad view of the Clayton Act, thereby finding jurisdiction and venue proper as to each moving Defendant under the Clayton Act and § 1391. Doing so would resolve each jurisdictional and venue motion in Plaintiffs' favor and accord with the majority of the courts to analyze these issues. But even under the narrower, "integrated" approach to Section 12 of the Clayton Act followed by a minority of courts, and advocated by Defendants, venue is proper in this District over eight moving Defendants as argued in Sections IV.C.1–10, and their motions should be denied under either interpretation of Section 12.

---

[3] *See also S.E.C. v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997) ("Other circuits have uniformly held that [w]hen the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States.") (citing cases from First, Second, Fifth, Sixth, Seventh, Ninth, and Tenth Circuits construing similar provisions in the Securities Exchange Act, Clayton Act, RICO, ERISA, and the Foreign Sovereign Immunities Act).

[4] *E.g.*, *Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 244 F. Supp. 3d 705, 711 (M.D. Tenn. 2017) (following "the Third, Ninth, and Eleventh Circuits" in "conclud[ing] that the Clayton Act's grant of nationwide jurisdiction in antitrust cases, [Section 12], may be read in concert with the general civil venue statute's provision" because that reading "better reflects the underlying history and purposes of both the Clayton Act and the general venue statute") (footnote and citations omitted).

[5] *E.g.*, *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000).

Decades ago, the Supreme Court emphasized that Section 12 had ended the days when plaintiffs injured by "corporate violations of the antitrust laws" were forced to file suit in "distant forums for redress of wrongs done in the places of their business or residence" by a foreign corporation that sought a "retreat[] to its headquarters [to] defeat or delay the retribution due." *Scophony*, 333 U.S. at 808. Defendants' Motions ask this Court to undo the effect of Section 12 and return them to an era when corporations could compel plaintiffs to pursue them only on Defendants' home turf. But the moving Defendants are all large and sophisticated businesses; each year they participate in many thousands of real estate transactions involving ***multiple billions*** of dollars.[6] Their conduct and industry-wide conspiracy has caused enormous harm to Missouri residents, as shown by a jury verdict last year. *Burnett v. Nat'l Ass'n of Realtors, et al.*, No. 19-cv-332 (W.D. Mo. Oct. 31, 2023), Doc. 1294. The Clayton Act does not allow Defendants to slink back to their hometowns to defend their anticompetitive conduct, which has caused enormous harm in this District and throughout the country. The Court should deny Defendants' motions.

---

[6] *E.g.* Doc. 305-2 at 4 (Defendant William Raveis Real Estate Inc. admitting that, since 2020, it "has been involved in almost 100,000 transactions" and "the total value of those transactions is close to $100 billion," with Defendant Raveis and its agents having "earned many tens of millions of dollars in commissions").

3

## II.    Legal Standards

### A.  Venue challenges

"[I]n the Eighth Circuit, the defendant bears the burden of establishing improper venue." *Brigdon v. Slater*, 100 F. Supp. 2d 1162, 1164 (W.D. Mo. 2000) (citing *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947)); *Eskenazi v. Rural Cmty. Hosps. of Am., LLC*, No. 4:18-CV-00307-SRB, 2018 WL 6436266, at *3 (W.D. Mo. Dec. 7, 2018) (same). With respect to venue challenges, courts "must accept as true all allegations in the complaint, at least where they are not contradicted by a defendant's affidavit, and resolve all conflicts in favor of the plaintiff." *Catipovic v. Turley*, No. 11-3074-MWB, 2012 WL 2089552, at *16 (N.D. Iowa June 8, 2012). Further, if there is purportedly "conflicting" evidence, then a court must "give greater weight to the plaintiff's version of the jurisdictional facts and [ ] construe such facts in the light most favorable to the plaintiff" because a court "must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Thompson v. Titus Transp., LP*, No. 11-CV-1338-EFM-KMH, 2012 WL 5933075, at *3 (D. Kan. Nov. 27, 2012); *Transocean Grp. Holdings Pty Ltd. v. S. Dakota Soybean Processors, LLC*, 505 F. Supp. 2d 573, 575 (D. Minn. 2007) ("The Court must construe all facts in the light most favorable to the non-moving party, and take the facts alleged in the complaint as true.").

### B.  Section 12 of the Clayton Act

#### 1.  The independent and integrated approaches

In full, Section 12 of the Clayton Act, codified at 15 U.S.C. § 22, states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. Courts agree that the first clause, before the semi-colon, is a venue provision, and

that the second clause, following the semi-colon, "is a jurisdiction/service of process provision" that "permits worldwide service of process." *In re New Motor Vehicles Canadian Exp.*, 307 F. Supp. 2d 145, 148 (D. Me. 2004); *KM Enters., Inc. v. Glob. Traffic Techs.*, 725 F.3d 718, 730–31 (7th Cir. 2013) ("Personal jurisdiction is easy: due process requires only that [defendant] have sufficient minimum contacts with the United States as a whole," for "there is nothing unreasonable about requiring [a domestic] company to submit itself to the authority of the federal courts").

But courts take two approaches to interpreting how these clauses may be used — that is, independently, or in an integrated fashion. Under the "independent" approach, an antitrust plaintiff may rely on Section 12's service of process provision to establish personal jurisdiction while relying on the general venue statute (§ 1391) to establish venue. Under the "integrated" approach, an antitrust plaintiff must rely on Section 12's venue clause to use Section 12's service of process clause. The Eighth Circuit has not adopted or rejected either approach.

Nearly every moving Defendant claims there is a "majority" approach in the Federal Courts of Appeals favoring the "integrated" or narrow approach, *e.g.* Doc. 305-1 at 20, but that is incorrect.[7] In fact, the Circuits are evenly split, as three Circuits (the Third, Ninth, and Eleventh) have adopted the independent or broad approach,[8] while three others (the Second, Seventh, and D.C.) take the integrated or narrow approach.[9] And at the district court level in the remaining six

---

[7] Certain Defendants even wrongly contend that "[o]nly the Ninth Circuit" has adopted the "outlier" independent or broad interpretation of Section 12. *See* Doc. 309 at 19.

[8] *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 295–97 (3d Cir. 2004); *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1410 (9th Cir. 1989); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177–1181 (9th Cir. 2004); *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 855 (11th Cir. 1988).

[9] *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 427 (2d Cir. 2005); *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 725 (7th Cir. 2013).

5

circuits, a clear consensus supports the independent or broad approach, as numerous district courts in **four** Circuits — the First, Fifth, Sixth, and Tenth — have also adopted the "independent" approach and allowed plaintiffs to use the nationwide service of process clause of the Clayton Act combined with either the general venue statute or the Clayton Act's venue provision.[10]

That leaves only district courts in the Fourth and Eighth Circuits. As to the Fourth Circuit, no Defendant relies on any cases from courts in that Circuit taking a position on this issue. As to the Eighth Circuit, this Court previously considered the split but took no position, as venue was proper under either approach. *See Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-CV-332-SRB, 2019 WL 3892873, at *3 (W.D. Mo. Aug. 19, 2019).[11]

### 2. Standards for assessing when a defendant "transacts business" in a District under Section 12 of the Clayton Act

If the Court were to follow the minority "integrated" approach, then Plaintiffs would need to show that venue is established under the first clause of Section 12, which makes venue proper in any district in which the defendant "[1] inhabit[s]" or is "[2] found or [3] transacts business." 15 U.S.C. § 22. The third prong is the only standard at issue here.

In evaluating whether a corporation "transacts business" in a District, the Supreme Court

---

[10] *E.g.*, *In re New Motor Vehicles Canadian Exp.*, 307 F. Supp. 2d 145, 148 (D. Me. 2004); *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 410 F. Supp. 2d 592, 600 (E.D. Ky. 2006); *Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 244 F. Supp. 3d 705, 711 (M.D. Tenn. 2017); *Van Ornum v. Am. Med. Ass'n*, No. 14-CV-921, 2017 WL 9481020, at *5-6 (D. Utah Mar. 16, 2017), *report & recommendation adopted*, No. 14-CV-921, 2017 WL 4339653 (D. Utah Sept. 29, 2017); *Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375, 380 (W.D. La. 1996); *Ferko v. Nat'l Ass'n of Stock Car Racing*, No. 4:02CV50, 2002 WL 34477591, at *7 (E.D. Tex. Oct. 4, 2002).

[11] Certain Defendants rely on three later cases from district courts in this Circuit. *E.g.* Doc. 331 at 13 (citing *Willis Electric Co., Ltd. v. Polygroup Macau Ltd (BVI)*, 437 F. Supp. 3d 693 (D. Minn. 2020), *MNG 2005, Inc. v. Paymentech, LLC*, 2020 WL 6582660 (E.D. Mo. Nov. 9, 2020), and *Zeavision, LLC v. Bausch & Lomb Inc.*, No. 4:21CV1487-HEA, 2022 WL 17092453 (E.D. Mo. Nov. 21, 2022)). As argued in Section IV.A, those cases are inconclusive and unpersuasive.

6

has "held that the 'transacts business' language of § 12 was intended to make '[t]he practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' [ ] the test of venue." *Campos v. Ticketmaster Corp.*, 140 F.3d 1166, 1173 (8th Cir. 1998) (quoting *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948)). That test was meant to "'slough[] off'" the previous "highly technical distinctions" under the Sherman Act in favor of a more "practical and broader business conception." *Id.*

"Both purchases by a defendant in a district and sales by a defendant in a district are considered transactions of business for purposes of Section 12," and such business activity "need not be connected to the subject matter of the antitrust suit." *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1293 (N.D. Ala. 2016) ("***In re Blue Cross***"); *Black v. Acme Markets, Inc.*, 564 F.2d 681, 687 (5th Cir. 1977) (same). Further, a "corporation can transact business within a district even if all of the relevant transactions are interstate in character." *In re Blue Cross*, 225 F. Supp. 3d at 1293.

Applying these standards in *In re Blue Cross*, the court found Section 12 satisfied as to insurance entities that had as few as "four members" in the district and received roughly "$12,508 per year in premiums" from members in the district, while finding it "incredible for BCBS-MS to assert that its collection of approximately $190,000 in premiums per year from approximately 1,900 subscribers in this district constitutes *de minimis* business." *Id.* at 1298, 1296. And the Eighth Circuit has found annual sales figures ranging from $142,000 to $1.3 million sufficed to show transacting business in a district, while rejecting as "immaterial" the argument that such figures were less than 2% of the entities' national sales. *Brandt v. Renfield Importers, Ltd.*, 278 F.2d 904, 911 (8th Cir. 1960); *see also Health Care Equalization Comm. of Iowa Chiropractic Soc. v. Iowa Med. Soc.*, 501 F. Supp. 970, 980–83 (S.D. Iowa 1980) (finding venue proper as to the American

7

Medical Association ("AMA"), even though AMA had no office, employees, agents, or license to do business in Iowa, because 1.3% of AMA's members resided in Iowa, received publications and newsletters in Iowa, were "subject to its canon of ethics," and certain additional communications were made by AMA representatives to persons in Iowa and at meetings in Iowa).

## III.    Factual Background

Plaintiffs presume the Court is familiar with the factual background giving rise to their claims in this case given the Court's extensive experience in *Burnett*. This action involves a slightly different class period and names additional Defendants who — like the corporate defendants in *Burnett* — reaped the rich rewards of participating in the same anticompetitive agreement to require home sellers, as a condition to list a property for sale on a Multiple Listing Service ("MLS"), to make blanket unilateral offers of compensation to real estate brokers representing (and owing fiduciary duties to) buyers.

Plaintiffs here are four individuals, three of whom (Don Gibson, Lauren Criss, and John Meiners) listed and sold homes located in this District. Compl. ¶¶ 29–32. Two homes were listed on the Heartland MLS serving the Kansas City area, and the other home was listed on the Columbia Board of Realtors MLS serving mid-Missouri, and it was listed by a brokerage (Weichert Realtors–First Tier) affiliated with the Weichert Defendants. *Id.*

Plaintiffs also allege that each Defendant regularly receives revenue attributable to business transacted in this District from the brokerage operations of their respective subsidiaries, franchisees, affiliates, and/or transaction or referral counterparts that transact business in Missouri and in this District. *Id.* ¶ 21. Plaintiffs further allege that each Defendant transacted business in Missouri and in this District by purchasing goods or services from individuals or businesses located here, and by offering or participating in relocation or referral programs for employees of

8

corporations who either move into Missouri or move from Missouri to another state. *Id.* ¶ 22. Plaintiffs included detailed allegations about each individual Defendant. *E.g.*, Compl. ¶¶ 36–86 (Berkshire Hathaway Energy), ¶¶ 94–98 (Hanna Holdings, Inc.); *id.* ¶¶ 91–93, 107–115.

Plaintiffs' allegations show that each Defendant "has a significant presence in the nationwide market," and the Complaint has abundant allegations about the enormous harm inflicted on home sellers in this District through the inflated commissions that resulted from the conspiracy carried out by Defendants both on the MLSs in this District and nationwide. *E.g.*, Compl. ¶ 116, 117–132, 183–224; *see also* Doc. 1294, *Burnett v. Nat'l Ass'n of Realtors, et al.*, No. 19-cv-332 (W.D. Mo. Oct. 31, 2023) (jury verdict finding damages caused by four other large brokerages' participation in the same conspiracy amounted to $1,785,310,872).

## IV.    Argument

This Court considered how to interpret Section 12 of the Clayton Act in a prior case, though it concluded then that it "need not adopt an interpretation of Section 12 because this Court has personal jurisdiction over NAR in accordance with both the broad and narrow reading." *Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-CV-332-SRB, 2019 WL 3892873, at *3 (W.D. Mo. Aug. 19, 2019). Because the broad reading of the Clayton Act is most consistent with its statutory text and clear Congressional purpose, the Court should adopt the broad reading and find personal jurisdiction and venue proper as to every Defendant. Even if the Court adopts the minority narrow reading, then Plaintiffs still have shown venue is proper as to most Defendants.

### A.    The Court should adopt the broad or independent approach to the Clayton Act

This Court should adopt the independent or broad reading of the Clayton Act followed by a majority of courts for at least three reasons: (1) it is the sounder statutory construction; (2) it is more consistent with the liberalizing purpose of the Clayton Act and with federal antitrust policy;

9

and (3) it is consistent with how courts have treated similar provisions in other statutes.

**First**, the independent approach is superior as a matter of grammar and statutory construction. Consider the complete text of Section 12:

> <u>Any suit, action, or proceeding under the antitrust laws against a corporation</u> [(a) Venue:] may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and [(b) Jurisdiction] all process in <u>such cases</u> may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22 (underlining and bracketed language added). The dispute centers on the meaning of "such cases": does "such cases" refer to "any suit . . . under the antitrust laws against a corporation," or does it mean "any suit, action or proceeding . . . [brought in the proper district]." *Van Ornum v. Am. Med. Ass'n*, No. 2:14-CV-921-RJS-EJF, 2017 WL 9481020, at *6 (D. Utah Mar. 16, 2017), *report & rec. adopted*, No. 214CV00921RJSEJF, 2017 WL 4339653 (D. Utah Sept. 29, 2017) (citing *Go-Video*, 885 F.2d at 1412); *see also In re New Motor Vehicles Canadian Exp.*, 307 F. Supp. 2d 145, 148 (D. Me. 2004), (D. Me. Apr. 20, 2004) (discussing interpretations of "such cases").

Multiple courts, in multiple contexts, have concluded that "such" in these circumstances "is always presumed to refer back to that noun as it appeared previously in the text; 'such' does not modify other clauses or nouns," meaning that in Section 12 "'such cases' must therefore be 'any suit, action or proceeding under the antitrust laws against a corporation.'" *Go-Video*, 885 F.3d at 1412 (citing *Gen. Elec. Co. v. Bucyrus-Erie Co.*, 550 F. Supp. 1037, 1042 n.7 (S.D.N.Y. 1982), and *Webster's Third International Dictionary* (unabr. 1963)).[12] Nationwide service of process (and

---

[12] *See also Leasco Data Processing Equip. Corp. v. Maxwell,* 468 F.2d 1326, 1341 & n. 10 (2d Cir. 1972) (Friendly, J.), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) (noting section in Securities Exchange Act was modeled on Section 12 of the Clayton Act, and describing similar final clause as "speak[ing] expressly only to service of process" without regard to venue).

personal jurisdiction based on contacts with the United States) therefore applies to all suits under the antitrust laws against a corporation regardless of whether the Clayton Act's venue clause is met.

Supreme Court case law also supports interpreting the personal jurisdiction and venue clauses of Section 12 independently. As the Court has explained, "[t]he question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). For that reason, it is "not surprising" that "Congress did not link the requirements for venue and personal jurisdiction under Section 12" because it "has long been recognized that the question of a federal court's competence to exercise personal jurisdiction over a defendant is distinct from the question of whether venue is proper." *Action Embroidery*, 68 F.3d at 1178–79 (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939), and *Leroy*, 443 U.S. at 180).

As noted above, Congress frequently provides for nationwide service of process. *See supra* n. 3. The antitrust laws "are the Magna Carta of free enterprise," and they are "as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms." *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972). It defies common sense to conclude that Congress would nonetheless wish to make personal jurisdiction issues dependent on venue in the antitrust context, and thereby constrain plaintiffs from vindicating these "fundamental" values.

**Second**, and relatedly, the independent or broad approach better accords with the legislative history of Section 12 and the broad and liberalizing policies behind the antitrust laws and modern venue statutes. The legislative history of the Clayton Act demonstrates that the drafters

did not intend to couple its venue and jurisdiction/service of process provisions. Instead, the drafters "viewed questions of venue and service of process separately," and the text establishing "worldwide service of process in Section 12 'was added without debate or objection, with no indication that it was intended to relate, let alone be subject, to the [S]ection's venue provision.'" *Action Embroidery*, 368 F.3d at 1178 (quoting *Go-Video*, 885 F.2d at 1410–1412) (citing 51 Cong. Rec. 9607–09, 63d Cong., 2d Sess. (July 1, 1914), *reprinted in* 2 Kintner, *Legislative History of the Federal Antitrust Laws and Related Statutes,* 1651–54 (1978)).

In addition, the independent or broach approach "is clearly the one more consonant with the purpose of the Clayton Act and better comports with a section designed to expand the reach of the antitrust laws and make it easier for plaintiffs to sue for antitrust violations." *Go-Video*, 885 F.3d at 1413. Section 12 was intended "to give plaintiff[s] the widest possible selection of venue," and its "main contribution" to antitrust enforcement actions has been "its expansion of the bounds of venue." *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 295 (3d Cir. 2004). Considering the purpose behind Section 12, "it makes no sense to tie a district court's jurisdiction to the state in which [the district court] sits"—doing so "neither promotes the enforcement of the antitrust laws nor the management of litigation" and thus runs contrary to the entire purpose of Section 12. *Id.* "[B]y limiting the availability of the valued tool of worldwide service of process," the integrated view improperly seeks to "recast [the Clayton Act's] venue provision as a restrictive, rather than a broadening, provision and might prevent plaintiffs from pursuing legitimate claims under the antitrust laws." *Id.*

For similar reasons, the district court in *Kentucky Speedway* rejected the narrow or integrated approach, stating that "[i]f the narrow interpretation of the nationwide service of process provision were employed, antitrust venue would now be narrower than general venue, a result of

which would be contrary to the intent of" the Clayton Act. 410 F. Supp. 2d at 600. Section 12 "would be a nullity since, if the defendant is an 'inhabitant,' or 'may be found or transacts business' in a district, nationwide service of process would be unnecessary, since personal jurisdiction could be obtained under modern long-arm statutes." *Id.* Thus, "the narrow interpretation of section 12 constricts the power of antitrust enforcement and overlooks significant factors," such as "case law, congressional history, and public policy," and must be rejected. *Id.* at 601.

**Third**, courts considering similar statutes with service of process and venue provisions have overwhelmingly found them ***not*** to be "integrated." As observed in *Action Embroidery*, multiple circuits "have held in RICO cases that venue and personal jurisdiction analyses are distinct" under similar statutory language. 368 F.3d at 1179 (citing *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 627 (4th Cir. 1997), and *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987)). The Ninth Circuit recently adopted an independent reading of similar clauses in the Commodity Exchange Act ("CEA"). *See Cox v. CoinMarketCap OPCO, LLC*, --- F.4th ----, 2024 WL 3748982, at *4–9 (9th Cir. Aug. 12, 2024). That case also involved legislative history where "neither the House conference report nor the Senate committee report provides any indication that Congress intended the nationwide service of process provision to be dependent on the narrower venue provision" in the CEA. *Id.* at *8 (citing H.R. Conf. Rep. No. 102-978 (Oct. 2, 1992), 1992 U.S.C.C.A.N. 3179, 3192; S. Rep. No. 102-22 (Mar. 12, 1991), 1992 U.S.C.C.A.N. 3103, 3118).

Finally, Defendants' arguments against the independent or broad approach are unpersuasive. Their principal argument is wrongly labeling it the "minority" or "outlier" approach. *E.g.* Doc. 309 at 16 (Howard Hanna wrongly claiming "a lopsided circuit split" exists). Defendants are wrong. Indeed, every Defendant overlooked the Eleventh Circuit's decision in *Delong Equip.*

*Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843 (11th Cir. 1988). In that case, the Eleventh Circuit held that in "a federal antitrust case, venue may be established under" the Clayton Act "*or* the general federal venue statute." 840 F.3d at 855 (emphasis added). And it ruled that "[b]ecause we conclude that venue is established under the general federal venue statute, *we do not reach* the appropriateness of venue under § 12 of the Clayton Act." *Id.* at 855 & n.16 (emphasis added) (citing prior case holding that the general venue statute established venue "after the parties conceded that venue could not lie under the special antitrust venue statute"). Such language leaves no doubt that the Eleventh Circuit considered personal jurisdiction and venue independently, just as the Third and Ninth Circuits have and as district courts have in four more circuits. Moreover, multiple courts have recognized the 11th Circuit adopted the independent approach to Section 12 in *Delong*.[13] Defendants' claims that their view is the majority are simply wrong.

Defendants also ignore that even within their supposed "majority" view, the three circuits adopting the "integrated" view disagree on the rationale. Several Defendants claim the "plain language" of Section 12 supports their "integrated" approach, *e.g.* Doc. 309 at 17, Doc. 301 at 13, but the Seventh Circuit stated "the language of Section 12 [is] too ambiguous to rely on the 'plain meaning' rationale endorsed by the Second and D.C. Circuits." *KM Enters.*, 725 F.3d at 730. The "plain language" of Section 12 does not support Defendants; rather, the statutory construction by the majority of courts adopting the independent or broad approach better accords with the text and purposes of Section 12 and the general venue statute.

Some Defendants attempt to discount the Third Circuit's opinion in *In re Auto. Refinishing*

---

[13] *See Helicopter Helmet, LLC v. Gentex Corp.*, No. 1:17-CV-00497, 2018 WL 2023489, at *3 & n.42 (D. Del. May 1, 2018) ("In federal antitrust cases, however, venue may be established under the Clayton Act *or* under the general venue statute.") (emphasis in original, citing *Delong*), *aff'd*, 774 F. App'x 96 (3d Cir. 2019); *Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 244 F. Supp. 3d 705, 711 (M.D. Tenn. 2017) (citing *Delong*).

14

*Paint Antitrust Litig.*, 358 F.3d 288 (3d Cir. 2004), because that case involved "a foreign — not a domestic — corporation." *E.g.* Doc. 309 at 20 & n.4. That is a distinction without a difference. While true that the general venue statute has different provisions for foreign and domestic corporations, the key language at issue ("such cases") appears in the Clayton Act, which makes no such distinction. There is no principled reason in the plain language of the statute for interpreting the provision one way when dealing with a domestic corporation compared with a foreign corporation. Defendants are improperly seeking to read language into the statute, and the Court should give full weight to the Third Circuit's persuasive opinion in *In re Auto Refinishing Paint Antitrust Litigation.*

Defendants also largely ignore district court decisions. As discussed, at the district court level in the six circuits that have not taken a side in the circuit split, a clear consensus supports the independent or broad approach, as numerous district courts in **four** Circuits — the First, Fifth, Sixth, and Tenth — have also adopted the "independent" approach. *See supra* n.10. No Defendant meaningfully addresses any of these decisions.

Several Defendants seek to portray a purported consensus of courts within the Eighth Circuit adopting the narrow or integrated approach, *e.g.* Doc. 309 at 16, but those arguments should be rejected. After this Court's *Sitzer* opinion, the next decision in the Eighth Circuit to address this issue was *Willis Electric Co., Ltd. v. Polygroup Macau Ltd. (BVI)*, 437 F.Supp.3d 693 (D. Minn. 2020). In that case, the court denied a motion to dismiss for lack of personal jurisdiction because the defendant transacted business in the district. Thus, like this Court's decision in *Sitzer*, the *Willis Electric* court did not need to adopt an interpretation of Section 12 because the defendant transacted business in the district, so it would be subject to personal jurisdiction under either theory. To the extent the *Willis Electric* court expressed a preference for the narrow or integrated

15

interpretation of Section 12, that interpretation is dicta. *See Sanzone v. Mercy Health*, 954 F.3d 1031, 1039 (8th Cir. 2020) (defining "dicta" as "a judicial comment . . . that is unnecessary to the decision in the case and therefore not precedential").

Two cases from the Eastern District of Missouri have then cited *Willis Electric*, but they are equally irrelevant and unpersuasive.[14] In *MNG 2005*, the court outlined the issue in a footnote but did not decide it because "[p]laintiff ha[d] not addressed Section 12 or in any way tethered its jurisdictional claims to the Clayton Act." 2020 WL 6582660 at *3 n.3. That case is thus irrelevant. In *Zeavision*, the court adopted the narrow view with little explanation, relying on the footnote in *MNG 2005*, which, again, did not decide the issue because it was not raised by the plaintiff in *MNG 2005*. 2022 WL 17092453, at *3 (quoting *MNG 2005*). Moreover, the court in *Zeavision* dismissed the plaintiff's complaint because it alleged the defendant "merely transact[ed] business in Missouri" when it should have alleged the defendant transacted business "in ***this district***" to establish personal jurisdiction under the Clayton Act. *Zeavision*, at *3, *6 (emphasis added). In contrast, here Plaintiffs properly alleged that Defendants transact business in this District. *E.g.* Compl. ¶¶ 20, 21, 22. The opinions in *Willis Electric*, *MNG 2005*, and *Zeavision* do not lend persuasive support for joining the minority view that reads Section 12's clauses in a narrow, integrated fashion.

Thus, correcting Defendants' selective math, the Third, Ninth, and Eleventh Circuits have adopted the independent or broach approach, as have district courts have in four more circuits. Defendants' assertion that their view is the majority is simply wrong. The Court should adopt the independent approach to interpreting Section 12 of the Clayton Act embraced by the majority of

---

[14] *See MNG 2005, Inc. v. Paymentech, LLC*, 2020 WL 6582660 (E.D. Mo. Nov. 9, 2020), and *Zeavision, LLC v. Bausch & Lomb Inc.*, No. 4:21CV1487-HEA, 2022 WL 17092453 (E.D. Mo. Nov. 21, 2022).

16

courts — the Third, Ninth, and Eleventh Circuits, and by district courts in the First, Fifth, Sixth, and Tenth Circuits — and reject Defendants' attempts to ignore the plain language of the statute and the purpose animating it.

**B. Personal jurisdiction and venue are proper under the independent approach to the Clayton Act**

Under the independent approach, personal jurisdiction and venue are both plainly proper in this District. To start with personal jurisdiction — which is "typically decided in advance of venue," *Leroy*, 443 U.S. at 180 — that issue is simple. Section 12 contains a nationwide service of process clause, and because each Defendant "is a United States corporation that is operating in the United States and has had such minimum contacts with the United States," then "[e]xercising jurisdiction over [defendants] based on [their] contacts with the United States [is] consistent with due process." *Markson*, 2018 WL 6380748, at *2; *In re Fed. Fountain, Inc.*, 165 F.3d at 602 (Congress has "authority to furnish federal district courts with the power to exert personal jurisdiction nationwide").

Venue is proper under 28 U.S.C. § 1391 — the general venue statute — if this "is a 'judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.'" *Kentucky Speedway*, 410 F. Supp. 2d at 597–598 (quoting § 1391(b)(2) and finding venue proper because plaintiff was damaged in Kentucky by the conspiracy). Courts "do not ask which district among two or more potential forums is the 'best' venue, rather, [courts] ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003) (citing *Setco Enter. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994)) (reversing finding of improper venue); *see also Setco*, 19 F.3d at 1281 (observing "the records relating to [Plaintiff] Setco's claim are located in the Western District" in finding this District "was a proper venue for Setco's action").

17

Here, three of the four named Plaintiffs sold homes located in this District, where they were injured because the mandatory Challenged Rules (to which all Defendants adhered and enforced) required them to offer commission to buyer-brokers when listing their homes on the Heartland MLS or the Columbia Board of Realtors MLS, both in this District. As in *Setco*, the records relating to their claims are in this District. 19 F.3d at 1291. And these Plaintiffs were harmed in this District — they were overcharged commissions — due to Defendants' anticompetitive conduct. This is enough to establish venue, as this Court previously held in indistinguishable circumstances in *Burnett*. *Sitzer*, 2019 WL 3892873, at *3 (holding that "venue is proper in the Western District of Missouri under § 1391" because several MLSs located in this District were subject to the mandatory rule adopted and adhered to by NAR, as well as by defendant brokerages); *see also Kentucky Speedway*, 410 F. Supp. 2d at 597–598 (venue proper because plaintiff was damaged in Kentucky by the conspiracy)

Certain Defendants nonetheless contend that venue is improper under § 1391, arguing that courts "focus on the relevant activities of the defendant, rather than the plaintiff, in determining where a substantial part of the underlying events occurred." *E.g.*, Doc. 305-1 at 22–23; Doc. 318 at 17–18 (citing *Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995), and *Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014)). They argue their physical absence from Missouri and purported lack of conduct in Missouri mean venue does not exist even under § 1391. *Id.* Such arguments fail for several reasons.

To start, Defendants overstate these cases, as the Eighth Circuit in *Steen* emphasized that it did "not read *Woodke* as holding that a court in applying § 1391(b)(2) may **only** consider the defendant's allegedly wrongful activities." *Steen*, 770 F.3d at 703 (emphasis in original). In addition, neither case involved an antitrust conspiracy. Here, Plaintiffs plausibly allege that each

Defendant played crucial roles in adhering to and maintaining the long-running, nationwide conspiracy. These Defendants' actions in agreeing to and enforcing the Challenged Rules throughout the country were integral to prolonging the conspiracy nationwide, and necessarily *in this* District as well. *See In re Blue Cross*, 225 F. Supp. 3d at 1313 (finding "venue is appropriate in this district for the claims against BCBS–[Mississippi] under Section 1391(b)(2)" where the Alabama plaintiffs' claims "arose from the Blue Plans' collective refusal to compete outside of their allocated geographic service areas"). Defendants' actions contributed to causing the Challenged Rules to be in effect in this District, *and* Plaintiffs were harmed in and reside in this District. Plaintiffs' case for venue under § 1391 thus properly considers Defendants' conduct, the harm to Plaintiffs, and the location of their records. *See Setco*, 19 F.3d at 1281.

Under Defendants' constrained view of § 1391, antitrust plaintiffs could rarely if ever prosecute a nationwide class action against all conspirators — or at least, plaintiffs would be limited to a venue, if any, where all defendants' activities overlap. The illogic and injustice is particularly stark when considering an anticompetitive market allocation scheme: imagine ten defendants who agreed to carve up the country and steer clear of one another's turf. Under Defendants' view, each market-allocator would only be susceptible to proper venue in a court within their own separate ten turfs, as each would argue it had zero activities in any other region. Other courts have rejected similar arguments. *See In re Blue Cross*, 225 F. Supp. 3d at 1313. Defendants' interpretation of § 1391 would lead to absurd results and all but nullify effective private enforcement of the antitrust laws.

Accordingly, this Court has personal jurisdiction over Defendants under Section 12 of the Clayton Act, and venue is proper under the general venue statute. Defendants' motions can and should be denied on this ground alone, with no need to consider any other issues or arguments.

19

## C. Venue is also proper under the integrated approach to the Clayton Act because most moving Defendants transacts business in this District

Even if this Court were to adopt the integrated approach to interpreting Section 12, Plaintiffs' allegations and materials cited in this brief establish that most moving Defendants transact business in this District under the Clayton Act, thereby supporting both venue and personal jurisdiction. The standards for "transacting business" under the Clayton Act are broad and liberal.

For example, the court in *In re Blue Cross* rejected venue challenges asserted by nine Blue Cross & Blue Shield corporations from other states, as the court found each transacted sufficient business in the Northern District of Alabama. 225 F. Supp. 3d 1269, 1281–1299. Certain BCBS entities had as few as "four members" in the district, received roughly "$12,508 per year in premiums" from members in the district, and "paid an average of approximately $86,700 per year" to settle claims from providers in the district. *Id.* at 1298 (regarding BCBS-WY). As to another BCBS entity, the court found it "incredible for BCBS-MS to assert that its collection of approximately $190,000 in premiums per year from approximately 1,900 subscribers in this district constitutes *de minimis* business." *Id.* at 1296. Many other similar cases exist. *See, e.g. id.* at 1297 (noting prior case held a defendant "conducted substantial business in a district when it sold $25,000 of products in the district per year.").[15]

---

[15] In *Brandt v. Renfield Importers, Ltd.*, 278 F.2d 904, 911 (8th Cir. 1960), the court found venue proper over a defendant due to annual sales ranging from $142,000 to $1.3 million in the district. In *MM Glob. Servs. Inc. v. Dow Chem. Co.*, 404 F. Supp. 2d 425, 433 (D. Conn. 2005), the court found venue in Connecticut proper based on invoices showing a Singapore defendant had placed $900,000-plus in purchase orders from a Connecticut-based company, and its "marketing managers made trips" to Connecticut during a two-year period. And in *City of Philadelphia v. Morton Salt Co.*, 289 F. Supp. 723, 724–25 (E.D. Pa. 1968), the court found venue proper where the defendant had average yearly sales of $23,000 to the district over a three-year period, and it dismissed arguments that the defendant was not registered to do business in the state, "owned no real estate or other assets here, and ha[d] no office space or employees here," and that all orders had been "received by telephone in New York, processed there, and then shipped" to the district.

Sections IV.C.1 through 10 below address each moving Defendant in alphabetical order, and those sections make clear that venue is also proper as to eight moving Defendants even under the integrated or narrow view of Section 12. Plaintiffs alleged — and several moving Defendants admit — that Defendants have received revenue attributable to business transacted in this District from the brokerage operations of their respective subsidiaries, franchisees, affiliates, and/or transaction or referral counterparts that transact business in Missouri and in this District. *Compl.* ¶¶ 20–22, 32–116. Further, Plaintiffs alleged that Defendants operate and/or participate in referral networks, whereby Defendants refer clients to agents in Missouri for the purchase of property in Missouri and collect a referral fee from those transactions. *Id.* Defendants also receive referrals from Missouri agents for the purchase of property and send referral fees to the Missouri agents. These business transactions are sufficient to establish venue is proper under the Clayton Act.

Finally, Plaintiffs served jurisdictional discovery to which Defendants recently responded and objected, and Plaintiffs will continue to meet and confer with Defendants about deficiencies in their responses and may supplement this Opposition when Defendants make complete responses. Indeed, some Defendants' Responses stated that they will not even meet and confer with Plaintiffs absent an Order from this Court. Plaintiffs therefore respectfully request that the Court enter an Order directing each moving Defendant to participate in jurisdictional discovery and defer ruling until Plaintiffs have an opportunity to supplement this Opposition. *See Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1113 (8th Cir. 1999) ("Typically, in response to such a motion [challenging personal jurisdiction], the court will grant plaintiff reasonable discovery on the personal jurisdiction issue," which allows a ruling "on a full jurisdictional fact record, with the court making supporting findings of fact"); *see also 1st Tech., LLC v. Digital Gaming Sols. S.A.*, No. 4:08 CV 586 DDN, 2008 WL 4790347, at *6 (E.D. Mo. Oct. 31, 2008).

### 1. Baird & Warner Real Estate, Inc.

Baird & Warner objected to Plaintiffs' jurisdictional discovery and did not provide any substantive responses or productions. But its Suggestions in Support of its Motion show it "transacts business" in this District. Baird & Warner admits that it operates a nation-wide referral program and collects approximately $20,000 in yearly revenue from business transacted with Missouri agents. Doc. 331 at 12 n.8. This annual business is nearly identical to the $23,000 in average yearly sales which supported venue in *City of Philadelphia*, 289 F. Supp. at 724–25. Similarly, the court in *In re Blue Cross* found BCBS-WY sufficiently transacted business when it had as few as "four members" in the district, received roughly "$12,508 per year in premiums" from members in the district, and "paid an average of approximately $86,700 per year" to settle claims from providers in the district. 225 F. Supp. 3d. at 1298. Plaintiffs' allegations and Baird & Warner's admitted referral revenue satisfy the "transacts business" standard of Section 12.

### 2. Berkshire Hathaway Energy Company

Personal jurisdiction is proper over Berkshire Hathaway Energy because it exerts dominance and control over its wholly owned subsidiary, HomeServices of America, Inc. ("**HSA**"). The substantial business HSA transacts in this District is properly attributed to Berkshire Hathaway Energy: "Personal jurisdiction can be properly asserted over a corporation if another is acting as its alter ego, even if that alter ego is another corporation." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003). "[T]he fiction of corporate entity may be disregarded, where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation." *Id.* (quoting *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975)). Plaintiffs included extensive factual allegations showing that is the case here. *E.g.* Compl. ¶¶ 35–86.

22

Berkshire Hathaway Energy attempts to avoid this Court's jurisdiction by purporting to dispute the well pleaded facts alleged in Plaintiffs' complaint. *Compare* Doc 335 at 25-26 & Doc. 337 *with* Compl. ¶¶ 35–86. But its legal arguments, and a Declaration that largely ignores Plaintiffs' specific factual allegations about Berkshire Hathaway Energy's control over HSA, do not disprove the well pleaded facts in Plaintiffs' Complaint. *See Catipovic*, 2012 WL 2089552, at *16 (observing courts "must accept as true all allegations in the complaint, at least where they are not contradicted by a defendant's affidavit, ***and resolve all conflicts in favor of the plaintiff***") (emphasis added); *Thompson*, 2012 WL 5933075, at *3 (observing courts should "give greater weight to the plaintiff's version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff" because a court "must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party"); *Transocean Grp.*, 505 F. Supp. 2d at 575 (same).

Berkshire Hathaway Energy contends its subsidiaries have "fairly small" operations in this District, but admits its subsidiaries operate five entities with 24 locations and 192 employees here. Doc. 335 at 25. This leaves no doubt that Berkshire Hathaway Energy, through subsidiaries that it dominates and controls, "transacts business" in this District.

Nor should the Court credit Berkshire Hathaway Energy's efforts to distract from Plaintiffs' well-pleaded allegations about the control it exercises over HSA. Compl. ¶¶ 35–86. Berkshire Hathaway Energy cites *Campos v. Ticketmaster Corp.*, 140 F.3d 1166 (8th Cir. 1998), Doc. 335 at 24, but it fails to apply the standard from that case.

In *Campos*, the Eighth Circuit emphasized that "[d]ay-to-day control of the activities of the subsidiary is not required in order for a parent to be carrying on business of any substantial character within a judicial district," stating that it "is enough if the parent exercises continuing

supervision of and intervention in the subsidiaries' affairs, especially if the parent exercises its ability to influence major decisions of the subsidiary which lead or could lead to violations of the antitrust laws." 140 F.3d at 1173 (cleaned up) (citing *Grappone, Inc. v. Subaru of Am., Inc.*, 403 F. Supp. 123, 132–33 (D.N.H. 1975)). In *Grappone*, the court held that "corporate pyramiding cannot obfuscate the obvious," and the court permitted the plaintiff to show that a corporate parent "transacts business" in the district due to its "sufficient control over the essential business activities" of a subsidiary. 403 F. Supp. at 132–133; *see also In re Polyester Staple Antitrust Litig.*, No. MDL 3:03CV1516, 2008 WL 906331, at *9 (W.D.N.C. Apr. 1, 2008) ("[W]here the parent exercises continuing supervision and intervention in the subsidiaries' affairs, the subsidiaries' activities are attributable to the parent for Clayton Act venue purposes"). Likewise, another court has noted that "[t]he type of behavior complained of in antitrust actions is often facilitated by the holding company structure," therefore rejecting "the day-to-day control test" because it "is inconsistent with contemporary economic realities." *Phone Directories Co., Inc. v. Contel Corp.*, 786 F. Supp. 930, 939–940 (D. Utah 1992).

This Court should reject the efforts by Berkshire Hathaway Energy to reinterpret "the Clayton Act [in a way that] would enable large American corporations like itself to circumvent the antitrust laws by incorporating the many functional subparts of the parent into local operations." *Tiger Trash v. Browning-Ferris Indus., Inc.*, 560 F.2d 818, 824 (7th Cir. 1977) (noting corporate parent's history of "building a nationwide waste system primarily through means of acquiring existing businesses" and finding that "intercompany relations" of the parent and its subsidiary "are sufficient to satisfy venue under the Clayton Act"). Plaintiffs' allegations here show Berkshire Hathaway Energy followed a similar strategy. *See* Compl. ¶¶ 46, 59, 73–76, 81 (alleging Berkshire Hathaway Energy pursued plan via HSA to "purchase more real estate brokerages" and to grow

24

nationwide through "acquisition of additional brokerages," while relying heavily on intermingled services and resources).

Plaintiffs' detailed factual allegations easily meet the *Campos* standard for showing "sufficient control" of a subsidiary. For example, here Plaintiffs allege:

- Berkshire Hathaway Energy employed its brand name, recognizability, and good will to bolster HSA. Compl. ¶¶ 48-52; 65-69.

- Berkshire Hathaway Energy's CEO regularly attended meetings with HSA leadership and oversaw and controlled HSA's President and CEO Gino Blefari. Blefari regularly attended weekly meetings with Berkshire Hathaway Energy officials and monthly conferences with CEOs and executives of other Berkshire Hathaway Energy companies. These meetings and conferences regularly addressed strategy and the day-to-day operation of HSA. Compl. ¶¶ 57-60.

- Berkshire Hathaway Energy created a Code of Business Conduct that HSA was required to follow, and the Code encourages participation in trade associations. As a result, and at the direction of Berkshire Hathaway Energy's Code, HSA and its executives, employees, and agents participated in NAR and thereby adhered to and advanced the alleged conspiracy requiring the industry-wide use of the Challenged Rules. Compl. ¶¶ 61-64; 70.

- Berkshire Hathaway Energy and HSA jointly employ all of HSA's employees. Compl. ¶¶ 71-73.

- HSA's growth is a result of Berkshire Hathaway Energy's investment and efforts, and HSA intermingles its corporate profits with Berkshire Hathaway Energy, which left HSA undercapitalized and resulted in Berkshire Hathaway Energy retaining

25

hundreds of millions of ill-gotten profits from the unlawful and anticompetitive scheme it oversaw and used HSA to accomplish. Compl. ¶¶ 74-86.

Those well pleaded facts are sufficient at this stage to establish personal jurisdiction over Berkshire Hathaway Energy Co. under the Clayton Act. *E.g.*, *Tiger Trash*, 560 F.2d at 824; *Grappone* 403 F. Supp. at 132–133; *Phone Directories*, 786 F. Supp. at 939–940.

### 3. Crye-Leike, Inc.

After invoking the "three-day rule" and serving its responses after close of business yesterday, Crye-Leike objected to Plaintiffs' jurisdictional discovery and did not provide any substantive responses or productions. But its Suggestions in Support of its Motion show it "transacts business" in this District. Crye-Leike admits that it transacts substantial business in this district. Doc. 317 at 18. Crye-Leike represented 137 parties in residential sales in this District between April 24, 2020 and July 12, 2024, and it averaged over $145,000 in annual revenue from those transactions. *Id.* at 18; Doc. 317-3 at 3. Crye-Leike also operated an office in this District from October 2014 to September 2020, a period that overlaps with the alleged class period. Doc. 317-3 at 2. And Crye-Leike has eight real estate agents licensed to represent buyers and sellers in residential real estate transactions in Missouri, and it also admits that its many Arkansas agents regularly advertise properties in magazines and papers that have circulation in Missouri. Doc. 317-1 at 3; Doc. 317 at 8.

Plaintiffs also alleged that Crye-Leike receives revenue from referral business in this District. Crye-Leike attempts to sidestep that issue by claiming the allegation "is insufficient to establish personal jurisdiction under the Missouri long-arm statute." Doc. 317 at 9 n.2. But Plaintiffs do not attempt to establish personal jurisdiction via the Missouri long-arm statute; Plaintiffs allege the much broader and less demanding "transacts business" standard found in

Section 12 of the Clayton Act establishes venue and personal jurisdiction over Crye-Leike. Its silence on this issue suggests the business it transacts through referrals is substantial. Moreover, the Court must credit Plaintiffs' allegations regarding referral business in this District, which in addition to Crye-Leike's substantial $145,000 annual commission revenues, easily serves as a sufficient basis to show Crye-Leike transacts business in this District. *Catipovic*, 2012 WL 2089552, at *16 (courts "must accept as true all allegations in the complaint, at least where they are not contradicted by a defendant's affidavit, and resolve all conflicts in favor of the plaintiff").

Crye-Leike's traditional real estate brokerage business, which averaged over $145,000 in annual revenue from transactions in this District, along with its referral business in this District, show it transacts sufficient business in this district to establish personal jurisdiction under Section 12. This business well surpasses the business transacted in *In re BCBS*, where certain BCBS entities had as few as four members, received $12,508 per year in premiums, and paid an average of $86,700 per year to settle claims in the district. *In re BCBS*, 225 F. Supp. 3d at 1298. Such activities sufficed to satisfy Section 12 of the Clayton Act. *Id.* The business transacted by Crye-Leike similarly dwarfs that found in *City of Philadelphia*, which found a defendant's business in the district sufficient under the Clayton Act when it averaged yearly sales of just $23,000 in the district. 289 F. Supp. at 725-25.

#### 4. Hanna Holdings, Inc.

Hanna Holdings, Inc. ("Howard Hanna") objected to Plaintiffs' jurisdictional discovery and did not provide any substantive responses or productions. But its Suggestions in Support of its Motion show it "transacts business" in this District. Howard Hanna admits that it and its affiliates "have referral programs" and "participate in an international referral system that they advertise nationally," which would include Missouri. Doc. 309 at 22–23. Howard Hanna also admits that its

average yearly referral transaction volume in this District is approximately $22,000. Doc. 309 at 25. Its Chief Financial Officer describes four separate referral programs and admits that, since December 2019, those four referral sources have generated *35* referrals relating to this District and collectively provided "an annual average" of $21,857.16 in referral payments either to Howard Hanna's affiliates or to Missouri brokers. Doc. 309-1 at 5. Yet it contends these amounts — which it provides only as averages, perhaps disguising growth in recent years — are merely "sporadic" and "de minimis" and therefore insufficient under Section 12. Doc. 309 at 24–25. That is simply not correct, as many courts have held. *E.g.*, *In re Blue Cross*, 225 F. Supp. 3d at 1298 (BCBS-WY sufficiently transacted business when it had as few as "four members" in the district, received roughly "$12,508 per year in premiums" from members in the district, and "paid an average of approximately $86,700 per year" to settle claims from providers in the district").

Much like Berkshire Hathaway Energy, Howard Hanna attempts to avoid this Court's jurisdiction by disputing the well pleaded facts alleged in Plaintiffs' complaint, which show Howard Hanna extensively controls its affiliates. *Compare* Doc 309 at 19; Doc 309-1 at 2-5 *with* Compl. ¶¶ 94-97; *see also Tiger Trash*, 560 F.2d at 824; *Grappone* 403 F. Supp. at 132–133; *Phone Directories*, 786 F. Supp. at 939–940. But its legal arguments do not disprove the well pleaded facts in Plaintiffs' complaint *See Catipovic*, 2012 WL 2089552, at *16 (observing courts "must accept as true all allegations in the complaint, at least where they are not contradicted by a defendant's affidavit, ***and resolve all conflicts in favor of the plaintiff***") (emphasis added); *Thompson*, 2012 WL 5933075, at *3 (observing courts should "give greater weight to the plaintiff's version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff" because a court "must draw all reasonable inferences and resolve factual conflicts in favor of the non-;moving party"); *Transocean Grp.*, 505 F. Supp. 2d at 575 (same). These well

28

pleaded facts suffice to establish venue as to Howard Hanna under the Clayton Act.

### 5. John L. Scott, Inc. and John L. Scott Real Estate Affiliates, Inc.

Based on the Declaration from its Company Executive Officer, Doc. 318-1, the responses to jurisdictional discovery served by Defendants John L. Scott, Inc. and John L. Scott Real Estate Affiliates, Inc. (the "**John L. Scott Defendants**"), and public information readily available to Plaintiffs, it does not appear that the John L. Scott Defendants transact business in this District.

As argued above, however, personal jurisdiction and venue are both proper as to the John L. Scott Defendants under the integrated or broad approach to Section 12 of the Clayton Act, and their Motion should be denied.

### 6. K Company Realty, LLC d/b/a/ LoKation

Defendant K Company Realty, LLC d/b/a LoKation ("**LoKation**") claims it is "not in the business of referring buyers to agents in Missouri or vice versa," but then admits it has done just that. Doc. 299 at 13. LoKation has twice collected fees from the purchase of Missouri property, once in 2018 and again in 2022, though it claims those isolated transactions (occurring outside this District) are its only Missouri dealings. Doc. 299 at 21; Doc. 299-1 at 2–3. Nonetheless, based on its Motion and supporting Declaration, its responses to jurisdictional discovery, and public information readily available to Plaintiffs, it does not appear that the LoKation transacts sufficient business in this District even under the liberal Clayton Act standards.

As argued above, however, personal jurisdiction and venue are both proper as to LoKation under the integrated or broad approach to Section 12 of the Clayton Act, and its Motion should be denied.

### 7. Real Estate One, Inc.

Real Estate One objected to Plaintiffs' jurisdictional discovery and did not provide any

substantive responses or productions — and went so far as to say it would not meet and confer with Plaintiffs without an Order from this Court. By serving jurisdictional discovery, Plaintiffs provided Real Estate One, Inc. an opportunity to deny it transacts business here. It refused to take that opportunity, and its silence should be judged accordingly.

Moreover, Real Estate One's Suggestions in Support of its Motion show it "transacts business" in this District. Real Estate One, through its Chief Financial Officer, admits it operates a referral network through which it sends referral fees to agents in this District and receives referral fees from agents in this District. Doc 301-1 at 4. This network appears to operate nationwide. Since 2020, Real Estate One admits that it has collected nearly $10,000 in revenue from transactions involving real estate in the Western District of Missouri. Doc. 301-1 at 4. Its refusal to answer jurisdictional discovery suggests the actual numbers are far larger than it initially admitted. The Court should conclude on this record that Real Estate One transacts sufficient business in this District. *E.g. In re Blue Cross*, 225 F. Supp. 3d at 1298.

### 8. William L. Lyon & Associates, Inc.

William L. Lyon objected to Plaintiffs' jurisdictional discovery and did not provide any substantive responses or productions — and went so far as to say it would not meet and confer with Plaintiffs without an Order from this Court. By serving jurisdictional discovery, Plaintiffs provided William L. Lyon ample opportunity to deny it transacts business here. It refused to take that opportunity.

In its Suggestions in Support of its Motion, William L. Lyon wholly ignores Plaintiffs' allegations that it has received revenue from referral business in this District or paid referral fees to agents in this District. Doc. 357. Its failure to directly address and deny these allegations is telling and speaks volumes; if it could credibly deny receiving or paying any referral fees, it would

have done so. Notwithstanding William L. Lyon's failure to respond to these allegations in its Motion, the Court must credit these allegations, which serve as a sufficient basis to show Windermere transacts business in this District. *See Catipovic*, 2012 WL 2089552, at *16 (observing courts "must accept as true all allegations in the complaint, at least where they are not contradicted by a defendant's affidavit, and resolve all conflicts in favor of the plaintiff").

### 9. William Raveis Real Estate, Inc.

Defendant William Raveis Real Estate, Inc. ("**Raveis**") asserts it does not transact business in this District, but its materials supporting its Motion reveal that its referral business is significant, consisting of both multiple referral payments incoming from Missouri agents and of multiple outgoing referral payments to Missouri agents, with the total business amounting to nearly $15,000 in the last few years. *See* Doc. 305-2 at 3–4 (admitting receipt of $3,220 in referral payments from Missouri agents and payments of $11,593 in referral fees to Missouri agents). Moreover, it largely objected to Plaintiffs' jurisdictional discovery and refused to provide additional information about its business dealings in this District, remarkably contending that it would be incredibly burdensome to answer an interrogatory asking it identify contracts, invoices, and purchase orders relating to business counterparts in Missouri. Its refusal to provide straightforward answers to Plaintiffs' jurisdictional discovery suggests its initial claims about sparse business dealings in this District should be rejected. Based on its many thousands of dollars of referral fee business and its evasive discovery responses, the Court should conclude on this record that Defendant Raveis transacts sufficient business in this District. *E.g. In re Blue Cross*, 225 F. Supp. 3d at 1298.

### 10. Windermere Real Estate Services Company, Inc.

Windermere Real Estate Services Company, Inc. ("**Windermere**") objected to Plaintiffs' jurisdictional discovery and did not provide any substantive responses or productions – and went

so far as to say it would not meet and confer with Plaintiffs without an order from this Court. By serving jurisdictional discovery, Plaintiffs provided Windermere ample opportunity to deny it transacts business here. It refused to take that opportunity.

In its Suggestions in Support of its Motion, Windermere similarly failed to respond to Plaintiffs' allegations regarding its referral service and related business transacted in the District. Its failure to directly address and deny these allegations is telling and speaks volumes; if it could credibly deny receiving or paying any referral fees, it would have done so. These allegations must also be credited and are sufficient to show Windermere transacts business in this District. *See Catipovic*, 2012 WL 2089552, at *16.

### D. The Court should reject Howard Hanna's request to transfer this case to the Western District of Pennsylvania

The Court should reject Howard Hanna's request to transfer the case against it — but no other Defendants — to the Western District of Pennsylvania. Doc. 309 at 27.[16] First, jurisdiction and venue lie in this District as argued above, so 28 U.S.C. §§ 1406(a) and 1631 — two of the statutory provisions invoked by Howard Hanna — do not apply. *See* § 1406(a) (authorizing transfer when a case has been filed "in the wrong division or district"); § 1631 (authorizing transfer when "there is a want of jurisdiction").

Second, "federal courts give considerable deference to a plaintiff's choice of forum." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). And Howard Hanna, in its single-paragraph argument for transfer, Doc. 309 at 27, comes nowhere near carrying its "significant burden" under 28 U.S.C. § 1404(a) — the other provision cursorily cited by Howard

---

[16] One other Defendant — Crye-Leike — raises an even more conclusory, two-sentence request for transfer to the Western District of Tennessee. Doc. 317 at 21. The arguments above apply with equal or greater force and support rejecting Crye-Leike's requested transfer as well.

Hanna — to demonstrate that the Western District of Pennsylvania "is clearly more convenient" than this Court, a showing that is required to justify overriding Plaintiffs' choice of forum. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.10, 315 (5th Cir. 2008) (en banc); *Gen. Comm. of Adjustment GO-386 v. Burlington N. R.R.*, 895 F. Supp. 249, 252 (E.D. Mo. 1995) ("After weighing the relevant factors, unless the balance is strongly in favor of defendant, the plaintiff's choice of forum should be left undisturbed."); *accord Zero Techs., LLC v. Clorox Co.*, 2024 WL 343169, at *19 (E.D. Pa. Jan. 30, 2024).

Howard Hanna suggests that witnesses and records may be in Pennsylvania, Doc. 309 at 27, but Howard Hanna fails to identify a single witness or document. Howard Hanna also suggests that some "material events" occurred in Pennsylvania, but it is silent as to what these events allegedly are. Howard Hanna's conclusory and speculative arguments are insufficient to carry Howard Hanna's burden to justify transfer. *See Weatherford Tech. Holdings, LLC v. Tesco Corp.*, 2018 WL 4620636, at *6 (E.D. Tex. May 22, 2018) ("Tesco has not submitted any credible support for its position that relevant evidence is located in Houston other than mere speculation and attorney argument, which is insufficient to meet its burden in a motion to transfer."); *Diem LLC v. BigCommerce, Inc.*, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017) ("[A] failure to identify . . . with specificity . . . the documents and the location of the documents is a failure of the moving party to meet its burden on transfer.").

Even accepting Howard Hanna's unsupported assertions, they do not justify transfer. For example, "the convenience of *party* witnesses is given little weight" in the balance. *Weatherford*, 2018 WL 4620636, at *6. Courts thus repeatedly hold "that the inconvenience of the defendant and its witnesses alone" — which is all Howard Hanna asserts — does "not meet the 'substantial burden' of demonstrating a need to transfer and thereby 'veto the plaintiff's forum choice.'" *Henry*

*v. Bush Lewis, PLLC*, 2009 WL 10693534, at *2 (S.D. Tex. July 31, 2009) (quoting 15 Charles Alan Wright et al., *Federal Practice & Procedure* § 3851 at 210–11 (3d ed. 2007)).

On the other side of the ledger, ample reasons support keeping this case in this Court. This Court has "invested its limited time and resources" in a prior case involving the same restraints and "has become familiar with" the pertinent facts and legal issues, so "judicial economy strongly disfavors transfer." *Lodsys, LLC v. Brother Int'l Corp.*, 2013 WL 1338767, at *8 (E.D. Tex. Jan. 14, 2013); *see also LG Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 815 (E.D. Va. 2001) (explaining that, "[a]s a matter of judicial economy," familiarity "is highly desirable"); *accord Wheeling–Pittsburgh Steel Corp. v. U.S. EPA*, 1999 WL 111459, *4 (E.D. Pa. 1999). The Court's familiarity with the salient facts and legal issues is particularly important here because, as Howard Hanna has admitted elsewhere, "these are not run-of-the-mill cases and are not even run-of-the-mill antitrust cases." *See* MDL No. 3100, ECF No. 292, at 8.

Further, Howard Hanna is the only party seeking transfer to the Western District of Pennsylvania. Granting that request would thus lead to parallel, duplicative litigation there and in this Court, unnecessarily taxing the resources of the federal judiciary and risking potentially inconsistent rulings on common issues. *See Bhd. of Maint. of Way Emps. Div./IBT v. Union Pac. R.R. Co.*, 485 F. Supp. 3d 1048, 1062 (D. Neb. 2020) (explaining that "[j]udicial efficiency and consistency are significant factors" in deciding transfer motions, and "judicial economy is best served by litigation in front of one federal district judge rather than" multiple); *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005) ("Judicial economy and the avoidance of inconsistent judgments are prominent" considerations.); *GMAC/Residential Funding Corp. v. Platinum Co. of Real Est. & Fin. Servs.*, 2003 WL 1572007, at *2 (D. Minn. Mar. 13, 2003) ("Judicial economy is served by allowing related actions to proceed in the same district.").

Indeed, as the Supreme Court has stated, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [Section] 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL–585*, 364 U.S. 19, 26 (1960).

Granting Howard Hanna's request would also simply shift any inconvenience from Howard Hanna to Plaintiffs and impose an undue burden on Plaintiffs by unnecessarily forcing them to litigate in an additional forum. "[S]hifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue." *Terra Int'l*, 119 F.3d at 696–97. And Plaintiffs "should not be forced to unnecessarily litigate this case in two different courts." *S. Appalachian Biodiversity Project v. U.S. Forest Serv.*, 162 F. Supp. 2d 1365, 1367 (N.D. Ga. 2001) (denying transfer request).

In short, Howard Hanna has offered nothing more than unsupported speculation that it would be more convenient for this case to proceed in the Western District of Pennsylvania. Meanwhile, important considerations of judicial economy and efficiency plainly favor the case remaining in this Court. Accordingly, Howard Hanna has not carried its burden to show that transfer is warranted, and the Court should deny its request.

## V. Conclusion

For the reasons stated above, the Court should deny each of the moving Defendants' motions challenging personal jurisdiction and venue.

Dated: September 13, 2024

**BOULWARE LAW LLC**

 /s/ Jeremy M. Suhr
| | |
|---|---|
| Brandon J.B. Boulware | MO # 54150 |
| Jeremy M. Suhr | MO # 60075 |
| Andrew J. Ascher | MO # 74551 |

1600 Genessee Street, Suite 956A
Kansas City, MO 64102
Tele: (816) 492-2826
Fax: (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com
andrew@boulware-law.com

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Benjamin D. Brown (*pro hac vice*)
Robert A. Braun (*pro hac vice*)
Sabrina Merold (*pro hac vice*)
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
smerold@cohenmilstein.com

Daniel Silverman (*pro hac vice*)
769 Centre Street
Suite 207
Boston, MA 02130
Telephone: (617) 858-1990
dsilverman@cohenmilstein.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Rio S. Pierce (*pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710

**KETCHMARK AND MCCREIGHT P.C.**
| | |
|---|---|
| Michael Ketchmark | MO # 41018 |
| Scott McCreight | MO # 44002 |

11161 Overbrook Rd. Suite 210
Leawood, Kansas 66211
Tele: (913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

**WILLIAMS DIRKS DAMERON LLC**
| | |
|---|---|
| Michael A. Williams | MO # 47538 |
| Matthew L. Dameron | MO # 52093 |
| Eric L. Dirks | MO # 54921 |

1100 Main Street, Suite 2600
Kansas City, MO 64105
Tele: (816) 945 7110
Fax: (816) 945-7118
mwilliams@williamsdirks.com
matt@williamsdirks.com
dirks@williamsdirks.com

**SUSMAN GODFREY L.L.P.**
Marc M. Seltzer (*pro hac vice*)
Steven G. Sklaver (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Beatrice C. Franklin (*pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8330
bfranklin@susmangodfrey.com

Matthew R. Berry (*pro hac vice*)
Floyd G. Short (*pro hac vice*)
Alexander W. Aiken (*pro hac vice*)
401 Union St., Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
mberry@susmangodfrey.com
fshort@susmangodfrey.com
aaiken@susmangodfrey.com

Telephone: (510) 725-3000
riop@hbsslaw.com

Nathan Emmons (Mo. Bar. No. 70046)
Jeannie Evans (*pro hac vice*)
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
nathane@hbsslaw.com
jeannie@hbsslaw.com

**Attorneys for Plaintiffs and the Proposed Class**

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2024, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

/s/ Jeremy M. Suhr
**Attorney for Plaintiffs and the Proposed Class**