UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DON GIBSON, LAUREN CRISS, JOHN MEINERS, and DANIEL UMPA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ASSOCIATION OF REALTORS, et al.,<br><br>Defendants. | Civil Action No. 4:23-cv-00788-SRB<br><br>[Consolidated with 4:23-cv-00945-SRB] |

**REPLY SUGGESTIONS IN SUPPORT OF OBJECTION OF ROBERT FRIEDMAN TO THE PROPOSED NATIONAL CLASS ACTION SETTLEMENTS WITH DEFENDANTS COMPASS, INC., DOUGLAS ELLIMAN, INC., AND ENGEL & VÖLKERS NEW YORK REAL ESTATE LLC**

Robert Friedman ("Friedman") respectfully submits that, notwithstanding the nearly 80 pages of briefing submitted in support final approval, Plaintiffs and Defendants Compass, Inc. ("Compass"), Douglas Elliman, Inc. ("Douglas Elliman"), and Engel & Völkers New York Real Estate LLC ("E&V") (collectively, "Settling Defendants," and along with Plaintiffs, the "Settling Parties") have failed to meet what is ***their*** burden of "developing the record and proving that the settlement is fair, reasonable, and adequate" to Friedman and members of the REBNY Brooklyn Class.[1] *Galloway v. Kan. City Landsmen, LLC*, No. 4:11-1020-CV-W-DGK, 2013 WL 3336636, at *2 (W.D. Mo. July 2, 2013). There remains ***nothing*** in the record before this Court upon which to conclude that claims concerning the REBNY/RLS conspiracy set forth in *Friedman* arise out of the same factual predicate as those settled here in connection with the NAR conspiracy.

The Settling Parties also have not met their burden of demonstrating that the Settlement is

---

[1] Unless otherwise defined herein, capitalized terms have the definitions provided in the Objection of Robert Friedman to the Proposed National Class Action Settlements With Defendants Compass, Inc., Douglas Elliman, Inc., and Engel & Völkers New York Real Estate LLC (ECF No. 467, the "Friedman Objection").

1

fair, reasonable, and adequate to the REBNY Brooklyn Class. Among other things, there is no indication that members of the REBNY Brooklyn Class will receive proportionally greater settlement distributions based on (1) the greater injury to the REBNY Brooklyn Class as a result of enhanced anticompetitive effects of the REBNY/RLS conspiracy compared to other settlement class members residing outside of REBNY Brooklyn in areas controlled by NAR rules; and (2) the lack of value of nonmonetary practice changes to home sellers in REBNY Brooklyn where REBNY rules, unilaterally amended on January 1, 2024, will continue to bind the Settling Defendants when transacting on the RLS. Accordingly, the settlements with the Settling Defendants must be rejected.

## I. The Settling Parties Still Have Not Demonstrated the Existence of an Identical Factual Predicate

The Settling Parties misstate the legal standard underpinning the identical factual predicate rule and offer unsupported contentions of a common factual predicate between the NAR conspiracy at issue here and the REBNY/RLS conspiracy at issue in *Friedman*. The Settling Parties' arguments do not and cannot justify overruling the Friedman Objection and approving the settlements. There remains *zero* factual support in the record allowing the Court to conclude that there is a single, universal real estate commission conspiracy across NAR and REBNY. While the Settling Parties contend that the REBNY/RLS conspiracy involves *similar* types of conduct and *similar* effects as the NAR conspiracy, "superficial similarity" does not suffice. *Hesse v. Sprint Corp.*, 598 F.3d 581, 591 (9th Cir. 2010). Here, that means the same antitrust conspiracy, with a common agreement among the co-conspirators. *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 399-400 (S.D.N.Y. 2011). A common agreement across NAR and REBNY is simply not present here.

Plaintiffs' principal argument is that their modification of a single paragraph in their

2

Case 4:23-cv-00788-SRB   Document 525   Filed 10/30/24   Page 2 of 8

consolidated amended complaint—drafted in an apparent attempt to justify sweeping settlements then in the works that have nothing to do with the claims at issue in this litigation—results in Friedman's objection being an "open and shut" case. Pls.' Br. (ECF No. 521) at 34. Specifically, Plaintiffs point to their changed description of REBNY's RLS, the non-NAR listing service the heart of the conspiracy in *Friedman*, from an "MLS-like service" to an "MLS service" as bringing the claims of the REBNY Brooklyn Class into the scope of these settlements. *Id*. This change in semantics is not enough. Even if the RLS could be broadly defined as an "MLS," there is still no basis in the record upon which to conclude that the RLS was or is in any way influenced by NAR or its rules to constitute one of the non-NAR MLSs tied to the NAR conspiracy based on the specific criteria identified by Plaintiff's expert. *See* Friedman Objection at 10.

Plaintiffs also reference other allegations in the *Gibson* complaint purporting to link "brokers [operating] nationwide, including [on] non-Realtor MLSs like REBNY RLS" to NAR's rules and code of ethics, but they do not describe any single agreement or conspiracy. Pls.' Br. at 34. They do not explain how a REBNY member broker, who signs and agrees to abide exclusively by the REBNY/RLS rules and code of ethics when transacting on the RLS could possibly be bound by NAR rules. *Id*. at 34-35. As stated in the Friedman Objection, these allegations are simply unsupported, not to mention flatly contradicted by the unequivocal statements of the Settling Defendants, REBNY, and REBNY member brokers. *See* Friedman Objection at 2-11.[2]

Plaintiffs' additional assertion that "there are more than 17,000 NAR members in the New

---

[2] The Friedman Objection explains the irrelevance of Plaintiffs' reliance on certain purported expert opinions in a sealed document, the "8-10-22 Schulman Reply Rept.," to justify inclusion of REBNY/RLS within the settlement class here. *See* Friedman Objection at 11 n.8. Friedman's skepticism has proven to be justified. After Friedman's counsel was admitted *pro hac vice* in the parallel *Burnett* action on October 28, 2024, counsel was able to review the sealed document (*Burnett* ECF No. 922-3). Without revealing the particulars of any information in that document, there is *nothing* in Schulman's report that states: (1) that REBNY/RLS and NAR are part of the same conspiracy; (2) that REBNY-member brokers are required to follow NAR's rules in any way; (3) that REBNY member brokers are also members of NAR; or (4) that any NAR-member "Realtor®" operating on the RLS (to the extent that any such conduct exists) remains subject to NAR's rules and not those of the RLS, which the broker must agree to follow.

3

York City *area*" is a red herring. Pls.' Br. at 35 (emphasis added). There are undoubtedly NAR-member brokers operating throughout the entire New York City metropolitan area, which is the largest in the country. But Plaintiffs do not and cannot say that REBNY member brokers and agents operating in REBNY Brooklyn are also NAR members. *See* Friedman Objection at 9-11 (noting, *inter alia*, that Plaintiff's own expert concedes that there is no way to determine how many REBNY members are also NAR members). Nothing that Plaintiffs have said changes the analysis or the result; there is simply no factual connection between the REBNY/RLS conspiracy and the NAR conspiracy.[3] Again, superficial similarities do not count.

The Settling Defendants, despite the volume of their arguments, fare no better at undermining Friedman's objection. In fact, Douglas Elliman and E&V, **highlight their lack of connection to NAR** as among the "unique" and "strong defenses" possessed by the Settling Defendants; they say nothing of their connection to REBNY, which was strong. *See* Defs.' Br. (ECF No. 522) at 6-9 ("Douglas Elliman had very little, if any, role in NAR, and it was not involved in the promulgation or enforcement of the [NAR] rules at issue" and "none of the Engel & Völkers entities have ever played a role in NAR, and Plaintiffs have tried to tie it to the alleged conspiracy by only implausible and unfounded allegations about its control over independently owned and operated franchisees"); *Friedman Compl.* ¶ 51 (Douglas Elliman is one "of REBNY's dominant members"). Otherwise, the Settling Defendants present a substantially similar and erroneous view of the identical factual predicate rule and the factual support supporting their interpretation of that

---

[3] Similarly, the declaration of Plaintiffs' claims administrator (ECF No. 521-3 at ¶ 51) referencing claims submitted by residents of New York state (13,901) and Brooklyn (947) cannot support a conclusion that the settlements apply to the REBNY Brooklyn Class. New York claimants include *the entire state*, including upstate and suburban areas where real estate markets are, in fact, dominated by NAR MLSs. The reference to "Brooklyn" in fact highlights an issue raised in Friedman's Objection (ECF No. 467 at 14) and described in the *Friedman* complaint (ECF No. 467-2) ("*Friedman Compl.*"): that not all areas of Brooklyn are dominated by REBNY and, in fact, the other, non-REBNY areas of the Borough in which NAR operates have experienced *greater competition* in the pricing of buyer-broker commissions.

4

rule as the Plaintiffs—the focus remains limited to highlighting superficially similar conduct and effects rather than presenting any *facts* to establish a single agreement and conspiracy. *See* Defs.' Br. at 4-5, 13-25. The Settling Defendants' arguments therefore also fail.

The Settling Defendants do not dispute what is perhaps the most powerful argument establishing the separateness of the REBNY/RLS conspiracy: the Settling Defendants' own words, as well as those of their agents and their alleged co-conspirators. *See* Friedman Objection at 7-9 (statements addressing distinctions between REBNY/RLS and NAR and describing how REBNY members are not NAR members or influenced by NAR).[4] Rather, the Settling Defendants' curiously highlight the position of their then-adversaries—Plaintiffs here, who were attempting to gain control over all real estate commission litigation through the JPML transfer process, no matter the connection to the NAR conspiracy—which was that there was certain factual overlap between the various cases.[5] Defs.' Br. at 20-22.[6] However, this is, was, and remains entirely unsupported by the factual record before this Court. There is no indication of a single, common conspiracy to form the basis of the identical factual predicate necessary to support inclusion of REBNY/RLS transactions within the scope of these settlements.

---

[4] In attempting to distance themselves from their prior statements, the Settling Defendants erroneously rely on *New Hampshire v. Maine*, 532 U.S. 742, 750-52 (2001). *New Hampshire* does not require that a party have "successfully argue[d]" a point in order for estoppel to apply (Defs.' Br. at 21 n.10) and, in fact, makes clear that the doctrine of judicial estoppel does not involve "inflexible prerequisites or an exhaustive formula." 523 U.S. at 751. Indeed, the Supreme Court expressly held that, like here, a party's "clearly inconsistent" position in a later case can be a basis for judicial estoppel, as well as where, also like here, "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-51. There is thus no basis upon which this Court can or should ignore the Settling Defendants' prior statements concerning the separateness of the REBNY/RLS conspiracy from the NAR conspiracy.

[5] The Settling Defendants point to an argument made by Plaintiffs in the JPML, that the initial *March* complaint purportedly discusses "the essential role NAR has played in the conspiracy" and otherwise shares some factual overlap with the NAR litigation (Defs.' Br. at 20). Regardless of whether this is a correct characterization of the then-operative complaint in *March,* there is no such allegation in *Friedman* that NAR played any role in the REBNY/RLS conspiracy. In fact, *Friedman* expressly alleges that the conspiracies are wholly separate. *See, e.g.*, *Friedman* Compl. ¶ 86.

[6] The Settling Defendants' adoption of Plaintiffs' arguments in service of their desire for a quick and relatively cheap settlement here raises further questions about the possibility of a collusive settlement described in the Friedman Objection. *See* Friedman Objection at 14-15.

5

The Settling Defendants' reliance on authority purportedly supporting a broad definition of the "same factual predicate" to mean something different than the same antitrust conspiracy in this particular context (*see* Def. Br. at 16-20) is fundamentally misplaced. None of the Settling Defendants' cited cases support this proposition; none involve antitrust conspiracies and the cases uniformly involve a single, core set of conduct and/or participants in the alleged misconduct that are simply not present here. *See In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.*, 357 F.3d 800, 804 (8th Cir. 2004) (enforcing release that precluded claims against an insurer arising from its billing procedures, when claims against the same insurer concerning its billing practices were settled in a prior class action); *Albin v. Resort Sales Mo., Inc.*, No. 20-03004-CV-S-BP, 2021 WL 5107730, at *3-4 (W.D. Mo. May 21, 2021) (plaintiffs who opted out of a prior class action arising out purchases of Missouri timeshares could not "opt out of a class action in order to start another dueling class action" when there was no "meaningful distinction between . . . the alleged misconduct"); *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 765-66 (10th Cir. 2020) (class action settlement concerning underpayment of natural gas lease royalties barred later claims arising from the methods of miscalculating the same royalties); *In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 384 (8th Cir. 1994) (settlement of securities claims also released a third-party broker who sold the subject stock even though the broker was not a party to the first action because the release precluded new claims "in any way related to" the purchase of the same subject stock); *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1290 (11th Cir. 2007) (claims against same defendant involving the same type of insurance policy fell within the scope of a release because the policies were "identical"); *Wai Hoe Liew v. Cohen & Slamowitz, LLP*, 265 F. Supp. 3d 260, 275 (E.D.N.Y. 2017), as revised June 16, 2017 (cases alleged "the same core facts" when both alleged the same defendant and debt collection efforts at their core); *In re Literary Works in Elec.*

*Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011) (upheld the scope of a class release that included claims based on future infringing conduct that would give rise to future infringements); *Burgess v. Citigroup Inc.*, 624 F. App'x 6, 8-9 (2d Cir. 2015) (claims arose out of the identical factual predicate as the settled class when both cases were "expressly premised on the theory that Citigroup's stock price was inflated"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 272 F. App'x 9, 13 (2d Cir. 2008) (even though losses in the claims were based on reliance of different documents, the released claims "related to investment losses arising from Adelphia's fraudulent activity and were based on the same core of facts").

The Settling Parties also have not responded at all to a number of the specific factual distinctions between the REBNY/RLS conspiracy and the NAR conspiracy, each of which supports a finding that the conspiracies do not arise out of the identical factual predicate:

- The REBNY/RLS conspiracy required individual agents and brokers to agree in writing to abide by the REBNY Rules and Code of Ethics as a precondition to transacting on the RLS. Friedman Objection at 5-6.

- The REBNY/RLS rules include an express default requirement of a 50/50 split of broker commissions (paid by home sellers) between the buyer and seller broker, and a "Commission Reduction Rule" requiring that any reduction in the buyer broker commission or the overall broker commissions negotiated between a seller and the seller broker is taken entirely from the seller broker's pocket unless the buyer broker agrees to the reduction in writing; there is no analog under the NAR rules. *Id.* at 6.

- The REBNY rules have had demonstrably greater anticompetitive effects than the NAR rules. *Id.* at 6, 11 (describing CFA study and Plaintiffs' expert's conclusions).

### 2. The Settling Parties Have Not Met Their Burden of Showing that the Settlement is Fair, Reasonable, and Adequate to the REBNY Brooklyn Class

The Setting Parties, ignoring that it is ***their*** burden to demonstrate the fairness, reasonableness, and adequacy of the settlements, give short shrift—or no attention at all—to Friedman's significant Rule 23(e) objections. These include, among others:

- Plaintiffs lack Article III standing and antitrust standing to obtain releases from the Settling Defendants for claims that they do not and cannot possess and could not have asserted in

this Court (including against defendants not subject to personal jurisdiction in this District) concerning the separate REBNY/RLS conspiracy. Plaintiffs, who have the burden, have cited no authority supporting their ability to do so (*see* Pls.' Br. at 39).

- Plaintiffs have still not explained how, if at all, members of the REBNY Brooklyn Class will be compensated relative to other settlement class members due to the greater anticompetitive impacts of the REBNY/RLS conspiracy.

- Plaintiffs have still not explained how, if at all, members of the REBNY Brooklyn Class will be compensated to account for the fact that the purported practice changes touted as non-monetary relief do not and will not apply to transactions on the RLS which are and remain subject to the REBNY rules, which REBNY amended on January 1, 2024.

- Plaintiffs still have not explained how, if at all, the claims administrator will treat different claimants from Brooklyn New York based on whether the claimant sold a home in the highly anticompetitive REBNY/RLS market in other sections of the Borough where a more competitive market for broker commissions existed due to participation of NAR controlled or affiliated MLSs—claimants in the non-REBNY sections of Brooklyn suffered less harm than the REBNY Brooklyn Class.

## CONCLUSION

For the reasons stated herein, the Court should reject the settlements with Compass, Douglas Elliman, and E&V.

Dated: October 30, 2024

Respectfully submitted,

**BERMAN TABACCO**

*/s/ Steven J. Buttacavoli*

Daniel Goldman (*pro hac vice*)
**BIENERT KATZMAN LITRELL WILLIAMS LLP**
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Telephone: (973) 476-5485
dgoldman@bklwlaw.com

Steven J. Buttacavoli (*pro hac vice*)
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
sbuttacavoli@bermantabacco.com

Todd A. Seaver (*pro hac vice*)
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
tseaver@bermantabacco.com

*Counsel for Objector Robert Friedman*