**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**

DON GIBSON, LAUREN CRISS,　　　)
JOHN MEINERS, and DANIEL UMPA,　)
individually and on behalf of all others　)
similarly situated,　　　　　　　　)　　Case No. 4:23-cv-00788-SRB
　　　　　　　　　　　　　　　　　)　　[Consolidated with 4:23-cv-00945-SRB]
　　　　　　Plaintiffs,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
NATIONAL ASSOCIATION OF　　　　)
REALTORS, et al.　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　　　)

**PLAINTIFFS' OPPOSITION TO eXp AND WEICHERT'S**
**MOTION TO RECONSIDER DISCOVERY ORDER**

Defendants eXp World Holdings, Inc. and eXp Realty, LLC ("**eXp**") and Weichert Co. and Weichert Real Estate Affiliates, Inc. ("**Weichert**") (together, "**Defendants**") filed a Motion (Doc. 550) asking the Court to reconsider its November 14, 2024 Order (Doc. 543).[1] That Order denied eXp's request to stay this case and directed that Plaintiffs and these Defendants "shall engage in discovery regarding the timing and circumstances of [the proposed] *Hooper* settlement" to determine the facts around the reverse auction process Defendants used to reach their purported settlements with the *Hooper* Plaintiffs. Doc. 543 at 5.[2] Plaintiffs also served targeted discovery at these issues and are gathering responsive documents regarding their negotiations with eXp and Weichert.

The Court should reject Defendants' Motion to Reconsider because they have not met the high standard justifying reconsideration. Motions for reconsideration "serve a limited function: to

---

[1] On November 27, 2024, the Weichert Defendants filed a motion to join in the Motion for Reconsideration filed by eXp. *See* Doc. 554.
[2] All page number citations herein refer to the pagination automatically generated by CM/ECF.

1

correct manifest errors of law or fact or to present newly discovered evidence." *Robinson v. Midwest Div.-RMC, LLC*, No. 4:19-CV-0934-SRB, 2020 WL 3317614, at *1 (W.D. Mo. June 18, 2020) (quoting *Disc. Tobacco Warehouse, Inc. v. Briggs Tobacco & Specialty Co.*, No. 3:09-CV-05078-DGK, 2010 WL 3522476, at *1 (W.D. Mo. Sept. 2, 2010)). Defendants fall short of this standard for at least three reasons.

**First**, Defendants' Motion identifies no "manifest error of law." Defendants claim the Court committed a manifest error of law by "failing to consider the standards applicable to whether and when an objector to a class settlement is entitled to discovery into the settling parties' confidential settlement negotiations." Doc. 550 at 10. Defendants do nothing to explain why that standard would apply here, and the cases they cite to support applying that standard are inapposite.

By filing motions to stay this action (Docs. 489, 536), Defendants injected the reverse auction issue into this proceeding. In opposing their requested stays, Plaintiffs presented compelling reasons and independent evidence showing Defendants may have engaged in reverse auctions (Docs. 513, 549), and the Court properly exercised its broad discretion in discovery matters to order discovery to determine whether a reverse auction took place.[3]

Such action is not premature or outside the scope of the issues before this Court. This lawsuit against Defendants is not stayed, and discovery is ongoing. Defendants also ignore that this Court entered an Order appointing Plaintiffs' counsel as the "Interim Co-Lead Class Counsel" who are to "act on behalf of the putative class" and who "shall also be responsible for any settlement negotiations with Defendants that would propose to resolve claims on a class-wide or

---

[3] "District courts possess the inherent authority to manage discovery in civil suits[.]" *Garrett v. Cassity*, No. 4:09CV01252 ERW, 2011 WL 2689359, at *2 (E.D. Mo. July 11, 2011). "Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation[.]" *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

aggregate basis." Doc. 180 (May 14, 2024 Order) at 2.

Moreover, whether reverse auctions in fact took place is central to whether this Court ultimately determines that a stay of Plaintiffs' claims against eXp and Weichert is appropriate. As the Court observed in its Order, "[g]iven this Court's 'broad discretion to stay proceedings when appropriate to control [its] docket,' it is well within the Court's power to continue this case and allow further discovery into whether a reverse auction occurred in the *Hooper* settlement." Doc. 543 (quoting *Gould v. Farmers Ins. Exch.*, 326 F.R.D. 530, 531 (E.D. Mo. 2018)). The Court's Order squarely addressed the relief that Defendants sought.

None of the cases Defendants rely on support their claim that this Court lacks authority to order and review settlement related discovery *in camera*. Doc. 550 at 11-12. Defendants contend that discovery into settlement negotiations is only proper in the court reviewing the adequacy of the settlement, but *Caves v. Walgreen Co.*, No. 2:18-cv-2910, 2021 WL 1193854 (E.D. Cal. Mar. 30, 2021), does not support this proposition. In the quoted language, the court simply discussed the standard for whether to permit discovery by class members who object to a class action settlement. *Id.* at *1. The quoted language from *Glover v. Connecticut General Life Insurance Company*, No. 3:16-cv-00827-MPS, 2024 WL 4606388, at *2 (D. Conn. Oct. 29, 2024), similarly involved whether objectors to a settlement agreement should be permitted to conduct discovery. *In re Flat Glass Antitrust Litigation*, MDL No. 1942, 2013 WL 1703864, at *1 (W.D. Pa. Apr. 19, 2013), is also inapposite, as it involved the unrelated issue of whether to permit discovery of a settlement agreement when a party argued the settlement amount was relevant as evidence of an offset to damages against the remaining Defendants. Defendants entirely ignore this Court's broad discretion in discovery matters, and they provide no support for claiming this Court committed a manifest error of law when it properly exercised its discretion and ordered discovery.

3

**Second**, in claiming the Court committed a manifest error of fact, Defendants ignore Plaintiffs' substantiated and credible allegations that eXp and Weichert engaged in reverse auctions when reaching their proposed settlements with the *Hooper* Plaintiffs. In their oppositions to eXp's and Weichert's motions to stay (Docs. 513, 549), Plaintiffs alleged — among other facts — that after Defendants rejected Plaintiffs' proposed terms for settling this case, Defendants pursued and announced a settlement with the Plaintiffs in the *Hooper* case, which had generally been stayed pending this litigation and where virtually no litigation had occurred. Plaintiffs also raised concerns about the extent of recovery to the class. Particularly based on publicly available information about eXp's financial condition, the settlement in the *Hooper* case did not provide adequate and fair value to the class in light of eXp's financial resources. Doc. 513 at 2-3. In fact, counsel for Plaintiffs in the *Hooper* case stated that they did not base their settlement with eXp on eXp's financial ability to pay. *Id.* at 3.

Courts allow discovery into settlement negotiations when plaintiffs have "presented the Court with several facts evidencing that a 'reverse auction' may have occurred[.]" *Borup v. CJS Solutions Group, LLC*, No. CV 18-1647 (PAM/DTS), 2019 WL 2137369, at *1 (D. Minn. May 16, 2019). Plaintiffs here presented numerous facts suggesting a reverse auction occurred. Plaintiffs showed the proposed *Hooper* settlement arose only after negotiations between Plaintiffs and Defendants broke down. Doc. 513 at 2-4; Doc. 549 at 2. Plaintiffs also showed the settlement amount for eXp is inadequate in light of its financial situation. Doc. 513 at 3. This evidence shows Defendants settled the later-filed *Hooper* case on the cheap by cherry picking "the attorneys willing to accept the lowest class recovery[.]" *Borup*, 2019 WL 2137369, at *1.

Rather than confront Plaintiffs' allegations showing Defendants cherrypicked attorneys willing to accept the lowest class recovery, Defendants assert they should not be subject to

discovery because Plaintiffs have not proved their settlement with attorneys willing to accept the lowest class recovery was "in exchange for enhanced fees." Doc. 550 at 16-17. Defendants seek to impose a checklist of criteria for showing a reverse auction occurred. But the law does not support such a requirement as a condition for obtaining discovery. Plaintiffs need not show every fact evidencing a reverse auction in fact occurred; they need only show "***several*** facts evidencing that a 'reverse auction' ***may*** have occurred[.]" *Borup*, 2019 WL 2137369, at *1 (emphases added); *see also* Manual on Complex Litig. (4th) § 21.61 (courts should be skeptical of the adequacy and fairness of a proposed settlement arrived at via a reverse auction where a "defendant selects among attorneys for competing classes and negotiates an agreement with the attorneys who are willing to accept the lowest class recovery (typically in exchange for generous attorney fees)"); *Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987) (Discovery into settlement negotiations "is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive[.]").

Defendants also attempt to frame the standard for permitting settlement related discovery as a "higher showing of discoverability." Doc. 550 at 14. But this "higher showing" is no different than the standard discussed above (i.e. facts suggesting a reverse auction *may* have occurred). Plaintiffs have pointed to facts that easily meet this standard. Those facts show that Defendants engaged in settlement discussions with at least two different Plaintiff groups and then opted to strike a deal with the attorneys willing to agree to the best deal for the Defendant—and the *lowest* recovery for the class. That is the very definition of a reverse auction.

Moreover, a plaintiff could never show any settlement was "in exchange for enhanced fees" under Defendants' argument. As Defendants acknowledge, a defendant "does not control the

amount of attorneys' fees that ultimately will be granted" by a court. Doc. 550 at 17. Demanding that Plaintiffs put forth evidence showing Defendants settled "in exchange for enhanced fees" misconstrues the "in exchange for enhanced fees" language on which Defendants rely. Here, the attorneys for the *Hooper* Plaintiffs will presumably seek fees "in exchange for" having done almost no work in a largely stayed case — beyond their actions in undercutting the settlement negotiations that occurred in this case (to the detriment of the class). And much of the caselaw does not even use the "in exchange for enhanced fees" language when defining a reverse auction. *E.g.*, *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002) ("The ineffectual lawyers are happy to sell out a class they anyway can't do much for in exchange for generous attorneys' fees, and the defendants are happy to pay generous attorneys' fees since all they care about is the bottom line[.]"). As a leading treatise explains, "the hitch that enables a reverse auction is that, generally speaking, only one set of plaintiffs' attorneys—those that settle—will get any fees[.]" 4 Newberg and Rubenstein on Class Actions § 13:60 (6th ed. 2024). The mere fact that fees remain undetermined at this juncture does not suggest the Defendants did not find ineffectual lawyers happy to sell out the class in exchange for generous attorneys' fees. Plaintiffs met their burden to show facts suggesting collusion and that Defendants may have employed a reverse auction with the *Hooper* Plaintiffs.

**Third**, the discovery ordered here is neither precluded by claims of confidentiality, nor is it otherwise inconsistent with the Court's rules. The Eighth Circuit has not recognized a settlement privilege or federal mediation privilege. *Zurich Am. Ins. Co. v. Fluor Corp.*, No. 4:16CV00429 ERW, 2018 WL 11433821, at *3 (E.D. Mo. Mar. 9, 2018) (citing *ABT Sys., LLC v. Emerson Elec. Co.*, No. 4:11CV00374 AGF, 2012 WL 6594996 at *2 (E.D. Mo. Dec. 18, 2012)); *E.E.O.C. v. Hibbing Taconite Co.*, 266 F.R.D. 260, 271 (D. Minn. 2009) ("[T]he Federal mediation privilege

has not been recognized by . . . the Eight Circuit[.]"); *see also In re Lake Lotawana Cmty. Improvement Dist.*, 563 B.R. 909, 923 (Bankr. W.D. Mo. 2016) ("Of the Circuits that have addressed the issue, only the Sixth Circuit has adopted a settlement privilege.").

Nor do the Local Rules preclude the ordered discovery. In arguing that this Court should reconsider its Order because Plaintiffs had not served formal discovery requests, eXp failed to disclose to the Court that Plaintiffs had ***already*** served discovery requests on eXp a week before it filed this Motion. *See* Doc. 545. Indeed, Plaintiffs promptly served those requests on both Defendants shortly after this Court's November 14, 2024 Order. So Defendants' complaints that this Court erred in ordering the production of documents in the absence of formal discovery requests are not only wrong, they are also moot. Moreover, Defendants cite no authority suggesting this Court's Order nullifies Defendants' obligation to respond to Plaintiffs' formal discovery requests. Defendants cite the Local Rules regarding the process for raising discovery disputes ahead of a teleconference hearing, but those Local Rules do not curtail this Court's inherent authority to specify the timing and manner of discovery. And if disputes arise regarding specific requests, the parties will follow the Local Rules in presenting any such disputes to the Court. Thus, neither the Local Rules nor the Court's Scheduling Order support reconsidering the Court's Order.

In short, the bar for granting reconsideration is high, and Defendants come nowhere near meeting those demanding standards. The Court did not commit a manifest error of fact or law, and as this Court already found, Plaintiffs made the required showing that Defendants may have engaged in a reverse auction, entitling Plaintiffs to discovery about the circumstances surrounding the *Hooper* settlements. Defendants' Motion to Reconsider (Docs. 550, 554) should be denied.

Dated: December 10, 2024

Respectfully submitted by:

**BOULWARE LAW LLC**

 /s/ Jeremy M. Suhr
Brandon J.B. Boulware          MO # 54150
Jeremy M. Suhr                      MO # 60075
1600 Genessee Street, Suite 956A
Kansas City, MO 64102
Tele:   (816) 492-2826
Fax:    (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Benjamin D. Brown (*pro hac vice*)
Robert A. Braun (*pro hac vice*)
Sabrina Merold (*pro hac vice*)
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
smerold@cohenmilstein.com

Daniel Silverman (*pro hac vice*)
769 Centre Street, Suite 207
Boston, MA 02130
Telephone: (617) 858-1990
dsilverman@cohenmilstein.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Rio S. Pierce (*pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
riop@hbsslaw.com

**KETCHMARK AND MCCREIGHT P.C.**
Michael Ketchmark           MO # 41018
Scott McCreight                MO # 44002
11161 Overbrook Rd. Suite 210
Leawood, Kansas 66211
Tele:   (913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

**WILLIAMS DIRKS DAMERON LLC**
Michael A. Williams          MO # 47538
Eric L. Dirks                      MO # 54921
1100 Main Street, Suite 2600
Kansas City, MO 64105
Tele: (816) 945 7110
Fax: (816) 945-7118
mwilliams@williamsdirks.com
dirks@williamsdirks.com

**SUSMAN GODFREY L.L.P.**
Marc M. Seltzer (*pro hac vice*)
Steven G. Sklaver (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Beatrice C. Franklin (*pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8330
bfranklin@susmangodfrey.com

Matthew R. Berry (*pro hac vice*)
Floyd G. Short (*pro hac vice*)
Alexander W. Aiken (*pro hac vice*)
401 Union St., Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
mberry@susmangodfrey.com
fshort@susmangodfrey.com
aaiken@susmangodfrey.com

8

Nathan Emmons (Mo. Bar. No. 70046)
Jeannie Evans (*pro hac vice*)
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
nathane@hbsslaw.com
jeannie@hbsslaw.com

**Attorneys for Plaintiffs and the Class**

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of December 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record for this case.

/s/ Jeremy M. Suhr
*Attorney for Plaintiffs*