IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DON GIBSON, LAUREN CRISS, JOHN MEINERS, and DANIEL UMPA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, et al.,<br><br>Defendants. | Case No. 4:23-cv-00788-SRB |

## ORDER

Before the Court is Defendant William Raveis Real Estate, Inc.'s Motion to Strike Class Action Allegations (Doc. #306), Defendant Crye-Leike Inc.'s 12(f) Motion to Strike Class Action Allegations as to Class Members who Waived the Right to Participate in a Class Action (Doc. #319), Defendant eXp World Holdings, Inc. and eXp Realty LLC's Rule 12(f) Motion to Strike Class Allegations as to Arbitrating Class Members (Doc. #323), and Defendant Berkshire Hathaway Energy Company's Motion to Stike Class Allegations as to Arbitrating Class Members under Fed. R. Civ. P. 12(f) and to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) (Doc. #343). For the reasons below, the motions are DENIED.

I. BACKGROUND

The facts of this case are discussed in prior Orders and in the parties' briefs and will not be repeated herein. This Order assumes familiarity with the facts and law applicable to the claims and defenses asserted in this case. Only those facts and issues necessary to resolve the pending motions are discussed below. Plaintiffs are home sellers who listed homes on Multiple

Listing Services ("MLS") in the United States and allege that several national real estate brokerages, brokerage owners, and franchisors entered into a conspiracy to implement, follow, and enforce anticompetitive restraints that caused home sellers to pay inflated commissions on the sale of their homes through a series of parallel and overlapping rules, specifically the NAR MLS Rules, the Non-NAR MLS Rules, and the NAR Code of Ethics Rules (the "Challenged Rules").

Plaintiffs Don Gibson, Lauren Criss, John Meiners, and Daniel Umpa ("Plaintiffs") most recently filed a consolidated amended class action complaint ("CAF") on June 11, 2024. (Doc. #232). Plaintiff's CAF alleges one count against Defendants: violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

Defendants Berkshire Hathaway Energy, Inc. ("BHE"), Crye-Leike, Inc. ("Crye-Leike"), eXp Holdings, Inc. and eXp Realty, LLC (collectively "eXp"), and William Raveis Real Estate, Inc. ("Raveis") (collectively "Defendants") now move to strike portions of Plaintiffs' class definition under Federal Rule of Civil Procedure Rule 12(f) on the basis that some class members signed listing agreements that contained an arbitration provision or class-action waiver. Plaintiffs oppose the motions. The parties' arguments are addressed below.

## II. LEGAL STANDARD

Under Rule 12(f), a district court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Eighth Circuit has recognized that a district court may strike class-action allegations "at the pleading stage" if "it is apparent from the pleadings that the class cannot be certified." *Donelson v. Ameriprise Fin. Servs.*, Inc., 999 F.3d 1080, 1092 (8th Cir. 2021). Generally, "[s]triking a party's pleading . . . is an extreme and disfavored measure." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917

(8th Cir. 2007). Consequently, motions to strike are rarely granted. *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

## III. DISCUSSION

Defendants seek to strike any individual who agreed to arbitrate their dispute or waive their right to proceed via class action litigation. (Doc. #306, p. 1, Doc. #319, p. 2, Doc. #323, p. 1, Doc. #343, p. 2.)

### A. Threshold Questions of Arbitrability are Determined by the Court

Collectively, Defendants argue that the listing agreements signed between the sellers and brokers require an arbitrator, rather than the Court, to decide all threshold questions of arbitrability such as whether the instant claims fall within the scope of the arbitration provision and whether Defendants can enforce provisions of the listing agreement. Specifically, Defendants point to the incorporation by reference of the American Arbitration Association Rules for Commercial Arbitration (the "AAA rules") within the licensing agreements as an indication of parties' intent to require an arbitrator. (Doc. #306-1, p. 13, Doc. #324, p. 12, Doc. #344, p. 12.)

Plaintiffs argue that "the question [of] whether a non-signatory can enforce an arbitration clause that includes party-specific language is one for the court, not an arbitrator to decide." (Doc. 441, p. 14.)

"When parties contract to arbitrate future disputes, they may choose to incorporate a delegation provision, which is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019) (citation and quotation omitted). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration is asking the court to enforce." *Id*. "'[A]

3

Case 4:23-cv-00788-SRB    Document 589    Filed 12/16/24    Page 3 of 13

(8th Cir. 2007). Consequently, motions to strike are rarely granted. *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

## III. DISCUSSION

Defendants seek to strike any individual who agreed to arbitrate their dispute or waive their right to proceed via class action litigation. (Doc. #306, p. 1, Doc. #319, p. 2, Doc. #323, p. 1, Doc. #343, p. 2.)

### A. Threshold Questions of Arbitrability are Determined by the Court

Collectively, Defendants argue that the listing agreements signed between the sellers and brokers require an arbitrator, rather than the Court, to decide all threshold questions of arbitrability such as whether the instant claims fall within the scope of the arbitration provision and whether Defendants can enforce provisions of the listing agreement. Specifically, Defendants point to the incorporation by reference of the American Arbitration Association Rules for Commercial Arbitration (the "AAA rules") within the licensing agreements as an indication of parties' intent to require an arbitrator. (Doc. #306-1, p. 13, Doc. #324, p. 12, Doc. #344, p. 12.)

Plaintiffs argue that "the question [of] whether a non-signatory can enforce an arbitration clause that includes party-specific language is one for the court, not an arbitrator to decide." (Doc. 441, p. 14.)

"When parties contract to arbitrate future disputes, they may choose to incorporate a delegation provision, which is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019) (citation and quotation omitted). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration is asking the court to enforce." *Id*. "'[A]

delegation provision is an additional, severable agreement to arbitrate threshold issues that is valid and enforceable unless a specific challenge is levied against the delegation provision.'" *Id.* (quoting *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 50 (Mo. 2017)). "When evaluating the intention of parties to delegate threshold arbitrability issues to the arbitrator, 'courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 439 (Mo. banc 2020) (quoting *Rent-A-Center*, 561 U.S. at 69 n. 1).

Upon review, the Court, rather than an arbitrator, must play a threshold role in determining "whether the parties have submitted a particular dispute to arbitration." *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 970 (8th Cir. 2017) (quoting *Howsman v. Dean Witter Reynold, Inc.*, 537 U.S. 79, 83 (2002)). Similar to the listing agreements here, the arbitration agreement in *Catamaran* referenced the AAA Rules. *Id.* at 973. The Eighth Circuit determined that "bilateral arbitration dispute law is entitled to relatively little weight in the class arbitrability context" and that "[i]ncorporation of the AAA Rules by reference is insufficient evidence that the parties intended for an arbitrator to decide the substantive question of class arbitration." *Id.* Similar here, the incorporation by reference of the AAA Rules in the listing agreements in insufficient to prove parties' intent for an arbitrator to decide any threshold issues. Defendants do not "clearly and unmistakably" provide evidence that both parties intended to delegate all threshold decisions to an arbitrator, therefore questions of arbitrability remain issues for the judicial determination of the Court. *Howsam*, 537 U.S. at 83.

### B. Defendants Cannot Enforce the Arbitration Agreements or Class Action Waivers

Defendants argue that even as non-signatories to the licensing agreements, they may compel arbitration and enforce the class action waivers contained in their affiliates and subsidiaries' licensing agreements. (Doc. #306-1, p. 15, Doc. #324, pp. 6, 15, Doc. #344, p. 15.)

Plaintiffs argue that Defendants are non-signatories to the listing agreements, therefore as non-parties, they are unable to enforce any arbitration or class action waivers clauses. (Doc. #441, p. 17.)

"Arbitration agreements are favored by federal law and will be enforced as long as a valid agreement exists and the dispute falls within the scope of that agreement." *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019) (internal quotation marks omitted). Notwithstanding arbitration's "favored status," it "is a matter of contract law" and "parties cannot be compelled to arbitrate unless they have contractually agreed to be bound by arbitration." *Id*. Additionally, parties may only be compelled to arbitrate "with whom the parties [have] chose[n] to arbitrate their disputes." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 283 (2013) (internal quotations and citations omitted). The district court must "determine whether the parties formed a valid contract that binds them to arbitrate their dispute. As the party seeking to compel arbitration, [Defendants] carr[y] the burden to prove a valid and enforceable agreement." *Id*. "While the FAA favors resolution of disputes by enforcement of arbitration agreements, that policy alone is not enough to extend an arbitration agreement beyond its intended scope." *Stanton v. Cash Advance Ctrs., Inc*., No. 21-CV-00285-SRB, 2022 U.S. Dist. LEXIS 32812, at *6 (W.D. Mo. Feb. 23, 2022) (internal citations omitted); *Catamaran Corp*., 864 F.3d at 970 ("[T]he FAA also imposes a basic principle: arbitration is a process of consent and not coercion.")

    i. **Defendant William Raveis Real Estate, Inc. ("Raveis")**

Defendant Raveis argues that it may compel arbitration under its affiliates and subsidiaries' listing agreements in New York and Florida because New York and Florida courts allow non-signatories to "compel a signatory to arbitrate pursuant to, an arbitration agreement based on common law principles of contract, including estoppel." (Doc. #306-1, p. 15.) Specifically, Raveis argues that that there is a close relationship between the parties to the listing agreement and Raveis, allowing equitable estoppel to apply. Additionally, Raveis argues that it may enforce class waivers contained within its subsidiary and affiliates' New York, Connecticut, and Massachusetts listing agreements under traditional contract law. (Doc. #306-1, pp. 20-21.)

Plaintiffs argue that Raveis's reasons to compel arbitration as a non-signatory under both Florida and New York law are unsupported by caselaw and state precedent. Additionally, Plaintiffs allege that the language of New York, Connecticut, and Massachusetts class waivers is narrow and party-specific, precluding their enforceability to only the contracting parties, namely Raveis subsidiaries and affiliates and the home sellers.

Upon review, Raveis will not be able to compel arbitration under either New York or Florida law. First, Plaintiffs assert statutory claims which are not intertwined with nor arise out of the substance of the listing agreements. *Tyman v. Ford Motor Co.*, 521 F. Supp 3d 1222, 1231 (S.D. Fla. 2021) (finding not only must there be a close relationship between non-signatories and signatories, but the non-signatory must "demonstrate that the facts alleged in the complaint are intertwined with the underlying Agreements between [signing parties]."); *Bankers Conseco Life Ins. Co. v. Feuer*, 2018 U.S. Dist. LEXIS 43828, at *11 (S.D.N.Y. Mar. 13, 2018) (finding whether an arbitration agreement allows non-signatories to invoke equitable estoppel "requires the court to examine (1) whether the signatory's claims arise under the same subject matter of the

agreement and (2) whether the non-signatory has a 'close relationship' to a signatory of the agreement.").

Second, Raveis's subsidiary listing agreements in both New York and Florida each contain clear party-limiting language which do not include Raveis. The New York listing agreements are between home sellers and Ravies's subsidiary, William Raveis-New York LLC. The New York listing agreements' arbitration clause reads: "The merits of any dispute arising under or in connection with this agreement . . . shall be determined before an arbitrator[.]" (*see e.g.* Doc. #306-10, p. 3.) Each New York listing agreement clarifies that "the Owner(s)" specifically grant William Raveis-New York LLC "the *exclusive* right to sell" the property. (*see e.g.* Doc. 306-9, p. 2, Doc. #306-10, p. 2) (emphasis added). Under New York law, antitrust claims, like those here, are not sufficiently intertwined with a contract to make equitable estoppel available for a non-signatory. See *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005). The Florida listing agreements are between home sellers and Raveis's subsidiary, William Raveis Florida. The Florida listing agreements contain the clause: "All controversies, claims, and other matters in question *between the parties* arising out of or relating to the Agreement . . . will be settled by first attempting mediation . . . disputes not resolved by mediation will be settled by neutral binding arbitration[.]" (Doc. 306-13, p. 4) (emphasis added). Further, all listing agreements are clearly labeled as "Exclusive" brokerage listing agreements or right to sell agreements. (*see e.g.* Doc. #306-12, p. 2, Doc. #306-9 p. 2.) In Florida, non-signatories may not compel arbitration under equitable estoppel or contract principles, when as here, the contract has party-limiting language, and where plaintiffs assert statutory or non-contractual claims. *See Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc*., 845 F.3d 1351, 1354 (11th Cir. 2017). Clearly, parties in both New York and Florida "chose [with

7

whom] to arbitrate their disputes," at the exclusion of Raveis. A*m. Express Co.*, 570 U.S. at 283. Therefore, equitable estoppel is not available for Raveis to rely upon to enforce its subsidiary listing agreements in either New York or Florida.

The Court additionally finds that Raveis's argument to enforce class action waivers in Connecticut, Massachusetts, or New York class waivers under contract fail regardless of whether the class waivers are conscionable. Each listing agreement used in Connecticut, Massachusetts, and New York contains identical party limiting language which excludes Raveis: "*Each Party* waives the right to litigate in court or arbitrate any claim or dispute as a class action, either as a member of a class or as a representative." (Doc. #306-3 p. 3, Doc. #306-5 p. 3, Doc. #306-9, p. 4., Doc. #306-10, p. 3., Doc 306-11, p. 4., Doc. #306-12, p. 4) (emphasis added).

Raveis's reliance on *Am. Express Co.* is unfounded. While the Court did allow the enforcement of a class action waiver in the case, it was between signatories of the waiver, the merchants and American Express, specifically, the company with whom plaintiffs "chose to arbitrate their disputes." *Am. Express Co.*, 570 U.S. at 283. Raveis is a non-signatory to the listing agreements in New York, Connecticut, and Massachusetts containing the class waivers, and as such, may not compel their enforcement.

### ii. Defendant Crye-Leike, Inc. ("Crye-Leike")

Crye-Leike argues that all Crye-Leike subsidiaries and affiliates used contracts that included a class action waiver clause and as such they should be "rigorously enforced according to their terms" resulting in class allegations stricken from the complaint. (Doc. #320, p. 8.)

Plaintiffs argue that Crye-Leike "does not explain why it would be able to enforce the agreements as a non-signatory (thereby waiving any such argument)." (Doc. #441, p. 30.)

8

The Court agrees with Plaintiffs' argument. Both versions of Crye-Leike subsidiaries or affiliates' class action waiver provision are narrowly written to only cover disputes between the home seller and the signing broker: "*Neither party* may, in court proceeding, arbitration, or other permitted dispute resolution process, bring any dispute as a representative or member of a class, or act in the interest of the general public or in any private attorney general capacity" or "*The parties* hereby agree that all remedies are fair and equitable and *neither party* will assert the lack of mutuality of remedies as a defense in the event of a dispute. *Neither party* may, in court proceedings, arbitration, or other permitted dispute resolution process, bring any dispute as a representative or member of a class[.]" (Doc. #320, p. 5.) However, Crye-Leike presents no evidence that it, rather than its subsidiaries and affiliates, was a signing party with any class member. Crye-Leike presents no other arguments under which it may compel and enforce the arbitration or waiver provisions in its licensing agreements. Therefore, as a non-signatory, Crye-Leike is a non-party and may not enforce the provisions against any class member. *Burnett v. Nat'l Ass'n of Realtors*, 75 F.4th 975, 984 (8th Cir. 2023) (*Burnett II*).

### iii. Defendants eXp Holdings, Inc. and eXp Realty, LLC (collectively "eXp")

eXp Holdings, Inc. argues that "though not itself a signatory to eXp Realty [LLC]'s listing agreements, is entitled to enforce their arbitration clauses and class action waivers under principles of equitable estoppel" under the respective state laws of Alabama, Arizona, Florida, Georgia, Illinois, Kentucky, Massachusetts, Nebraska, Oregon, Washington, and New York. (Doc. #324, p. 15.) eXp argues that "courts have held that where a nonsignatory seeks to enforce an arbitration provision, broad arbitration provisions suffice to delegate arbitrability issues on behalf of signatories and non-signatories alike." (Doc. #324, p. 13.)

Plaintiffs argue eXp is precluded from enforcing the arbitration clauses and class action waivers because "eXp admits that eXp Holdings is not a party to any of the operative listing agreements . . . [therefore] eXp is wrong under each of the relevant state laws." (Doc. #441, p. 20.)

Upon review, the Court agrees with Plaintiffs' reasoning. In Alabama, Arizona, Florida, Georgia, Kentucky, Oregon, and Washington non-signatories may not compel arbitration under equitable estoppel or contract principles, when as here, the contract has party-limiting language, of which eXp is excluded, and where plaintiffs assert statutory or non-contractual claims. *See Phillips v. Garrison Prop. & Cas.,* 2020 WL 3118415, at *11 (N.D. Ala. May 12, 2020); *JTF Aviation Holdings Inc. v. CliftonLarsonAllen LLP*, 472 P.3d 526, 527 (Ariz. 2020); *Kroma Makeup EU, LLC*, 845 F.3d at 1354; *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1172 (11th Cir. 2011); *Landmark of Iroquois Park Rehab. & Nursing Ctr., LLC v. Gill*, 2022 WL 2182676, at *9 (Ky. Ct. App. June 17, 2022); *Zweizig v. Rote*, 818 F. App'x 645, 648 (9th Cir. 2020); *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013). Additionally, eXp has provided no showing of detrimental reliance, foreclosing equitable estoppel for a non-signatory under Illinois and Nebraska law. *See Warciak v. Subway Rest., Inc.*, 880 F.3d 870, 872 (7th Cir. 2018); *Noah's Ark Processors, LLC v. UniFirst Corp.*, 970 N.W.2d 72, 79 (Neb. 2022). Further, under both Massachusetts and New York law, antitrust claims, like those here, are not sufficiently intertwined with a contract to make equitable estoppel available for a non-signatory. *See Machado v. System4 LLC*, 28 N.E.3d 401, 410 (Mass. 2015); *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005). Therefore, eXp may not enforce the arbitration or class action waiver provisions against any class member.

### iv. Defendants Berkshire Hathaway Energy, Inc. ("BHE")

BHE argues it is "entitled to enforce the [arbitration and class action waiver] Agreements even where BHE does not appear as a party on the face of a given Agreement" because BHE is one of HomeServices of America, Inc.'s ("HomeServices") "affiliates," and therefore its newest licensing agreements expressly grant BHE the right to enforce the terms. (Doc. #344, pp. 15, 20.) Further, BHE argues that equitable estoppel allows BHE to compel arbitration for three reasons: (1) Plaintiffs allege a close relationship between the parties to the agreement and BHE, (2) Plaintiffs' claims rely on the existence of the licensing agreements, and (3) Plaintiffs' lawsuit treats signatories and non-signatories as a single unit. (Doc. #344, pp. 20-21.)

Plaintiffs argue that BHE "has no direct contractual relationship with any homeseller plaintiffs" and as a non-signatory, it cannot enforce the contract language against class members. (Doc. #441, p. 18.) Further, because "BHE misses that non-signatory enforcement is a question of state contract law and fails to address *any* state-specific law," citing only to Missouri law, "BHE has accordingly waived any argument under any other state's law." (Doc. #441, p. 18) (emphasis in original).

Here, the Court agrees with Plaintiffs. BHE presents two versions of contract language currently used between BHE's subsidiary, HomeServices, and home sellers. The first version's language was reviewed by the Eighth Circuit in *Burnett II*, 75 F.4th at 984. The Eighth Circuit found that HomeServices was a nonparty to the contract and therefore could not enforce the arbitration agreements of the class members. BHE's presentation of the same contract language is fatally flawed for the same reasons: BHE as a parent company to HomeServices is also a nonparty and therefore cannot enforce the first version of the arbitration agreements.

Additionally, BHE's second, newer contract language also fails to save BHE from nonparty status. The new contract language states that the signing "Broker, its ultimate parent

11

company, HomeServices of America, Inc., and their affiliates . . . are collectively referred to as 'Broker-Related Party'; Broker-Related Party and [the homeseller] are individually referred to as a 'party,' and, collectively, the 'parties.' Any Broker-Related Party may enforce this Mediation & Arbitration Agreement[.]" (*See e.g.* Doc. #345-2, p. 2.) BHE argues that while BHE is not specifically named, the term "affiliate" incorporates BHE as a party. The Court is unpersuaded. A contract is "not ambiguous simply because the parties disagree over its meaning." *Yerington v. La-Z-Boy, Inc.*, 124 S.W.3d 517, 520 (Mo. App. 2004). When reading the clause as a whole, HomeServices is clearly identified as the 'ultimate parent company,' thereby excluding BHE as a party from the new licensing agreements and preventing BHE's enforcement of the agreements.

Additionally, the Court agrees with Plaintiff's non-signatory enforcement arguments. The Court finds BHE's equitable estoppel argument is precluded by the Court's precedent in *Burnett I* and *Burnett II*. *See Burnett v. Nat'l Ass'n of Realtors*, 615 F.Supp. 3d 948, 960-61 (W.D. Mo. 2022) (*Burnett I*); *Burnett II*, 75 F.4th at 984 n.6 (rejecting defendant's various arguments supporting equitable estoppel including: defendant's argued close relationship with its subsidiary, plaintiffs' treatment of defendant and its subsidiaries as a "single unit", and that plaintiffs' claims were intertwined with listing agreements). BHE does not have a sufficiently close relationship with HomeServices because the agreements narrowly cover disputes between the signing parties and the agreements do not prevent non-signatories from being treated jointly for arbitration purposes. *See Burnett I*, 615 F.Supp. 3d at 960-61.

Therefore, BHE cannot enforce the arbitration and class action waivers of unnamed class members against it.

## IV. CONCLUSION

Accordingly, it is ORDERED that Defendant William Raveis Real Estate, Inc.'s Motion to Strike Class Action Allegations (Doc. #306), Defendant Crye-Leike Inc.'s 12(f) Motion to Strike Class Action Allegations as to Class Members who Waived the Right to Participate in a Class Action (Doc. #319), Defendant eXp World Holdings, Inc. and eXp Realty LLC's Rule 12(f) Motion to Strike Class Allegations as to Arbitrating Class Members (Doc. #323), and Defendant Berkshire Hathaway Energy Company's Motion to Stike Class Allegations as to Arbitrating Class Members under Fed. R. Civ. P. 12(f) and to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) (Doc. #343) are DENIED. For the reasons discussed in the *Gibson* motion to dismiss order filed today, Defendant Berkshire Hathaway Energy Company's request for dismissal under Fed. R. Civ. P. 12(b)(6) (Doc. #343) is likewise DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT

Date: December 16, 2024