IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DON GIBSON, LAUREN CRISS, JOHN MEINERS, and DANIEL UMPA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NATIONAL ASSOCIATION OF REALTORS, et al., <br><br> Defendants. | Case No. 4:23-cv-00788-SRB |

## ORDER

Before the Court is Defendant William Raveis Real Estate Inc.'s Motion to Dismiss (Doc. #305); Defendant Hanna Holdings Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer to the Western District of Pennsylvania (Doc. #308); Defendant Crye-Leike Inc.'s 12(b)(2) and 12(b)(3) Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. #315); Berkshire Hathaway Energy Company's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. #333); Defendants Hanna Holdings, Inc., eXp World Holdings, Inc., eXp Realty, LLC, Weichert Real Estate Affiliates, Inc., Weichert Co., Berkshire Hathaway Energy Company, William Raveis Real Estate, Inc., Real Estate One, Inc., Inc., Crye-Leike Real Estate Services, and Illustrated Properties LLC's Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (Doc. #339); Defendants eXp World Holdings, Inc. and eXp Realty LLC's Rule 12(b) Motion to Dismiss (Doc. #341); Defendant Windermere Real Estate Services Company Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. #353); and Defendant

1

William L. Lyon & Associates, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. #356). For the following reasons, Defendants' motions are DENIED.

## I. LEGAL STANDARD

### A. Personal Jurisdiction

When a defendant seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d at 591–92 (8th Cir. 2011)). The plaintiff's prima facie showing of personal jurisdiction "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072–73 (8th Cir. 2004) (internal quotation marks omitted) (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974)).

Plaintiffs filed suit in federal court under Section 1 of the Sherman Act, 15 U.S.C. § 1. The Sherman Act permits nationwide service of process for corporate defendants. *See* 15 U.S.C. § 12. "When a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." *Aviva Life & Annuity Co. v. Davis*, 20 F. Supp. 3d 694, 703 (S.D. Iowa 2014); *In re Fed. Fountain, Inc.*, 165 F.3d 600, 601 (8th Cir. 1999) (en banc).

### B. Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to

2

state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).

The Court must consider all facts alleged in the complaint as true when considering a motion to dismiss. *See Data Mfg., Inc. v. United Parcel Service, Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable"). However, allegations that are "legal conclusions or [a] formulaic recitation of the elements of a cause of action . . . may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 677) (internal citations omitted). Ultimately, dismissal under Rule 12(b)(6) should be granted "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (internal quotations and citations omitted); *see also Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir. 1998) ("We note that courts are hesitant to dismiss antitrust actions before the parties have had an opportunity for discovery, because proof of illegal conduct lies largely in the hands of the alleged antitrust conspirators.").

## II. BACKGROUND

The facts of this case are discussed in prior Orders and in the parties' briefs and will not be repeated herein. This Order assumes familiarity with the facts and law applicable to the

3

claims and defenses asserted in this case. Only those facts and issues necessary to resolve the pending motion are discussed below.

Plaintiffs are home sellers who listed homes on Multiple Listing Services ("MLS") in the United States and allege that several national real estate brokerages, brokerage owners, and franchisors entered into a conspiracy to implement, follow, and enforce anticompetitive restraints that caused home sellers to pay inflated commissions on the sale of their homes through a series of parallel and overlapping rules, specifically the NAR MLS Rules, the Non-NAR MLS Rules, and the NAR Code of Ethics Rules (the "Challenged Rules").[1]

Plaintiffs Don Gibson, Lauren Criss, John Meiners, and Daniel Umpa ("Plaintiffs") most recently filed a FAC on June 11, 2024. (Doc. #232). Plaintiff's FAC alleges one count against Defendants: violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

## III. DISCUSSION

---

[1] Plaintiffs' first-amended class-action complaint ("FAC") alleges the following facts, which the Courts accepts as true for purposes of Defendants' motion to dismiss and views in a light most favorable to Plaintiff. *See Data Mfg., Inc.*, 557 F.3d at 851.

### A. Venue and Personal Jurisdiction

Defendants collectively argue that venue in improper and this Court lacks personal jurisdiction over Defendants under both Section 12 of the Clayton Act, 15 U.S.C. § 22, and the Missouri long-arm statute, Mo. Rev. Stat. § 506.500.1. (Doc. #305, p. 11, Doc. #309, p. 1, Doc. #312, p. 2, Doc. #313, p.1, Doc. #315, p. 2, Doc. #333, p. 2, Doc. #353, p. 1, Doc. #356, p. 1.)

Plaintiffs counter that "the Clayton Act provides personal jurisdiction over each Defendant, and venue in the District is proper under [28 U.S.C.] § 1391 and/or the Clayton Act." (Doc. #443, p. 10.)

Section 12 of the Clayton Act provides special venue and service of process rules for private antitrust actions brought against corporate defendants. Section 12 provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22.

"[A] corporation is engaged in transacting business in a district . . . if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character." *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948) (internal citation omitted). If venue is proper under Section 12, personal jurisdiction may be established by effecting service of process anywhere in the world upon that defendant. *In re Vitamin C Antitrust Litig.*, 2012 WL 2930109, *4 (E.D. N.Y. July 18, 2012); *Go-Video, Inc. v. Akai Elec. Co. Ltd.*, 885 F.2d 1406, 1413–14 (9th Cir. 1989); 14D Fed. Prac. & Proc. Juris. § 3818 (4th ed.).

The Circuits are split regarding how the two clauses of Section 12—the venue clause and the service of process clause—may be used to establish personal jurisdiction over a corporate

5

Case 4:23-cv-00788-SRB    Document 590    Filed 12/16/24    Page 5 of 19

defendant. The Third Circuit and Ninth Circuit have adopted a broad, independent interpretation that permits plaintiffs to rely upon either (1) the general venue statute, 28 U.S.C. § 1391, or (2) the Section 12 venue clause, combined with the Section 12 service of process clause.. *See In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 296–97 (3rd Cir. 2004); *Go-Video, Inc.*, 885 F.2d at 1413. The D.C. Circuit, Second Circuit, and Seventh Circuit have adopted a narrower, integrated reading requiring that in order to take advantage of the Section 12 service of process clause to establish personal jurisdiction, plaintiffs may only rely upon the Section 12. *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000); *Daniel v. Am. Bd. Of Emergency Med.*, 428 F.3d 408, 423–24 (2d Cir. 2005); *KM Enters., Inc., v. Global Traffic Techs., Inc.*, 725 F.3d 718, 730 (7th Cir. 2013). Under the narrow reading, Plaintiffs can only show proper venue in a district where a defendant "inhabit[s]" or is "found" or "transacts business." 15 U.S.C. § 22. The Eighth Circuit has not yet adopted either interpretation.

Defendants urge the Court to adopt the narrow reading of Section 12. (*e.g.* Doc. #305-1, p. 20.) Defendants collectively argue venue is improper in this District under the narrow reading of Section 12 because Plaintiffs do not allege facts to support the conclusion that Defendants 'transact business' in this District within the meaning of § 12. (Doc. #305, p. 24; Doc. #309, p. 20; Doc. #317, p. 6; Doc. #335, p. 17, Doc. #354, p. 7; Doc. #357, p. 7.) Under their narrow reading of Section 12, Defendants contend that venue is improper under § 1391 summarily because Defendants' physical absence from Missouri and lack of conduct within the District results in no substantial part of the underlying events occurring in Missouri. (*e.g.* Doc. #305-1, pp. 22-33, Doc. #318, pp. 17-18.) Defendants also argue that they have insufficient minimum contacts with Missouri to support a finding of personal jurisdiction that satisfies Due Process.

6

Plaintiffs argue that venue is proper in the Western District of Missouri and therefore this Court has personal jurisdiction over Defendants in this District under both the broad and narrow interpretations of Section 12's personal jurisdiction provision. Plaintiffs urge the Court to adopt the broad reading of Section 12 and "find personal jurisdiction and venue proper as to every Defendant." (Doc. #443, p. 18.) However, "[e]ven if the Court adopts the minority narrow reading, then Plaintiffs still have shown venue is proper as to most Defendants." (Doc. #443, p. 18.)

Plaintiffs argue venue is proper under the broad approach because "a substantial part of the events . . . giving rise to the claim occurred" in this District. 28 U.S.C. § 1391. Plaintiffs allege that "each Defendant has a significant presence in the nationwide market and the [FAC] has abundant allegations about the enormous harm inflicted on home sellers in this District through the inflated commissions . . . both on the MLSs in this District and nationwide." (Doc. #443, p. 18.) Plaintiffs state three of the four named Plaintiffs "sold homes located in this District, where they were injured because of the mandatory Challenged Rules (to which all Defendants adhered and enforced) required them to offer commission to buyer-brokers when listing their homes on the Heartland MLS or the Columbia Board of Realtors MLS, both in this District." (Doc. #443, p. 27.) Plaintiffs allege this is "enough to establish venue, as this Court previously held in indistinguishable circumstances in *Burnett*." (Doc. #443, p. 27.) Plaintiffs argue that venue is proper under the narrower approach because "Defendants transact business in this District under the Clayton Act, thereby supporting both venue and personal jurisdiction." (Doc. #443, p. 29.) Plaintiffs allege that Defendants either received revenue attributable to transacted business, operate or participate in referral networks, or receive referrals from Missouri agents within the District. Plaintiffs further argue that Defendants have sufficient contacts with

7

the United States, as is required by Section 12, to support a finding of personal jurisdiction that satisfies Due Process.

The Court need not adopt an interpretation of Section 12 because venue is proper and this Court has personal jurisdiction over Defendants in accordance with both the broad and narrow reading.  Broadly, Plaintiffs have plausibly established that a "substantial part of the events" giving rise to the claim occurred with three of the four named Plaintiffs selling homes within this District where they were injured by the mandatory Challenged Rules which all Defendants enforced.  28 U.S.C. § 1391.  Accordingly, venue is proper in the Western District of Missouri under § 1391 and the Court has personal jurisdiction over Defendants.

Narrowly, venue is proper in this District under Section 12's venue clause, which dictates that venue is proper in any district in which a corporation, "in the ordinary and usual sense [] 'transacts business' therein of any substantial character."  *Scophony Corp.*, 333 U.S. at 807 (internal citation omitted).  Section 12 was enacted to enlarge jurisdiction over corporations.  *Id.* at 806–07.  "Both purchases by a defendant in a district and sales by a defendant in a district are considered transactions of business for purposes of Section 12," and such business activity "need not be connected to the subject matter of the antitrust suit."  *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1293 (N.D. Ala. 2016) ("*In re Blue Cross*"); *Black v. Acme Markets, Inc.*, 564 F.2d 681, 687 (5th Cir. 1977).  Further, a "corporation can transact business within a district even if all of the relevant transactions are interstate in character."  *In re Blue Cross*, 225 F. Supp. 3d at 1293.  "[T]he substantiality of the business transacted is to be judged from the point of view of the average businessman and not in proportion to the sales or revenues of the defendant*."  Black v. Acme Markets, Inc.*, 564 F.2d 681, 687 (5th Cir. 1977) (internal citations omitted); *Katz Drug Co. v. W. A. Sheaffer Pen Co.*, 6 F. Supp. 210, 212 (W.D.

8

Mo. 1932). Further, "the purchases and/or sales which constitutes the transaction of business need not be connected to the subject matter of th[e] suit." *Id.* "The language of a particular case should not be taken as a standard to be erected as a set of rigid prescriptions of the particular incidents of business conduct which may constitute the transaction of business." 3 A. L. R. Fed. 120 (2019) (citing *Austad v. United States Steel Corp.* 141 F. Supp. 437, 440 (N.D. Cal. 1956)). "[W]hat constitutes transacting business . . . cannot be determined by drawing up a checklist of specific incidents of business done and comparing it with the activities in a particular case." *Id.* (citing *Abrams v. Bendix Home Appliances, Inc*. 96 F. Supp. 3, 8 (S.D.N.Y. 1951)). "Although there is no 'singular definitive test for transacting business,' the most important factor to consider is 'the dollar amount of business transacted in the district.'" *In re Blue Cross*, 225 F. Supp. 3d at 1293 (internal citation omitted).

Plaintiffs have plausibly alleged that each Defendant participated in a nationwide conspiracy by agreeing to and enforcing the Challenged Rules nationwide and specifically within this District. *See In re Blue Cross*, 225 F. Supp. 3d at 1313. Plaintiffs allege that each Defendant "regularly receives revenue attributable to business transacted in this District." (Doc. #443, p. 17.) Specifically, Plaintiffs plausibly allege that Defendant Berkshire Hathaway Energy has control over a wholly owned subsidiary in this District, Defendant Crye-Leike represented parties in residential sales and has agents in this District, Defendant Hanna Holdings, Inc. receives yearly referral program income and controls affiliates in this District, Defendant William L. Lyon did not contradict Plaintiffs' claims of referral revenue in this District, Defendant William Raveis Real Estate, Inc. participated in referral business with Missouri agents in this District, and Defendant Windermere Real Estate Services Company, Inc. did not contradict Plaintiffs' claims of referral revenue in this District. Therefore, under the narrow

9

interpretation, venue is proper under Section 12, Defendants satisfy the standard of minimum contacts with the United States, and the Court has personal jurisdiction over Defendants.

### B. Count I: Violation of Section 1 of the Sherman Act Failure to State a Claim

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. To establish a claim under Section 1 of the Sherman Act, a plaintiff must plead evidentiary facts which, if true, will prove: (1) there was a contract, combination, or conspiracy; (2) the agreement unreasonably restrained trade under either a per se rule of illegality or a rule-of-reason analysis; and (3) the restraint affected interstate commerce. *See HM Compounding Servs., Inc. v. Express Scripts, Inc.*, No. 4:14-CV-1858-JAR, 2015 WL 4162762, at *3 (E.D. Mo. July 9, 2015) (citations omitted). A plaintiff must additionally "demonstrate that he has suffered an 'antitrust injury' as a result of the alleged conduct of the defendants." *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 542 (8th Cir. 2015) (quoting *In re Canadian Import Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006)).

Defendants collectively argue that Plaintiffs have not plausibly pled any agreement or conspiracy exists. (Doc. #342, p. 2; Doc. #340, p. 9.) Further, Defendants collectively argue that they have not joined or participated any agreement or conspiracy. (Doc. #305, pp. 24-25; Doc. #342, p. 4) Additionally, Defendants collectively argue that Plaintiffs have not plausibly alleged that the Challenged Rules are anticompetitive and therefore did not unreasonably restrain the trade. (Doc. #340, p. 28.) Finally, Defendants argue that Plaintiffs lack antitrust standing. (Doc. #340, p. 9)

### a. Existence of a Conspiracy

10

To demonstrate concerted action among defendants to restrain trade, a plaintiff must plead facts plausibly showing "the defendants shared a unity of purpose or a common design and understanding, or a meeting of the minds." *Insulate*, 797 F.3d at 543–44 (internal citations omitted). No formal or explicit agreement between the parties is required. *Id*. at 544, 548 (citing *United States v. Parke, Davis & Co*., 362 U.S. 29, 44 (1960)) ("[P]laintiffs can prove concerted action by showing a [defendant] took some action 'beyond mere announcement of his policy and the simple refusal to deal [and] employ[ed] other means which effect adherence to his' policies."). Concerted or collaborative action may be demonstrated by showing two or more parties "had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp*., 465 U.S. 752, 764 (1984) (internal citations and quotations omitted). "[T]he crucial question is whether the challenged anticompetitive conduct stem[s] from independent decision or from an agreement, tacit or express." *Park Irmat Drug Corp. v. Express Scripts Holding Co*., 911 F.3d 505, 516 (8th Cir. 2018) (internal quotation marks omitted).

The parties dispute whether Plaintiffs' factual allegations plausibly demonstrate the existence of an agreement among and between Defendants. Collectively, Defendants contend that Plaintiffs present no evidence showing the existence of an agreement between Defendants or any affirmative steps by Defendants and their associated brokers to adopt or implement Section the Challenged Rules. Defendants argue each Defendant's decision to join an MLS and enforce its listing policies is an act of independent, self-interested conduct as members of a trade association necessary for competitive success in regional real estate markets. Plaintiffs argue that NAR mandates MLS participants comply with the series of Challenged Rules that govern the total commission that the seller will pay, thereby imposing an anticompetitive trade restraint.

11

Further, Plaintiffs allege that "[e]ach Defendant requires that its company-owned brokerages, franchisees, and/or affiliated agents join Realtor associations, join MLSs, and/or follow NAR or MLS rules and thus require participation in and adherence to the challenged, common scheme as a condition of doing business with Defendants." (Doc. #442, pp. 9-10.) This required participation mandates "the disclosure of offers of cooperative compensation, restricting negotiation of the same, limit[s] the information that can be shared about commissions, and . . . deprives the marketplace of independent centers of decisionmaking." (Doc. #442, p. 29.)

Upon review of the conspiracy element of their Section 1 claim, the Court finds Plaintiffs satisfy the pleading requirements necessary to survive the motions to dismiss. Plaintiffs' assertion that Defendants agreed to carry out NAR's allegedly anticompetitive policies is adequately supported by factual allegations regarding both the substance and nature of their purported agreement. Plaintiffs present facts showing the terms and effects of the alleged horizontal agreement and the methods allegedly used by Defendants to uphold and perpetuate it. In turn, Plaintiffs' allegations plausibly suggest the franchisees, subsidiaries, and agents of each Defendant knew of, complied with, participated in, and benefitted from the Challenged Rules. *See, e.g., Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 227 (1939) ("Acceptance by competitors without previous agreement of an invitation to participate in a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce, is sufficient to establish unlawful 'conspiracy' under the Sherman Anti-Trust Act.").

While Defendants claim that their employees and officers' various participation on NAR boards is not sufficient to correlate to a conspiracy, Plaintiffs sufficiently allege that NAR's Board annually reviewed, approved, and reissued the Challenged Rules. Taken as true and in a light most favorable to them, Plaintiffs adequately allege facts placing the conduct of each

12

Defendant "in a context that raises a suggestion of a preceding agreement" rather than "identical, independent action." *Twombly*, 550 U.S. at 557, 549; *see also Interstate Circuit*, 306 U.S. at 227; *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 195, 199 (2010) ("Any joint venture involves multiple sources of economic power cooperating to produce a product. And for many such ventures, the participation of others is necessary. But that does not mean that necessity of cooperation transforms concerted action into independent action."). As to this element, that is sufficient to survive dismissal.

    b.    **Unreasonable Restraint of Trade**

"Despite its broad language, Section 1 has long been interpreted to outlaw only those restraints that are 'unreasonable.'" *Craftsmen Limousine, Inc. v. Ford Motor Co.* ("*Craftsmen I*"), 363 F.3d 761, 772 (8th Cir. 2004) (quoting *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 343 (1982). An antitrust plaintiff must demonstrate the alleged conspiracy "unreasonably restrains trade in a relevant product or geographic market." *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 208 F.3d 655, 659 (8th Cir. 2000). Whether a trade restraint is unreasonable is evaluated under either the per se rule of illegality, the more common "rule of reason" analysis, or the "quick look" analysis. *Id.*; *Craftsmen I*, 363 F.3d at 772. However, the determination of which analysis to use "is best left to the merits stage of [the] proceeding." *Sitzer v. Nat'l Ass'n of Realtors*, 420 F. Supp. 3d 903, 913 (W.D. Mo. 2019) n.3; *Moehrl v. Nat'l Ass'n of Realtors*, 492 F. Supp. 3d 768, 782 (N.D. Ill. 2020). Under the rule-of-reason standard, the relevant inquiry "is whether, on balance, the challenged agreement is one that 'merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition.'" *Rosebrough Monument Co. v. Mem'l Park Cemetery Ass'n*, 666 F.2d 1130, 1138 (8th Cir. 1981) (quoting *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977)). The

13

unreasonableness of a restraint on competition is a fact-intensive inquiry evaluated within the context of the relevant product and/or geographic market. *Rosebrough*, 666 F.2d at 1138; *Nat'l Soc'y of Prof'l Engineers v. United States*, 435 U.S. 679, 691 (1978). Specifically, a plaintiff must allege that (1) defendant has market power within a plausible market and (2) the challenged restraints are anticompetitive. *Rosebrough*, 666 F.2d at 1138.

### i. Relevant Product and Geographic Market

As a preliminary matter, a plaintiff must properly define the relevant product or market where competition is suppressed by the allegedly anticompetitive restraint. *See Double D*, 136 F.3d at 558–560 ("The 'rule of reason' analysis involves an inquiry into the market structure and the defendant's market power in order to assess the actual effect of the restraint."). Given that a "proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers," dismissal at the motion to dismiss stage based on a plaintiff's market definition is disfavored. *Id*. at 560.

Plaintiffs argue they have plead relevant two relative geographic markets: (1) the local and regional market area no larger than the areas served by an MLS and (2) the United States. Plaintiffs state that within those geographic markets, the Challenged Rules, apply to all homes listed on the MLS and all real estate brokers participating in an MLS, making access to MLSs a commercial necessity for brokers. Plaintiffs allege that the relevant product market is the bundle of services residential brokers with MLS access provide to homebuyers and sellers due to the absence of reasonable alternatives to MLSs or brokerage services combined with the commercial necessity for MLS access by brokers and sellers. Defendants argue that Plaintiffs' United States geographic market is implausible because real estate is by nature local, and Plaintiffs' local and regional geographic market is impermissibly vague because the market could be smaller than the

14

area served by an MLS. Additionally, Defendants allege that Plaintiffs' relevant product market fails because substitutes to brokerage services and MLSs may exist, not all interchangeable options to brokerage services are included, and Plaintiffs proposed market is two-sided, including both buyers and sellers.

The Court finds Plaintiffs adequately defined the relevant geographic market and product market negatively impacted by the Challenged Rules. Geographically, Plaintiffs describe in detail the local nature of real estate, the anticompetitive restraints of the Challenged Rules on the MLSs, and the essential role of MLSs in residential real estate transactions. In describing the relevant product market, Plaintiffs present factual allegations demonstrating the universal anticompetitive restraint that all brokers participating in an MLS are subject to and lack of reasonable substitutes for services due to the Challenged Rules. Finally, Plaintiffs have plausibly alleged a potential for adverse effects. *Ind. Fed'n of Dentists*, 476 U.S. at 460–61. At this stage, Plaintiffs do not need address whether their proposed product market is two-sided for both buyers and sellers. *See Moehrl*, 492 F. Supp. 3d at 783 n.7 (rejecting motion to dismiss argument that "Plaintiffs fail to allege anticompetitive effects . . . based on the Corporate Defendants' contention that Plaintiffs' allegations ignore the corresponding benefits to both home sellers and home buyers"). Therefore, Plaintiffs' allegations define a plausible, valid, and sufficiently broad relevant market to which a rule-of-reason analysis could be applied. *See Double D*, 136 F.3d at 560; *Foam Supplies, Inc. v. Dow Chem. Co.*, No. 4:05-CV-1772-CDP, 2006 WL 2225392, at *4 (E.D. Mo. Aug. 2, 2006).

  **ii. Detrimental Effects on Competition**

Once adequately defining the relevant market, the rule of reason requires Plaintiffs to allege facts plausibly showing the alleged anticompetitive conduct has a detrimental effect on

15

competition within the relevant market or "the potential for genuine adverse effects on competition." *Flegel v. Christian Hosp., Ne.-Nw.*, 4 F.3d 682, 688 (8th Cir. 1993); *Craftsmen Limousine, Inc. v. Ford Motor Co.* (*Craftsmen II*), 491 F.3d 380, 388 (8th Cir. 2007). While recognizing the parties have not yet had the benefit of discovery, Plaintiffs must still present a plausible factual basis for the alleged anticompetitive effects. *See Double D*, 136 F.3d at 560.

Defendants argue Plaintiffs fail to allege any genuine adverse effects on competition in the relevant market, therefore they must show detrimental effects through market power. However, Defendants argue that it is impossible for each different Defendant to have sufficient market power in each relevant local market. Plaintiffs argue the Defendants, along with their co-conspirators, participated in a national scheme to implement and derive advantage from the Challenged Rules and under their combined efforts, Defendants produced detrimental effects through market power nationally. Plaintiffs allege that through their combined efforts, Defendants have the power to raise commissions in each relevant market, thus exhibiting market power.

Here, the Court finds that Plaintiffs plausibly allege that Defendants exerted an unreasonable restraint on trade. *See Ind. Fed'n of Dentists*, 476 U.S. at 460–61*; Ash*, 799 F.3d at 960. Given that each Defendant agreed to follow the Challenged Rules for all homes listed on MLs and lack of alternatives to MLS listed homes, Plaintiffs demonstrate the significant influence exerted by Defendants. Additionally, Plaintiffs plausibly allege genuine anticompetitive effects of Defendants' market power through economic analysis and industry experts. As to this element, Plaintiffs present enough factual allegations to survive dismissal.

    c. **Antitrust Injury and Standing**

16

Case 4:23-cv-00788-SRB    Document 590    Filed 12/16/24    Page 16 of 19

To recover damages, "a private plaintiff must demonstrate that he has suffered an 'antitrust injury' as a result of the alleged conduct of the defendants, and that he has standing to pursue a claim under the federal antitrust laws." *Insulate*, 797 F.3d at 542 (quoting *In re Canadian Import Antitrust Litig.*, 470 F.3d at 791). Standing to sue under the Sherman Act "requires an evaluation of the plaintiff's harm, the alleged wrongdoing by the defendant, and the relationship between them." *Gen. Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795, 809 (8th Cir. 1987) ("[M]ere causal connection between an antitrust violation and harm to a plaintiff cannot be the basis for antitrust compensation unless the injury is directly related to the harm the antitrust laws were designed to protect.").

Defendants argue that Plaintiffs lack antitrust standing because they cannot show they suffered a legally cognizable antitrust injury as indirect purchasers of the allegedly overpriced buyer-broker services. Defendants state that the seller-broker paid the buyer-broker's commission rather than Plaintiffs as the home sellers. Plaintiffs alternatively argue that they are direct purchasers either because they paid inflated total commission, which includes the buyer-broker commission, directly to their listing brokers or because Plaintiffs as sellers paid for the buyer's agent and seller's agent from the closing costs.

The Court finds Plaintiffs allege a legally cognizable injury under the Sherman Act. Plaintiffs claim Defendants' anticompetitive agreement forced them to pay higher total sales commissions when they sold their homes and forced them to pay elevated buyer-broker commissions. Paying a higher price as a result of the alleged trade restraint is certainly the type of injury "antitrust laws were intended to prevent." *See Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 624–25 (8th Cir. 2011) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Plaintiffs also present facts sufficiently linking their alleged injury

17

Defendants' adherence to and enforcement of the Challenged Rules.  Plaintiffs need only to present enough factual allegations to plausibly show that Defendants alleged anticompetitive actions are a "material cause" of their alleged injuries.  *See Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1060 (8th Cir. 2000) (quoting *Nat'l Ass'n of Rev. Appraisers & Mortgage Underwriters, Inc. v. Appraisal Found.*, 64 F.3d 1130, 1135 (8th Cir. 1995)).  They have done so.

In sum, Plaintiffs satisfy their burden under Rule 12(b)(6) for each element of their federal antitrust claim under Section 1 of the Sherman Act.  Defendants' motions to dismiss Count I for failure to state a claim are accordingly denied.

## IV. CONCLUSION

Accordingly, it is ORDERED that Defendant William Raveis Real Estate Inc.'s Motion to Dismiss (Doc. #305); Defendant Hanna Holdings Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer to the Western District of Pennsylvania (Doc. #308); Defendant Crye-Leike Inc.'s 12(b)(2) and 12(b)(3) Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. #315); Berkshire Hathaway Energy Company's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. #333); Defendants Hanna Holdings, Inc., eXp World Holdings, Inc., eXp Realty, LLC, Weichert Real Estate Affiliates, Inc., Weichert Co., Berkshire Hathaway Energy Company, William Raveis Real Estate, Inc., Real Estate One, Inc., Inc., Crye-Leike Real Estate Services, and Illustrated Properties LLC's Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint (Doc. #339); Defendants eXp World Holdings, Inc. and eXp Realty LLC's Rule 12(b) Motion to Dismiss (Doc. #341); Defendant Windermere Real Estate Services Company Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. #353); and Defendant

William L. Lyon & Associates, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. #356) are DENIED.  For the reasons discussed in the Gibson motion to strike order filed today, Defendant Berkshire Hathaway Energy Company's request for dismissal under Fed. R. Civ. P. 12(f) (Doc. #343) is likewise DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: December 16, 2024