IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

DON GIBSON, LAUREN CRISS,  )
JOHN MEINERS, and DANIEL  )
UMPA, individually and  )
on behalf of all others similarly situated,  )
                                                                         )   Case No. 4:23-cv-00788-SRB
        Plaintiffs,  )
                                )
    v.  )
                                )
THE NATIONAL ASSOCIATION OF  )
REALTORS, et al.,  )
                                )
        Defendants.  )

**ORDER**

Before the Court is Defendant Weichert Co.'s Motion to Dismiss (Doc. #311) and Defendant Weichert Real Estate Affiliates, Inc.'s ("WREA") Motion to Dismiss (Doc. #313) (collectively "Weichert"). For the following reasons, Weichert's motions are DENIED.

I. **BACKGROUND**

The facts of this case are discussed in prior Orders and in the parties' briefs and will not be repeated herein. This Order assumes familiarity with the facts and law applicable to the claims and defenses asserted in this case. Only those facts and issues necessary to resolve the pending motions are discussed below.

Plaintiffs are home sellers who listed homes on Multiple Listing Services ("MLS") in the United States and allege that several national real estate brokerages, brokerage owners, and franchisors entered into a conspiracy to implement, follow, and enforce anticompetitive restraints that caused home sellers to pay inflated commissions on the sale of their homes through a series of parallel and overlapping rules, specifically the NAR MLS Rules, the Non-NAR MLS Rules,

1

and the NAR Code of Ethics Rules (the "Challenged Rules").[1]

Plaintiffs Don Gibson, Lauren Criss, John Meiners, and Daniel Umpa (collectively "Plaintiffs") most recently filed a FAC on June 11, 2024. (Doc. #232). Plaintiff's FAC alleges one count against Weichert: violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

Weichert has moved to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(2).[2] Plaintiffs oppose the motion. The parties' arguments are addressed below.

## II. LEGAL STANDARD

When a defendant seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d at 591–92 (8th Cir. 2011)). However, a plaintiff "need only make a prima facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). A plaintiff's prima facie showing of personal jurisdiction "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072–73 (8th Cir. 2004) (internal quotation marks omitted) (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974)).

Plaintiffs filed suit in federal court under Section 1 of the Sherman Act, 15 U.S.C. § 1. The Sherman Act permits nationwide service of process for corporate defendants. *See* 15 U.S.C. § 12. "When a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry

---

[1] Plaintiffs' first-amended class-action complaint ("FAC") alleges the following facts, which the Courts accepts as true for purposes of Defendants' motion to dismiss and views in a light most favorable to Plaintiff. *See Data Mfg. v. UPS, Inc.*, 557 F.3d 894, 851 (8th Cir. 2009).

[2] Weichert adds in their conclusion section of their Suggestions in Support of their Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #312, Doc. #314) that Plaintiffs' FAC should be dismissed under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6); however, their motions only address a Rule 12(b)(2) argument, as such the Court only addresses Weichert's argument under Rule 12(b)(2).

2

Case 4:23-cv-00788-SRB   Document 604   Filed 12/30/24   Page 2 of 9

is whether the defendant has had minimum contacts with the United States." *Aviva Life & Annuity Co. v. Davis*, 20 F. Supp. 3d 694, 703 (S.D. Iowa 2014); *In re Fed. Fountain, Inc.*, 165 F.3d 600, 601 (8th Cir. 1999) (en banc).

## III. DISCUSSION

### A. Venue and Personal Jurisdiction

Weichert argues that this Court lacks personal jurisdiction "under either the Missouri long arm statute, Mo. Rev. Stat. § 506.500, the Federal Due Process Clause, or Section 12 of the Clayton, 15 U.S.C. § 22." (Doc. #311, p. 1, Doc. #313, p. 1.) Plaintiffs counter that "jurisdiction and venue [are] proper as to [Weichert] under the Clayton Act and 28 U.S.C. § 1391." (Doc. #568, p. 6.)

Section 12 of the Clayton Act provides special venue and service of process rules for private antitrust actions brought against corporate defendants. Section 12 provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. If venue is proper under Section 12, then personal jurisdiction may be established by effecting service of process anywhere in the world upon that defendant. *In re Vitamin C Antitrust Litig.*, 2012 WL 2930109, *4 (E.D. N.Y. July 18, 2012); *Go-Video, Inc. v. Akai Elec. Co. Ltd.*, 885 F.2d 1406, 1413–14 (9th Cir. 1989); 14D Fed. Prac. & Proc. Juris. § 3818 (4th ed.).

The Circuits are split regarding how the two clauses of Section 12—the venue clause and the service of process clause—may be used to establish personal jurisdiction over a corporate defendant. The Third Circuit and Ninth Circuit have adopted a broad, independent interpretation

3

that permits plaintiffs to rely upon either (1) the general venue statute, 28 U.S.C. § 1391, or (2) the Section 12 venue clause, combined with the Section 12 service of process clause. *See In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 296–97 (3rd Cir. 2004); *Go-Video, Inc.*, 885 F.2d at 1413. The D.C. Circuit, Second Circuit, and Seventh Circuit have adopted a narrower, integrated reading requiring that in order to take advantage of the Section 12 service of process clause to establish personal jurisdiction, plaintiffs may only rely upon the Section 12. *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000); *Daniel v. Am. Bd. Of Emergency Med.*, 428 F.3d 408, 423–24 (2d Cir. 2005); *KM Enters., Inc., v. Global Traffic Techs., Inc.*, 725 F.3d 718, 730 (7th Cir. 2013).

Under the narrow reading, Plaintiffs can only show proper venue in a district where a defendant "inhabit[s]," is "found," or "transacts business." 15 U.S.C. § 22; *United States v. Scophony Corp.*, 333 U.S. 795, 807 (1948) (internal citation omitted) (finding venue proper in any district in which a corporation, "in the ordinary and usual sense [] 'transacts business' therein of any substantial character."). "The language of a particular case should not be taken as a standard to be erected as a set of rigid prescriptions of the particular incidents of business conduct which may constitute the transaction of business." 3 A. L. R. Fed. 120 (2019) (citing *Austad v. United States Steel Corp.*, 141 F. Supp. 437, 440 (N.D. Cal. 1956)). "Both purchases by a defendant in a district and sales by a defendant in a district are considered transactions of business for purposes of Section 12." *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1293 (N.D. Ala. 2016) ("*In re Blue Cross*"); *Black v. Acme Markets, Inc.*, 564 F.2d 681, 687 (5th Cir. 1977). Further, a "corporation can transact business within a district even if all of the relevant transactions are interstate in character." *In re Blue Cross*, 225 F. Supp. 3d at 1293. "Although there is no 'singular definitive test for transacting business,' the most important

4

factor to consider is 'the dollar amount of business transacted in the district.'" *In re Blue Cross*, 225 F. Supp. 3d at 1293 (internal citation omitted). However, "the substantiality of the business transacted is to be judged from the point of view of the average businessman and not in proportion to the sales or revenues of the defendant." *Black v. Acme Markets, Inc.*, 564 F.2d 681, 687 (5th Cir. 1977) (internal citations omitted); *Katz Drug Co. v. W. A. Sheaffer Pen Co.*, 6 F. Supp. 210, 212 (W.D. Mo. 1932). Further, "the purchases and/or sales which constitutes the transaction of business need not be connected to the subject matter of th[e] suit." *Id*. The Eighth Circuit has not yet adopted either interpretation.

Weichert urges the Court to adopt the narrower, "integrated" approach to interpreting Section 12. (Doc. #312, pp. 9-10, Doc. #314, pp. 15-16.) Weichert argues venue is improper because Weichert is not "'found' in this District and do[es] not 'transact business' there." (Doc. #312, p. 10, Doc. #314, p. 16.) Additionally, Weichert claims that referral income was "de minimis" and "does not equate to 'substantial business' for purposes for Section 12 venue." (Doc. #312, p. 10, Doc. #314, p. 16.) Further, Weichert contends that venue is improper under § 1391 due to Weichert's lack of "substantial business transactions within this District." (Doc. #313, p. 11, Doc. #314, p. 17.) Lastly, Weichert argues that they have insufficient minimum contacts with Missouri to support a finding of personal jurisdiction that satisfies Due Process.

Plaintiffs argue that venue is proper in the Western District of Missouri and therefore this Court has personal jurisdiction over Weichert in this District under both the broad and narrow interpretations of Section 12's personal jurisdiction provision. While Plaintiffs urge the Court to adopt the broad reading of Section 12, "even under the narrower, 'integrated' approach to Section 12 of the Clayton Act . . . venue is proper in this District[.]" (Doc. #568, p. 6.)

5

Case 4:23-cv-00788-SRB     Document 604     Filed 12/30/24     Page 5 of 9

Plaintiffs argues that venue and thus personal jurisdiction are proper under the broad approach because both Weichert Co. and WREA are United States corporations, operating in the United States, with minimum contacts with the United States.[3] Further, Plaintiffs allege venue is proper under 28 U.S.C. § 1391 because "Plaintiffs were harmed in this District—they were overcharged commissions—due to [Weichert's] anticompetitive conduct and records relating to their claims are in this District." (Doc. #568, p. 8.) Plaintiffs allege this is "enough to establish venue, as this Court previously held in indistinguishable circumstances in *Burnett*." (Doc. #568, p. 8.)

Plaintiffs argue that venue and personal jurisdiction are proper under the narrower approach specifically to Defendant WREA because "WREA transacts business in this District, as it receives thousands of dollars from its franchisees in Missouri." (Doc. #568, p. 9.)

The Court need not adopt an interpretation of Section 12 because venue is proper and this Court has personal jurisdiction in accordance with both the broad and narrow reading. Under a broad reading of Section 12, Plaintiffs have plausibly established that a "substantial part of the events" giving rise to the claim occurred with three of the four named Plaintiffs selling homes within this District where they were injured by enforcement of anticompetitive conduct of which Weichert allegedly participated in. 28 U.S.C. § 1391. Accordingly, venue is proper in the Western District of Missouri under § 1391 and the Court has personal jurisdiction.

Narrowly, venue is proper in this District under Section 12's venue clause because Plaintiffs have made "a prima facie showing of jurisdiction" in their ample allegations of business transactions of WREA within this District. *Epps*, 327 F.3d at 647. Plaintiffs allege that

---

[3] Plaintiffs incorporate by reference their previous arguments urging this Court to adopt the independent or broad reading of the Clayton Act and to find that Weichert is subject to both venue and personal jurisdiction under a broad reasoning of Section 12 argued in their Combined Suggestions in Opposition to Defendants' Motions to Dismiss Based on Personal Jurisdiction And/Or Venue. (Doc. #443.)

6

WREA receives $25,000 as an initial fee from each franchisee, $12,500 for each additional franchisee office, "many other annual, monthly, and one-time fees," marketing fees, and the greater of 6% of the franchisee gross revenue or a minimum monthly continuing royalty. (Doc. #568, pp. 9-10.) Plaintiffs further allege that Weichert Co. and WREA have a "Cross-License" agreement in which marketing fees collecting from franchisees are "earmarked for spending in local markets like Western Missouri" and that Weichert's shared website is "used to generate customer leads to franchised Weichert offices in Missouri." (Doc. #568, p. 10.) Finally, Plaintiffs allege that WREA employs a Franchise Sales Director, "responsible for franchise sales and development in Missouri," who has traveled multiple times to Missouri. (Doc. #568, p. 10.) While WREA argues that their thousands of dollars in revenue are "de minimus," from the "point of view of the average businessman," it substantially supports a prima facie showing that Weichert transacted business within this District. *Acme Markets, Inc.*, 564 F.2d at 687; *Katz Drug Co.*, 6 F. Supp. at 212. Cumulatively, under the narrow interpretation, venue is proper under Section 12, WREA satisfies the standard of minimum contacts with the United States, and the Court has personal jurisdiction over WREA.

Plaintiffs next argue that the Court has proper venue and personal jurisdiction over Weichert Co. because "it dominates and controls its alter ego WREA." (Doc. #568, p. 13.)

Personal jurisdiction "can be properly asserted over a corporation if another is acting as its alter ego." *Epps*, 337 F.3d at 649. A corporation is an alter ego of another when "one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation." *Id*. "[A] court's assertion of jurisdiction is contingent on the ability of the plaintiffs to pierce the corporate veil." *Id*. If a case only involves "liability for violation of federal law," then "federal common law applies to the

7

determination of whether or not to pierce the corporate veil." *United States v. Dakota Wings Corp., Inc.*, 2005 WL 2218881, at *2 (D.S.D. Sept. 12, 2005).

Under the Eighth Circuit's two pronged approach, a corporate veil may be pierced "in the case of a corporation that (1) is controlled by another to the extent that it has independent existence in form only and (2) is used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud." *Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc.*, 104 F.3d 1050, 1055 (8th Cir. 1997). Under the first prong, courts consider "whether the entities share a business purpose, whether they share management and control, whether funds have been commingled, whether the entities share employees, [and] whether the entities transact with each other at arm's length[.]" *Iron Workers St. Louis Dist. Council Pension Tr. v. Samron Midwest Contracting, Inc.*, 2024 WL 1344808, at *6 (E.D. Mo. Mar. 29, 2024). However, "[n]o all embracing rule has been laid down under which the [alter ego] relationship between two corporations may be determined." *Epps*, 327 F.3d at 649. Under "federal common law, exercise of personal jurisdiction over an alleged alter ego requires application of a 'less onerous standard' than that necessary for equity to pierce the corporate veil for liability purposes." *CesFin Ventures LLC v. Al Ghaith Holding Co. PJSC*, 2022 WL 18859076, at *4 (S.D.N.Y. Dec. 10, 2022). "In the jurisdictional context, a plaintiff need only show that the 'allegedly controlled entity "was a shell" for the allegedly controlling party.'" *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 681 (S.D.N.Y. 2016) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

Upon review, the Court agrees with Plaintiffs' arguments. Under the Eighth Circuit's first prong, Plaintiffs have asserted both companies are owned by the same sole shareholder, have overlapping senior officers, share a website, share a corporate headquarters, use the same

8

job portal, and share extensive internal financial transactions resulting in possible undercapitalization of WREA.  Additionally, Plaintiffs have plausibly asserted that Weichert Co. controls the business model, allowing WREA to transact business under Weichert Co.'s trademarks under a Cross-License Agreement which emphasizes "compliance with [Weichert Co.'s] System is of the essence of this Agreement" and requires WREA's compliance on all "standards, specifications, requirements, procedures, and policies" instituted by Weichert Co. (Doc. #568, pp. 16-17.)  Under the second prong, Plaintiffs assert that "Weichert Co. used . . . WREA to insulate itself from antitrust claims arising from Weichert's requirements that its franchisees 'comply with the Code of Ethics of the National Association of Realtors at all times' and that its Weichert Sales Associates be members of the National Association of Realtors." (Doc. #568, p. 20.)  Therefore, the Court finds Plaintiffs have plausibly alleged that WREA is an alter ego of Weichert Co.  Thus, personal jurisdiction is proper over both WREA and Weichert Co.

## IV. CONCLUSION

Accordingly, it is ORDERED that Defendant Weichert Co.'s Motion to Dismiss (Doc. #311) and Defendant Weichert Real Estate Affiliates, Inc.'s Motion to Dismiss (Doc. #313) are DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: December 30, 2024