# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| DON GIBSON, LAUREN CRISS, and JOHN MEINERS, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 4:23-cv-00788-SRB |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) |  |
| NATIONAL ASSOCIATION OF REALTORS, COMPASS, INC., EXP WORLD HOLDINGS, INC., REDFIN CORPORATION, WEICHERT REALTORS, UNITED REAL ESTATE, DOUGLAS ELLIMAN, INC., and BERKSHIRE HATHAWAY ENERGY COMPANY, | ) ) ) ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

## SUGGESTIONS IN SUPPORT OF
## DEFENDANT BERKSHIRE HATHAWAY ENERGY COMPANY'S
## MOTION FOR RECONSIDERATION AND MOTION TO COMPEL ARBITRATION

December 31, 2024

Jeffrey J. Simon
Taylor Concannon Hausmann
**HUSCH BLACKWELL
LLP**
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
(816) 983-8000

Katherine B. Forrest (*pro hac vice*)
Andrew G. Gordon (*pro vice*)
Anna R. Gressel (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ....................................................................................................................... 1

I.    The Court Should Reconsider the Order Because It Did Not Consider Numerous
      Enforceable Arbitration and Class-Action Waiver Provisions and Because the
      Court's Own Holding Distancing BHE from HomeServices Requires Dismissal. ............ 1

II.   The Court Should Compel Arbitration as to Any Home Seller Who Signed an
      Arbitration or Mediation Agreement with a BHE Affiliate................................................. 9

III.  Should the Court Deny BHE's Motion to Compel Arbitration, the Court Should
      Stay this Litigation While BHE Appeals its Denial to the Eighth Circuit........................ 15

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arnold* v. *ADT Sec. Servs., Inc.*,
627 F.3d 716 (8th Cir. 2010) ...................................................................................1

*Ballou* v. *Asset Mktg. Servs., LLC*,
46 F.4th 844 (8th Cir. 2022) ...............................................................................9, 10

*Blackorby* v. *BNSF Ry. Co.*,
2018 WL 11193334 (W.D. Mo. Feb. 22, 2018) .....................................................2

*BOKF, N.A.* v. *BCP Land Co., LLC*,
2016 WL 951636 (W.D. Mo. Mar. 9, 2016)...........................................................8

*Broadway* v. *Norris*,
193 F.3d 987 (8th Cir. 1999) ..................................................................................1

*Brosnan* v. *Dry Cleaning Station Inc.*,
2008 WL 2388392 (N.D. Cal. June 6, 2008) ..........................................................4

*Carroll* v. *Leboeuf, Lamb, Greene & MacRae, L.L.P.*,
374 F. Supp. 2d 375 (S.D.N.Y. 2005).....................................................................12

*Catamaran Corp.* v. *Towncrest Pharmacy*,
864 F.3d 966 (8th Cir. 2017) ................................................................................11

*Coinbase, Inc.* v. *Bielski*,
599 U.S. 736 (2023)................................................................................................15

*Dominium Austin Partners, LLC* v. *Emerson*,
248 F.3d 720 (8th Cir. 2001) ................................................................................12

*Eckert/Wordell Architects, Inc.* v. *FJM Props. of Willmar, LLC*,
756 F.3d 1098 (8th Cir. 2014) .........................................................................10, 11

*Green* v. *SuperShuttle Int'l*,
653 F.3d 766 (8th Cir. 2011) ................................................................................11

*State ex rel. Hewitt* v. *Kerr*,
461 S.W.3d 798 (Mo. 2015) ..................................................................................12

*Howsam* v. *Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)..................................................................................................10

*Johnny* v. *Bornowski*,
2012 WL 1458090 (W.D. Mo. Apr. 26, 2012) ........................................1

*Kemp* v. *United States*,
596 U.S. 528 (2022) ........................................................................5

*Leonard* v. *Del. N. Cos. Sport Serv.*,
861 F.3d 727 (8th Cir. 2017) ..................................................4, 7, 14

*Lombardo's Ravioli Kitchen, Inc.* v. *Ryan*,
842 A.2d 1089 (Conn. 2004) ..............................................................8

*MegaForce* v. *Eng*,
2019 U.S. Dist. LEXIS 16495 (D. Minn. Feb. 1, 2019) ........................12

*Meierhenry Sargent LLP* v. *Williams*,
992 F.3d 661 (8th Cir. 2021) ............................................................15

*Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ........................................................................4

*Multi Serv. Tech. Sols., Inc.* v. *LifeShield, LLC*,
2019 WL 7597665 (W.D. Mo. May 9, 2019) ........................................4

*In re Remicade (Direct Purchaser) Antitrust Litig.*,
938 F.3d 515 (3d Cir. 2019) ..............................................................4

*Sitzer* v. *Nat'l Ass'n of Realtors*,
2020 WL 2787725 (W.D. Mo. Apr. 10, 2020) ....................................10

*Smith/Enron Cogeneration LP* v. *Smith Cogeneration Int'l, Inc.*,
198 F.3d 88 (2d Cir. 1999) ..............................................................12

*Zaks* v. *Tes Franchising*,
2004 WL 1553611 (D. Conn. July 9, 2004) ......................................14

**Statutes**

9 U.S.C. § 4 ........................................................................................9

9 U.S.C. § 16(a)(1)(B) ......................................................................15

9 U.S.C. § 206 ....................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................1

Fed. R. Civ. P. 12(f) ............................................................................1

iv

Fed. R. Civ. P. 59(e) ...................................................................................................................1

Fed. R. Civ. P. 60(b) ..............................................................................................................1, 5

N.D. Ill. Local Rule 3.2(a) .....................................................................................................8

Defendant Berkshire Hathaway Energy Company ("BHE") respectfully moves this Court for two separate forms of relief: (1) to reconsider and reverse its order, ECF No. 589 (the "Order"), denying BHE's Motion to Strike Class Allegations as to Arbitrating Class Members Under Fed. R. Civ. P. 12(f) and to Dismiss for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6), ECF No. 343 (the "Prior Motion")[1]; and separately, (2) to compel any home seller who signed an arbitration or mediation agreement with an affiliate of BHE to arbitrate those claims.[2]

## ARGUMENT

**I.     The Court Should Reconsider the Order Because It Did Not Consider Numerous Enforceable Arbitration and Class-Action Waiver Provisions and Because the Court's Own Holding Distancing BHE from HomeServices Requires Dismissal.**

Under Rule 60(b), a party can move for reconsideration of a prior order for any "reason that justifies relief," including to "correct manifest errors of law or fact." *Johnny* v. *Bornowski*, 2012 WL 1458090, at *1 (W.D. Mo. Apr. 26, 2012) (citing *Arnold* v. *ADT Sec. Servs., Inc.*, 627 F.3d 716 (8th Cir. 2010)). The Eighth Circuit has held that Rule 60(b) motions are properly directed "to a nonfinal order." *Broadway* v. *Norris*, 193 F.3d 987, 989 (8th Cir. 1999) (agreeing with District Court that motion for reconsideration of an order partially denying motion to dismiss "should be construed as a Rule 60(b) motion"). This Court has also found that it "has greater discretion to grant a motion to reconsider an interlocutory order than a motion to reconsider under Rules 59(e) or 60(b)," and motions to reconsider interlocutory orders are proper where a moving party "did not have a fair opportunity to argue the matter previously, and [] granting the motion is

---

[1] References to "ECF No." refer to filings in the *Gibson* litigation.  References to "*Sitzer* ECF No." refer filings in *Sitzer* v. *National Association of Realtors*, No. 19-CV-332 (W.D. Mo.).  All other references to "*Sitzer*" refer to the same litigation, and any associated appeals.

[2] In accordance with its earlier motion to dismiss for lack of personal jurisdiction and improper venue, BHE does not waive, and expressly reserves, its arguments that this Court lacks personal jurisdiction over BHE and that venue is improper. ECF No. 335.

necessary to correct a significant error." *Blackorby* v. *BNSF Ry. Co.*, 2018 WL 11193334, at *1 (W.D. Mo. Feb. 22, 2018) (Bough, J.).

Respectfully, the Court's Order contains significant and manifest errors of both fact and law.[3] As an initial matter, the Court failed to provide a ruling on an independent basis that BHE offered for dismissal: the absence of any plaintiff who is able to allege a single fact with regard to conduct by BHE. In addition, the Court's Order provided an interpretation of only a few of the numerous contracts containing arbitrability provisions that BHE had provided.

As the Court knows, this case concerns allegations of anticompetitive conduct in connection with real estate commissions for home sales. Central to the case is conduct involving real estate brokers, the National Association of Realtors, and home sellers. BHE is none of those things. BHE holds a portfolio of energy companies that provide power and clean energy resources in various locations across the country. It is neither a realtor nor a home seller. None of the named plaintiffs in *Gibson, et al.* v. *National Association of Realtors, et al.* purchased property from BHE or any entity associated with BHE, including HomeServices of America, Inc. ("HomeServices").[4]

The first basis for BHE's motion for reconsideration arises from the absence in the Court's Order of a specific ruling, separate and apart from arbitrability, to dismiss Plaintiffs' claims against BHE based on the lack of any plaintiff that has or is capable of making any allegations with regard to conduct by BHE. BHE had requested such a ruling. *See* Prior Motion at 26-27; Prior Reply at 8. BHE will not repeat those arguments here but incorporates them by reference. BHE respectfully reiterates its request for a ruling that no claim has been or can properly be asserted against BHE without a plaintiff who can claim an injury by BHE.

---

[3] BHE did not have a fair opportunity to argue the matter previously: BHE submitted hundreds of relevant arbitration agreements and requested oral argument. *See* Prior Motion at 1; 10-11. As described below, the Court did not consider the vast majority of these agreements and did not grant BHE an opportunity for argument.
[4] *See* Prior Motion at 26-27; ECF No. 495 at 12 (hereinafter, "Prior Reply").

The second basis for reconsideration is independent from the first and has two aspects: *first*, that the Court's ruling was limited to only "two versions" of the hundreds of different contracts BHE had placed before the Court, Order at 11, and *second*, that the Court's Order explicitly distanced BHE from HomeServices in a manner that requires dismissal.

The Court's Order with regard to contractual language used by HomeServices' subsidiaries, who are indirect subsidiaries of BHE, references only "two versions" of the contract in current use. Order at 11. In fact, the Prior Motion presented the Court with over *one hundred* exemplar contracts, representing a variety of agreements governed by the laws of over twenty different states. *See* ECF Nos. 345-2–345-42. More significantly, the Order found that "BHE does not have a sufficiently close relationship with Home Services" to cover arbitrability. Order at 12. This finding is inconsistent with Plaintiffs' basis for joining BHE in the first instance, which is that BHE purportedly is and/or was so identified with HomeServices that Plaintiffs could ignore corporate formalities separating the two, and confirms Plaintiffs' claims against BHE must fail. Consolidated Amended Class Action Complaint ("CAC") ¶¶ 38-39, 58, 60, 63, 65, 67, 73-74, 77, 79, 81-82, 84, 86. The sole basis for Plaintiffs' claims against BHE is based on BHE's identification with HomeServices to such an extent that the contracts HomeServices' subsidiaries signed with home sellers can be (according to Plaintiffs) held to create liability as to BHE. Plaintiffs' claims against BHE are based on BHE's purported lack of adherence to corporate form between BHE and HomeServices. *Id.* Based on Plaintiffs' own construction of their claims, BHE allegedly must have a sufficient identity with HomeServices' subsidiaries so as to be covered by their contracts. If, however, the Court has determined that BHE *does not* have a sufficiently close relationship, Order at 12, then there is no basis for claims against BHE to remain.

3

Contract interpretation is a legal issue for the Court. *Multi Serv. Tech. Sols., Inc.* v. *LifeShield, LLC*, 2019 WL 7597665, at *4 (W.D. Mo. May 9, 2019). Doubts about whether a dispute must be arbitrated "are resolved in favor of arbitration unless the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Leonard* v. *Del. N. Cos. Sport Serv.*, 861 F.3d 727, 730 (8th Cir. 2017) (citation omitted).

The Prior Motion presented **over one hundred** exemplar agreements with varying language used by HomeServices' subsidiaries and franchisees and their contractual counterparties across 26 states. *See* Exs. B-PP. Those agreements are grouped into three categories[5]:

- ***Category 1*: The Earlier Agreements.** BHE submitted with the Prior Motion over 100 forms of "Earlier Agreements" that were mostly executed before the rulings on arbitration in the *Sitzer* litigation, and which conveyed the parties' intention to arbitrate or mediate their disputes out of court. For example:
  - Some parties agreed to arbitrate "any dispute or claim arising out of or relating to this Agreement."
  - Some parties agreed to arbitrate "[a]ll controversies, claims, and other matters in question between the parties arising out of or relating to this Agreement or the breach thereof[.]"
  - Some parties agreed to arbitrate "[a]ll controversies, claims, and other matters in question[.]"
  - Some parties agreed to arbitrate "dispute[s], arising prior to or after a closing arising out o[f] or related to this Agreement[.]"
- ***Category 2*: The Long & Foster Agreements.** The Long & Foster Agreements, which BHE also submitted with the Prior Motion, contained language reflecting an intention to arbitrate. *See* Declaration of Anna R. Gressel in Support of BHE's Motion for Reconsideration and Motion to Compel Arbitration ("Gressel Declaration"), Ex. D[6] (showing language similar to the New Agreements and, prior to its adoption, language reflecting agreement to arbitrate claims that "arise[] from the Contract, the Transaction, and/or the services, advertising, disclosures, practices and procedures related to the Contract or the Transaction").[7] And at least one form of the Long & Foster Agreements

---

[5] Courts have recognized that arbitration clauses can cover antitrust disputes. *See, e.g., Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985); *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515 (3d Cir. 2019).

[6] References herein to "Ex." or "Exs." refer to exhibits attached to the Gressel Declaration.

[7] BHE also notes, as it did in the Prior Motion, that some of the agreements contain only mediation clauses, rather than arbitration clauses. Individuals who signed mediation clauses should resolve their disputes with BHE through

expressly provides that the "*[n]on-signatory parent or other affiliated companies* of Broker/Licensee shall have the benefit of electing to utilize this Agreement to Arbitrate Certain Disputes and to Waive Class Actions to the extent that a Claim is asserted against them," as is the case here. *See* Ex. TT at 7 (emphasis added).

- ***Category 3*: The New Agreements**  BHE also submitted with the Prior Motion exemplars of the "New Agreements," which were executed only *after* this Court's and one of the Eighth Circuit's rulings in *Sitzer*. Those agreements indicated an intention to arbitrate all disputes, covering any entity connected to HomeServices, using variations on the following language to describe the entities bound on the broker-side of the ledger: "Listing Company, its ultimate parent company, HomeServices of America, Inc., and their ***affiliates***, subsidiaries, employees, and agents are collectively referred to as 'Broker-Related Party.'" Ex. U (emphasis added); *see also* Ex. B (collecting forms of New Agreements).

Ex. C. The Order analyzed only "two versions of contract language" and incorrectly stated that the Eighth Circuit had already reviewed the first set of relevant provisions. Order at 11. In fact, the Eighth Circuit had reviewed only some. The Court's failure to consider each contract at issue here constitutes significant legal error, because many of the agreements relevant here (unreviewed by this Court) differ materially from the agreements considered in *Sitzer*. *Cf. Kemp* v. *United States*, 596 U.S. 528, 533–34 (2022) ("As a matter of text, structure, and history . . . a 'mistake' under Rule 60(b)(1) includes a judge's errors of law," and is not limited "to 'obvious' legal mistakes" but rather "covers all mistakes of law made by a judge[.]").

*First*, with respect to the Earlier Agreements and the Long & Foster Agreements (Categories 1 and 2), these agreements were used or available in 26 states and were governed by laws different from those that governed the agreements in *Sitzer*. Respectfully, by placing the agreements referring to different state laws before the Court, BHE did not waive—and the Court erred in suggesting that BHE waived—"any argument under any other state's law." Order at 11. Waiver is the intentional relinquishment of a right; by submitting these agreements BHE plainly did the opposite by specifically invoking coverage by provisions providing for arbitrability.

---

mediation and have indicated a desire not to address the instant dispute in court.  *See* Prior Motion at 11 n.5, 12 n.7; *Brosnan* v. *Dry Cleaning Station Inc.*, 2008 WL 2388392, at *1 (N.D. Cal. June 6, 2008) ("Failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal.").

*Second*, the premise of the Court's Order relating to the Earlier Agreements was that they had been ruled on by the Eighth Circuit. Order at 11. They had not. Although this Court and the Eighth Circuit addressed *some* of the language in *some* of the Earlier Agreements, many of the Earlier Agreements and the Long & Foster Agreements (Categories 1 and 2) were not addressed at all by either this Court or the Eighth Circuit. Indeed, not only were the overwhelming majority of the Earlier Agreements submitted with the Prior Motion outside the geographic scope of the *Sitzer* class and subject to different state laws, but the language and scope of many of these agreements differed materially from those before the Court in *Sitzer*. For example:

- An agreement from CTRE LLC reads: "All claims or controversies ***arising out of or related to this Agreement***, except for Our claim for commissions or fees or any claim which is less than the applicable small claims court limit, shall be submitted for binding arbitration[.]" Ex. QQ at 8-9 (emphasis added). That agreement, which <u>did not specifically limit the scope of the arbitration clause to the parties to the agreement</u>, was used for Massachusetts transactions. *Id.* at 2, 8. None of the agreements in *Sitzer* were governed by Massachusetts law.

- An agreement from Houlihan Lawrence, Inc. reads: "***Unless limited below, we must submit and resolve any dispute or legal or equitable claim ('Claim(s)') between us (including affiliates, employees, agents, and representatives of Houlihan Lawrence, Inc.) using binding arbitration*** conducted by the American Arbitration Association ('AAA') under its Real Estate Industry Arbitration Rules." Ex. RR at 8-9 (emphasis added). That agreement was used for Connecticut transactions. *Id.* at 2. None of the agreements in *Sitzer* were governed by Connecticut law.

- An agreement from Lovejoy Realty, Inc., d/b/a BHHS North Properties, reads: "***Any disputes, claims or controversies arising out of or related to this agreement or the relationship created thereby***, including but not limited to claims with a statutory basis or those arising from tort, which fall into the jurisdiction of small claims courts shall be resolved in the applicable small claims' courts. ***Any other such disputes, claims or controversies, including those involving the scope or applicability of this agreement to arbitrate, shall be determined by arbitration*** in Hudson, Wisconsin (or a mutually agreeable location) before a single arbitrator. . . . ***Neither party to this agreement shall be entitled to join or consolidate claims or disputes by or against the other, or to include in any arbitration any claim or dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in any private attorney general capacity.***" Ex. SS at 2-5 (emphasis added). The agreement was used for Wisconsin and potentially Minnesota transactions. *Id.* at 2. None of the agreements in *Sitzer* were governed by Wisconsin or Minnesota law.

The Court's failure to consider each contract at issue constitutes significant legal error. In *Sitzer*, the Court considered arbitration agreements that expressly applied to "*the parties*" to those agreements. *See, e.g. Sitzer* ECF No. 218 at 14 n.7 (describing an agreement requiring "the parties to this Contract" to arbitrate). In denying the HomeServices Defendants'[8] motion to compel, the *Sitzer* Court accordingly focused its inquiry on the scope of the "parties" able to enforce the relevant agreements. *See Sitzer* ECF No. 239 at 4 ("The words 'party' or 'parties' are used at least five additional times in the arbitration agreement"). By contrast, numerous of the arbitration provisions in Category 1—including in the agreements by CTRE LLC quoted above, and others[9]—do not purport to restrict arbitration to the "parties" to the agreement. Moreover, at least one of the Long & Foster Agreements expressly permitted the "[n]on-signatory parent or other affiliated companies" to enforce the arbitration and class waiver clauses. *See* Ex. HH.

Evaluating whether BHE can enforce these and other agreements accordingly requires a careful review of the particular contractual language in question, and cannot be determined on the basis of unrelated contractual language in *Sitzer*. Indeed, because these agreements nowhere purport to limit enforceability to "parties," they expressly leave open the possibility of non-party enforcement by BHE. The Court's failure to evaluate the language of these agreements—relying instead on the significantly narrower arbitration provisions in *Sitzer* that did expressly limit enforcement to parties—was far from harmless, and constituted significant, potentially case-dispositive legal error. BHE therefore respectfully asks the Court to reconsider the Order.[10]

---

[8] The "HomeServices Defendants" refers to HomeServices, HSF Affiliates, LLC, The Long & Foster Companies, Inc., and BHH Affiliates, LLC.

[9] Other agreements in which the arbitration provision does not limit enforceability to "parties" include that with Edina Realty, Inc., ECF No. 345-13A; Berkshire Hathaway HomeServices North Properties, ECF No. 345-14A; HomeServices of Nebraska, Inc., d/b/a Woods Bros Realty, d/b/a Home Real Estate, ECF No. 345-21A; and HSGA Real Estate Group, LLC d/b/a BHHS Georgia Properties, ECF No. 345-40A.

[10] Moreover, by leaving numerous versions of the relevant provisions unaddressed, the Order incorrectly resolves questions about the correct interpretation of those provisions *against* arbitration. *See Leonard*, 861 F.3d at 730.

*Third*, as to the New Agreements (Category 3), these agreements all contained language indicating that "[i]f the parties cannot resolve the Claims as set forth above, then, unless limited below, they must submit and resolve the Claims using binding arbitration conducted by the AAA under its Commercial Arbitration Rules . . . in effect on the date of this Agreement," unless there was a conflict between the agreement and those rules, or indicating that, in the alternative, the parties could use another arbitration provider and/or rules. *See, e.g.*, Ex. U at 22. This language makes the parties' intention to arbitrate clear, because all signatories expressly agreed to arbitrate or mediate disputes arising from, or related to, the agreements. If there is insufficient identity of interest between BHE and the contractual language to hold the parties to their agreement to arbitrate, then there is no basis to sue BHE in this Action in the first instance.

Moreover, the Court erred as a matter of law in finding that BHE cannot enforce the New Agreements listing HomeServices as the "ultimate parent company" of the relevant brokerages. Order at 11-12. The agreements at issue define "parties" to include "affiliates," which is a term that courts have extended to parents. *See* Ex. B; *see also* Prior Motion at 10-12; *BOKF, N.A.* v. *BCP Land Co., LLC*, 2016 WL 951636, at *8 (W.D. Mo. Mar. 9, 2016) (concluding "affiliate" has the meaning ascribed by *Black's Law Dictionary*, which includes "parents"); *Lombardo's Ravioli Kitchen, Inc.* v. *Ryan*, 842 A.2d 1089, 1096 (Conn. 2004) (finding that *Black's Law Dictionary* provided one of the "most apt dictionary definitions" for affiliate, which included "parents").[11] If the Order's holding is correct that "HomeServices is clearly identified as the 'ultimate parent company,' thereby excluding BHE as a party from the new licensing agreements and preventing BHE's enforcement of the agreements," then the contracting parties considered HomeServices to be the "ultimate parent" of the brokerages with whom the sellers contracted, and thus did not

---

[11] Moreover, at least one federal district court's local rules define "affiliates" to encompass parents. *See* N.D. Ill. Local Rule 3.2(a) (defining affiliate as "any entity or individual owning . . . 5% or more of a party.").

consider BHE as an entity with whom the sellers could have a cognizable dispute under the New Agreements. Order at 12. Given that all claims against HomeServices were released under the HomeServices settlement agreement, no plaintiff can proceed against BHE. *See* ECF No. 151; *Sitzer* ECF No. 1622 (approving HomeServices settlement).

## II.     The Court Should Compel Arbitration as to Any Home Seller Who Signed an Arbitration or Mediation Agreement with a BHE Affiliate.

As stated above, no named plaintiff contracted or transacted with BHE, HomeServices, or any associated entity, broker, or agent associated with them. *See* CAC ¶¶ 29-32. To the extent that some absent class member plaintiff did enter a home seller contract with any such entity, that contract would have likely contained such an arbitration provision. *See* ECF Nos. 345-2–345-42. BHE accordingly moves to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 4, 206, as to any claims against it in this matter since, in the absence of such a plaintiff, it is virtually inevitable that their claims would have arisen from a contract containing an explicit and mandatory agreement to arbitrate.

As the Court is aware, BHE's Prior Motion was directed towards striking class allegations, which would eliminate the ability for any person who entered a home seller contract with a BHE affiliate that contained an arbitration or mediation provision and/or a class action waiver to participate in any putative class certified by this Court in this Action. Once the Court denied BHE's motion, it became clear that there will be such class members, and thus the question of compelling arbitration became front and center. BHE is therefore left with no choice other than to move to compel arbitration in this Action as to any unnamed class members who signed such agreements.[12]

---

[12] BHE notes that in the Eighth Circuit, there was significant briefing in which *Sitzer* plaintiffs argued that compelling arbitration after class certification constituted a default-based waiver. BHE is therefore bringing this motion to compel arbitration at its earliest opportunity—that is, as soon as the Court denied BHE's motion to strike.

"When deciding whether to compel arbitration, this [C]ourt applies a two-part test: we must first consider whether a valid agreement to arbitrate exists. If a valid agreement exists, we then consider the scope of the agreement." *Ballou* v. *Asset Mktg. Servs., LLC*, 46 F.4th 844, 851 (8th Cir. 2022) (citation omitted). As a threshold matter, as discussed above in Part I and in BHE's Prior Motion, any putative class member who transacted with any BHE subsidiary or its affiliates may have signed agreements containing mandatory arbitration or mediation provisions. *See* Prior Motion at 9, 14. Plaintiffs have not disputed the validity of these agreements. *Cf. Ballou*, 46 F.4th at 851; ECF No. 7441 at 18-20. Plaintiffs also cannot dispute that the arbitration agreements plainly cover the very crux of the claims in this litigation, which concern the broker commissions that are the subject of those agreements. *See* Prior Motion at 19.

Rather, Plaintiffs' chief objection is that BHE supposedly cannot *enforce* these otherwise valid agreements because it is not a direct signatory to them. ECF No. 441 at 18-20. Where there is "clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator," the question of "[w]hether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory" is one for the arbitrator. *Eckert/Wordell Architects, Inc.* v. *FJM Props. of Willmar, LLC,* 756 F.3d 1098, 1100 (8th Cir. 2014) (citing *Howsam* v. *Dean Witter Reynolds, Inc*., 537 U.S. 79, 84-85 (2002)); *see also Sitzer* v. *Nat'l Ass'n of Realtors*, 2020 WL 2787725 (W.D. Mo. Apr. 10, 2020) ("Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability.") (citing *Howsam*, 537 U.S. at 84-85 (2002)). Because the question of enforceability is for the arbitrator—and, in any event, BHE is able to enforce these agreements to compel arbitration—the Court should grant BHE's motion to compel. The crux of Plaintiffs' claims relates to the home seller contracts that are fundamentally intertwined with the antitrust

allegations in this suit—and if BHE must litigate a case relating to those contracts, it would be inequitable *not* to allow BHE to enforce them. To find otherwise places BHE in between the proverbial rock and a hard place.

As BHE detailed in its Prior Motion, each arbitration agreement here contains broad delegation clauses generally requiring the arbitration of all disputes "related to" or "arising from" the agreements, including insofar as these agreements incorporate the AAA rules. *See* Prior Motion at 10-11, 17-19 (citing agreements); AAA R-7(a). Under Eighth Circuit law, such provisions indicate a clear and unmistakable intent to commit questions of arbitrability—including whether a nonsignatory can compel arbitration—to an arbitrator. *Eckert/Wordell*, 756 F.3d at 1099-100; *see also Green* v. *SuperShuttle Int'l*, 653 F.3d 766, 769 (8th Cir. 2011) (by incorporating AAA rules, "the parties agreed to allow the arbitrator to determine threshold questions of arbitrability.").

BHE respectfully submits that the Court erred in holding that questions of arbitrability should be decided by the Court. In particular, the Court's holding was based almost exclusively on *Catamaran Corp.* v. *Towncrest Pharmacy*, 864 F.3d 966, 970 (8th Cir. 2017). Order at 4. But *Catamaran* concerned a narrow "question of first impression" that is not present here: namely, "whether a court or an arbitrator should determine whether an arbitration agreement authorizes *class arbitration*." 864 F.3d at 969 (emphasis added). BHE is not seeking to compel class arbitration in this case. Instead, it is seeking to compel individual, bilateral arbitrations between itself and any putative class member that transacted with BHE's subsidiaries or affiliates under agreements requiring arbitration. Because *Catamaran*'s narrow holding—which concerns the "fundamental differences between bilateral and class arbitration," *id.*—does not apply here, the Court should follow the binding precedent in *Eckert/Wordell* to allow the arbitrator to determine whether BHE can enforce the agreements.

But even if this Court retains for itself the question of whether BHE can enforce the arbitration agreements, this Court should find that BHE can enforce the agreements to compel arbitration for two independent reasons. *First*, Plaintiffs' own allegations require a finding that BHE has the ability to compel arbitration as a nonsignatory. *Second,* the plain text of the agreements explicitly permits BHE's enforcement.

*First,* where a plaintiff treats signatory and nonsignatory entities "as a single unit in its complaint," that plaintiff cannot later "shield itself from arbitration" in arguing the nonsignatory lacks the right to invoke an arbitration agreement. *Smith/Enron Cogeneration LP* v. *Smith Cogeneration Int'l, Inc*., 198 F.3d 88, 98 (2d Cir. 1999). Accordingly, courts routinely permit nonsignatories to compel arbitration where those nonsignatories were treated as "operating as a single unit" with signatories to the agreement. *MegaForce* v. *Eng,* 2019 U.S. Dist. LEXIS 16495, at *1011 (D. Minn. Feb. 1, 2019); *see also Carroll* v. *Leboeuf, Lamb, Greene & MacRae, L.L.P.,* 374 F. Supp. 2d 375, 377-78 (S.D.N.Y. 2005) ("[T]he amended complaint lumps [signatory and nonsignatory defendants] together under the sobriquet 'Promoters' and treats them throughout as a unit. . . . [P]laintiffs' attempt to avoid arbitration by pointing to their distinctness is unpersuasive."); *Dominium Austin Partners, LLC* v. *Emerson*, 248 F.3d 720, 728 (8th Cir. 2001) ("It would be inequitable to allow appellants to claim that these parties are liable for failure to perform under a contract and at the same time to deny that they are contractual parties in order to avoid enforcement of the arbitration clause."); *State ex rel. Hewitt* v. *Kerr*, 461 S.W.3d 798, 814-15 (Mo. 2015) (declining to treat signatories and nonsignatories "severally for arbitration purposes but jointly for all other purposes").

Here, Plaintiffs' entire theory against BHE rests on Plaintiffs' allegations of the close relationship between BHE and the entities that are the signatories to the relevant agreements. *See*

*supra* Section I; Prior Motion at 12-14. Though BHE disagrees with Plaintiffs' attempts to escape basic principles of corporate separateness, Plaintiffs must be held to the fundamental allegations underlying their Complaint, and BHE must accordingly be permitted to compel arbitration of the agreements as a nonsignatory.

In refusing to treat BHE and its affiliated entities as a "single unit," the Court rested its reasoning exclusively on its prior holding in *Sitzer*. Order at 12. This was erroneous. In *Sitzer,* the Court considered the relationship between *HomeServices*—not BHE—and the signatory broker entities. In *Sitzer*, unlike here, plaintiffs' theory of liability against HomeServices did not rise and fall on the alleged identity between HomeServices and the signatories. Instead, the *Sitzer* plaintiffs made direct allegations of HomeServices' independent participation in the alleged conspiracy. *See* CAC ¶¶ 74-84. However, even if the *Sitzer* plaintiffs did not sufficiently allege a "single unit" between the nonsignatory defendant and signatory brokers in *Sitzer*, Plaintiffs undoubtedly do so here. Indeed, as detailed *supra* and in BHE's Prior Motion, virtually *all* of Plaintiffs' allegations concerning BHE in this Action rest on Plaintiffs' theory of BHE's control of, and identity with, the HomeServices entities. *See* CAC ¶¶ 38-39, 58, 60, 63, 65, 67, 73-74, 77, 79, 81-82, 84, 86. But if the Court is correct that BHE is ***not*** identical with HomeServices or its subsidiaries, *see* Order at 12, then it is clear that no single person transacted with BHE by means of the agreements, and thus, ***no putative plaintiff has standing to sue BHE***. *See supra* Section I. Accordingly, Plaintiffs' claims against BHE must either be subject to arbitration—or they must fail as a matter of law.

*Second,* as discussed above, the plain text of many of the agreements expressly contemplates enforcement by the signatories' "affiliates," including BHE. *See supra* at 11-12; Prior Motion at 11-12. The Court declined to find that BHE was an "affiliate," but nowhere addressed the fact that case law, dictionary usage, and widespread corporate practice contemplates

"affiliates" to include "a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." Prior Motion at 12. BHE is undisputedly a parent of HomeServices, which itself is a parent or affiliate of the signatory entities. Moreover, Plaintiffs have extensively alleged—and this Court has even stated—that BHE has "control" over HomeServices. CAC ¶ 47; Order on Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, ECF No. 590 at 9. Although BHE disputes as a factual matter that it exerts "control" over HomeServices, it is undoubtedly HomeServices' corporate affiliate. But even if the meaning of "affiliate" as used in the agreements were ambiguous—and it is not— the Court erred by adopting a definition that *disfavors* arbitration, contrary to well-established precedent. *See Leonard*, 861 F.3d at 730.

Additionally, as discussed further in Section I, *supra*, in denying BHE's motion to strike, the Court failed to consider the language of additional Earlier Agreements submitted with the Prior Motion, the majority of which are subject to the laws of different states and do not purport to restrict arbitration to the "parties" to the agreement. For example, courts have held that Connecticut law allows nonsignatories to compel arbitration as to disputes relating to an arbitration agreement that is not expressly limited to the parties to that agreement. *See Zaks* v. *Tes Franchising*, 2004 WL 1553611, at *7 (D. Conn. July 9, 2004) (nonsignatory could compel arbitration with signatory). Here, enforcement by BHE is similarly proper under any such relevant state laws.

Because both parts of the "two-part" test to compel arbitration are met in this case—the existence of valid arbitration agreements that cover the scope of the claims in the litigation—the Court should grant BHE's motion to compel.

**III.** **Should the Court Deny BHE's Motion to Compel Arbitration, the Court Should Stay this Litigation While BHE Appeals its Denial to the Eighth Circuit.**

Should the Court deny BHE's motion to compel arbitration, BHE respectfully requests that the Court stay proceedings in this litigation as to BHE pending BHE's appeal of such denial to the Eighth Circuit. The FAA allows a party to immediately appeal a district court order denying a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(B); *Coinbase, Inc.* v. *Bielski*, 599 U.S. 736, 740 (2023); *Meierhenry Sargent LLP* v. *Williams*, 992 F.3d 661, 665 (8th Cir. 2021) (stating that orders under FAA Section 16(a) are "interlocutory orders that we have the authority to immediately review"). Should the Court deny BHE's motion to compel arbitration, BHE intends to appeal this denial to the Eighth Circuit. Supreme Court precedent requires that the district court stay the litigation while such an appeal is pending. *See Coinbase*, 599 U.S. at 747 (holding that district court "was required to stay its proceedings" during the pendency of an appeal of its denial of a motion to compel arbitration, because an interlocutory appeal "divests the district court of its control over those aspects of the case involved in the appeal.").

## CONCLUSION

Based on the foregoing considerations, BHE respectfully requests that this Court reconsider its Prior Order and:

1. Find that no action can be maintained against BHE because there is no named plaintiff that has or could have a claim against BHE or any entity associated with BHE;

2. Find that language in a number of the contracts was not previously considered by this Court or the Eighth Circuit, and that such contracts both waive class actions and require any disputes be arbitrated;

3. Compel arbitration of any disputes by putative class members who are subject to arbitration or mediation agreements with any BHE subsidiaries or affiliates; and

4. In the event the Court denies the motion to compel arbitration, stay this litigation as to BHE until the Eighth Circuit has the opportunity to consider an appeal of such order.

Dated: December 31, 2024
/s/ Taylor Concannon Hausmann

**HUSCH BLACKWELL LLP**
Jeffrey J. Simon, MO #35558
Taylor Concannon Hausmann, MO #67056
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
Jeff.Simon@huschblackwell.com
Taylor.Hausmann@huschblackwell.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew G. Gordon (*pro hac vice*)
Katherine B. Forrest (*pro hac vice*)
Anna R. Gressel (*pro hac vice*)
Yotam Barkai (*pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
agordon@paulweiss.com
kforrest@paulweiss.com
agressel@paulweiss.com

*Attorneys for Defendant Berkshire Hathaway Energy Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on December 31, 2024, on all counsel of record by virtue of the Court's CM/ECF system.

/s/ Taylor Concannon Hausmann