IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DON GIBSON, LAUREN CRISS, JOHN MEINERS, and DANIEL UMPA, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 23-cv-00788-SRB ) |
| THE NATIONAL ASSOCAITION OF REALTORS, et al., | ) ) ) ) |
| Defendants. | ) |

**ORDER**

On January 8, 2025, this Court denied eXp World Holdings, Inc. and eXp Realty, LLC (collectively "eXp") and Weichert Co. and Weichert Real Estate Affiliates, Inc.'s (collectively "Weichert") Motion for Reconsideration and ordered the production of non-privileged mediation and settlement related documents for *in camera* review (Doc. #621). Plaintiffs had sought discovery to provide plausible evidence of a potential reverse auction - pitting "various class counsel against one another [by] agreeing to settle with the lawyer willing to accept the lowest bid on behalf of the class." *China Agritech, Inc. v. Resh*, 584 U.S. 732, 754 (2018).

An *in camera* review indicates some evidence that may give rise to plausible evidence of a potential reverse auction. For example, on October 1, 2024, Weichert offered a settlement of $13,000,000 with the *Gibson* Plaintiffs. On October 7, 2024, - four business days later - Weichert's counsel affirmatively reached out to *1925 Hooper LLC, et al. v. The National Association of Realtors, et al.* ("*Hooper*") plaintiffs' counsel to begin settlement negotiations.[1]

---

[1] *Hooper* is currently pending before Judge Cohen in the United States District Court of Northern District of Georgia.

On October 31, 2024, counsel for plaintiffs in *Hooper* offered to settle for an amount that "represents a savings of more than $40m - $75M as compared to what it would cost Weichert to opt in to the NAR settlement." The "NAR settlement" has previously defined in the settlement demand as the case pending in the Western District of Missouri. Weichert's mediation statement of November 1, 2024, in *Hooper* discusses allegedly erroneous rulings in the *Sitzer et al. v. National Association of Realtors et al.* litigation that "are unlikely to be adopted by other district courts." Mediation was conducted on November 5, 2024, settlement terms were reached, and Weichert agreed to pay $8,500,000 in the *Hooper* case, or $4,500,000 less than previously offered in the *Gibson* case.

The eXp documents are also revealing. An unsuccessful mediation in *Gibson* was conducted on April 3, 2024, with Mr. Greg Lindstrom. On May 7, 2024, eXp counsel affirmatively emailed *Hooper* plaintiffs' counsel to begin settlement negotiations. A separate email on that same day from plaintiffs' counsel, related to staying deadlines in *Hooper*, discussed staying the case against defendants that had settled in *Gibson*, and whether the *Hooper* plaintiffs would agree to continue a stay so other defendants "could opt in to that [*Gibson*] settlement." Mr. Lindstrom followed up with the *Gibson* Plaintiffs' counsel on May 24, 2024, with a summary that at mediation Plaintiffs were in the $60-90M range, eXp was in the $25-35M range, and Mr. Lindstrom was trying to get a resolution in the $40Ms. Mr. Lindstrom followed up again with *Gibson* Plaintiffs' counsel on June 17, 2024. As Mr. Lindstrom was talking to *Gibson* Plaintiffs' counsel, he was also talking to eXp's counsel. Numerous emails and phone calls between the *Gibson* mediator and eXp's counsel were exchanged between May 20, 2024, and June 23, 2024. It seems clear that eXp was negotiating with two groups of plaintiff's counsel simultaneously for the same nation-wide class action.

On August 23, 2024, plaintiffs' counsel in *Hooper* emailed eXp's counsel a demand that "represent[s] a savings of more than $8 billion, or more than 70%, as compared to what it would cost eXp to opt in to the NAR settlement." The September 6, 2024, response from eXp's counsel states "[a]s a defendant in *Gibson*, eXp was not permitted to opt-in to the NAR settlement. Neither would eXp ever have ever wished to do so." The *Hooper* plaintiffs' mediation statement, dated September 27, 2024, discusses the *Burnett* verdict, the NAR settlement, and the subsequent *Gibson* settlements. The eXp mediation statement in *Hooper*, dated September 27, 2024, discussed the *Burnett* settlements, the *Gibson* settlements, and that the *Gibson* "settlements make a future trial against eXp much harder for the *Hooper* plaintiffs to win." The mediation of October 1, 2024, resulted in a settlement in *Hooper* for $34M. On October 7, 2024, Plaintiffs' counsel in *Gibson* emailed plaintiffs' counsel in *Hooper* that eXp "was sitting on $108M in cash and an additional $85M in cash equivalents as of June 30, 2024. $34M is 17% of cash/cash equivalents. Huh?" *Hooper* counsel responded that same day that "[w]e thought the settlement was fair and reasonable and a very good deal for the class." October 9, 2024, Mr. Lindstrom mistakenly congratulated the *Gibson* Plaintiffs' counsel on settling with eXp.

"In class action lawsuits, '[b]eyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed.'" *Jones v. Casey's General Stores*, 517 F.Supp.2d 1080, 1084 (S.D. Iowa 2007) (citing to *In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir.1995)). This duty belongs to both plaintiffs' counsel in *Hooper* and *Gibson*. Both sets of counsel owe a duty to the entire class – in this case the entire nation – to look out for the class's best interest. The *Hooper* plaintiffs' counsel owe a duty to get best result for the potential class; the *Gibson* Plaintiffs' counsel owe a duty to potential class to investigate any potential reverse auctions.

Accordingly, Weichert is ordered to produce within five days documents 49 – 129 under seal to plaintiffs' counsel.  Documents 1 – 48 are relate to *Gibson* and are already in possession of Plaintiffs' counsel or not relevant to the issue of a reverse auction.  eXp did not in any way divide the binders full of documents and is ordered to produce within five days all three binders under seal to Plaintiffs' counsel.  Plaintiffs' counsel is ordered to produce their binder and affidavit within five days under seal to Defendants' counsel.  The parties are encouraged to meet and confer on the best path forward for discovery on possible plausible evidence of a potential reverse auction, including Rule 30(b)(6) depositions.  The parties are encouraged to follow L.R. 37 on any disputes.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: January 17, 2025