IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DON GIBSON, LAUREN CRISS, JOHN MEINERS, and DANIEL UMPA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ASSOCIATION OF REALTORS, ET AL.,<br><br>Defendants. | Case No. 4:23-cv-00788-SRB<br>[Consolidated with 4:23-cv-00945-SRB]<br><br>Hon. Stephen R. Bough |

## NOTICE OF PENDING SETTLEMENT AND MOTION TO STAY CASE AS TO DEFENDANT CRYE-LEIKE, INC. WITH INCORPORATED SUGGESTIONS IN SUPPORT

**Marcus Angelo Manos** (*Pro hac vice*)
MManos@maynardnexsen.com
**MAYNARD NEXSEN PC**
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: (803) 771-8900
Facsimile: (803) 253-8277

**Carl S. Burkhalter** (*Pro hac vice*)
cburkhalter@maynardnexsen.com
**MAYNARD NEXSEN PC**
1901 Sixth Avenue N, Suite 1700
Birmingham, AL 35203
Telephone: (205) 254-1081
Facsimile: (205) 254-1991

**Alexandra Harrington Austin** (*Pro hac vice*)
aaustin@maynardnexsen.com
**MAYNARD NEXSEN PC**
205 King Street, Suite 400
Charleston, SC 29401
Telephone: (843) 579-7827
Facsimile: (843) 414-8227

**Joseph C Blanton, Jr.**
jblanton@blantonlaw.com
**Thomas W. Collins, III**
tcollins@blantonlaw.com
**Diedre A Peters**
dpeters@blantonlaw.com
**Mark D. Blanton**
mblanton@blantonlaw.com
**Shaune D. Hanschen** (*Pro hac vice*)
shanschen@blantonlaw.com
**Blanton, Nickell, Collins, Douglas, Hanschen & Peters, LLC**
219 South Kingshighway
P.O. Box 805
Sikeston, MO 63801
Telephone: (573) 471-1000
Fax: (573) 471-1012

*Attorneys for Defendant Crye-Leike, Inc.*

# TABLE OF AUTHORITIES

**Cases**

*Advanced Internet Techs., Inc. v. Google, Inc.*, Nos. C-05-02579 RMW, C-05-02885 RMW, 2006 WL 889477 (N.D. Cal. Apr. 5, 2006) ........................ 9

*Ali v. Wells Fargo Bank, N.A.*, No. CIV-13-876-D, 2014 WL 819385 (W.D. Okla. Mar. 3, 2014) ................................................................................. 9

*Arnold v. LME, Inc.*, 650 F. Supp.3d 772 (D. Minn. 2023) ...................................... 7

Bates v. Bankers Life and Cas. Co., 993 F. Supp.2d 1318 (D. Or. 2014) ................. 7

*Burnett v. Nat'l Ass'n of REALTORS®*, No. 4:19-CV-332 (W.D. Mo.) ... 3, 4, 10, 11

*Contracting Nw., Inc. v. City of Fredricksburg*, 713 F.2d 382 (8th Cir. 1983) ......... 9

*Cottrell v. Duke*, 737 F.3d 1238 (8th Cir. 2013) ....................................................... 9

*Goellner-Grant v. Platinum Equity* LLC, 341 F.Supp.3d 1022 (E.D. Mo. 2018) .................................................................................................................. 6

*Great West Cas. Co. v. Travelers Idem. Co.*, 925 F. Supp. 1455 (D.S.D. 1996) .................................................................................................................. 7

*In Re Enterprise Rent-a-Car Wage & Hour Employment Practices Lit.*, 735 F. Supp.2d 277 (W.D. Pa. 2010) ....................................................................... 7

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 99 F. Supp. 3d 288 (E.D.N.Y. 2015) ............................................................................... 9, 10

*In re RC2 Corp. Toy Lead Paint Prods. Liab. Litig.*, No. 07 C 7184, 2008 WL 548772 (N.D. Ill. Feb. 20, 2008) ................................................................ 9

*Moehrl v. Nat'l Ass'n of REALTORS®*, No. 1:19-CV-1610 (N.D. Ill.) ..................... 3

*Radaszewski v. Telecom. Corp.*, 981 F.2d 305 (8th Cir. 1992) ................................. 7

*Schwarz v. Prudential-Bache Secs., Inc.*, Civ. A. No. 90-6074, 1991 WL 137157 (E.D. Pa. July 19, 1991) ................................................................... 10

Defendant Crye-Leike, Inc. hereby notifies the Court that on March 15, 2024, the National Association of Realtors® reached a settlement (the "NAR Settlement" or "Settlement") with plaintiffs Rhonda Burnett, Jerod Breit, Jeremy Keel, Hollee Ellis, Frances Harvey, Christopher Moehrl, Michael Cole, Steve Darnell, Jack Ramey, Daniel Umpa, Jane Ruh, Don Gibson, Lauren Criss, and John Meiners ("Plaintiffs"), who filed suit in the above captioned action and in the cases captioned *Burnett v. Nat'l Ass'n of REALTORS®*, No. 4:19-CV-332 (W.D. Mo.) ("*Burnett*") and *Moehrl v. Nat'l Ass'n of REALTORS®*, No. 1:19-CV-1610 (N.D. Ill.) , both individually and as representatives of one or more alleged classes of home sellers. Plaintiffs likewise executed the NAR Settlement both individually and on behalf of the "Settlement Class", which includes "all persons who sold a home that was listed on a multiple listing service anywhere in the United States where a commission was paid to any brokerage in connection with the sale of the home in the [relevant] date ranges." *Burnette*, Ex. A to ECF No. 1458-1, at ¶ 21. <u>The terms of the NAR Settlement wholly release certain brokerages—including Defendant Crye-Leike, Inc.—from any and all liability to Plaintiffs and members of the Settlement Class.</u>

On November 27, 2024, in *Burnett*, this Court granted final approval of the NAR Settlement. *Burnett*, ECF No. 1622. Objectors to the order subsequently filed multiple Notices of Appeal (*see*, *e.g.*, *Burnett*, ECF Nos. 1624, 1630, 1632,

1

and 1638), and their appeals are currently pending before the Eighth Circuit Court of Appeals. This case should be stayed as to Defendant Crye-Leike, Inc. until the Eighth Circuit issues a final decision on all such appeals and until the ultimate resolution of the NAR Settlement approval process.

## I. DEFENDANT CRYE-LEIKE, INC. IS A RELEASED PARTY PURSUANT TO THE TERMS OF THE NAR SETTLEMENT.

The NAR Settlement is a nationwide class settlement that, if upheld, would preclude the claims brought against Defendant Crye-Leike, Inc. in this matter. The Settlement provides that "Released Parties" are released from liability for "all claims that Plaintiffs and Settlement Class members have or could have asserted against [them]." *Burnette*, ECF. No. 1458-1 Ex. A at p.2. The definition of "Released Parties" includes "[a]ny real estate brokerage with a calendar year 2022 Total Transaction Volume for residential home sales of $2 billion or less." *Id.* at ¶ 18. "Total Transaction Volume" is determined by reference to the 2023 T3 Sixty Real Estate Almanac (the "Almanac"). *Id.* at ¶ 25.

Crye-Leike is only in the position of defending this lawsuit because the T3 Sixty Report Form requests information for only two types of brokerages. The form requested three items: total sales volume, number of agents, and transaction sides closed. The form provided a line for company owned brokerages and a second line for franchised brokerages. The Controller did as she did every year

3

and grouped together the transactions volume, transactions size, and agents of the six independent Crye-Leike owned companies

The figure reported in the Almanac under the heading "Crye-Leike," reflects the collective Total Transaction Volume for all six independent companies. Five, using the Crye-Leike brand, provide full service agreements to listing homeowners and potential buyers. The sixth, Adaro Realty, Inc., operates on an unbundled fee for service model. But there is no such entity as "Crye-Leike." Rather, as Defendant Crye-Leike, Inc. explained in its prior motions before this Court, "Crye-Leike Real Estate Services" is an assumed name/trade name registered in various jurisdictions. The "Crye-Leike" trademark is used by five independent corporations[1] owned by Harold Crye. A sixth independent corporation owned by Mr. Crye provides unbundled listing and buyer services in the residential real estate market charging per service and does not use the Crye-Leike brand or marks. Ex. 1, Decl. of Steve A. Brown, ¶ 2. A seventh independent corporation owned by Mr. Crye, Crye-Leike Franchises, Inc., franchises the Crye-Leike marks, forms, business materials and operational processes to full service real estate brokerages. Suppl. Decl. of Robert Robinson ¶¶ 2, 3 and 5, ECF No. 640-1. The Crye-Leike Entities are independent corporations: They are not subsidiaries or divisions of

---

[1] Crye-Leike, Inc., Crye-Leike of Arkansas, Inc., Crye-Leike of Mississippi, Inc., Crye-Lekie of Nashville, Inc., and Crye-Leike South, Inc. Suppl. Decl. of Robert Robinson ¶¶ 2-4, ECF No. 640-1.

one another. *Id*. at 3. Each operates with its own management team and sets policies and goals based on the markets it serves. *Id*. ¶ 6. Each keeps separate accounting records and files its own tax return. *Id*. ¶ 7.

Other than their use of the name "Crye-Leike," only two things connect the companies. Harold Crye owns 100% of the common stock in each. *Id*. ¶ 8. Crye-Leike, Inc. provides accounting support, human resources, information technology, in-house legal, and group procurement services for the others. *Id*. ¶ 9. Each year, Crye-Leike of Nashville, Inc., Crye-Leike of Arkansas, Inc., Crye-Leike of Mississippi, Inc., Crye Leike South, Inc., Crye-Leike Franchises, Inc., and Adaro Realty, Inc. pay fees to Crye-Leike, Inc. to compensate Crye-Leike, Inc. for the support services it provides. *Id*. ¶ 10. The Crye-Leike Entities may not be treated collectively or interchangeably for liability purposes.

Another corporation can only be subjected to personal jurisdiction based upon a related corporation's acts if the corporation outside the forum exercises total control and improperly uses the corporation acting in the forum. *Goellner-Grant v. Platinum Equity* LLC, 341 F.Supp.3d 1022, 1028-29 (E.D. Mo. 2018). This is true even for a wholly owned subsidiary, *Id*. At 1029, a much tighter relationship than in this case. The same test applies before independent corporations can be combined for legal purposes. Integrated marketing and sales materials fail to establish the necessary control. *Id*.; *see also*, *In Re Enterprise*

5

*Rent-a-Car Wage & Hour Employment Practices Lit*., 735 F. Supp.2d 277, 323 (W.D. Pa. 2010) (use of integrated sales system, integrated IT and HR departments, common marketing images, and joint use of trademarked logos fail to establish an alter-ego where none of these things demonstrate high-level operational control over a subsidiary); *Bates v. Bankers Life and Cas. Co*., 993 F. Supp.2d 1318, 1335-1336 (D. Or. 2014) (oversight of marketing activities alone cannot establish specific jurisdiction).

Similarly, commonly owned but independent corporations are not held liable for the other's wrongful acts unless the claimant can show the wrongful action is an alter-ego of the other company. In order to exclude Crye-Leike from the release, the Plaintiffs must show the group of companies acted as a single entity or alter-egos so that they should be viewed collectively, not individually. Where corporations act at arms-length, pay one another for resources used, and operate independently, common ownership and shared officers will not be enough for them to be treated as a single entity. *Arnold v. LME, Inc.*, 650 F. Supp.3d 772, 781-82 (D. Minn. 2023). Only when one corporation exercises actual, participatory, and total control over another a second, will a court treat the second corporation as an instrumentality and combine them for legal purposes. *Great West Cas. Co. v. Travelers Idem. Co.*, 925 F. Supp. 1455, 1463-64 (D.S.D. 1996); *See Radaszewski v. Telecom. Corp.*, 981 F.2d 305, 306 (8th Cir. 1992).

Plaintiffs do not allege and cannot prove the type of total control needed to treat Crye-Leike, Inc. as just an instrumentality of a larger entity with more the $2B in total transaction volume.

The Controller for Crye-Leike, Inc., with input from the President of Residential Sales and the General Manager of each Crye-Leike Entity, provides T3 Sixty with a list of residential transaction volume for each and a total for all. Decl. of Steven A. Brown ¶¶ 4 – 5 and Ex. A. T3 Sixty determines how to present the information and, in 2023, grouped together all the companies' transactions. *Id.* ¶ 6 and Ex. A. The clerical process of totaling company owned brokerage sales cannot create a unified entity.

Defendant Crye-Leike, Inc.—<u>the sole Crye-Leike Entity named as a defendant in this action</u>—had less than $2 billion in residential transaction volume for 2022. Crye-Leike, Inc. had a total residential transaction volume of $1,745,601,747 for 2022. *Id.* ¶ 8. Mr. Brown, President for Residential Sales and MLS broker-in-charge for Crye-Leike, Inc. markets, belongs to the National Association of REALTORS®. *Id.* ¶¶ 10, 11 and 12. Defendant Crye-Leike, Inc. satisfies the definition of a "Released Party" under the terms of the NAR Settlement. *Burnett/Sitzer*, ECF No. 1458-1 Ex. at 16-17.

## II. THE COURT SHOULD NOT REQUIRE A DEFENDANT TO CONTINUE LITIGATING CLAIMS RELEASED BY A CLASS ACTION SETTLEMENT PENDING APPROVAL.

It is a "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013) ; *see also Contracting Nw., Inc. v. City of Fredricksburg*, 713 F.2d 382, 387 (8th Cir. 1983) (noting that a district court has "inherent power to grant [a] stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it"). Courts routinely exercise the power to grant stays where "a pending nationwide settlement could impact the claims in the case before them." *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 99 F. Supp. 3d 288, 315 (E.D.N.Y. 2015) (internal citations omitted); *see also Ali v. Wells Fargo Bank, N.A.*, No. CIV-13-876-D, 2014 WL 819385, at *3 (W.D. Okla. Mar. 3, 2014) (granting stay pending settlement in parallel action); *In re RC2 Corp. Toy Lead Paint Prods. Liab. Litig.*, No. 07 C 7184, 2008 WL 548772, at *5 (N.D. Ill. Feb. 20, 2008) (granting stay pending final approval of settlement of action involving similar putative classes and claims); *Advanced Internet Techs., Inc. v. Google, Inc.*, Nos. C-05-02579 RMW, C-05-02885 RMW, 2006 WL 889477, at *2 (N.D. Cal. Apr. 5, 2006) (granting stay of two federal putative class action lawsuits pending the resolution of a substantially similar class action in state court in which

8

Case 4:23-cv-00788-SRB   Document 666   Filed 02/05/25   Page 9 of 14

settlement negotiations were ongoing); *Schwarz v. Prudential-Bache Secs., Inc.*, Civ. A. No. 90-6074, 1991 WL 137157, at *1 (E.D. Pa. July 19, 1991) (granting stay where parties in class action of which plaintiff was potential member had "reached an agreement in principle to settle all claims that class members may have."). In this matter, the NAR Settlement "could impact the claims in the case before [this Court]," *see In re HSBC Bank*, 99 F. Supp. 3d at 315, as the NAR Settlement covers claims that are substantially similar to those of the class asserted in the present case.

> Plaintiffs define the class in this action:
>
> All persons in the United States who, from December 27, 2019, through the present, used a listing broker affiliated with any Corporate Defendant in the sale of a home listed on an MLS, and who paid a commission to a cooperating broker in connection with the sale of the home, except as provided below.

(Consolidated Am. Class Action Compl., at ¶ 246, ECF No. 232). In *Burnett*, the Third Amended Class Action Complaint identifies three classes of plaintiffs. The "Subject MLS Class" includes:

> All persons who, from April 29, 2015 through the present, used a listing broker affiliated with Home Services of America, Inc., Keller Williams Realty, Inc., Realogy Holdings Corp., RE/MAX, LLC, HSF Affiliates, LLC or BHH Affiliates, LLC, [the "Corporate Defendants"] in the sale of a home listed on the Heartland MLS, Columbia Board of Realtors, Mid America Regional Information System, or the Southern Missouri Regional MLS, [the "Listing Services"] and who paid a commission to the buyer's broker in connection with the sale of the home.

(*Burnett*, ECF No. 759, at ¶ 118). The "MMPA Class" includes:

> All persons who, from April 29, 2014 through the present, used a listing broker affiliated with [the Corporate Defendants], in the sale of a residential home in Missouri listed on the [Listing Services], and who paid a commission to the buyer's broker in connection with the sale of the home.

*Id.* at ¶ 119. The "Missouri Antitrust Law-Subject MLS Class" includes:

> All persons who, from April 29, 2015 through the present, used a listing broker affiliated with [the Corporate Defendants], in the sale of a home in Missouri listed on the [Listing Services], and who paid a commission to the buyer's broker in connection with the sale of the home.

*Id.* at 120. Because the classes alleged in *Burnett* include the class alleged in the present case, the NAR settlement, if approved, precludes the claims asserted against Crye-Leike, Inc. The Court should exercise its discretion to stay the claims against Crye-Leike, Inc.

## III. THE STAY OF THIS CASE AS TO DEFENDANT CRYE-LEIKE, INC. DOES NOT PREJUDICE PLAINTIFFS IN ANY WAY.

The plaintiffs in this action will suffer no prejudice from a stay of the claims against Crye-Leike. Inc. This case is in its early stages, with the Court denying various Defendants' motions to dismiss. (Orders denying Defendants' motions to dismiss, ECF Nos. 589, 590, and 604) The Court denied Defendants' motions to reconsider. (Orders denying Defendants' motions to reconsider, ECF Nos. 630, 641, and 648). Motions to reconsider and requesting certification of interlocutory appeals are pending. (ECF Nos. 606, 609, 625). Each Plaintiff in this case

accepted the NAR settlement and proposed its approval to this Court. On behalf of themselves and the settlement class in the NAR settlement, they agreed to accept the consideration in the NAR settlement and released all of the Released Parties, including Crye-Leike, Inc.

## CONCLUSION

The Court should enter an order staying this case as to Defendant Crye-Leike, Inc. pending the ultimate resolution of approval process for the NAR Settlement. Should the NAR Settlement receive final approval, it precludes the claims asserted against Crye-Leike, Inc. in this action. It the NAR settlement receives final approval after appeal, the Plaintiffs in this action receive their bargained for compensation and injunction from all Released Parties, including Crye-Leike, Inc. If the NAR settlement does not take effect, the Plaintiffs may continue this action against Crye-Leike, Inc. Plaintiffs suffer no prejudice from a stay. Without the stay, however, Crye-Leike, Inc. must litigate the very claims released by approval of the NAR settlement, suffering great prejudice.

Respectfully submitted,

/s/ Marcus Angelo Manos
Marcus Angelo Manos, *(Pro hac vice)*
mmanos@maynardnexsen.com
**MAYNARD NEXSEN PC**
1230 Main Street, Suite 700 (29201)
Post Office Box 2426
Columbia, South Carolina 29202
Telephone: (803) 253-8275

**Carl S. Burkhalter (***Pro hac vice***)**
cburkhalter@maynardnexsen.com
**MAYNARD NEXSEN PC**
1901 Sixth Avenue N, Suite 1700
Birmingham, AL 35203
Telephone: (205) 254-1081
Facsimile: (205) 254-1991

**Alexandra Harrington Austin (***Pro hac vice***)**
aaustin@maynardnexsen.com
**MAYNARD NEXSEN PC**
205 King Street, Suite 400
Charleston, SC 29401
Telephone: (843) 579-7827
Facsimile: (843) 414-8227

**Joseph C Blanton, Jr**
jblanton@blantonlaw.com
**Thomas W. Collins, III**
tcollins@blantonlaw.com
**Diedre A Peters**
dpeters@blantonlaw.com
**Mark D. Blanton**
mblanton@blantonlaw.com
**Shaune D. Hanschen** (*Pro hac vice)*
shanschen@blantonlaw.com
**Blanton, Nickell, Collins, Douglas, Hanschen & Peters, LLC**
219 South Kingshighway
P.O. Box 805
Sikeston, MO 63801
Telephone: (573) 471-1000
Fax: (573) 471-1012

***Attorneys for Defendant Crye-Leike, Inc.***

February 5, 2025

12

# CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

/s/ Marcus Angelo Manos
**Marcus Angelo Manos,** *(Pro hac vice)*
*Attorney for Defendant Crye-Leike, Inc.*