# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DON GIBSON, LAUREN CRISS, JOHN MEINERS, and Daniel UMPA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL ASSOCIATION OF REALTORS, et al., <br><br> Defendants. | Case No. 4:23-CV-00788-SRB <br> [Consolidated with 4:23-CV-00945-SRB] <br><br> Hon. Stephen R. Bough <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANT HANNA HOLDINGS, INC.'S SUGGESTIONS IN SUPPORT OF MOTION FOR RECUSAL OF THE HONORABLE STEPHEN R. BOUGH**

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

    A.    The Court Recognizes In *Burnett* That Contributions By Counsel To His Wife's Political Campaign Require Recusal Absent Consent By The Parties..................................................................................................2

    B.    The Court Fails To Disclose Precisely The Same Ground For Disqualification In *Gibson* ...............................................................................5

ARGUMENT ..........................................................................................................................6

CONCLUSION .....................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Apple v. Jewish Hospital & Medical Center*,
    829 F.2d 326 (2d Cir. 1987)......................................................................................7

*Application of Gaulkin*,
    351 A.2d 740 (N.J. 1976)........................................................................................10

*Fletcher v. Conoco Pipe Line Co.*,
    323 F.3d 661 (8th Cir. 2003) ....................................................................................7

*In re Hawsawi*,
    955 F.3d 152 (D.C. Cir. 2020) ..................................................................................9

*Liljeberg v. Health Services Acquisition Corp.*,
    486 U.S. 847 (1988)..........................................................................................7, 8, 9

*Little Rock School District v. Arkansas State Board of Education*,
    902 F.2d 1289 (8th Cir. 1990) ..................................................................................9

*Murray v. Scott*,
    253 F.3d 1308 (11th Cir. 2001) ................................................................................9

*Tyler v. Purkett*,
    413 F.3d 696 (8th Cir. 2005) ....................................................................................7

## DOCKETED CASES

*Burnett v. National Association of Realtors*,
    No. 4:19-cv-332 (W.D. Mo.) ..............................................................1, 2, 3, 4, 5, 6, 8, 9

*Gibson v. National Association of Realtors*,
    No. 4:23-cv-788 (W.D. Mo.) ...........................................................................2, 5, 6

*Glasscock v. Sig Sauer, Inc.*,
    No. 6:22-cv-03095 (W.D. Mo.) ............................................................................1, 8

## STATUTES, RULES, AND REGULATIONS

28 U.S.C. § 455...............................................................................1, 2, 6, 7, 8, 9, 11

# OTHER AUTHORITIES

Code of Conduct for U.S. Judges, https://www.uscourts.gov/administration-
    policies/judiciary-policies/ethics-policies/code-conduct-united-states-
    judges#d ............................................................................................................... 10

Committee on Codes of Conduct Advisory Opinion No. 53: Political Involvement
    of a Judge's Spouse (June 2009),
    https://www.uscourts.gov/file/document/published-advisory-opinions-1 ......................... 10

*Judges & Their Families* 105, Am. Judicature Soc'y (2001),
    https://www.ncsc.org/__data/assets/pdf_file/0021/18822/ethics-guide-for-
    judges-and-their-families.pdf .......................................................................................... 10

Judicial Ethics Advisory Committee of the State of Delaware, *Re: Request For
    Opinion From the Judicial Ethics Advisory Committee* (Feb. 20, 2008),
    2008 WL 8681529 ........................................................................................................... 11

U.S. Compendium of Selected Opinions, 7.3(b) (1995) ................................................................ 11

# INTRODUCTION

This Cout must step down from presiding over this case because it has failed to disclose and resolve—in its own words—an "abundantly clear" ground for disqualification requiring his recusal: the donations of former lead class counsel Matthew Dameron to the political campaign of his wife, Andrea Bough. Decl. of J. Brumberg, Ex. 1, Tr. of Settlement Conf. 4:9-15, *Burnett v. Nat'l Ass'n of Realtors (Burnett)*, No. 4:19-cv-332 (W.D. Mo. May 9, 2024), Dkt. No. 1492. When this issue arose in *Burnett*, a predecessor case brought by the same plaintiffs' counsel, the Court offered to step down. The Court correctly stated that "the ethics rules require me to ask each of the parties if they would like to conflict me off the case, and if you would, I'll be more than glad to step down based upon that." *Id*. at 5:14-17. Rather than offer the parties in *Gibson* the same opportunity, the Court appointed the very attorney who admittedly created the basis for disqualification in *Burnett* to be class counsel in *Gibson*—just five days after recognizing the potential for apparent impropriety caused by the donation in *Burnett* and without ever informing the parties in *Gibson* of the issue. And the Court still has not informed the parties in this case of the ground for disqualification even though it recused itself in yet another case based on Mr. Dameron's contributions to his wife's campaign. *See* Order Granting Motion for Recusal (Text Only Entry), *Glasscock v. Sig Sauer, Inc.*, No. 6:22-cv-03095 (W.D. Mo. Oct. 16, 2024), Dkt. No. 117. Hanna Holdings only learned of the issue a few weeks ago after an attorney new to the case discovered it through a Google search.

Plaintiffs' counsel's contributions to Andrea Bough's political campaign and the Court's failure to inform the parties in this case of those contributions—despite having volunteered to step down from *Burnett* for the very same reason—create a clear appearance of impropriety and require disqualification under 28 U.S.C. § 455. The Court's "impartiality might reasonably be questioned" because of this omission, *id.* § 455(a), and the Court did not provide the parties an

1

opportunity to waive the basis for disqualification after a "full disclosure on the record," *id.* § 455(e). The Court's conduct also violates Canon 3 of the Code of Conduct for United States Judges, which similarly requires a judge to disqualify himself in a proceeding in which his "impartiality might reasonably be questioned" unless the judge discloses the basis for disqualification on the record and the parties agree in writing that the judge should not be disqualified.

Now aware of the ground for disqualification, Hanna Holdings requests that the Court disqualify himself from this action.

## STATEMENT OF FACTS

This Court has spent more than five years presiding over class action lawsuits filed against the National Association of Realtors ("NAR") and an assortment of real estate companies from across the country. *See, e.g.*, *Burnett v. Nat'l Ass'n of Realtors*, No. 4:19-cv-332; *Gibson v. Nat'l Ass'n of Realtors*, No. 4:23-cv-788. Several of the plaintiffs' lawyers in these cases have donated directly, or indirectly through a PAC, to the campaign of the Court's spouse Andrea Bough. In *Burnett*, the Court disclosed these donations to the parties, acknowledged them as grounds for recusal, and offered to step down. The Court has not disclosed these same donations to the parties in this case. After learning of the donations at the end of January 2025 and conducting its own research into the extent of the contributions, talking to advisors, and studying the ethics rules, Hanna Holdings now timely moves to disqualify the Court.

    **A.**    **The Court Recognizes In *Burnett* That Contributions By Counsel To His Wife's Political Campaign Require Recusal Absent Consent By The Parties**

The Court's wife, Andrea Bough, is a politician currently serving as a member of the Kansas City, Missouri City Council. *See* Ex. 1 at 4:9-10.

Brandon Boulware of Boulware Law LLC and Matthew Dameron of Williams Dirks Dameron LLC filed the *Burnett* complaint on April 29, 2019. Class Action Compl. at 34, *Burnett*, Dkt. No. 1. Brandon Boulware made the second donation ever received by the Committee to Elect Andrea Bough on August 30, 2018.[1] Matthew Dameron donated to Andrea Bough in 2018, 2020, and 2022.[2] Michael Ketchmark of Ketchmark & McCreight entered his appearance for the Plaintiffs in *Burnett* on November 1, 2021. Entry of Appearance, *Burnett*, Dkt. No. 546. Between the filing of the complaint and June 7, 2021, Michael Ketchmark donated $103,189.00 to the Taxpayers Unlimited PAC.[3] That PAC, in turn, contributed a cumulative $8,317.06 to the Campaign Committee of Andrea Bough and directly to Andrea Bough between the filing of the complaint and March 23, 2023.[4]

On April 22, 2022, the Court granted the *Burnett* Plaintiffs' motion for class certification and appointed Ketchmark & McCreight, Boulware Law LLC, and Williams Dirks Dameron LLC as Co-Lead Class Counsel. *See* Order, *Burnett*, Dkt. No. 741; Pltfs' Mot. & Suggestions in

---

[1] *See* Decl. of J. Brumberg, Ex. 2, October 5, 2018 Missouri Ethics Commission Report for Committee to Elect Andrea Bough at 4 ($250).

[2] *See* Decl. of J. Brumberg, Ex. 3, January 13, 2019 Missouri Ethics Commission Report for Committee to Elect Andrea Bough at 5 ($250 in 2018); Decl. of J. Brumberg, Ex. 5, January 11, 2021 Missouri Ethics Commission Report for Committee to Elect Andrea Bough at 6 ($500 in 2020); Decl. of J. Brumberg, Ex. 8, January 9, 2023 Missouri Ethics Commission Report for Committee to Elect Andrea Bough at 7 ($1,000 in 2022).

[3] Michael Ketchmark—misreported as "Mark Ketchmark"—contributed $26,189.00 to the Taxpayers Unlimited PAC on May 30, 2019 and $33,000.00 and $44,000.00 on June 7, 2019. *See* Decl. of J. Brumberg, Ex. 10, June 7, 2019 Missouri Ethics Commission Report for Taxpayers Unlimited, Inc. at 3.

[4] Taxpayers Unlimited contributed $500.00 to Andrea Bough's campaign on October 29, 2019, *see* Decl. of J. Brumberg, Ex. 4, January 7, 2020 Missouri Ethics Commission Report for Committee to Elect Andrea Bough at 5; $1,000.00 on October 30, 2020, *see* Ex. 5, January 11, 2021 Missouri Ethics Commission Report for Committee to Elect Andrea Bough at 7; $1,000.00 on November 9, 2021, *see* Decl. of J. Brumberg, Ex. 6, January 14, 2022 Missouri Ethics Commission Report for Committee to Elect Andrea Bough at 10; $2,975.00 on April 26, 2022, *see* Decl. of J. Brumberg, Ex. 7, July 14, 2022 Missouri Ethics Commission Report for Committee to Elect Andrea Bough at 6, 13 ($2,500 was refunded to Taxpayers Unlimited Inc. PAC for overage); and $2,975.00 on May 18, 2023, *see* Decl. of J. Brumberg, Ex. 9, June 12, 2023 Missouri Ethics Commission Report for Committee to Elect Andrea Bough at 6. Additionally, on March 27, 2023, Taxpayers Unlimited, Inc. reported two direct expenditures dated March 20, 2023 and March 23, 2023 on behalf of Andrea Bough, each in the amount of $1,183.53. *See* Decl. of J. Brumberg, Ex. 11, March 27, 2023 Taxpayers Unlimited Inc. Missouri Ethics Commission Report at 9, 11 ($2,367.06 total).

3

Support of Mot. For Preliminary Approval of Settlement with NAR, *Burnett*, Dkt. No. 1458. On April 26, 2022, Taxpayers Unlimited Inc. donated an additional $2,975.00 to the Campaign Committee of Andrea Bough. *See* Decl. of J. Brumberg, Ex. 7, July 14, 2022 Missouri Ethics Commission Report for Committee to Elect Andrea Bough at 6. Ultimately, in October 2023, the *Burnett* case went to trial, resulting in a $1.78 billion verdict in favor of the class. *See* Verdict Form, *Burnett*, Dkt. No. 1294.

After the trial, certain defendants agreed to settle the case for $418 million, and the Court held a settlement conference on May 9, 2024. *See* Ex. 1, Tr. of Settlement Conf., *Burnett*, Dkt. No. 1492. At that conference, the Court announced that he had learned of a ground for disqualification created by class counsel Matthew Dameron of Williams Dirks Dameron. *See id.* at 3-6. This conflict of interest had been raised by an objector via email to the Court. *See id.* The Court stated, based on that email, that "in 2019, Mr. [Matthew] Dameron did in fact donate to [his] wife." *Id.* at 5:06-07. The Court also noted a reference in that email to "Taxpayer Unlimited," a PAC to which Ketchmark had contributed. *Id.* at 5:1-5. The Court further revealed, based on his own review of his wife's financial disclosures, that his wife had received donations from firms representing other parties, including "Bryan Cave or Polsinelli or Lathrop or Shook." *Id.* at 5:12-14. In light of those discoveries, the Court stated that "the ethics rules require me to ask each of the parties if they would like to conflict me off the case, and if you would, I'll be more than glad to step down based upon that." *Id.* at 5:14-17. The Court made that offer after noting that "the ethics rules make it abundantly clear if I know someone is donating to my wife, then I need to put them on the conflicts list." *Id.* at 4:13-15.

The parties present at the *Burnett* settlement conference did not object to the Court remaining on the case. *See id.* at 5:22-6:10. The conference then proceeded, and the Court

4

certified the class settlement and granted class counsel's request for attorneys' fees that very same day. *See* May 9, 2024 Dkt. Text Entry, *Burnett*, Dkt. No. 1490.

      **B.**      **The Court Fails To Disclose Precisely The Same Ground For Disqualification In *Gibson***

On October 31, 2023—the same day of the jury verdict in *Burnett*—Williams Dirks Dameron filed a putative class complaint against NAR and multiple real estate companies, including Hanna Holdings. *See* Class Action Compl., *Gibson*, Dkt. 1. Matthew Dameron signed and filed the *Gibson* complaint. *See id.* This Court was assigned to this matter because Mr. Dameron designated it as related to the *Burnett* case upon filing. *See* Civil Cover Sheet at 2, *Gibson*, Dkt. No. 1-1.

Despite learning of at least Mr. Dameron's conflict no later than May 9, 2024, the Court has never disclosed that basis for disqualification to the parties in *Gibson*. *See generally* Ct. Docket, *Gibson*, No. 4:23-cv-788 (W.D. Mo. Oct. 31, 2023). Nor has the Court made any mention of disqualification in this action, notwithstanding his admission of conflict in *Burnett*. To the contrary, on May 14, 2024, the Court appointed Williams Dirks Dameron, including Mr. Dameron, as co-lead counsel only five days after he acknowledged in *Burnett* that Mr. Dameron's contributions to his wife's campaign created a conflict warranting disqualification. *See* Decl. of J. Brumberg, Ex. 12, Order, *Gibson*, Dkt. No. 180. The Court also appointed the Boulware and Ketchmark firms as co-lead counsel in *Gibson*, despite the fact that they too, directly and indirectly, had contributed to his wife's campaign—which should have been apparent from the disclosure statements that the Court reviewed in connection with *Burnett*. The Court granted the Plaintiffs' Motion for Appointment of Interim Co-Lead Class Counsel "without opposition from Defendants," *id.*, but Defendants in *Gibson* were not informed by the Court of the conflict issue.

5

Just nine days before the October 31, 2024 conference regarding the approval of settlements and attorneys' fees in this case—like the one at which the Court had disclosed the conflict in *Burnett*—Mr. Dameron withdrew his appearance in both *Gibson* and *Burnett*. Notice of Withdrawal, *Gibson*, Dkt. No. 511; Notice of Withdrawal & Order, *Burnett*, Dkt. Nos. 1544, 1545. Williams Dirks Dameron, of which Mr. Dameron is a named partner, remains as co-lead counsel in *Gibson*. *See generally* Ct. Docket, *Gibson*, No. 4:23-cv-788 (W.D. Mo. Oct. 31, 2023). Brandon Boulware and Michael Ketchmark remain as co-lead counsel in *Gibson*. Following the settlement conference, the Court awarded plaintiffs' counsel tens of millions of dollars in attorneys' fees—including nearly $10 million to Mr. Dameron's firm. Order, *Gibson*, Dkt. No. 530.

To date, the *Gibson* docket is devoid of any disclosure of the Dameron contributions (or the Boulware or Ketchmark contributions). *See generally* Ct. Docket, *Gibson*, No. 4:23-cv-788 (W.D. Mo. Oct. 31, 2023).

**ARGUMENT**

Hanna Holdings submits this motion to accept the Court's offer to "step down" based on the same ground for disqualification that he identified in *Burnett* and that was the basis for recusal in *Glasscock*. Hanna Holdings requests that the Court recuse himself from this matter because of his own description of the "abundantly clear" ground for disqualification created by Mr. Dameron's, Mr. Boulware's, and Mr. Ketchmark's direct and indirect contributions to his wife's political campaign, as well as his failure to disclose contributions by plaintiffs' counsel of which he was indisputably aware.

The Court must disqualify himself under 28 U.S.C. § 455(a) because donations by plaintiffs' counsel to his wife's political campaign create an appearance of impropriety, as does

6

the Court's failure to disclose those contributions to parties in this case despite his awareness of the contributions and that those contributions are a ground for disqualification.

Under Section 455(a), "[a]ny justice, judge, or magistrate judge of the United States *shall* disqualify himself in any proceeding in which his impartiality might be reasonably questioned." *Id.* (emphasis added). "Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455(e). The purpose of Section 455(a) is "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988). "The test for disqualification or recusal is an objective one and asks whether, from the perspective of 'the average person on the street,' a reasonable man knowing all of the circumstances 'would harbor doubts about the judge's impartiality.'" *Tyler v. Purkett*, 413 F.3d 696, 704 (8th Cir. 2005).[5]

Here, an objectively reasonable person would "harbor doubts" about the Court's impartiality. As explained, the Court has failed to disclose contributions made by plaintiffs' counsel to his wife's political campaign despite not only being aware of those contributions but also recognizing not once but twice that the contributions are a ground for disqualification: first in *Burnett* and then in *Glasscock*. The Court has represented on the record that he became aware of the conflict created by Mr. Dameron's contributions on May 9, 2024. *See* Ex. 1, Tr. of

---

[5] Hanna Holdings presents this issue to the Court at the earliest possible time after learning about the potential ground for disqualification. "Timeliness requires a party to raise a claim 'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.'" *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003) (quoting *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987)). Counsel for Hanna Holdings did not learn of the potential ground for disqualification until January 21, 2025, and the effort to review the campaign finance reporting documents, including the references to potentially opaque PAC contributions, was significant and undertaken with all reasonable due diligence. *See* Decl. of J. Brumberg at 1-2; Decl. of D. Gringer at 1-2.

7

Settlement Conf. 3-6, *Burnett* Dkt. No. 1492.  In response, the Court addressed the conflict on the record and declared the following:

- "[T]he ethics rules make it *abundantly clear* if I know someone is donating to my wife, then I need to put them on the conflicts list." *Id*. at 4:13-15 (emphasis added).
- "[T]he ethics rules *require* me to ask each of the parties if they would like to conflict me off the case, and if you would, I'll be more than glad to step down based upon that." *Id*. at 5:14-17 (emphasis added).

The Court later granted a motion to recuse itself from yet another case based on Mr. Dameron's contributions.  *See* Order Granting Motion for Recusal, *Glasscock*, No. 6:22-cv-03095 (W.D. Mo. Oct. 16, 2024), Dkt. No. 117; *see also* Suggestions in Support of Motion for Recusal, *Glasscock* (W.D. Mo. Sept. 27, 2024), Dkt. No. 113 (explaining that recusal was warranted because of the donations by Mr. Dameron, which the Court had recognized as a conflict).

Instead of disclosing this basis for disqualification to the parties in this case and offering them an opportunity to waive it—or not—the Court has withheld that information.  The Court's failure to disclose a ground for disqualification that *the Court itself* deemed significant produces an appearance of partiality.  In *Liljeberg*, 486 U.S. 847 (1988), the Supreme Court held that failure to promptly disclose possible grounds for disqualification creates an appearance of impropriety under Section 455(a).  In that case, the district court judge was overseeing a dispute relating to the ownership of corporation that was seeking to purchase land from Loyola University.  The district court judge was a member of Loyola's Board of Trustees but had forgotten about the potential sale while he oversaw the case.  *Id.* at 851.  He missed a key Board meeting at which the land sale was discussed but received—and eventually reviewed—its meeting minutes.  Nonetheless, he did not recuse himself upon reading the meeting minutes and

8

becoming aware of the conflict. *Id.* The Court held that "[t]hese facts create precisely the kind of appearance of impropriety that § 455(a) was intended to prevent" and "is neither insubstantial nor excusable." *Id*. at 867. The Court also noted that prompt disclosure of possible grounds for disqualification helps to "prevent a substantive injustice." *Id.* at 868. Consistent with that, the Eighth Circuit has explained that "[t]he best practice is to disclose the details that the judge deems significant, to make a decision by one's own lights, and let counsel speak or keep silence as they will." *Little Rock Sch. Dist. v. Arkansas State Bd. of Educ.*, 902 F.2d 1289, 1291 n.1 (8th Cir. 1990). The D.C. Circuit similarly has explained that "[a] judge's lack of candor about potential grounds for recusal can of course produce an appearance of partiality." *In re Hawsawi*, 955 F.3d 152, 162 (D.C. Cir. 2020); *see also Murray v. Scott*, 253 F.3d 1308, 1313 (11th Cir. 2001) ("[F]ederal judges must early and often consider potential conflicts that may arise in a case and, in close cases, must err on the side of recusal.").

In this case, there are additional factors producing an appearance of partiality. *First*, far from curing the issue, Mr. Dameron's withdrawal from the case right before the Court approved certain defendants' settlements and tens of millions of dollars in attorneys' fees indicates a recognition on Mr. Dameron's part that his contributions to Andrea Bough's campaign warranted the Court's disqualification in this case, as it did in *Burnett*. *Second*, that some defendants' local counsel also donated to Andrea Bough's campaign does not negate or cleanse the ground for disqualification. To the contrary, it magnifies it. The Court himself correctly acknowledged in *Burnett* that, without waiver, contributions by plaintiffs' counsel provided a ground for disqualification even though defense firms had also donated to his wife's campaign. Ex. 1, Tr. of Settlement Conf. 5, *Burnett*, Dkt. No. 1492. Hanna Holdings was not asked, but it does not consent. Moreover, the Court's decision to retain jurisdiction over Hanna Holdings and other

9

defendants that do not conduct business in this District benefits all local attorneys, while harming non-resident parties like Hanna Holdings. And other parties whose local attorneys did not donate have not consented.

Finally, the Court's conduct violates Canon 3 of the Code of Conduct for United States Judges. *See* Code of Conduct for U.S. Judges, https://www.uscourts.gov/administration-policies/judiciary-policies/ethics-policies/code-conduct-united-states-judges#d. Subsection 3(C)(1) provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." *Id.* That is the case here both because of the contributions by Mr. Dameron and other counsel to Andrea Bough's political campaign as well as the Court's failure to disclose those contributions despite knowledge of them and recognition that they qualify as ground for disqualification in *Burnett*. An advisory opinion regarding this Canon cautions judges that "[a] spouse's involvement in political activities or candidacy for elected office may increase the frequency with which a judge is required to recuse" and that "[j]udges should pay attention that increased likelihood." Committee on Codes of Conduct Advisory Opinion No. 53: Political Involvement of a Judge's Spouse (June 2009), https://www.uscourts.gov/file/document/published-advisory-opinions-1.

Moreover, judicial ethics decisions and opinions have recognized that "[t]he making of political contributions to the campaign of a spouse of a judge by attorneys or litigants who are or may be involved in practice before that judge would be particularly offensive from an ethical standpoint." *Application of Gaulkin*, 351 A.2d 740, 748 (N.J. 1976). The Judicial Conference's Code of Conduct Committee has stated that a federal judge "must disqualify from cases in which parties or counsel are known by the judge to be contributors to the family member's campaign." Gray, *An Ethics Guide for Judges & Their Families* 105, Am. Judicature Soc'y (2001),

10

https://www.ncsc.org/__data/assets/pdf_file/0021/18822/ethics-guide-for-judges-and-their-families.pdf (citing the U.S. Compendium of Selected Opinions, 7.3(b) (1995)); *see also* Judicial Ethics Advisory Committee of the State of Delaware, *Re: Request For Opinion From the Judicial Ethics Advisory Committee* (Feb. 20, 2008), 2008 WL 8681529, at *3 ("[Y]ou should recuse yourself from any matter involving an individual or entity that you discover during the pendency of the matter has contributed to our spouse's campaign." (emphasis omitted)).

The Court has failed to recuse consistent with these opinions and its prior recognition that recusal was warranted because of campaign contributions to his wife's campaign. Mirroring Section 455, the Code of Conduct also prescribes a particular procedure for a judge to continue presiding over a case despite a basis for disqualification: the judge should "disclose on the record the basis of disqualification" and then "may participate in the proceeding if, after that disclosure, the parties and their lawyers have an opportunity to confer outside the presence of the judge, all agree in writing or on the record that the judge should not be disqualified, and the judge is then willing to participate." Canon 3(D), Code of Conduct for U.S. Judges. The Court did not follow that procedure here. If it had, Hanna Holdings would not have agreed that the Court should not be disqualified.

## CONCLUSION

For the foregoing reasons, Hanna Holdings respectfully requests the recusal of this Court as the presiding United States District Judge in this matter.

Dated: March 10, 2025

John Brumberg (*pro hac vice* forthcoming)
William Pietragallo II (*pro hac vice* forthcoming)
Quintin DiLucente (*pro hac vice* forthcoming)
PIETRAGALLO GORDON ALFANO
  BOSICK & RASPANTI, LLP
One Oxford Centre, 38th Fl.
Pittsburgh, PA 15219
(412) 263-2000
JRB@Pietragallo.com
WP@Pietragallo.com
QD@Pietragallo.com

Respectfully submitted,

*/s/ David Z. Gringer*
David Z. Gringer (*pro hac vice*)
Emily Barnet (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
david.gringer@wilmerhale.com
emily.barnet@wilmerhale.com

Seth P. Waxman (*pro hac vice*)
Karin Dryhurst (*pro hac vice*)
Claire Bergeron (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
seth.waxman@wilmerhale.com
karin.dryhurst@wilmerhale.com
claire.bergeron@wilmerhale.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

*/s/ David Z. Gringer*
David Z. Gringer
*Counsel for Hanna Holdings, Inc.*
