**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

DON GIBSON, LAUREN CRISS, )
JOHN MEINERS, AND DANIEL UMPA, )
individually and on behalf of )
all others similarly situated, **)** No. 4:23-cv-00788-SRB
 ) [Consolidated with 4:23-cv-00945-SRB]
  Plaintiffs, **)**
 **)**
 **v.** **)**
 **)**
NATIONAL ASSOCIATION OF )
REALTORS,  et al. )
 )
  Defendants. **)**

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION**
**TO DEFENDANTS' MOTION FOR RECUSAL**
**OF THE HONORABLE STEPHEN R. BOUGH**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND FACTS.......................................................................................................2

    1.    Ms. Bough's Campaign and Contributions ...................................................2

    2.    Defense Counsel Contributions .....................................................................3

    3.    Plaintiffs' Counsel Contributions ..................................................................4

    4.    Hanna's Dissatisfaction with the Court .......................................................5

    5.    Hanna's Knowledge of Political Contributions to Ms. Bough ....................6

LAW AND ARGUMENT .....................................................................................................7

    I.    NO OBJECTIVELY REASONABLE PERSON COULD QUESTION THE COURT'S IMPARTIALITY .........................................................................8

    II.    NO STATUTE OR RULE REQUIRES RECUSAL FOR POLITICAL CONTRIBUTIONS TO A SPOUSE ........................................................11

    III.    THE TIMING OF HANNA'S MOTION FURTHER WEIGHS AGAINST RECUSAL .................................................................................................13

    IV.    THE COURT "WITHHELD" NO INFORMATION AND EXHIBITED NO "LACK OF CANDOR" .........................................................................15

    V.    THE COURT HAS A DUTY <u>NOT</u> TO RECUSE UNDER THESE CIRCUMSTANCES .....................................................................................18

    VI.    BHE'S JOINDER IN HANNA'S MOTION SHOULD BE DENIED FOR THE SAME REASONS .................................................................................19

CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Application of Gaulkin*
    351 A.2d 740 (N.J. 1976) ........................................................................... 11

*Armenian Assembly of Am., Inc. v. Cafesjian*
    783 F. Supp. 2d 78 (D.D.C. 2011) ............................................................. 13

*Burton v. Arkansas Sec. of State.*
    No. 4:11-cv-00710, 2015 WL 11090414 (E.D. Ark. Feb. 26, 2015).................... 16

*Caperton v. A.T. Massey Coal Co., Inc.*
    556 U.S. 868 (2009)................................................................................ 8, 9

*Delgado-O'Neil v. City of Minneapolis*
    745 F. Supp. 2d 894 (D. Minn. 2010) ........................................................ 13

*E.I. DuPont de Nemours & Co., Inc. v. Aquamar S.A.*
    24 So.3d 585 (Fla. Ct. App. 2009)............................................................. 10

*IFG Port Holdings LLC v. Lake Charles Harbor & Terminal Dist.*
    742 F. Supp. 3d 530 ............................................................................... 15

*In re Big Rivers Elec. Corp.*,
    213 B.R. 962 (Bankr. W.D. Ky. 1997) ................................................. 15, 19

*In re Digital Music Antitrust Litig.*
    No. 06-MDL-1780(LAP), 2007 WL 632762 (S.D.N.Y. Feb. 27, 2007) .................. 13

*In re Int'l Bus. Machines Corp.*
    45 F.3d 641 (2d Cir. 1995)....................................................................... 15

*In re Kansas Pub. Emps. Retirement Sys.*
    85 F.3d 1353 (8th Cir. 1996) ............................................................ 1, 8, 15

*In re Lieb*
    112 B.R. 830 (Bankr. W.D. Tex. 1990)...................................................... 13

*In re Mercedes-Benz Antitrust Litig.*
    226 F. Supp. 2d 552, 557 (D.N.J. 2002) ................................................... 19

*In re: Request for Opinion from the Judicial Advisory Committee*
    2008 WL 8681529 (De. Jud. Eth. Adv. Comm. Feb. 20, 2008) ...................... 11

*Ivey v. Dist. Ct.*
    299 P.3d 354 (Nev. 2013) ........................................................................ 10

*Klayman v. Jud. Watch, Inc.*
No. 06-670, 2019 WL 3719008 (D.D.C. Aug. 7, 2019) ........................................ 15

*Liberty Mut. Ins. Co. v. Com. Concrete Sys.*
No. 4:16cv658-MW/CAS, 2017 WL 1234140 (N.D. Fla. April 1, 2017) ..................... 9, 10, 11

*Liljeberg v. Health Servs. Acquisition Corp.*
486 U.S. 847 (1988) ........................................................................ 16, 17

*Perry v. Schwarzenegger,*
630 F.3d 909, 912 (9th Cir. 2011) ......................................................... 18

*Pope v. Fed. Express Corp.*
974 F.2d 982 (8th Cir. 1992) ................................................................ 7

*Ouachita Nat'l Bank v. Tosco Corp.*
686 F.2d 1291 (8th Cir. 1982) ............................................................... 8

*River Rd. Neighborhood Ass'n v. S. Texas Sports, Inc.*
673 S.W.2d 952 (Tex. Ct. App. 1984) ..................................................... 10

*Robinson Nursing & Rehab. Ctr., LLC. v. Phillips*
502 S.W.3d 519 (Ark. 2016) ................................................................. 9

*Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*
No. 97-CIV-5499(LAP), 2003 WL 282187 (S.D.N.Y. Feb. 7, 2003) ..................... 19

*Tri-State Fin., LLC v. Lovald*
525 F.3d 649 (8th Cir. 2008) ............................................................... 13

*United States v. Brocato*
4 F.4th 296 (5th Cir. 2021) ................................................................. 11

*United States v. Daley*
564 F.2d 645 (2d Cir. 1977) ................................................................ 13

*United States v. Dalfonso*
707 F.2d 757 (3d Cir. 1983) ................................................................ 12

*United States v. Jordan*
49 F.3d 152 (5th Cir. 1995) ................................................................ 7

*United States v. Martinez*
446 F.3d 878 (8th Cir. 2006) .............................................................. 7

*United States v. O'Brien*
No. 12-40026-FDS, 2014 WL 535663 (D. Mass. Feb. 6, 2014) ........................... 16

*United States v. Rubashkin*
  655 F.3d 849 (8th Cir. 2011) ................................................................. 13

*United States v. Sanford*
  157 F.3d 987, 988-89 (5th Cir. 1998) .................................................... 15

*United States v. Siegelman*
  561 F.3d 1215 (11th Cir. 2009) ............................................................. 13

*United States v. Urben-Potratz*
  470 F.3d 740 (8th Cir. 2006) ................................................................. 18

*United States v. Sierra Pac. Indus.*
  759 F. Supp. 2d 1198 (E.D. Cal. 2010)................................................... 18

*Valley v. Rapides Parish Sch. Bd.*
  992 F. Supp. 848 (W.D. La. 1998).......................................................... 15

*Walker v. Bishop*
  408 F.2d 1378 (8th Cir. 1969) ............................................................ 7, 18

*White v. Nat'l Football League*
  585 F.3d 1129 (8th Cir. 2009) ............................................................... 13

*Williams-Yulee v. Florida Bar*
  575 U.S. 433 (2015)............................................................................... 11

*Willner v. Univ. of Kansas*
  848 F.2d 1023 (10th Cir. 1988) ............................................................. 18

**Statutes and Other Authority**

*Guide to Judiciary Policy*, Vol. 2B, Ch. 2, Advisory Op. 107 ...................... 8

Kansas City, Mo., Code of Ordinances part 1, art. II, div. 1, § 206(b)(2) (2014) ......................... 3

*Judge Addressed Alleged Conflicts of Interest at Settlement Hearing, Transcript Shows* (May 14, 2024), https://www.rismedia.com/2024/05/14/judge-addressed-alleged-conflicts-interest-settlement-hearing/ ............................................................................. 14

*Missouri Judge Stephen R. Bough Addresses Alleged Conflicts of Interest Regarding Campaign Contributions*, https://abusivediscretion.com/missouri-judge-stephen-r-bough-addresses-alleged-conflicts-of-interest-regarding-campaign-contributions/ (May 17, 2024) ................... 14

Roger J. Miner, *Judicial Ethics in the Twenty-First Century: Tracing the Trends*, 32 Hofstra L. Rev. 1107 (2004) ................................................................................. 18

R.S. Mo. § 140.041 ............................................................................... 14

R.S. Mo. § 140.042 ..................................................................................................... 14

*The Four Biggest Takeaways from the Copycat Settlement Approvals*,
https://www.rismedia.com/2024/11/07/the-four-biggest-takeaways-from-the-copycat-settlement-approvals/ (Nov. 7, 2024) ........................................................................................... 14

# INTRODUCTION

Andrea Bough ran for City Council in 2019 and again in 2023. Hanna's own lawyers at Shook, Hardy & Bacon (SHB) contributed $4,450 to her campaigns. Counsel for other Defendants made similar contributions. Indeed, lawyers at more than 80 Kansas City law firms donated to Ms. Bough's campaigns. There was nothing wrong with these contributions – lawyers can and should participate actively in their community, which includes supporting the political candidates of their choice. Nor did any party see a problem with the contributions. Hanna itself knew or should have known of the contributions – all a matter of public record and some made by its own lawyers – but never raised any claim of impropriety. Then Hanna grew frustrated with some of the Court's rulings and everything changed.

Hanna has made no secret of its disdain for the Court or its desire to transfer the case to its hometown of Pittsburgh. During the MDL proceedings Hanna characterized the Court as having "comparatively little antitrust experience." (Ex. 1, Hanna MDL Brief at 8). In Hanna's view, the Court was not up to considering "challenging questions" involving the "complicated issues" presented. *Id*. After the MDL proceedings concluded Hanna renewed its effort to have the case dismissed or transferred to Pittsburgh. The Court denied that motion. Hanna then filed two motions for "clarification" that the Court also denied. Growing more desperate, Hanna sought permission to file an interlocutory appeal, which the Court denied. Only after losing these rulings did Hanna file this motion seeking recusal. The Eighth Circuit cautions that motions to recuse are not to be used "as an additional arrow in the quiver of advocates in the face of . . . adverse rulings," *In re Kansas Pub. Emps. Retirement Sys.*, 85 F.3d 1353, 1360 (8th Cir. 1996) (internal quotation omitted), but that's exactly what Hanna is doing.

Hanna's local counsel did not sign the recusal motion, and with good reason. The company's motion presents no basis for recusal because: (1) no reasonable person could question the Court's impartiality under these circumstances; (2) no statute or rule requires recusal based on political contributions to a spouse; and (3) the Court "withheld" no information and exhibited no "lack of candor." The Court should also deny the company's motion because it is untimely and filed solely in response to Hanna's dissatisfaction with the Court's rulings. Finally, the Court should recognize that it has a duty ***not*** to recuse based on the facts presented. Recusal now would reward Hanna's gamesmanship and attempt at judge shopping. It would deprive the parties and the judiciary of the Court's expertise gained after more than five years of intense litigation. And it would mean that no judge's spouse could ever run for office. That is not (and should not be) the law.

## BACKGROUND FACTS

1. **Ms. Bough's Campaign and Contributions.**

Hanna is wrong to label Ms. Bough a mere "politician." (Doc. 689 at 6). She is well known and active in the Kansas City community. After earning her law degree at UMKC, Ms. Bough clerked on the Western District Court of Appeals for Judge Breckenridge and Judge Lowenstein. Her practice has centered on local government, including representing Planning Commissions and Boards of Zoning Adjustment. She served as part of Mayor James' transition team, chaired his Commission on Ethics Reform, and served on the Charter Review Commission. She is active in volunteering, serving on the Boards of the Kansas City Chapter of the Missouri Eating Disorder Association, the Jackson County Community Mental Health Fund, the Jackson County Law Library, and the Heartland Men's Chorus. She is also active in the Country Club Christian Church, serving on its Congregational Board and Board of Trustees. Her community involvement was

recognized in 2017 with the Business Practitioner Award and in 2022 with the Public Service Award for her work in the Right to Counsel in Evictions.

Plaintiffs mention this because it's hardly any surprise that community leaders of all kinds supported Ms. Bough when she successfully ran for City Council. Ms. Bough first ran in 2019 and was reelected in 2023.[1] (Ex. 2, *Dirks Declaration* at ¶4). During her campaigns for City Council, the Committee to Elect Andrea Bough raised a total of $421,940. (*Id.* at ¶7). This amount came from hundreds of individuals, community leaders, and businesses of all kinds. (*Id.* at ¶8). Contributors included business owners; the owners of the Chiefs and Royals; representatives of leading local companies such as Hallmark, Cerner, and Ford Motor Company; diverse professionals, including accountants, architects, bankers, educators, engineers, and doctors; and realtors, including the local board of realtors. In addition, as discussed below, some contributors were lawyers. (*Id.*). All contributions were made to Ms. Bough's Committee, none went to Ms. Bough personally. (*Id.* at ¶11). Because she cannot seek reelection, Ms. Bough terminated her Committee at the end of 2024. It no longer accepts contributions. (*Id.* at ¶12).

### 2. Defense Counsel Contributions.

SHB is counsel for Hanna. The lead SHB attorney appearing for Hanna is Rob Adams. SHB lawyers contributed a total of $4,450 to Ms. Bough's Committee. (*Id.* at ¶9). This included $750 by Mr. Adams himself.

Lawyers at more than 80 other law firms in town made similar contributions. (*Id.*). Looking solely at firms representing Defendants here shows:

- Lathrop GPM (representing HomeServices) – $5,100

---

[1] Kansas City has term limits so Ms. Bough will not be running again. Her current term will end in 2027. Kansas City, Mo., Code of Ordinances part 1, art. II, div. 1, § 206(b)(2) (2014).

- Stinson LLP (representing NAR) – $7,400

- Husch Blackwell (representing BHE) – $2,700

- Polsinelli (representing Engel & Volkers) – $3,700

- Bryan Cave (representing United Real Estate) – $3,260

- Lewis Rice (representing Keyes) – $4,380

- Wagstaff & Cartmell (representing Redfin) – $6,270

- Franke Schultz (representing HomeSmart) – $3,000

- Berkowitz Oliver (representing Windermere) – $500

- Ogletree Deakins (representing Douglas Elliman) – $600

(*Id.*). The total contributions by lawyers representing Defendants was approximately $41,360. (*Id.*). This represented 9.8% of all contributions received by Ms. Bough's Committee. In addition, the Kansas City Association of Realtors, which has an obvious interest in both *Gibson* and *Burnett*, contributed $1,000 (with thousands more by other Realtors). (*Id.*). None of these contributions were made after this case was filed in October 2023. (*Id.*).

### 3. Plaintiffs' Counsel Contributions.

The contributions made by Plaintiffs' Counsel are far more modest. Brandon Boulware made a single $250 contribution in 2018. Doc. 689-4. Matt Dameron donated $250 in 2018, $500 in 2020, and $1,000 in 2022. Doc. 689-4; 689-7; 689-10. He never contributed after this case was filed. Mr. Dameron often donates to candidates of all kinds, including City Council members. During this same period he donated more than $20,000 to other candidates. (*Id.* at ¶13). Mr. Dameron withdrew as counsel last year and is no longer involved in the case. Doc. 511.

Hanna's allegations about Ketchmark & McCreight (KM) are not correct. No one at KM ever donated to Ms. Bough or her Committee. (Ex. 3, Ketchmark Declaration at ¶2). Taxpayers

Unlimited, Inc. is a political action committee associated with the International Association of Fire Fighters. (*Id.* at ¶3). Neither KM nor Michael Ketchmark control how Taxpayers Unlimited makes its contributions, nor did they ever ask Taxpayers Unlimited to contribute to Ms. Bough. (*Id.* at ¶4). To the best of KM's knowledge, Taxpayers Unlimited used the referenced donations to aid the campaign of Mayor Quinton Lucas, with whom Mr. Ketchmark has a longstanding friendship. (*Id.* at ¶5).

The total contributions made by lawyers representing Plaintiffs is $2,000. This represents less than ½ of one percent of all contributions received by Ms. Bough's Committee. The contributions made by Hanna's own lawyers are more than twice this amount. And the total contributions made by lawyers representing all *Gibson* Defendants are more than 20 times larger.

### 4. Hanna's Dissatisfaction with the Court.

From the beginning Hanna showed it believes the Court is not up to managing this litigation. During the MDL proceedings Hanna argued strenuously against this Court and for the Western District of Pennsylvania. Hanna told the MDL Panel that the Court had "comparatively little antitrust experience" and would be ill-equipped to adjudicate "extremely challenging" and "extremely complex" issues in "a challenging subject." (Ex. 1 at 8). Hanna questioned several of the Court's rulings in *Burnett*, argued that the Court "disregarded" Supreme Court holdings, and claimed the Court abdicated its responsibilities by "leaving the parties to scramble to negotiate deadlines among themselves . . . ." (*Id.* at 9-10). In the end the MDL Panel elected not to consolidate, leaving the case here rather than Pittsburgh.

After the MDL proceedings concluded Hanna renewed its effort to transfer the case to Pittsburgh. The company first moved to dismiss for lack of personal jurisdiction, or in the alternative to transfer. Doc. 308. The Court denied that motion on December 16, 2024. Doc. 590.

Three days later Hanna moved for "clarification," claiming the Court had failed to address its request for transfer. Doc. 593. The Court denied that motion. Doc. 595. Hanna then filed a second motion for "clarification" claiming the Court "still did not address Hanna Holdings' request for transfer under 28 U.S.C. § 1404." Doc. 596. The Court denied that motion as well. Doc. 598. Still not satisfied, Hanna moved on December 30 to certify an interlocutory appeal and filed reply suggestions in support of that motion on February 7. Doc. 606; 667. The Court denied Hanna's motion on February 10. Doc. 674. Eight days later, Hanna petitioned for a writ of mandamus from the Eighth Circuit (which has since been denied) claiming that the Court was "put[ting] its existence in jeopardy" and "driv[ing] Hanna Holdings to enter an 'in terrorem' settlement." (Ex. 4, Hanna Petition for Writ of Mandamus at 30). Even in its current motion Hanna continues to complain that the Court is "harming" it by requiring the company to litigate just like everyone else. Doc. 689 at 14.

> **5.    Hanna's Knowledge of Political Contributions to Ms. Bough.**

Hanna claims that "Counsel for Hanna Holdings did not learn of the potential ground for disqualification until January 21, 2025." Doc. 689 at 11 n.5. But Hanna is represented by lawyers at SHB who knew about the political contributions and saw nothing wrong with them. To begin, Mr. Dameron's contributions were discussed at the May 9 *Burnett* hearing, which as the Court will recall was packed with lawyers from *Gibson*. The Court mentioned several firms by name, including Hanna's counsel SHB. *Burnett* Hearing Tr. (5/9/24) at 5:12-14 ("I look around this room and go through Bryan Cave or Polsinelli or Lathrop or Shook or any other major firm appears to have donated to my wife as well."). In addition, SHB and Mr. Adams were obviously aware of their own political contributions to Ms. Bough. The knowledge of attorneys is imputed to their clients, and Hanna therefore knew throughout this case that lawyers for all sides had made political

contributions to Ms. Bough and her Committee. Finally, Hanna is charged with knowledge of all facts in the public record. Every contribution to City Council candidates is reported and part of the public record. Likewise, the May 9 *Burnett* hearing that Hanna relies on was widely reported. The hearing transcript is also publicly available through PACER. *Burnett* Doc. 1492. And the email that prompted the colloquy at the May 9 hearing was filed on the public docket. *Burnett* Doc. 1488. Hanna itself admits it investigated these matters "using Google," and nothing prevented Hanna from performing that research earlier. Doc. 689-2 at ¶4.

In any event, even Hanna admits it sat on knowledge of the alleged conflict for seven weeks before filing its motion. During that time, Hanna waited for a ruling on its motion to certify an interlocutory appeal; it even filed a reply brief more than two weeks after its claimed first knowledge. The company sought recusal only after all its other efforts to transfer this case failed.

## LAW AND ARGUMENT

"A party introducing a motion to recuse carries a heavy burden of proof." *Pope v. Fed. Express Corp.*, 974 F.2d 982, 985 (8th Cir. 1992). A judge is "presumed to be impartial," and "the party seeking disqualification bears the substantial burden of proving otherwise." *Id*. The test is objective: recusal turns on "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." *United States v. Martinez*, 446 F.3d 878, 883 (8th Cir. 2006) (internal quotation omitted). In making this determination one adopts the view of a "well-informed, thoughtful and objective observer," not that of a "hypersensitive, cynical, and suspicious person." *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995). And "there is as much obligation on the part of the judge not to recuse himself when there is no occasion for so doing as there is to recuse himself when such an occasion exists." *Walker v. Bishop*, 408 F.2d 1378, 1382 (8th Cir. 1969).

7

The Court also must consider the circumstances under which a recusal motion is filed. The Eighth Circuit has long cautioned that judges "must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision." *Ouachita Nat'l Bank v. Tosco Corp.*, 686 F.2d 1291, 1300 (8th Cir. 1982) (internal quotation omitted). "In the real world, recusal motions are sometimes driven more by litigation strategies than by ethical concerns," and the Court therefore should take care that such motions are not used "as an additional arrow in the quiver of advocates in the face of [anticipated] adverse rulings." *In re Kansas Pub. Emps. Retirement Sys.*, 85 F.3d 1353, 1360 (8th Cir. 1996) (internal quotations omitted).

## I. NO OBJECTIVELY REASONABLE PERSON COULD QUESTION THE COURT'S IMPARTIALITY.

To start with the most obvious, no reasonable person could believe the Court would be swayed over $2,000 in past political contributions to his spouse. As the Supreme Court has stated, even in the context of a judge's ***own*** run for office "[n]ot every campaign contribution by a litigant or attorney creates a probability of bias that requires a judge's recusal." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 884 (2009). Rather, recusal is appropriate only in the rare case where "a person with a personal stake in a particular case" made contributions that "had a significant and disproportionate influence" on an election "when the case was pending or imminent." *Id.*[2] That's far from the case here.

_____

[2] Advisory opinions covering business dealings also show that small contributions are less likely to require recusal. Even in cases involving direct business dealings with a judge's spouse, "[t]he nature and size of the client's financial connection to the spouse and the spouse's business can also affect the assessment of the judge's impartiality. A key consideration is the spouse's actual or potential financial benefit from the client." *Guide to Judiciary Policy*, Vol. 2B, Ch. 2, Advisory Op. 107. When "the client's financial contribution to the spouse's business is a relatively small percentage of the revenue of the spouse's business (and, in turn, of the spouse's income as a

Ms. Bough and her Committee raised a total of $421,940. Plaintiffs' Counsel together contributed a total of $2,000, or .4% of that amount. That's far too little to have *any* influence on the City Council elections, let alone a "significant and disproportionate" influence. Moreover, none of these contributions were made while this case "was pending or imminent." All were made well before the case was filed – most several years before. And the idea that the contributions would somehow bias the Court in favor of Plaintiffs and against Hanna is fanciful when viewed against Hanna's lawyers giving more than twice as much and defense counsel as a whole giving 20 times as much. More than 80 other law firms contributed to Ms. Bough's campaigns. No thoughtful and objective observer could look at these facts and worry that the Court was biased against Hanna or any of the other Defendants.

This case is far from *Caperton*, in which the Court found recusal required only because a single party spent $3 million in a judicial campaign while a major matter was pending, exceeding the judge's own Committee by 300%. *Caperton*, 556 U.S. at 884. Rather, this case is similar to *Liberty Mut. Ins. Co. v. Com. Concrete Sys., LLC*, No. 4:16cv658-MW/CAS, 2017 WL 1234140 (N.D. Fla. April 1, 2017). In *Liberty Mutual*, the Court declined recusal over a $100 contribution to a judge's own campaign given several years earlier (out of a total $113,915.74). *Id*. at *5. Sixty-eight law firms and 126 individual attorneys made similar contributions. *Id*. These facts did not come close to requiring recusal.

Significantly larger contributions also pass muster. For instance, in *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 502 S.W.3d 519, 521 (Ark. 2016), a $20,000 contribution representing 15% of the total campaign contributions was held insufficient to justify recusal.

_____

partner, shareholder, or owner), recusal is not required simply because the client appears before the judge in an unrelated proceeding." *Id*.

Likewise, in *Ivey v. Dist. Ct.*, 299 P.3d 354, 359 (Nev. 2013), recusal was denied when the trial judge received $5,000 in contributions from one of the parties and another $5,000 from that party's attorney, which amounted to 14% of the total contributions. The court in *River Rd. Neighborhood Ass'n v. S. Texas Sports, Inc.*, 673 S.W.2d 952, 952 (Tex. Ct. App. 1984), denied recusal where parties contributed 21.7 % and 17.1% of total contributions, respectively, to two appellate judges' campaigns. And the court in *E.I. DuPont de Nemours & Co., Inc. v. Aquamar S.A.*, 24 So.3d 585, 585 (Fla. Ct. App. 2009) held recusal not warranted when lawyers contributed $4,650. Every one of these cases involved contributions ***directly to the judge's campaign***, not more remote contributions to the campaign of a judge's spouse. As in *Liberty Mutual*, "this case is about as easy as it gets." *Liberty Mutual*, 2017 WL 1234140, at *5.

Hanna relies heavily on the Court's prior decision to recuse in *Glasscock v. Sig Sauer, Inc.*, No. 6:22-cv-03095 (W.D. Mo. Oct. 16, 2024). Doc. 689 at 5. But *Hanna* ignores several important differences between this case and *Glasscock*. First, *Glasscock* involved contributions made while the case was pending (*Glasscock* was filed on April 18, 2022, and Mr. Dameron made his last contribution on October 26, 2022). *Glasscock* Doc. 1; Doc. 114 at 5. *Glasscock* therefore met the *Caperton* requirement that the case for which recusal is sought must be "pending or imminent" at the time of the contributions. This case, by contrast, was filed on October 31, 2023, more than a year after Mr. Dameron made his last contribution. Second, no defense lawyer in *Glasscock* had contributed to Ms. Bough. Here the contributions by Hanna's lawyers alone are more than twice those by Plaintiffs' counsel, and the total contributions by all defense counsel are more than 20 times larger. And third, Mr. Dameron was active as counsel in *Glasscock* at the time of recusal. Here, to remove all doubt regarding the Court's impartiality, he withdrew shortly after the *Glasscock* recusal; he has not been part of this case for five months and will not be counsel in the

future. Plaintiffs respectfully suggest that the Court need not have recused itself in *Glasscock*, although they understand it may have done so out of an abundance of caution. But the decision whether to recuse is "extremely fact intensive," *United States v. Brocato*, 4 F.4th 296, 302 (5th Cir. 2021), and the situation here is completely different.

## II.     NO STATUTE OR RULE REQUIRES RECUSAL FOR POLITICAL CONTRIBUTIONS TO A SPOUSE.

Hanna cites no statute or rule dealing directly with political contributions to a spouse. Hanna also cites no case law requiring recusal for such contributions. The reason is that no rule exists. Nor could it. Hanna seems unaware that many states elect their judges and both lawyers and litigants contribute freely to those campaigns. As the Supreme Court observed, "[a] rule requiring judges to recuse themselves from every case in which a lawyer or litigant made a campaign contribution would disable many jurisdictions." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 454-55 (2015); *accord Liberty Mutual*, 2017 WL 1234140, at *5 ("Defendants' argument, if true, would effectively cripple our judicial system."). And the same would apply to any rule requiring recusal for spousal campaign contributions.

Hanna's primary authority, *Application of Gaulkin*, 351 A.2d 740 (N.J. 1976), speaks of judicial spouses sacrificing "certain amenities of life, and perhaps even some legal rights" for the sake of "avoiding the fact or appearance of participation by the judge in the political effort of a spouse." *Id.* at 199. That attitude is outdated to say the least. The cited Delaware Ethics opinion not only relies on *Gaulkin* but also takes the even more extreme position that a judicial spouse is barred altogether from accepting contributions from lawyers who might appear before the judge. *In re: Request for Opinion from the Judicial Advisory Committee*, 2008 WL 8681529, at *2-3 (De. Jud. Eth. Adv. Comm. Feb. 20, 2008). And Plaintiffs can find no instance in which Hanna's "Ethics Guide for Judges and Their Families" has been cited or relied on by any court, state or federal,

when considering recusal. Again, no statute, rule, or judicial decision mandates recusal for any and all contributions to a spouse's political campaign. Rather, as discussed in Section I, recusal decisions are highly fact-specific and turn on whether a lawyer made contributions so large that it "had a significant and disproportionate influence" on an election "when the case was pending or imminent." The contributions here don't come close to meeting that standard.

Hanna makes much of the Court's statement at the May 9 *Burnett* hearing that it would step down if asked. Doc. 689 at 8, 12. But a little context is in order. The May 9 hearing was for final approval of class settlements with three Defendants. It began at 9:00 a.m. At 5:06 a.m., a disgruntled realtor named Anthony Phillips sent an email raising for the first time the issue of political contributions. Hearing Tr. (5/9/24) at 3:21-4:3. The Court had no previous knowledge of who had contributed to Ms. Bough's campaigns. *Id*. at 5:6-11. Although the Court may be an early riser, it had little (if any) time for investigation and research. The Court therefore took the sensible precaution of asking all involved if anyone wanted to raise a conflict issue and no one did. This quick resolution in no way created a continuing obligation for the Court to recuse in every one of the many other cases with lawyers who contributed to Ms. Bough's campaigns (especially now that the passage of time has allowed reflection and research showing recusal would have been unnecessary in the first place).

*Burnett* was also a different situation. First, Mr. Dameron made one contribution while *Burnett* was pending, but no one contributed while this case was on file. Second, Mr. Dameron was active in *Burnett* on May 9, but he is no longer counsel here. In any event, the Court always retains the ability to revisit and reverse a recusal determination after further reflection. *See United States v. Dalfanso*, 707 F.2d 757, 759, 761 (3d Cir. 1983) (upholding judge's decision to vacate recusal order after "conclud[ing] that to recuse himself would set an undesirable precedent"); *In*

*re Lieb*, 112 B.R. 830, 834 (Bankr. W.D. Tex. 1990) (court may withdraw an offer to recuse even if "accepted" by counsel). For all these reasons, the Court's statements at the *Burnett* hearing provide no basis for seeking recusal here.

### III. THE TIMING OF HANNA'S MOTION FURTHER WEIGHS AGAINST RECUSAL.

Hanna's delay provides yet another reason for denying its recusal motion. "Motions for recusal under [Section 455] will not be considered unless timely made." *Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 653 (8th Cir. 2008). A motion for recusal is untimely unless made "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *United States v. Rubashkin*, 655 F.3d 849, 858 (8th Cir. 2011). Otherwise, litigants will be encouraged to withhold purported bases for recusal as "a fallback position to be asserted only after an adverse ruling." *White v. Nat'l Football League*, 585 F.3d 1129, 1141 (8th Cir. 2009). Which is exactly what happened here.

Let's start with Hanna's knowledge. A party filing for recusal "'is charged with knowledge of all facts known or knowable, if true, with due diligence from the public record or otherwise.'" *In re Digital Music Antitrust Litig.*, No. 06-MDL-1780(LAP), 2007 WL 632762, at *9 (S.D.N.Y. Feb. 27, 2007) (quoting *Universal City Studios, Inc. v. Reimerdes*, 104 F. Supp. 2d 334, 339 (S.D.N.Y. 2000)); *accord United States v. Siegelman*, 561 F.3d 1215, 1243 (11th Cir. 2009) (per curiam) ("[t]he rule has been applied when the facts upon which the motion relies are public knowledge, even if the movant does not know them."), *vacated on other grounds*, 561 U.S. 1040 (2010); *United States v. Daley*, 564 F.2d 645, 651 (2d Cir. 1977) (denying recusal because facts "as a matter of public record, were at all times ascertainable by counsel"); *Armenian Assembly of Am., Inc. v. Cafesjian*, 783 F. Supp. 2d 78, 87 (D.D.C. 2011) (quoting *Siegelman*); *Delgado-O'Neil v. City of Minneapolis*, 745 F. Supp. 2d 894, 914 (D. Minn. 2010) (denying recusal because "[t]his

Court's past employment history is of public record" and "easily obtainable."). All contributions to City Council candidates must be reported and are matters of public record. R.S. Mo. §§ 140.041, 140.042. Thus, Hanna is considered to have known throughout this litigation all facts relating to Ms. Bough's political contributions. This is all the more true given that Hanna's own lawyers were among those making such contributions.

But it gets worse. The May 9 hearing that Hanna cites was open and its transcript is also a public record. The gallery was packed with *Gibson* lawyers and the Court called out Hanna's local counsel by name. Hearing Tr. (5/9/24) at 5:12-14 ("I look around this room and go through Bryan Cave or Polsinelli or Lathrop or Shook or any other major firm appears to have donated to my wife as well."). In any event, the allegations made at the May 9 hearing concerning political contributions were widely reported.[3] Moreover, the email that prompted the Court's inquiry was filed on the public docket. *Burnett* Doc. 1488. And the hearing transcript is freely available on PACER. *Burnett* Doc. 1492. Hanna itself says it learned of these matters "using Google," which is pretty much the definition of publicly available information. Doc. 689-2 ¶4. All these facts were either actually known to Hanna or easily obtainable at any time.

Even Hanna admits its out-of-state lawyers learned of the May 9 hearing and political contributions no later than January 21, 2025. Doc. 689 at 11 n.5. The company seems to consider this fact exculpatory, but it isn't. Under Hanna's own theory, it still waited until March 10 to file

---

[3] *See, e.g.*, *Missouri Judge Stephen R. Bough Addresses Alleged Conflicts of Interest Regarding Campaign Contributions*, https://abusivediscretion.com/missouri-judge-stephen-r-bough-addresses-alleged-conflicts-of-interest-regarding-campaign-contributions/ (May 17, 2024); Jack Walsh, *Judge Addressed Alleged Conflicts of Interest at Settlement Hearing, Transcript Shows*, https://www.rismedia.com/2024/05/14/judge-addressed-alleged-conflicts-interest-settlement-hearing/ (May 14, 2024); Jesse Williams, The *Four Biggest Takeaways from the Copycat Settlement Approvals*, https://www.rismedia.com/2024/11/07/the-four-biggest-takeaways-from-the-copycat-settlement-approvals/ (Nov. 7, 2024).

14

this motion – 7 weeks later. That's far from the "earliest possible moment" to seek recusal. *See, e.g.*, *IFG Port Holdings LLC v. Lake Charles Harbor & Terminal Dist.*, 742 F. Supp. 3d 530, 546-47 (W.D. La. 2024) (one-month delay untimely); *Klayman v. Jud. Watch, Inc.*, No. 06-670, 2019 WL 3719008, at \*7 (D.D.C. Aug. 7, 2019) (four-week delay untimely); *Valley v. Rapides Parish Sch. Bd.*, 992 F. Supp. 848, 851 (W.D. La. 1998) (seven-week delay untimely); *In re Big Rivers Elec. Corp.*, 213 B.R. 962, 973 (Bankr. W.D. Ky. 1997) (44-day delay untimely). And during that time Hanna had a key motion pending before the Court asking for certification of an interlocutory appeal on the personal jurisdiction and transfer issue. Doc. 606. Hanna not only sat on its allegations until the Court ruled on that motion, but it even ***filed a reply brief*** with full knowledge of the political contributions and without ever mentioning any supposed conflict or need to recuse. (Doc. 667). There's no dispute that Hanna waited to seek recusal until after the Court ruled against it, which is "the most egregious delay – the closest thing to *per se* untimeliness." *United States v. Sanford*, 157 F.3d 987, 988-89 (5th Cir. 1998). And of course, Hanna could have performed its Google search at any time while this case was pending.

The bottom line is that Hanna should have filed its recusal motion earlier and didn't. Instead, it waited and used recusal as "an additional arrow in [its] quiver," *In re Kansas Pub. Emps. Retirement Sys.*, 85 F.3d 1353, 1360 (8th Cir. 1996), a "fall back position in the event of adverse rulings on pending matters." *In re Int'l Bus. Machines Corp.*, 45 F.3d 641, 643 (2d Cir. 1995). That's not proper. Together with denying Hanna's motion on the merits, the Court should also deny the motion because it's untimely.

## IV. THE COURT "WITHHELD" NO INFORMATION AND EXHIBITED NO "LACK OF CANDOR."

Hanna next accuses the Court of exhibiting a "lack of candor" by "withholding" information from it relating to political contributions to Ms. Bough. Doc. 689 at 12, 13. That's a

breathtaking accusation unsupported by the record. Hanna apparently thinks that after the May 9 *Burnett* hearing, the Court should have reviewed its case list, identified every case in which any lawyer involved had ever contributed to Ms. Bough, and affirmatively offered to recuse in each such case. But the Court had no duty to raise the issue here because "no reasonable person would look at the facts and circumstances of this case . . . and question [the Court's] impartiality." *Burton v. Arkansas Sec. of State*, No. 4:11-cv-00710, 2015 WL 11090414, at *5 (E.D. Ark. Feb. 26, 2015). Nor was the Court required to make certain that Hanna read publicly available information. *Id.* at *5-6 (party seeking recusal must conduct "a reasonable and diligent investigation," which includes reviewing "[c]ampaign finance reports . . . filed with the Secretary of State's office."); *see also United States v. O'Brien*, No. 12-40026-FDS, 2014 WL 535663, at *10 (D. Mass. Feb. 6, 2014) (no obligation to "disclose" publicly available information). This is particularly true when the Court had acknowledged on the record that Hanna's own counsel had donated to Ms. Bough's campaign.

The duty Hanna seeks to foist upon the Court would have been astonishingly broad – lawyers at more than 80 law firms contributed. These included both civil and criminal attorneys. If Hanna's suggestion had been followed, then the Court might have been left with no docket. That result would have been all the more inappropriate given that by 2024 Ms. Bough was term-limited and already winding down her Campaign Committee.

Hanna's sole case on this point, *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988), involved extreme facts not present here. The defendant in *Liljeberg* sought to buy a tract of land from Loyola University for use in the construction of a hospital. *Id.* at 853. Loyola would receive millions of dollars in benefits from the sale and related rezoning of the property next to the tract. *Id.* Concurrent with its negotiations to buy the tract from Loyola, the defendant reached a

preliminary agreement with an entity that sought to buy an adjoining tract of land. *Id.* at 853-54. Under this agreement, the entity would retain the defendant as a hospital consultant in exchange for transferring ownership of the hospital from the defendant to the entity. *Id.*

The lawsuit began when the entity's corporate successor sought a declaratory judgment that the preliminary agreement was enough to transfer ownership of the hospital. *Id.* at 854-55. The judge assigned to the case, Judge Collins, was a member of the Board of Trustees of Loyola. *Id.* at 855. In his capacity as a trustee, he received updates on the status of the sale, including the case pending before him. *Id.* at 855-58. Ultimately, "the success and benefit to Loyola . . . turned, in large part, on [the defendant] prevailing in the litigation before Judge Collins." *Id.* at 850. Yet Judge Collins neither recused himself nor disclosed the potential basis for recusal. Judge Collins eventually entered a judgment for the defendant after a bench trial, ensuring that Loyola would receive millions of dollars in benefits. *Id.* at 855.

*Liljeberg* thus presented facts in which the district court judge, in his capacity as a fiduciary for Loyola, had a direct and substantial financial interest in the outcome of the litigation that conflicted with the plaintiff's interests. *Id.* at 866-67. Further, the judge's interest in the outcome was one that the parties were unaware of and could not have known absent disclosure. *Id.* at 874 n.11. By contrast, neither the Court nor Ms. Bough have any interest in the outcome of this litigation. And given that Hanna's counsel and firms representing other Defendants also donated to the Committee, no reasonable person would question the Court's impartiality based on it deciding not to provide a disclosure in this specific proceeding. This is all the more true because the contributions at issue are a matter of public record, were known to Hanna's counsel, and were already disclosed by the Court in a related proceeding.

## V. THE COURT HAS A DUTY <u>NOT</u> TO RECUSE UNDER THESE CIRCUMSTANCES.

Lastly, the facts show that the Court actually has a duty ***not*** to recuse under these circumstances. "[T]here is as much obligation on the part of the judge not to recuse himself when there is no occasion for so doing as there is to recuse himself when such an occasion exists." *Walker v. Bishop*, 408 F.2d 1378, 1382 (8th Cir. 1969). For several reasons, the Court's need to remain sitting here is particularly great.

First, recusal now would promote judge-shopping. Recusal "does not provide a vehicle for parties to shop among judges." *United States v. Urben-Potratz*, 470 F.3d 740, 745 (8th Cir. 2006) (internal quotation omitted). Accordingly, "[t]he obligation not to recuse is perhaps at its highest when the motion has been brought after the party seeking recusal has sustained an adverse ruling in the course of the action." *United States v. Sierra Pac. Indus.*, 759 F. Supp. 2d 1198, 1205-06 (E.D. Cal. 2010). In addition, "[g]ranting a motion to recuse many months after an action has been filed" both "wastes judicial resources" and "encourages manipulation of the judicial process." *Willner v. Univ. of Kansas*, 848 F.2d 1023, 1029 (10th Cir. 1988). Hanna's tactical use of a recusal motion thus cannot be encouraged.

Second, adopting Hanna's position would make it difficult for any judge's spouse to run for office. Hanna's worldview "is based upon an outmoded conception of the relationship between spouses." *Perry v. Schwarzenegger*, 630 F.3d 909, 912 (9th Cir. 2011). In the modern world, where many couples have independent careers, "[t]he rights of a spouse may be affected through the application of rules of judicial ethics" and "care must be taken so as not to impede the political career of a spouse through the overregulation of a judge." Roger J. Miner, *Judicial Ethics in the Twenty-First Century: Tracing the Trends*, 32 Hofstra L. Rev. 1107, 1130 (2004). As discussed, most major law firms in town contributed to Ms. Bough's campaigns. If each of these small

contributions created a conflict, then either Ms. Bough could never run for office or the Court would have to recuse in most cases, hampering the Court's ability to function. That cannot be the law in the 21st century.

Third, recusal would deprive all parties and the judiciary of the Court's expertise gained after more than five long years of intense litigation. "The Court cannot properly overlook its very substantial investment of time and complex case management expertise in these cases." *In re Mercedes-Benz Antitrust Litig.*, 226 F. Supp. 2d 552, 557 (D.N.J. 2002). To reassign the case now "would be a waste of judicial resources because yet another district court judge would have to familiarize himself or herself with this complex and long-lived action." *Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, No. 97-CIV-5499(LAP), 2003 WL 282187, at *3 (S.D.N.Y. Feb. 7, 2003); *see also In re Big Rivers Elec. Corp.*, 213 B.R. 962, 975 (Bankr. W.D. Ky. 1997) ("This Court has acquired a valuable background of experience which would take many months to duplicate if it became necessary to substitute another judge at this juncture."). There's no Court in the country better equipped to continue handling this case and no reason to require a different judge to start from scratch in recreating the last five years of experience.

## VI.    BHE'S JOINDER IN HANNA'S MOTION SHOULD BE DENIED FOR THE SAME REASONS.

Finally, Defendant Berkshire Hathaway Energy (BHE) recently stated it intends to join in Hanna's motion seeking recusal. BHE is represented by Jeff Simon of Husch Blackwell. Both Mr. Simon and Husch Blackwell contributed to Ms. Bough's political campaigns. (Ex. 2, *Dirks Declaration* at ¶9). Also, counsel for BHE's subsidiary HomeServices (Lathrop GPM) was present at the May 9 hearing. Hearing Tr. (5/9/24) at 5:12-14. And, as with Hanna, BHE never raised the recusal issue until after it had filed (and lost) key motions, including motions to dismiss and to compel arbitration. Thus, BHE's joinder should be denied for all the same reasons discussed above

relating to Hanna's motion. The political contributions to Ms. Bough present no need for recusal, and in any event BHE's raising of the issue is untimely.

## CONCLUSION

For all these reasons, the Court should deny Defendants' motion to recuse.

Dated: March 24, 2025                                Respectfully submitted by:

**KETCHMARK AND MCCREIGHT P.C.**
/s/ Scott McCreight
Michael Ketchmark                 MO # 41018
Scott McCreight                      MO # 44002
11161 Overbrook Rd. Suite 210
Leawood, Kansas 66211
Tele:   (913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

**BOULWARE LAW LLC**
Brandon J.B. Boulware          MO # 54150
Jeremy M. Suhr                      MO # 60075
1600 Genessee Street, Suite 956A
Kansas City, MO 64102
Tele:   (816) 492-2826
Fax:    (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Benjamin D. Brown (*pro hac vice*)
Robert A. Braun (*pro hac vice*)
Sabrina Merold (*pro hac vice*)
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
smerold@cohenmilstein.com

Daniel Silverman (*pro hac vice*)
769 Centre Street, Suite 207

**WILLIAMS DIRKS DAMERON LLC**
Michael A. Williams          MO # 47538
Eric L. Dirks                      MO # 54921
1100 Main Street, Suite 2600
Kansas City, MO 64105
Tele: (816) 945 7110
Fax: (816) 945-7118
mwilliams@williamsdirks.com
dirks@williamsdirks.com

**SUSMAN GODFREY L.L.P.**
Marc M. Seltzer (*pro hac vice*)
Steven G. Sklaver (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Beatrice C. Franklin (*pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8330
bfranklin@susmangodfrey.com

Matthew R. Berry (*pro hac vice*)
Floyd G. Short (*pro hac vice*)
Alexander W. Aiken (*pro hac vice*)
401 Union St., Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
mberry@susmangodfrey.com
fshort@susmangodfrey.com
aaiken@susmangodfrey.com

Boston, MA 02130
Telephone: (617) 858-1990
dsilverman@cohenmilstein.com

**HAGENS BERMAN SOBOL SHAPIRO
LLP**
Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Rio S. Pierce (*pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
riop@hbsslaw.com

Nathan Emmons (Mo. Bar. No. 70046)
Jeannie Evans (*pro hac vice*)
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
nathane@hbsslaw.com
jeannie@hbsslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, a copy of the foregoing document was
electronically filed through the ECF system and will be sent electronically to all persons identified
on the Notice of Electronic Filing.

/s/ *Scott A. McCreight*
**Attorney for Plaintiffs**