DON GIBSON, LAUREN CRISS, JOHN
MEINERS, and DANIEL UMPA,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

        v.

NATIONAL ASSOCIATION OF
REALTORS, et al.,

        Defendants.

Case No. 4:23-CV-00788-SRB
[Consolidated with 4:23-CV-00945-SRB]

Hon. Stephen R. Bough

**ORAL ARGUMENT REQUESTED**

## REPLY SUGGESTIONS IN SUPPORT OF DEFENDANTS HANNA HOLDINGS, INC. AND BERKSHIRE HATHAWAY ENERGY COMPANY'S JOINT MOTION FOR RECUSAL OF THE HONORABLE STEPHEN R. BOUGH

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................3

I.    This Court Must Recuse Consistent With Its Conclusions In *Burnett*, *Glasscock*, And Its Notice That Donations Create The Appearance Of Impropriety ............................3

    A.    The Court Has Not Erred In Concluding Three Times That Contributions To Andrea Bough Create The Appearance Of Impropriety .............3

    B.    Not Recusing Here Creates An Appearance Of Impropriety ...................................6

II.    Hanna Holdings Timely Filed Its Motion For Recusal ........................................................9

III.    The Court Has No Duty To Remain Sitting In The Face Of This Clear Conflict .............14

CONCLUSION ..................................................................................................................15

i

# TABLE OF AUTHORITIES

**CASES**

Page(s)

*Armenian Assembly of Am., Inc. v. Cafesjian*,
  783 F. Supp. 2d 78 (D.D.C. 2011) ...............................................................10, 15

*California v. Kleppe*,
  431 F. Supp. 1344 (C.D. Cal. 1977) ...................................................................15

*Caperton v. A.T. Massey Coal Co.*,
  556 U.S. 868 (2009).............................................................................................5, 6

*Delgado-O'Neil v. City of Minneapolis*,
  745 F. Supp. 2d 894 (D. Minn. 2010) ..........................................................10, 15

*Fletcher v. Conoco Pipe Line Co.*,
  323 F.3d 661 (8th Cir. 2003) .................................................................................10

*German v. Fed. Home Loan Mortg. Corp.*,
  943 F. Supp. 370 (S.D.N.Y. 1996) ......................................................................12

*Hoke v. Charlotte-Mecklenburg Hosp. Auth., Inc.*,
  550 F. Supp. 1276 (W.D.N.C. 1982) ...................................................................15

*IFG Port Holdings LLC v. Lake Charles Harbor & Terminal Dist.*,
  742 F. Supp. 3d 530 (W.D. La. 2024)..................................................................12

*In re Big Rivers Elec. Corp.*,
  213 B.R. 962 (Bankr. W.D. Ky. 1997) .......................................................... 12-13

*In re Digital Music Antitrust Litig.*,
  2007 WL 632762 (S.D.N.Y. Feb. 27, 2007)........................................................11

*In re Kensington Int'l, Ltd.*,
  368 F.3d 289 (3d Cir. 2004)............................................................................8, 10

*In re Mercedez-Benz Antitrust Litig.*,
  226 F. Supp. 2d 552 (D.N.J. 2002) ......................................................................15

*Klayman v. Judicial Watch, Inc.*,
  2019 WL 3719008 (D.D.C. Aug. 7, 2019) ..........................................................12

*Liberty Mutual Ins. Co. v. Com. Concrete Sys., LLC*,
  2017 WL 1234140 (N.D. Fla. Apr. 1, 2017).........................................................5

ii

*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (1988) ................................................................................6, 8

*SCA Servs., Inc. v. Morgan*,
    557 F.2d 110 (7th Cir. 1977) ............................................................................7

*Selkridge v. United of Omaha Life Ins. Co.*,
    360 F.3d 155 (3d Cir. 2004) .............................................................................6

*United States v. Anderson*,
    160 F.3d 231 (5th Cir. 1998) ..........................................................................12

*United States v. Couch*,
    896 F.2d 78 (5th Cir. 1990) ..............................................................................6

*United States v. Daley*,
    564 F.2d 645 (2d Cir. 1977) ...........................................................................11

*United States v. Farkas*,
    149 F. Supp. 3d 685 (E.D. Va.) ......................................................................12

*United States v. Rubashkin*,
    655 F.3d 849 (8th Cir. 2011) ..........................................................................10

*United States v. Siegelman*,
    561 F.3d 1215 (11th Cir. 2009) (per curiam) ...........................................10, 15

*United States v. Sierra Pac. Indus.*,
    759 F. Supp. 2d 1198 (E.D. Cal. 2010) ...........................................................14

*Universal City Studios, Inc. v. Reimerdes*,
    104 F. Supp. 2d 334 (S.D.N.Y. 2000) .............................................................11

*Valley v. Rapides Parish Sch. Bd.*,
    992 F. Supp. 848 (W.D. La. 1998) ..................................................................12

*White v. Nat'l Football League*,
    585 F.3d 1129 (8th Cir. 2009) ........................................................................10

*Willner v. Univ. of Kan.*,
    848 F.2d 1023 (10th Cir. 1988) ................................................................14, 15

**DOCKETED CASES**

*Batton v. Nat'l Ass'n of Realtors*,
    No. 1:21-cv-430 (N.D. Ill. Sept. 4, 2024) .....................................................7, 15

iii

*Burnett v. Nat'l Ass'n of Realtors*
    No. 4:19-cv-332 (W.D. Mo.) ..................................................1, 2, 3, 4, 5, 6, 8, 9, 11, 12, 13

*Gibson v. Nat'l Ass'n of Realtors*,
    No. 4:23-cv-788 (W.D. Mo.) ...............................................................................5, 6, 7, 11

*Glasscock v. Sig Sauer, Inc.,*
    No. 6:22-cv-03095 (W.D. Mo.) .........................................................1, 2, 3, 4, 6, 7, 12, 15

## STATUTES

28 U.S.C. § 455.............................................................................................3, 4, 5, 6, 10, 14

## RULES

Fed. R. Civ. P. 60.......................................................................................................................8

## OTHER AUTHORITIES

2B Guide to Judiciary Policy ......................................................................................................7

Code of Conduct for United States Judges ................................................................................4, 5

## INTRODUCTION

Hanna Holdings does not question the rights of judges' spouses to hold political office or of lawyers to support the political candidates of their choice; the respect Andrea Bough has earned from her community; or that the Court has presided over this case without actual bias. None of those points are why Hanna Holdings seeks recusal, and it is telling that Plaintiffs focus their arguments on those strawmen. Instead, the reason the Court must recuse is straightforward: the Court has twice determined that contributions from Matthew Dameron warrant clear recusal. Dameron was also counsel to Plaintiffs in this case and his firm remains counsel to Plaintiffs.

Indeed, the circumstances necessitating recusal here are even stronger than in either of the two cases where the Court previously either offered to recuse or in fact did recuse. For one thing, those cases established that the Court should and would recuse based on Dameron's contributions, and abandoning that practice here would exacerbate the appearance of impropriety arising from the donations themselves. Moreover, after Hanna Holdings filed this motion, the Court issued a notice stating that donations made to Andrea Bough's campaign within the last five years—as Dameron's were—will be considered a reason to question the Court's impartiality (the "Notice"). And, on top of everything else, there are additional donations from Plaintiffs' counsel that Hanna Holdings has uncovered that themselves create an appearance of impropriety. *See* Dkt. 689-4 at 5 (Boulware donation in 2018).

Plaintiffs' arguments only reinforce the need for recusal. *First*, Plaintiffs are wrong that the Court's decisions to recuse in *Burnett* and *Glasscock* (and presumably the issuance of the Notice, which Plaintiffs do not mention) were in error. As Hanna Holdings explained, and the Court correctly observed, the donations at issue created an appearance of impropriety. The Judicial Conference's Code of Conduct Committee, as well as multiple state courts and ethics

1

advisory committees, has recognized that judges should recuse from cases in which they know parties or counsel contributed to their family member's campaign. *Second*, Plaintiffs' fallback attempts to distinguish the Court's recusal decisions in *Burnett* and *Glasscock* from the facts here are both wrong and beside the point. They are wrong because there is no rule that only donations made during the pendency of litigation create an appearance of impropriety, as the Court's Notice reflects. Here, Dameron's contributions during *Burnett*—which Dameron himself marked as related to get this case before this Court—would cause a reasonable observer to doubt the Court's impartiality. Further, Plaintiffs concede Dameron withdrew from this case out of recognition that his presence created "doubt regarding the Court's impartiality." Opp. 10. Dameron's withdrawal without explanation does not cure the conflict, especially when his firm remains in the case. In any event, recusal cannot turn on such factual nuances without creating the appearance that the court picks and chooses which cases it wants to hear.

*Third*, Plaintiffs' contention that Hanna Holdings' motion is untimely and impermissibly "tactical" gets it exactly backwards, as explained in the declaration of Professor Bruce Green, an ethics expert at Fordham University School of Law and the Director of the Stein Center for Law and Ethics. This Circuit measures timeliness from actual knowledge, and Hanna Holdings and its counsel did not have actual knowledge of the facts underlying its motion until at most six weeks before it notified the Court (not seven). And the few weeks Hanna Holdings took to ensure that it had a factual and legal basis for this motion before filing, including by reviewing extensive donation records and consulting with outside counsel's General Counsel, is not *undue* delay and does not support an inference of gamesmanship. Even if constructive knowledge were the standard, as Plaintiffs wrongly argue, the motion remains timely because, as Professor Green

2

confirms, reasonable diligence does not require litigants to comb through public records concerning a judge's spouse or scour the internet for reasons to seek recusal.

Finally, Plaintiffs are wrong with their puzzling argument that this Court has an obligation *not* to recuse. As Professor Green explains, that regime ended more than a half century ago when Congress passed 28 U.S.C. § 455. That section requires recusal whenever—as here—there is an appearance of impropriety.

## ARGUMENT

**I.      This Court Must Recuse Consistent With Its Conclusions In *Burnett*, *Glasscock*, And Its Notice That Donations Create The Appearance Of Impropriety**

This Court correctly concluded in *Burnett* and *Glasscock* that Dameron's contributions to Andrea Bough's campaign were a basis for recusal. The Court was also correct when it posted its Notice that donations made to Andrea Bough's campaign within the last five years will be considered as a reason to question the Court's impartiality.[1] The Court's presiding over this case, notwithstanding Dameron's involvement and the continued involvement of his firm, furthers the appearance of impropriety created by these contributions by leaving the impression that it can draw arbitrary lines between cases in deciding whether to recuse. *See* Green Decl. ¶ 20.

**A.      The Court Has Not Erred In Concluding Three Times That Contributions To Andrea Bough Create The Appearance Of Impropriety**

Plaintiffs argue that the Court should not have deemed Dameron's contributions grounds for disqualification, but they are wrong. *See* Opp. 8-13. While no statute mandates recusal for political contributions to a judge's spouse, Opp. 11-12, Section 455 requires recusal when there is an appearance of impropriety. Political contributions can—and did here—create such an appearance. Indeed, the Judicial Conference's Committee on Codes of Conduct has advised that

---

[1] *Notice Regarding Political Donations*, https://www.mow.uscourts.gov/sites/mow/files/SRB-NoticeRegardingPoliticalDonations.pdf.

a judge whose spouse runs for elected office may be required to recuse more frequently because judges should recuse themselves whenever they know that counsel have contributed to a family member's political campaign. Mot. 10-11. That this guidance has not been relied upon by courts when considering recusal simply demonstrates the unique and unusual circumstances of this conflict. *See* Opp. 11-12. Several state courts and ethics advisory committees have concluded the same. Mot. 10-11. Plaintiffs are wrong that these authorities reflect an "outdated" attitude. Opp. 11. They merely provide a workable brightline rule for judges.

Plaintiffs imply that this Court's offer to recuse in *Burnett* was ill-considered, asserting that "a little context" is necessary to understand the Court's statement that it would step down if asked because the Court "had little (if any) time for investigation and research." Opp. 12. In doing so, they selectively omit key details from the conference and undersell the Court's efforts. The Court explained that it had "spent way too much time looking at the legal ethics rules on this" because of his wife's occupation, and that "the ethics rules make it abundantly clear if [he] know[s] someone is donating to [his] wife, then [he] need[s] to put them on the conflicts list." Dkt. 693-3, Tr. 4:11-15. When the Court learned of the contributions by Dameron and Taxpayers Unlimited, the Court "went back and looked at those ethics rules again," "went to the disclosures that were hyperlinked in th[e] email," and "look[ed] through those disclosures" before the hearing. *Id.* 4:21-24, 5:19-21. Plaintiffs' doubts about the Court's thoughtful consideration of this issue in *Burnett* are particularly unreasonable given the Court's decision months later to recuse in *Glasscock* over the same concerns, and its recent Notice that the Court will consider donations "within the last 5 years" "as a reason to question [the Court's] impartiality under Canon 3C(1) of the Code of Conduct for United States Judges," which applies "substantively similar standards to judicial disqualification" as Section 455, *see* Green Decl. ¶¶ 11, 13.

4

Plaintiffs also argue—despite this Court's conclusion otherwise—that no reasonable person could believe the Court would be "swayed" by their counsel's contributions, Opp. 8, but that is the wrong standard. Plaintiffs rely on *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), which involves the constitutional standard for recusal, not the statutory standard. Unlike the Due Process Clause, Section 455 demands recusal beyond the constitutionally suspect "rare instance[]" where contributions "had a significant and disproportionate influence" on an election "when the case was pending or imminent," which "demarks only the outer boundaries of judicial disqualifications." *Id.* at 884, 889-890. Plaintiffs' cases do not demonstrate that contributions of the magnitude at issue here can never be grounds for disqualification in federal court. The state court cases on which Plaintiffs rely, *see* Opp. 9-10, are inapposite because state court judges are not bound by the requirements of Section 455 or Canon 3 of the Code of Conduct for United States Judges. Plaintiffs' sole federal court decision, *Liberty Mutual Insurance Co. v. Commercial Concrete System, LLC*, 2017 WL 1234140 (N.D. Fla. Apr. 1, 2017), involved materially different facts. In *Liberty Mutual*, the defendants moved for recusal based on a single donation of $100, nine years before the filing of the lawsuit, to the district court judge's prior campaign for an uncontested state court judgeship. 2017 WL 1234140, at *3. The court found no basis for recusal because of the ten-year gap since the contribution, the judge no longer holding elected office, and Florida states cases holding that contributions of that amount were not a legally sufficient ground for disqualification. *Id.* at *4-5. Here, Plaintiffs' counsel contributed significantly larger sums to Andrea Bough's campaign just one year before filing *Gibson* (and while this Court oversaw *Burnett*), and Plaintiffs cite no law (because there is none) holding that campaign contributions are legally insufficient grounds for recusal under Section 455.

5

**B.      Not Recusing Here Creates An Appearance Of Impropriety**

Plaintiffs are wrong that the Court's offer to recuse in *Burnett* and recusal in *Glasscock* do not require recusal here. *Burnett* and *Glasscock* are indistinguishable, and the duty to consistently apply recusal rules is clear. In fact, it gives rise to the appearance of impropriety for courts to apply recusal rules differently based on factoids that are hard for litigants and the public to understand. *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 170 (3d Cir. 2004) (judge cannot "recuse himself in a substantial number of cases and … decline to recuse himself in another group of cases that appears indistinguishable for purposes of recusal").

Each of Plaintiffs' three supposed bases for distinguishing *Burnett* and *Glasscock* fails:

*First*, it does not matter that Dameron contributed during *Burnett* but not this case. *See* Opp. 10, 12. The relevant question is whether there is an appearance of impropriety from the donation, *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865-867 (1988), and that appearance does not change simply because a donation was not made during the case. In arguing otherwise, Plaintiffs rely extensively on *Caperton*, but again, that case addresses when contributions create a "constitutionally intolerable probability of *actual* bias" under the Due Process Clause, 556 U.S. at 882 (emphasis added), a bar much higher than the *appearance* of impropriety that warrants recusal under Section 455, *see United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990). Regardless, *Caperton* recognizes that contributions made "when the case was pending *or imminent*" create an impermissible risk of bias. 556 U.S. at 884 (emphasis added). Dameron contributed to Andrea Bough's campaign only one year before filing the *Gibson* complaint, and the *Gibson* complaint was drafted far sooner than that since it was filed the day of the jury verdict in *Burnett*. *See* Complaint, *Gibson*, No. 4:23-cv-788 (W.D. Mo. Oct. 31, 2023), Dkt. 1; *Burnett*, Jury Verdict, No. 4:19-cv-332 (W.D. Mo. Oct. 31, 2023), Dkt. 1294.

6

*Second,* Dameron's withdrawal from this case deepens, rather than resolves, the appearance of impropriety. *See* Opp. 10, 12. Plaintiffs concede that Dameron withdrew because his presence in the case created "doubt regarding the Court's impartiality." Opp. 10. But Dameron's withdrawal motion did not explain the reason for withdrawal, and the Court granted the motion without argument or disclosing on the record what the Court and Dameron knew but the Defendants in *Gibson* did not know—that Dameron's contributions were the reason for withdrawal. *See* Dkts. 511, 518. Had either Dameron or the Court disclosed the donations, Hanna Holdings (and likely other Defendants who have since settled) would have requested that the Court recuse. The non-disclosure of the reasons for withdrawal contributes to the overall appearance of impropriety. In any event, an individual attorney's conflict is imputed to his entire firm, as is the case here. *See, e.g.*, *SCA Servs., Inc. v. Morgan*, 557 F.2d 110, 115 (7th Cir. 1977) (conflict existed because of judge's relationship to partner of firm representing defendants, even though the partner was not involved in the litigation). Indeed, the district court judge in *Batton*, another real estate brokerage antitrust case, recused because of her relationship to a partner at the firm representing one of the defendants, in the middle of the case. *See* Notice to the Parties, *Batton v. Nat'l Ass'n of Realtors*, No. 1:21-cv-430 (N.D. Ill. Sept. 4, 2024), Dkt 170 ("[A]n equity partner in a law firm generally has 'an interest that could be substantially affected by the outcome of the proceeding' in all cases where the law firm represents a party before the court." (quoting 2B Guide to Judiciary Policy, ch. 2, Advisory Op. No. 58)). Thus, Dameron's withdrawal does not cure the issue because the Dameron firm remains in the case.

*Third,* Plaintiffs' contention that "no defense lawyer in *Glasscock* had contributed" to the campaign, unlike defense attorneys here, Opp. 10, 19, is both incorrect and irrelevant. In *Glasscock*, Plaintiffs opposed the recusal motion on this very ground. Dkt. 115 at 3-4. This

7

Court still correctly granted the motion to recuse.  And in *Burnett*, where Plaintiffs do not dispute defense counsel contributed, this Court rightly concluded that those donations simply meant all parties should have an opportunity to request recusal.  *See* Dkt. 693-3, Tr. 4:9-5:17 (explaining that, because both sides' counsel donated, "the ethics rules require me to ask *each* of the parties if they would like to conflict [the Court] off the case" (emphasis added)).  So it is here.

Plaintiffs also are wrong that the Court had no obligation to disclose the conflict it had disclosed to the parties in *Burnett*.  Hanna Holdings' argument that this Court should have disclosed the grounds for disqualification that it identified in *Burnett* reflects the Court's ethical responsibility, not a "breathtaking accusation."  Opp. 15-16.  Plaintiffs offer no response to most of the cases affirming this uncontroversial principle.  *See* Mot. 8-9.  They respond only to *Liljeberg*, but they do not dispute *Liljeberg*'s central holdings: that nondisclosure of known conflicts creates an appearance of impropriety, and that prompt disclosure helps to prevent the "substantive injustice" such appearances create.  486 U.S. at 867-868.  They instead try to distinguish *Liljeberg* on the basis that the judge had a fiduciary interest in the litigation, Opp. 17, but the reason for recusal does not bear on these central holdings about disclosure.  Plaintiffs also contend that, unlike here, the judge's interest could not be determined based on publicly available facts, Opp. 17, but that was relevant only to whether vacatur was appropriate under Rule 60(b)(6), not whether there was an appearance of impropriety.  *See Liljeberg*, 486 U.S. at 863 n.11.  As Professor Green explains, "[i]t is well established that the judge has the principal responsibility for bringing the relevant facts to light to give parties an opportunity to address the possible need for the judge's recusal and to avoid the appearance that the judge has something to hide."  Green Decl. ¶ 17 (citing *In re Kensington Int'l, Ltd.*, 368 F.3d 289, 313 (3d Cir. 2004)).  As a result, "parties and their lawyers are entitled to presume that the judge is impartial, and that

if the judge's impartiality might reasonably be questioned for reasons known to the judge but not to them, the judge will tell them." *Id.* ¶ 16. The Court failed to do so here.

Plaintiffs' only other argument for why the Court had no obligation to disclose the conflict is that such a rule would obligate the Court to "review[] its case list, identif[y] every case in which any lawyer involved had ever contributed to Ms. Bough, and affirmatively offer[] to recuse in each such case." Opp. 16. That is wrong. It was brought to the Court's attention in *Burnett* that Dameron had contributed to Andrea Bough's campaign and the Court concluded that, once it had that knowledge, it had an obligation to disclose the conflict. The Court here has known that Dameron contributed to Andrea Bough's campaign, and offered to or did recuse in other cases because of that conflict. Applying that rule consistently does not require the Court to investigate whether the attorneys in any of the cases pending before it contributed to Andea Bough's campaign. That is reflected in the Court's recent Notice, which informs parties that contributions made in the past five years will be considered a basis to question the Court's impartiality and asks parties to notify the Court if they intend to seek recusal. The Court's Notice should alleviate the problem going forward. But here, at this time, and on these facts, to not recuse based on the flimsy factual distinctions Plaintiffs attempt to draw would leave the impression that the Court picks and chooses which cases to keep.

## II.    Hanna Holdings Timely Filed Its Motion For Recusal

Plaintiffs argue that Hanna Holdings' motion is untimely either because Hanna Holdings is charged with knowing every publicly available fact in the universe or because after Hanna Holdings obtained actual knowledge of the ground for recusal, it supposedly strategically waited until after the Court had denied its certification for an interlocutory appeal to file its motion. Opp. 13-15. Plaintiffs are wrong on the law and the facts.

9

*First*, in the Eighth Circuit, timeliness under Section 455 is measured from actual knowledge. *See* Opp. 14. A party must move "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim," *i.e.*, actual knowledge. Mot. 7 n.5 (quoting *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003)). Some of Plaintiffs' cases recognize this exact legal principle. *See, e.g.*, *United States v. Rubashkin*, 655 F.3d 849, 858 (8th Cir. 2011) (recusal motion is timely if filed "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim"). That serves the purpose of the timeliness requirement, which is to prevent litigants from "withhold[ing]" knowledge of bases for recusal. Opp. 13 (citing *White v. Nat'l Football League*, 585 F.3d 1129, 1141 (8th Cir. 2009)); *see also In re Kensington Int'l Ltd.*, 368 F.3d 289, 294 (3d Cir. 2004) (purpose of timeliness requirement to prevent "holding in reserve a recusal demand until such time that a party perceives a strategic advantage" "is served by requiring actual knowledge").

Plaintiffs thus are wrong that Hanna Holdings can be charged with knowing "all facts relating to Ms. Bough's political contributions." Opp. 14. Nearly all the cases Plaintiffs cite applying a constructive knowledge standard are out of circuit, and, in any event, none supports this expansive claim. *See* Opp. 13-14. In half of the cases, the court concluded the recusal motion was untimely because it was filed only after final judgment was entered and had "all the earmarks of an eleventh-hour ploy based upon his dissatisfaction" with that judgement. *See United States v. Siegelman*, 561 F.3d 1215, 1243 (11th Cir. 2009) (per curiam); *see also Delgado-O'Neil v. City of Minneapolis*, 745 F. Supp. 2d 894, 914 (D. Minn. 2010) (motion filed after entry of final judgment); *Armenian Assembly of Am., Inc. v. Cafesjian*, 783 F. Supp. 2d 78, 87 (D.D.C. 2011) (motion filed after trial opinion). By contrast, this motion is neither frivolous nor a tactical ploy. *See supra* Section I. Several other cases Plaintiffs cite are not about public facts

10

at all; rather, they concern imputing knowledge between a party and its counsel or between an attorney and its firm, which is not at issue here. *See United States v. Daley*, 564 F.2d 645, 651 (2d Cir. 1977) (party knew of conflict but did not inform counsel); *Universal City Studios, Inc. v. Reimerdes*, 104 F. Supp. 2d 334, 349 (S.D.N.Y. 2000) (attorney whose firm represented movant knew of conflict).[2] Plaintiffs' final case, *In re Digital Music Antitrust Litigation*, 2007 WL 632762, at *9 (S.D.N.Y. Feb. 27, 2007), stands for the unremarkable proposition that counsel seeking to be made Interim Co-Lead Counsel in an MDL should be aware of the docket entries of the consolidated cases. But *Burnett* and *Gibson* are not consolidated cases, Hanna Holdings opposed consolidation before the JPML, and Hanna Holdings has never been involved in or sought to be involved in *Burnett*.

Plaintiffs' position also "has it backwards" because "parties and their lawyers are entitled to presume that the judge is impartial." Green Decl. ¶ 16. "[P]arties who are unaware of grounds for judicial recusal are not required to comb the public record or otherwise investigate in search of such grounds." *Id.* And Hanna Holdings certainly cannot be said to have known about what was said in a settlement conference in a different case involving a settlement to which Hanna Holdings is not a party, as well as hundreds of pages of campaign finance reports, simply because it *could* have obtained that information. Hanna Holdings had no reason to research this Court's wife at all, let alone the individuals and groups that donated to her campaign. Indeed, it is Plaintiffs who offer the antiquated views here, fashioning a rule that the parties to the litigation *must* investigate the spouse of a federal judge for potential conflicts lest they be waived. *See* Opp. at 14. Due diligence also does not require Hanna Holdings to identify and read every entry on every docket or every article or blog post discussing the docket of every federal judge it

---

[2] Plaintiffs claim that Shook was aware of the conflict but have no basis for that claim. *See infra* p.13.

appears before. Plaintiffs managed to find three webpages reporting on the conflict in *Burnett*, but two are behind paywalls and the third is a post on an obscure blog. *See* Opp. 14 n.3. Hanna Holdings cannot be charged with knowledge of that "reporting."

*Second*, Hanna Holdings did not unduly delay in filing its motion. Hanna Holdings obtained some preliminary knowledge on January 21 and further investigated the issue throughout February. *See* Brumberg Decl. ¶¶ 4, 6, 8; Gringer Decl. ¶¶ 2-7. During that investigation, Hanna Holdings learned additional relevant facts, including—on March 4—that the Court recused itself in *Glasscock* because of Dameron's contributions. *See* Gringer Supp. Decl. ¶ 2. Hanna Holdings then notified the Court of the issue on March 7, and filed its motion on March 10. *See* Brumberg Decl. ¶ 8; Gringer Decl. ¶ 8. Plaintiffs thus are incorrect that Hanna Holdings waited "seven weeks" to raise this claim. Opp. 7. Courts have held that recusal motions filed after similar spans of time were timely. *See, e.g.*, *United States v. Anderson*, 160 F.3d 231, 234 (5th Cir. 1998) (timely motion filed "over six weeks" after learning of conflict); *United States v. Farkas*, 149 F. Supp. 3d 685, 694 (E.D. Va.), *aff'd*, 669 F. App'x 122 (4th Cir. 2016) ("four-month delay" did not render motion untimely); *German v. Fed. Home Loan Mortg. Corp.*, 943 F. Supp. 370, 375 (S.D.N.Y. 1996) (motion was timely despite two-month delay).

Plaintiffs' handful of cases finding recusal motions untimely are distinguishable because in each the proffered grounds for recusal required no further investigation. *See* Opp. 15. For example, in *IFG Port Holdings LLC v. Lake Charles Harbor & Terminal District*, the motion was based on the judge's conduct at hearings the moving party attended. 742 F. Supp. 3d 530, 546-547 (W.D. La. 2024). *See also Klayman v. Jud. Watch, Inc.*, 2019 WL 3719008, at *7 (D.D.C. Aug. 7, 2019) (motion based on adverse ruling); *Valley v. Rapides Parish Sch. Bd.*, 992 F. Supp. 848, 851 (W.D. La. 1998) (motion based on information obtained via case filing); *In re*

12

*Big Rivers Elec. Corp.*, 213 B.R. 962, 973 (Bankr. W.D. Ky. 1997) (motion based on disclosed ex parte communications). Here, by contrast, Hanna Holdings had an obligation to investigate and not merely rely on what the internet turned up. *See* Mot. 7 n.5. Plaintiffs nowhere question—and they cannot—that it was appropriate for Hanna Holdings to assure itself of the basis for this motion before filing. "[L]awyers disserve the courts and their clients when they hastily file recusal motions that are inadequately grounded in the facts and the law." Green Decl. ¶ 19.

Plaintiffs are also wrong that Hanna Holdings had actual knowledge because local counsel's firm was "called out … by name" at the *Burnett* hearing. Opp. 14. The "mention[]" of Shook at the *Burnett* conference does not suggest that any Shook attorney was there. Opp. 6. Indeed, Shook attorneys had no reason to attend the settlement conference because Shook did not represent any party in the litigation. Instead, it appears that the Court was generally recalling firms whose attorneys had donated to his wife's campaign, not firms in attendance. Similarly, Plaintiffs cite no authority—and there is none—for their suggestion (Opp. 19) that information obtained by its subsidiary's counsel should be imputed to BHE.

Plaintiffs' suggestion (Opp. 15) that Hanna Holdings strategically waited to file this motion until the Court denied its motion to certify questions for interlocutory appeal makes no sense. As Plaintiffs point out, for obvious reasons Hanna Holdings preferred not to appear in a "bet-the-company" case in a jurisdiction where it does no business and where it disagreed with the Court's previous rulings on similar issues. The notion that it would wait to file a recusal motion under some misguided hope that the Court would rule its way on a 1292(b) motion of all things when it had already ruled on similar issues in the *Burnett* case is fanciful to say the least. And—as Plaintiffs ignore—those issues remain pending before this Court, since the Eighth Circuit directed this Court to reconsider Hanna Holdings' motion to transfer. *See* Dkt. 695.

13

Plaintiffs' nearly identical suggestion as to BHE (Opp. 19) is similarly wrong. BHE timely notified Plaintiffs of its intent to join Hanna Holdings' motion after it learned of the contributions, and it litigated this case as it otherwise would until then.

## III. The Court Has No Duty To Remain Sitting In The Face Of This Clear Conflict

Plaintiffs are wrong that the Court has a duty "to remain sitting" in this case notwithstanding its conclusion in two earlier cases that Dameron's contributions were grounds for disqualification and its Notice that he will consider recusal motions based on an attorney's contributions in the past five years. *See* Opp. 18-19. As Professor Green explains, "any 'duty to sit'—the idea that courts were obligated to preside in the absence of unambiguous proof of extrajudicial bias—was eliminated a half century ago by amendments to the judicial code and 28 U.S.C. § 455, which establish just the opposite: a presumption of disqualification when the judge has doubts whether disqualification is warranted." Green Decl. ¶ 21. Plaintiffs' cases hold only that courts have an obligation to "not simply recuse out of an abundance of caution *when the facts do not warrant recusal*." *United States v. Sierra Pac. Indus.*, 759 F. Supp. 2d 1198, 1200-1201 (E.D. Cal. 2010) (emphasis added); *see also Willner v. Univ. of Kan.*, 848 F.2d 1023, 1027 (10th Cir. 1988) ("judge had a duty *not* to recuse himself on unsupported speculation"). Here, because the facts do warrant recusal, a presumption of disqualification applies. *See* Mot. 7-10. And the policy concerns Plaintiffs raise about recusal in this case are unfounded.

*First*, Plaintiffs are incorrect that Hanna Holdings' motion for recusal is "tactical" and promotes judge-shopping. Opp. 18. Such concerns arise only "in the absence of a legitimate reason" for recusal, *Sierra Pac. Indus.*, 759 F. Supp. 2d at 1205, and this Court already has recognized that Dameron's contributions warrant recusal. Regardless, this motion was not filed on the heels of an adverse ruling—and certainly not an adverse ruling of the magnitude of final

judgment, unlike the parties in the cases on which Plaintiffs rely. *See supra* pp.10-11; *Siegelman*, 561 F.3d at 1243 (motion filed after jury verdict and post-trial rulings); *Delgado-O'Neil*, 745 F. Supp. 2d at 914 (motion filed after dismissal with prejudice); *Cafesjian*, 783 F. Supp. 2d at 87 (motion filed after trial opinion). And Hanna Holdings filed the motion early in the case, such that recusal would not "waste[] judicial resources" or "encourage[] manipulation of the judicial process." Opp. 18 (quoting *Willner*, 848 F.2d at 1029). Moreover, courts regularly and necessarily grant motions to recuse mid-litigation (as this Court did in *Glasscock*), either because the movant was unaware of the conflict or the conflict only arose while litigation was ongoing. *See, e.g.*, Notice to the Parties, *Batton*, No. 1:21-cv-430, Dkt 170 (recusing after managing case for over two years); *California v. Kleppe*, 431 F. Supp. 1344, 1345 (C.D. Cal. 1977) (judge recused after summary judgment briefing); *Hoke v. Charlotte-Mecklenburg Hosp. Auth., Inc.*, 550 F. Supp. 1276, 1277 (W.D.N.C. 1982) (granting post-trial motion for recusal).

*Second*, this Court's expertise from "five long years of intensive litigation" is not a basis for ignoring its duty to recuse. Considerations of expertise and judicial resources come into play only after a court concludes that its impartiality could not reasonably be questioned. *E.g.*, *In re Mercedez-Benz Antitrust Litig.*, 226 F. Supp. 2d 552, 556-557 (D.N.J. 2002) (addressing court's "investment of time and … expertise" upon "reject[ing] the argument that its impartiality 'might reasonably be questioned'"). This Court has already concluded that its impartiality *could* reasonably be questioned.

## CONCLUSION

Hanna Holdings respectfully requests the recusal of this Court as the presiding United States District Judge in this matter.

15

Dated:  April 7, 2025                    Respectfully submitted,


*/s/ Andrew G. Gordon*                   */s/ David Z. Gringer*
Katherine B. Forrest (*pro hac vice*)    David Z. Gringer (*pro hac vice*)
Andrew G. Gordon (*pro hac vice*)        Emily Barnet (*pro hac vice*)
Anna R. Gressel (*pro hac vice*)         WILMER CUTLER PICKERING
Yotam Barkai (*pro hac vice*)              HALE AND DORR LLP
PAUL, WEISS, RIFKIND, WHARTON &          7 World Trade Center
GARRISON LLP                             250 Greenwich Street
1285 Avenue of the Americas              New York, NY 10007
New York, New York 10019-6064            (212) 230-8800
Telephone: (212) 373-3000                david.gringer@wilmerhale.com
Facsimile: (212) 757-3990                emily.barnet@wilmerhale.com
kforrest@paulweiss.com
agordon@paulweiss.com                    Seth P. Waxman (*pro hac vice*)
agressel@paulweiss.com                   Karin Dryhurst (*pro hac vice*)
ybarkai@paulweiss.com                    Claire Bergeron (*pro hac vice*)
                                         WILMER CUTLER PICKERING
*Attorneys for Defendant Berkshire Hathaway*   HALE AND DORR LLP
*Energy Company*                         2100 Pennsylvania Avenue NW
                                         Washington, DC 20037
                                         (202) 663-6000
                                         seth.waxman@wilmerhale.com
                                         karin.dryhurst@wilmerhale.com
                                         claire.bergeron@wilmerhale.com


                                         John Brumberg (*pro hac vice* forthcoming)
                                         William Pietragallo II (*pro hac vice*
                                         forthcoming)
                                         Quintin DiLucente (*pro hac vice*
                                         forthcoming)
                                         PIETRAGALLO GORDON ALFANO
                                           BOSICK & RASPANTI, LLP
                                         One Oxford Centre, 38th Fl.
                                         Pittsburgh, PA 15219
                                         (412) 263-2000
                                         JRB@Pietragallo.com
                                         WP@Pietragallo.com
                                         QD@Pietragallo.com


                                         *Attorneys for Defendant Hanna Holdings,*
                                         *Inc.*


16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2025, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

*/s/ David Z. Gringer*
David Z. Gringer
*Counsel for Defendant Hanna Holdings, Inc.*

17