# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

DON GIBSON, LAUREN CRISS, )
JOHN MEINERS, and DANIEL UMPA, )
*individually and on behalf of all others* )
*similarly situated,* )
               Plaintiff, )     Case No. 23-cv-00788-SRB
         )
v. )
         )
NATIONAL ASSOCIATION OF )
REALTORS, et al., )
         )
               Defendant. )

## ORDER

Before this Court is Defendant Hanna Holdings, Inc.'s ("Hanna Holdings") Motion for

Recusal (Doc. #688).[1]  For the reasons discussed below, the Motion is DENIED.

## I.      BACKGROUND

After over a year and a half of litigation and nearly seven hundred docket entries in this

case, Hanna Holdings seeks to recuse the undersigned from presiding over this case based on

campaign contributions by Plaintiffs' counsel to the undersigned's wife, Councilwoman Andrea

Bough.  Hanna Holdings presents only a small and selected portion of the story.  Hanna Holdings

also fails to acknowledge that attorneys from its local counsel, Shook, Hardy & Bacon, *including*

*counsel of record*, also donated to the Committee to Elect Andrea Bough.[2]  (Doc. #701-2 at 2-3.)

Indeed, Hanna Holding's local counsel did not sign the motion for recusal likely for these very

---

[1] On April 2, 2025, the Court granted Berkshire Hathaway Energy Company's ("Berkshire Hathaway") request to join the instant motion. (Doc. #710.) On April 10, 2025, the Court granted Crye-Leike, Inc.'s ("Crye-Leike") request to join the instant motion.  (Doc. #722.)  Berkshire Hathaway and Crye-Leike "expressly adopt[] and incorporate[] by reference the arguments" made by Hanna Holdings.  (Docs. #707, #719.)  Berkshire Hathaway and Crye-Leike have not filed additionally briefing or declarations, thus the Court refers to arguments made by Hanna Holdings.
[2] Attorneys from Berkshire Hathaway's local counsel, Husch Blackwell, have also contributed to the Committee to Elect Andrea Bough, *including counsel of record*.  (Doc. #701-2 at 3.) The firm itself also contributed to the campaign committee.  *Id.*

reasons.[3]

### A. Councilwoman Bough's Involvement in the Community and Campaign Contributions at Issue

For some perspective, Councilwoman Bough has been an active member of the Kansas City community for decades. Councilwoman Bough was a partner at a major corporate real estate development firm, practiced law in Missouri and Kansas for decades, and was actively engaged in Kansas City municipal politics, including serving on mayoral appointed boards long before the undersigned was appointed to the bench in 2014. As a result, her campaign committee received contributions from a huge cross section of the community, including lawyers representing both Plaintiffs and Defendants in this case. Councilwoman Bough won her first election in 2019 and won re-election in 2023. Councilwoman Bough is term-limited in 2027 and her campaign committee was terminated in 2024.

Hanna Holdings argues three political contributions by Plaintiffs' counsel serve as the basis for recusal in this case: (1) an August 30, 2018 contribution of $250 by Brandon Boulware to the Committee to Elect Andrea Bough; (2) 2018, 2020, and 2022 contributions totaling $1,750 by Matt Dameron to the Committee to Elect Andrea Bough;[4] and (3) 2019 contributions by Mike Ketchmark to Taxpayers Unlimited, Inc., a political action committee associated with the International Association of Fire Fighters, which in turn made donations to Councilwoman Bough's campaign. (Doc. #689 at 7.)

Hanna Holdings contends that it first learned of the campaign contributions at issue on January 21, 2025. *Id.* at 7 n.5. Hanna Holding's attorney David Gringer declared that he first learned of the contributions on January 30, 2025. (Doc. #689-1 at ¶ 2.)

---

[3] The Court also notes that local counsel did not sign Berkshire Hathaway's request to join the motion for recusal. (Doc. #707.)
[4] Mr. Dameron withdrew from the instant case on October 22, 2024. (Doc. #511.)

## B. Related Real Estate Cases of *Burnett* and *Gibson*

On October 31, 2023, Plaintiff filed the instant case, *Gibson v. Nat'l Ass'n of Realtors,* No. 23-788. (Doc. #1.) On May 9, 2024, over six months later, this Court held a final settlement approval hearing in the related and much-publicized case, *Burnett v. Nat'l Ass'n of Realtors,* No. 4:19-cv-332. On May 9, 2024, at 5:06 a.m., just a few hours before the hearing, an objector/realtor emailed the Court objecting to the settlement while comparing it to Taco Bell food items; alleging "Plausible Harm to Members of The Department of the Defense;" criticizing experts; alleging enrichment of plaintiffs' counsel; and, for the first time in over five years of litigation, revealing campaign contributions by Mr. Dameron to Councilwoman Bough. (*Burnett* Doc. #1488.) The objector/realtor also noted that Mr. Ketchmark is "associated with" Taxpayers Unlimited, which also donated to Councilwoman Bough's campaign. *Id.* at 3.

In the hours before the final settlement hearing, the Court reviewed the judicial ethics rules to ensure the proper course of action. The undersigned printed off the objection and personally handed it to all counsel at the start of the hearing. (*Burnett* Doc. #1492, Tr. at 3.) The Court also filed the objection on the docket. (*Burnett* Doc. #1488.) At the hearing, the Court summarized ethics rules which state that a judge is only responsible for recusing with respect to contributions of which the judge is aware and that a judge is not required to examine public disclosure records. *See* Compendium §5.3(b-1).[5] The Court noted that it was previously unaware of the contributions by Mr. Dameron. (*Burnett* Doc. #1492, Tr. at 4-5.) The Court noted that there was no evidence that Taxpayers Unlimited, a PAC associated with the local firefighters, was controlled by Mr. Ketchmark. *Id.* The undersigned also offered to recuse. *Id.* at 5-6. No party, attorney, or anyone in the Courtroom sought removal. *Id.*

---

[5] The Compendium is available to federal judges and their staff, but not the public. The Compendium collects and summarizes the confidential opinions of the Judicial Conference's Codes of Conduct Committee.

Given the enormity of the *Burnett* verdict and settlements, the vast majority of local and national counsel in *Gibson* were in the packed courtroom. The undersigned recalls that lawyers for Hanna Holdings were in the Courtroom on May 9, 2024. Indeed, during the hearing, the Court stated, "I look around this room and go through Bryan Cave or Polsinelli or Lathrop or *Shook* or any other major firm appears to have donated to my wife as well." *Id.* at 5 (emphasis added). As a result, the Court, out of an abundance of caution asked, "Would anyone else like to be heard on this potential conflict." *Id.* at 6. The Court received no response.

After the Court overruled the objection, the same objector/realtor was not to be deterred. In different case in a different division, Mr. Dameron represented a different client in front of this Court. *Glasscock v. Sig Sauer,* No. 22-3095. The same objector reached out to counsel for the defendant, raising the same contributions and stating this Court was engaged in "gross misrepresentations of judicial duty" and engaged in "a broader pattern of systemic corruption." (*Glasscock,* Doc. #114-2 at 3.) The objector sent this latest communication to not only opposing counsel but also "the Executive Office for United States Attorneys (EOUSA), the FBI, and congressional judiciary committees." *Id.* at 4. The Court granted that recusal motion on October 16, 2024. (*Glasscock,* Doc. #117.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). An "objective standard of reasonableness" determines whether recusal is required. *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003). A judge should recuse if his or her "impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." *In re Kansas Pub. Emp. Ret. Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996). "A party introducing a motion to recuse

4

carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." *Pope v. Fed. Express Corp.*, 974 F.2d 982, 985 (8th Cir. 1992). And, as the Eighth Circuit has observed, "[i]n the real world, recusal motions are sometimes driven more by litigation strategies than by ethical concerns." *In re Kansas Pub. Emps. Ret. Sys.*, 85 F.3d at 1360.

### III.    ANALYSIS

#### A. *Burnett* Final Settlement Approval Hearing

Hanna Holdings claims it first learned of the *Burnett* final settlement hearing, and the campaign contributions discussed at the hearing, in January 2025. (Docs. #689 at 7 n.5; #689-1 at ¶ 2.) The record cited by Hanna Holdings strongly suggests otherwise.

The *Burnett* case and the instant case are related and the final settlement hearing in *Burnett* was of much interest to attorneys in this case. The *Burnett* verdict was handed down on October 31, 2023, and this case was filed the same day. Indeed, as Hanna Holdings notes, this Court was assigned to this matter because Plaintiffs designated it as related to the *Burnett* case upon filing. (Docs. #689 at 9, #1-1.) On November 22, 2023, Wilmer Cutler, including David Gringer, and Shook Hardy & Bacon attorneys entered their appearance on behalf of Defendant Howard Hanna Real Estate Services, which was later replaced via an amended filing by Hanna Holdings. (Docs. #14, #146.)

The undersigned recalls attorneys for Hanna Holdings being present at the final settlement hearing in *Burnett*. The undersigned's recollection is supported by the transcript from the hearing in which the Court stated, "I look around this room and go through Bryan Cave or Polsinelli or Lathrop or *Shook* or any other major firm appears to have donated to my wife as well." (Doc. #689-3 at 5 (emphasis added).) "As a general rule, an attorney's knowledge is imputed to his client." *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11-

MD-2247 ADM/JJK, 2012 WL 2325798, at *3 (D. Minn. June 19, 2012), *aff'd*, 716 F.3d 1057 (8th Cir. 2013). Hanna Holdings does not expressly deny that its attorneys were in the Courtroom for the final settlement hearing but rather states "Shook attorneys had no reason to attend the settlement conference because Shook did not represent any party in the litigation." (Doc. #711.) The Court finds this non-denial telling.

Even if counsel for Hanna Holdings (or other Defendants) were not present at the final settlement hearing, the Court is hard pressed to believe, given its import to this case, that attorneys for Defendants were unaware of the occurrences at the final settlement hearing until January 2025. The Court suspects that if were it to order the production of documents or billing records by Defendants and their attorneys that mention the *Burnett* final settlement hearing, these documents would predate January 2025. Regardless, all attorneys were on notice of the settlement hearing by October 3, 2024, when an objector included the *Burnett* transcript from the May 9, 2024, final settlement hearing as an exhibit to his *Gibson* filing. (Doc. #467-3). As attorneys well know, they are "responsible for monitoring the electronic docketing system for any new filings." *Burke v. Versa-Tags, Inc.*, No. 4:09CV0521 ERW, 2009 WL 3433471, at *4 (E.D. Mo. Oct. 19, 2009).

The Court holds that the contributions by Mr. Dameron to Councilwoman Bough (as well as Mr. Ketchmark's donations to Taxpayers Unlimited) were disclosed to Hanna Holdings' counsel long before the present motion was filed. It was not until six months after the transcript from the final settlement hearing was filed in this case that Hanna Holdings raised objections regarding contributions to Councilwoman Bough's campaign committee. The timing of Hanna Holding's motion is noteworthy as it occurred after the Court denied its motion to dismiss in December 2024 and motion to certify an interlocutory appeal in February 2025. Based on this timing, it appears Hanna Holdings' motivations may have been driven more by "litigation

strateg[y] than by ethical concerns." *In re Kansas Pub. Emps. Ret. Sys.*, 85 F.3d at 1360.

Hanna Holdings claims that a federal judge "must disqualify from cases in which parties or counsel are known by the judges to be contributors to the family member's campaign." (Doc. #689 at 14.) Hanna Holdings attributes this quote to a publication by the American Judicature Society but the Court has not been able to locate this quote. *See* Gray, *An Ethics Guide for Judges & Their Families* 105, Am. Judicature Soc'y (2001). Regardless, the Supreme Court has since held this is not required: "[n]ot every campaign contribution by a litigant or attorney creates a probability of bias that requires a judge's recusal." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009) (holding that $3 million in contributions by a party to a judge's election, which exceeded all other campaign contributions, was the exceptional case requiring recusal).

Furthermore, Mr. Dameron withdrew from the *Burnett* and *Gibson* cases on October 22, 2024. (Doc. #511.) Mr. Dameron is currently on this Court's conflict list and has no cases in front of this Court. Hanna Holdings does not cite to any legal basis for a withdrawn attorney serving as the basis for recusal. Instead, Hanna Holdings contends that an individual attorney's conflict is imputed to the entire firm. (Doc. #711 at 3.) However, the non-binding cases cited by Hanna Holdings are distinguishable as they involve situations of familial relationships. *See SCA Servs., Inc. v. Morgan*, 557 F.2d 110, 115 (7th Cir. 1977), *Batton v. Nat'l Ass'n of Realtors,* No. 1:21-cv-430 (N.D. Ill. Sept. 4, 2024) (Doc. #170). Furthermore, ethical rules for judges state "where an attorney contributed to a spouse's campaign, the judge need not recuse from matters handled by other attorneys at the law firm, unless the firm itself contributed or is closely identified with the campaign." *See* Compendium §5.3(b-3).

Finally, under the objective reasonableness standard, the Court holds that no reasonable person knowing *all the relevant facts* could believe this Court would be swayed by Mr.

Dameron's $1,750 political contributions, all of which occurred before this case was filed. Councilwoman Bough and her committee raised $421,940 over a five-year period. (Doc. #701-2 at ¶ 7.) Mr. Dameron's contribution amounts to .4% of this amount. Indeed, total contributions by lawyers representing *Defendants* was approximately $41,360 or 9.8% of all contributions received by Councilwoman Bough. *Id.* at ¶ 9. Context matters and the Court holds that Hanna Holdings has failed to meet the heavy burden of proof to warrant recusal based on Mr. Dameron's contributions.

### B. Taxpayers Unlimited

While the Court can overlook an objector/realtor mischaracterizing Mr. Ketchmark's role with Taxpayers Unlimited, the Court is frankly shocked that any lawyer with Wilmer Cutler would so mislead the courts about Taxpayers Unlimited being anything other than what it is. In ethics filings and on its website, Taxpayers Unlimited is associated with the International Association of Firefighters Local 42. *See* https://www.taxpayersunlimited.org/. A cursory review of the Missouri Ethics Commission's reports show that the firefighters have endorsed Republican, Democrat, and non-partisan candidates in federal, state, and local races. The Taxpayers Unlimited ethics report filed on July 12, 2019, revealed receipts of $350,513.80, with expenditures of $290,426.44. Councilwoman Andrea Bough received a donation of $500 from Taxpayers Unlimited in 2019. Subsequent years in receipts, expenditures, and contributions are similar. Counsel fails to cite to a single reported opinion or ethics rule to support the position that a lawyer's contribution to a PAC which happens to make political contribution to a judge's spouse can serve as the basis for recusal. Accordingly, no reasonable questions of impartiality are present.

### C. Mr. Boulware's Campaign Contribution

An additional basis for recusal not raised in *Burnett* relates to a single contribution of

$250 made by Mr. Boulware to Councilwoman Bough's campaign in 2018. The Court holds that no reasonable person could believe this modest contribution would sway the Court for the reasons discussed above. *See supra* III-A. Additionally, the instant case was not filed until October 2023. Compendium § 5.3(b-1) states: "It is reasonable for a judge to limit the time frame in which contributions will be examined." In 2024, the undersigned contacted the Administrative Office's ("AO") ethics counsel regarding a time frame for limiting contributions and was advised, based on a prior private ethics opinion, that a five-year time frame was reasonable. Mr. Boulware's donation in August 2018 was more than five years before this case was filed and no reasonable questions of impartiality are present. As a result of discussions and email communications with the AO ethics counsel, every Rule 16 now contains a notice to parties regarding political donations. A similar notice now appears on the Court's website.

## IV. CONCLUSION

The undersigned has taken significant time and effort to comply with the ethical rules, including extensive discussions with the AO's ethics counsel. Accordingly, the Motion to Recuse (Doc. #688) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: April 10, 2025