**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DON GIBSON, LAUREN CRISS, JOHN MEINERS, and DANIEL UMPA, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:23-cv-00788-SRB [Consolidated with 4:23-cv-00945-SRB] |
| NATIONAL ASSOCIATION OF REALTORS, et al. | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO**
**DEFENDANT HANNA HOLDINGS, INC.'S UPDATED MOTION TO TRANSFER;**
**DEFENDANT BERKSHIRE HATHAWAY ENERGY COMPANY'S**
**MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404; AND DEFENDANT**
**CRYE-LEIKE, INC.'S MOTION TO TRANSFER VENUE**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................1

BACKGROUND FACTS...........................................................................................................2

LEGAL STANDARD................................................................................................................3

ARGUMENT .............................................................................................................................3

      I.      Transfer is Inappropriate Under *In re Apple*...........................................................4

      II.     Severance and Transfer of the Claims to Three Separate Forums Is Not in the Interest of Justice. ......................................................................................6

      III.    The Convenience of the Parties Does Not Support Transfer...............................11

      IV.    Defendants Have Not Met Their Burden to Show that Witness Convenience Supports Transfer..........................................................................16

CONCLUSION.........................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple, Inc.*,
602 F.3d 909 (8th Cir. 2010) ........................................................................ *passim*

*Arnold v. DIRECTV, LLC*,
2015 WL 1821088 (E.D. Mo. Apr. 21, 2015)............................................................3

*Arnold v. LME, Inc.*,
2020 WL 13470567 (W.D. Mo. Sept. 22, 2020) ...............................................10, 16

*Bennett v. Am. Online, Inc.*,
471 F. Supp. 2d 814 (E.D. Mich. 2007)...................................................................3

*Bizzack Constr., LLC v. TRC Eng'rs, Inc.*,
2021 WL 1230482 (E.D. Ky. Mar. 31, 2021).........................................................16

*Bogard v. TikTok, Inc.*,
725 F. Supp. 3d 897 (S.D. Ind. 2024) ...................................................................10

*C-Mart, Inc. v. Metro. Life Ins. Co.*,
2013 WL 2403666 (E.D. Mo. May 31, 2013) ............................................12, 13, 18

*Campbell v. Anytime Lab.-Kan., LLC*,
2016 WL 2743541 (W.D. Mo. May 11, 2016) ......................................................20

*Clinton v. Sec. Benefit Life Ins. Co.*,
2020 WL 6120565 (S.D. Fla. June 29, 2020) .......................................................15

*Cosm. Warriors Ltd. v. Abrahamson*,
723 F. Supp. 2d 1102 (D. Minn. 2010)..................................................................12

*Cunningham v. United Air Lines, Inc.*,
2013 WL 3984513 (E.D. Mo. Aug. 1, 2013).........................................................12

*Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*,
2007 WL 1223510 (E.D. Mo. Apr. 24, 2007).........................................................3

*Empire Gas Corp. v. True Value Gas of Fla., Inc.*,
702 F. Supp. 783 (W.D. Mo. 1989) ......................................................................11

*In re Extended Stay Hotel Antitrust Litig.*,
2024 WL 5089159 (N.D. Ill. Dec. 12, 2024)......................................................9, 14

*In re Eyewear Antitrust Litig.*,
  2024 WL 2956631 (D. Minn. June 12, 2024)............................................................12, 14, 15

*Fluid Control Products, Inc. v. Aeromotive, Inc.*,
  2011 WL 620115 (E.D. Mo. Feb. 11, 2011)...............................................................8

*Foreman Elec. Servs., Inc. v. Haliron Power, LLC*,
  2020 WL 5351076 (W.D. Ark. Sept. 4, 2020).............................................................3

*Gallagher v. Cooper*,
  2024 WL 3638248 (E.D. Mo. Aug. 2, 2024)...............................................................8

*Geismann v. ZocDoc, Inc*,
  2014 WL 4230910 (E.D. Mo. Aug. 26, 2014)..............................................................12

*Guenther v. Cooper Life Scis., Inc.*,
  1988 WL 131340 (D. Minn. Dec. 5, 1988).................................................................12

*Harrison v. Gen. Motors Co.*,
  2017 WL 11341317 (W.D. Mo. Sept. 25, 2017) ..........................................................19

*Hassett v. United Airlines, Inc.*,
  2023 WL 6066739 (D. Ariz. Sept. 18, 2023)..............................................................16

*Hebel v. Ebersole*,
  543 F.2d 14 (7th Cir. 1976) ...............................................................................7

*Houk v. Kimberly-Clark Corp.*,
  613 F. Supp. 923 (W.D. Mo. 1985).........................................................................20

*Interlink Prods. Int'l Inc. v. Crowfoot*,
  2020 WL 6707946 (D.N.J. Nov. 16, 2020) .................................................................11

*Italian Colors Restaurant v. American Express Co.*,
  2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ...........................................................13

*Lesnik v. Eisenmann SE*,
  2018 WL 10911942 (N.D. Cal. June 19, 2018) ............................................................8

*Masa LLC v. Apple Inc.*,
  2016 WL 629263 (E.D. Mo. Feb. 17, 2016)................................................................20

*Monsanto Tech. LLC v. Syngenta Crop Prot., Inc.*,
  212 F. Supp. 2d 1101 (E.D. Mo. 2002)....................................................................10

*Nat'l Credit Union Admin. Bd. v. Christenson*,
  627 F. Supp. 381 (E.D. Mo. 1986)........................................................................8

*In re Nine Mile Ltd.*,
  692 F.2d 56 (8th Cir. 1982) ........................................................................3

*Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*,
  931 F. Supp. 638 (D. Minn. 1996)................................................................3

*Shattuck-Knaebel v. Missouri Dep't of Corr.*,
  2024 WL 4591319 (E.D. Mo. Oct. 28, 2024) ...........................................7

*Sitzer v. Nat'l Ass'n of Realtors*,
  2019 WL 11648563 (W.D. Mo. Aug. 22, 2019)...................................9, 19

*Spertus, M.D. v. Epic Sys. Corp.*,
  2022 WL 4367195 (W.D. Mo. Sept. 21, 2022) .........................................16

*Stolz v. Ability Ins. Co.*,
  2011 WL 3862201 (D.S.D. Sept. 1, 2011)..................................................8

*Svec v. Davis*,
  2023 WL 6536197 (W.D. Mo. May 31, 2023) ....................................18, 19

*Terra Int'l, Inc. v. Miss. Chem. Corp.*,
  119 F.3d 688 (8th Cir. 1997) ......................................................................4

*Tillman v. Advanced Pub. Safety, Inc.*,
  2015 WL 13754340 (S.D. Iowa Dec. 30, 2015) .........................................3

*Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*,
  324 F. Supp. 3d 366 (W.D.N.Y. 2018)......................................................15

*Valspar Corp. v. E.I. DuPont de Nemours and Co.*,
  15 F. Supp. 3d 928 (D. Minn. 2014)...........................................................6

*Valspar Corp. v. Kronos Worldwide, Inc.*,
  50 F. Supp. 3d 1152 (D. Minn. 2014).......................................................10

*Viastat v. Space Systems/loral, Inc.*,
  2012 WL 12844702 (S.D. Cal. Aug. 23, 2012) ..........................................7

*In re Vitamins Antitrust Litig.*,
  263 F. Supp. 2d 67 (D.D.C. 2003) ............................................................12

*Vutek, Inc. v. Leggett & Platt, Inc.*,
  2008 WL 2483148 (E.D. Mo. June 17, 2008) ............................................7

*W. Energy All. v. U.S. Dep't of the Interior*,
  2016 WL 11889030 (D.N.D. Dec. 19, 2016)..............................................7

*Williams v. GatherApp, Inc.*,
    2017 WL 11025324 (W.D. Mo. Sept. 26, 2017) ..............................................................6, 10

*Wilshire Credit Corp. v. Barrett Capital Management Corp.*,
    976 F. Supp. 174 (W.D.N.Y. 1997) ........................................................................................15

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................... *passim*

# INTRODUCTION

Plaintiffs oppose Hanna Holdings, Inc.'s ("Hanna") Updated Motion to Transfer the claim against it to the Western District of Pennsylvania (Docs. 705, 706), Berkshire Hathaway Energy Company's ("BHE") Motion to Transfer the claim against it to the Southern District of Iowa (Docs. 713, 714), and Crye-Leike, Inc.'s ("Crye-Leike") Motion to Transfer the claim against it to the Western District of Tennessee (Docs. 726, 727) (collectively "Defendants").

Plaintiffs allege that Defendants participated in a nationwide agreement to impose and enforce anticompetitive restraints that caused home sellers to pay inflated commissions on the sale of their homes. Defendants ask this Court to break up litigation involving a single conspiracy into four separate identical cases each proceeding before four different judges. Their motions make no mention of the necessary procedure for doing so—the Court would first need to sever the claims against each of them under Rule 21—nor do they meaningfully address the incredible tax on judicial resources, increased costs to Plaintiffs, and risks of inconsistent rulings that would result from parallel, duplicative litigation of the same conspiracy in four forums.

Defendants' motions are also untimely. They seek to transfer the claims against them only after multiple attempts to dismiss this case were unsuccessful. Moreover, this Court previously denied Hanna's cursory request to transfer the claim against it (Doc. 309 at 20) and held that it has personal jurisdiction over Hanna (Doc. 590). The Eighth Circuit denied Hanna's mandamus petition and, after Hanna complained that this Court had not sufficiently considered its transfer request, directed this Court to consider the motion to transfer in light of *In re Apple, Inc.*, 602 F.3d 909 (8th Cir. 2010). BHE did not previously seek to transfer the claim against it and attempts this strategy only after this Court denied its motion to compel arbitration (Doc. 684), motion to dismiss for lack of personal jurisdiction and improper venue (Doc. 590), and request to stay proceedings

pending an interlocutory appeal (Doc. 675). Crye-Leike does the same. *See* Docs. 690, 683, 648, 590 (denying motion to dismiss for lack of personal jurisdiction and improper venue).

Additionally, this Court should deny the requests to transfer as *In re Apple, Inc.* is irrelevant, including because it did not involve a multi-defendant conspiracy. Nor do the convenience of the parties or witnesses support transfer. Far from being a forum simply "selected" by the Plaintiffs, as Defendants contend, named Plaintiffs and the events giving rise to their claims are connected to the Western District of Missouri. As such, the transfer motions should be denied.

## BACKGROUND FACTS

Plaintiffs allege an anticompetitive agreement among the National Association of Realtors ("NAR") and multiple Corporate Defendants, including BHE, Hanna, and Crye-Leike, to impose and enforce anticompetitive restraints that caused home sellers nationwide to pay inflated commissions on their home sales. Three of the four named Plaintiffs' home sales, which were impacted by Defendants' anticompetitive rules, took place in this District. Don Gibson sold his home in Columbia, Missouri in June 2021; Lauren Criss sold her home in Kansas City, Missouri in September 2023; and John Meiners sold his home in Kansas City, Missouri in August 2023. Ms. Criss continues to live in this District in Kansas City, Missouri, *see* Decl. at ¶ 4, and Mr. Meiners lives less than 20 miles from this District's courthouse in the neighboring state of Kansas, *see* Decl. at ¶ 4. Mr. Gibson presently lives in Florida and Daniel Umpa lives in Maryland.

Hanna originally filed its motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer to the Western District of Pennsylvania on July 15, 2024 (Doc. 309). It failed to meaningfully brief its transfer request, addressing the issue in a single paragraph with one sentence devoted to transfer under § 1404(a) and making no mention of *In re Apple*. It was not until its unsuccessful mandamus petition that Hanna substantively briefed its request for the first

time. *See* Mandamus Pet. at 25-26, *In re Hanna Holdings, Inc*, No. 25-1352 (8th Cir. Feb. 18, 2025) (referencing *In re Apple*). After its other attempts to dismiss this case proved unsuccessful, BHE now seeks to transfer the claim against it to the Southern District of Iowa under § 1404(a) contending *In re Apple* applies "with equal force to [its] motion[.]" Doc. 714 at 2. Crye-Leike takes the same approach. Doc. 727 at 1 (asserting § 1404(a) transfer is warranted in light of *In re Apple*).

## LEGAL STANDARD

Transfer motions "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982), *overruled on other grounds, Missouri Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1310-11 (8th Cir. 1990). The movant faces a "heavy burden" to demonstrate why a motion to transfer venue is warranted. *Radisson Hotels Int'l, Inc. v. Westin Hotel Co*., 931 F. Supp. 638, 641 (D. Minn. 1996). Moreover, "[Section] 1404(a) only authorizes the transfer of an entire action, not individual claims, unless those claims are severed under Rule 21." *Arnold v. DIRECTV, LLC*, 2015 WL 1821088, at *4 (E.D. Mo. Apr. 21, 2015). "[S]everance and transfer is only rarely appropriate." *Tillman v. Advanced Pub. Safety, Inc.*, 2015 WL 13754340, at *9 (S.D. Iowa Dec. 30, 2015).[1] For instance, "[a] court should not sever and transfer an action if a plaintiff would be required to litigate in two forums" overlapping claims. *Id*.; *see also Bennett v. Am. Online, Inc*., 471 F. Supp. 2d 814, 816 (E.D. Mich. 2007) ("Courts ought not transfer parts of actions when to do so effects a severance and requires a plaintiff to litigate in two forums."); *cf. Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*, 2007 WL 1223510, at *2 (E.D. Mo. Apr. 24, 2007) ("Severance and transfer are appropriate only if . . . the claim to be severed is peripheral to the remaining claims[.]").

## ARGUMENT

---

[1] *See also Foreman Elec. Servs., Inc. v. Haliron Power, LLC*, 2020 WL 5351076, at *7 n.6 (W.D. Ark. Sept. 4, 2020) ("In certain rare circumstances, it may be appropriate for a court to sever specific claims under Federal Rule of Civil Procedure 21 to effectuate their separate transfer." (internal quotation marks and citation omitted)).

The burden is on Defendants, as the parties seeking transfer, to prove transfer is warranted. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). None come close. This Circuit directs courts to consider three non-exclusive factors in deciding motions to transfer under § 1404(a): "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Id.* at 691. A court must conduct "a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* Applying these three factors to the multi-defendant conspiracy alleged here makes clear that Hanna's, BHE's, and Crye-Leike's requests to transfer the claims against them under § 1404(a) should be denied.

I.       **Transfer is Inappropriate Under *In re Apple*.**

Far from being "materially indistinguishable[,]" as Hanna claims, this case involves entirely different facts from *In re Apple*, counseling strongly against transfer here. Doc. 706 at 1.

The Eighth Circuit focused on the following facts to conclude that transfer to the Northern District of California was appropriate in *In re Apple*: (1) the plaintiff was a foreign corporation that was not a resident of the Western District of Arkansas, 602 F.3d at 913; (2) the plaintiff sued one defendant, which was headquartered in another state, *id.*; (3) none of the plaintiff, defendant, potential witnesses, or the alleged misconduct had any "relevant connection" to the chosen forum, *id.*; (4) the "only connection" between the dispute and the Western District of Arkansas was that the plaintiff "chose to file there and retained local counsel", *id.* at 913; and (5) the plaintiff pled a cause of action predicated on a violation of California law, *id.* at 915. Weighing these factors with the inconvenience to the sole defendant, the Eighth Circuit concluded that the plaintiff "would not face any material inconvenience by litigating in California rather than Arkansas." *Id.* at 914-15.

None of these factors are present here. In contrast to *In re Apple*, Plaintiffs here have a connection to the current forum because many of the named Plaintiffs and class members reside

in or sold homes in this District. Defendants' repeated claims otherwise are wrong. Three of the four named Plaintiffs (Lauren Criss, John Meiners, and Don Gibson) sold homes in this District and allege they paid artificially inflated broker commissions on those sales as a result of the anticompetitive rules that *all* Defendants enforced. *See* Order, Doc. 590 at 8 ("Plaintiffs have plausibly established that a 'substantial part of the events' giving rise to the claim occurred with three of the four named Plaintiffs selling homes within this District where they were injured by the mandatory Challenged Rules which all Defendants enforced."). Ms. Criss continues to live in this District, and Mr. Meiners lives right outside this District in Leawood, Kansas, which is part of the Kansas City metro area. Thousands of other home sellers in this District are part of the class and were impacted by the inflated commissions that resulted from the conspiracy carried out by Defendants, including BHE, Crye-Leike, and Hanna.

In addition, in contrast to *In re Apple*, the claims at issue here are federal antitrust claims; not claims arising under the laws of the states in which the potential transferee courts are located. Plaintiffs have not sued under Pennsylvania, Tennessee, or Iowa state law.

Defendants nevertheless focus on their headquarters outside of the District. But the fact that a defendant has a foreign headquarters is not a sufficient basis for transfer. Transfer in *In re Apple* made sense in part because that suit was filed against a *single* defendant and the case would be transferred in its *entirety* to a different court. But this case involves a nationwide conspiracy against multiple Defendants and co-conspirators headquartered around the country. As discussed further below, severance and transfer would result in multiple "carbon copy" suits litigated in courts around the country—wasting judicial resources and risking inconsistent rulings. Thus, the circumstances that led the Eighth Circuit to determine transfer was warranted in *In re Apple* are not present here.

## II.    Severance and Transfer of the Claims to Three Separate Forums Is Not in the Interest of Justice.

Plaintiffs allege a single nationwide conspiracy involving Hanna, BHE, Crye-Leike, and dozens of other Defendants and co-conspirators located around the country, including in this District. Defendants nevertheless seek to break this case into four separate cases, all involving the same conspiracy: one in this District, one in the Western District of Pennsylvania, one in the Southern District of Iowa, and one in the Western District of Tennessee. This is contrary to the interests of justice. Parallel litigation of the same conspiracy in *four* separate forums would waste judicial resources, incur significant costs for all parties, including Plaintiffs, and risk inconsistent rulings and judgments. Judicial economy is a "critical factor to determine whether a case should be transferred," and here it strongly weighs against transfer. *Williams v. GatherApp, Inc.*, 2017 WL 11025324, at *5 (W.D. Mo. Sept. 26, 2017).

None of Defendants' motions makes any mention of the procedure required for transfer to occur here or the impact it would have on the litigation. Although each Defendant ask this Court to transfer only the claim against it, courts in this Circuit have explicitly interpreted transfer under § 1404(a) to only apply to entire cases. *See Valspar Corp. v. E.I. DuPont de Nemours and Co.*, 15 F. Supp. 3d 928, 932 (D. Minn. 2014) (§ 1404(a) provides that "a district court may transfer any *civil action* to any other district" and "plainly authorizes only the transfer of an entire lawsuit"). In *Valspar*, the court explained that to transfer claims, a court must first "sever the claims against [the] [d]efendant[] under Federal Rule Civil Procedure 21, creating entirely new civil actions against them, and only *then* may it transfer the severed civil action[] pursuant to § 1404(a)." *Id.*

-6-

In deciding whether to sever under Rule 21, courts consider the factors guiding the §

1404(a) analysis,[2] as well as: "(1) whether the issues sought to be severed are significantly different

from one another and would require distinct evidentiary proof; (2) whether severance would

promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or

its absence." *Shattuck-Knaebel v. Missouri Dep't of Corr.*, 2024 WL 4591319, at *13 (E.D. Mo.

Oct. 28, 2024). In determining whether to sever claims under Rule 21, courts "may properly deny

severance" if it "will only result in delay, inconvenience, or added expense[.]" *Vutek, Inc. v.

Leggett & Platt, Inc.*, 2008 WL 2483148, at *1 (E.D. Mo. June 17, 2008) (cleaned up).

Hanna, BHE, and Crye-Leike seek to sever Plaintiffs' claims that they participated in a

multi-defendant conspiracy in violation of federal antitrust laws—a claim that is brought against

all Defendants in the case and that will require *common* evidentiary proof to determine liability.

Severance is inappropriate in such circumstances because it would "separate an essentially

unitary" case. *Hebel v. Ebersole*, 543 F.2d 14, 17 (7th Cir. 1976) (quoting *Spencer, White &

Prentis, Inc. of Conn. v. Pfizer, Inc.*, 498 F.2d 358, 362 (2d Cir. 1974)); *Viasat v. Space

Systems/loral, Inc.*, 2012 WL 12844702, at *2 (S.D. Cal. Aug. 23, 2012) ("[A] court may not

'attempt to separate an essentially unitary problem'" (citation omitted)). Severance and transfer

here would lead to duplicative discovery and risk inconsistent rulings. A single conspiracy would

be litigated in parallel in separate forums, potentially leading to multiple trials resulting in different

judgments on co-conspirator liability for the same conspiracy. Moreover, evidence that relates to

---

[2] *See, e.g.*, *W. Energy All. v. U.S. Dep't of the Interior*, 2016 WL 11889030, at *2 (D.N.D. Dec. 19, 2016) ("In exercising [its] broad discretion, courts typically consider the same factors which apply to 28 U.S.C. § 1404(a) transfer analysis, including judicial economy, efficiency, witness convenience, the location of and access to sources of proof, and the potential for delay." (citing *Valspar Corp.*, 15 F. Supp. 3d at 932)).

Hanna's, BHE's, and Crye-Leike's roles in the conspiracy will be relevant to litigating and trying claims against other Defendants, and vice versa.[3]

For these reasons, courts refuse to sever and transfer claims when, as here, doing so would result in duplicative litigation. *See, e.g.*, *Gallagher v. Cooper*, 2024 WL 3638248, at *4 (E.D. Mo. Aug. 2, 2024) ("Severance is appropriate when the claims are 'discrete and separate,' each capable of resolution without dependence or effect on the other."); *Nat'l Credit Union Admin. Bd. v. Christenson*, 627 F. Supp. 381, 388-89 (E.D. Mo. 1986) (determining the interest of judicial economy did not support severance and transfer of one of six consolidated cases because the defendants were "inextricably bound up" in the other lawsuits before the court); *Stolz v. Ability Ins. Co.*, 2011 WL 3862201, at *3 (D.S.D. Sept. 1, 2011) ("[T]he repetitive trial of the same issue[s] in severed claims is not to be the usual course."); *Lesnik v. Eisenmann SE*, 2018 WL 10911942, at *3 (N.D. Cal. June 19, 2018) (noting that judicial economy "would not be facilitated by duplicative discovery, potentially inconsistent rulings, parallel motion practice, and parallel trials involving a largely unitary set of facts, substantially the same witnesses and evidence").

Hanna nevertheless speculates that "judicial economy would not be adversely affected" because like in *Burnett*, plaintiffs can coordinate discovery between the two actions. Doc. 706 at 10. But the transfer motions actually contemplate coordination across at least *four* courts that may adopt different case schedules, issue rulings at different times, and rule differently on significant pre-trial issues. Hanna's prediction that litigating before four different courts would not negatively

---

[3] BHE suggests that no party would be prejudiced by "transfer at an early stage of the case [] when the parties have engaged only in preliminary motion practice[.]" Doc. 714 at 9. Not so. BHE relies on *Fluid Control Products, Inc. v. Aeromotive, Inc.*, 2011 WL 620115, at *5-6 (E.D. Mo. Feb. 11, 2011) to contend that motions to transfer have been permitted after "extensive discovery," but the court in *Aeromotive* was clear that consideration must be given to whether the motion to transfer is "a dilatory tactic or the delay [is] prejudicial[.]" Plaintiffs would be prejudiced by having to litigate the same case in parallel in four separate forums, and BHE's repeated attempts to dismiss this case raise questions about whether its motion is another "dilatory tactic."

impact judicial economy is a pipe dream. Its reliance on *Burnett* for this point is inapposite—this Court rejected the motion to transfer in *Burnett* because the *Burnett* and *Moehrl* actions involved *different* plaintiffs covering *different* regions and MLSs. *Sitzer v. Nat'l Ass'n of Realtors*, 2019 WL 11648563, at *3 (W.D. Mo. Aug. 22, 2019). And, although limited coordination occurred in *Burnett* and *Moehrl*, complete coordination proved impractical for the reasons noted above.

BHE contends "there is no overriding efficiency gained by keeping Plaintiffs' claim against BHE in this Court together with Plaintiffs' claims against other defendants" because similar claims were alleged in other forums and "comparatively few defendants" remain in this action. Doc. 714 at 9-10. Neither assertion has merit. This is the only case brought on behalf of home sellers alleging a nationwide conspiracy to inflate broker commissions that has overcome motions to dismiss and where discovery is active.[4] That Plaintiffs settled with other Defendants does not alter the reality that litigating Defendants' participation in the same conspiracy in multiple forums would waste judicial resources, risk inconsistent judgments, and increase litigation costs for Plaintiffs.

Defendants' own authorities support denying their transfer requests.[5] Although Defendants seek to break this action into several carbon copy suits, many cases they cite involve the use of transfer procedures to *consolidate* duplicative suits in a single court to avoid the inefficiencies caused by litigating in multiple courts. *See In re Extended Stay Hotel Antitrust Litig.*, 2024 WL 5089159, at *6 (N.D. Ill. Dec. 12, 2024) (nothing that "allowing discovery and motion practice on the same issues to proceed in two different district courts would mean the duplicative production of documents and witnesses and the briefing of near identical issues before different judges" and

---

[4] BHE cites *1925 Hooper LLC v. Nat'l Ass'n of Realtors*, 1:23-cv-05392 (N.D. Ga.), but *Hooper* is stayed pending proposed settlements with all of the defendants in that case.

[5] In fact, Crye-Leike recognizes that the judicial economy factor considers the "efficiency in the operation of the courts and the judicial system, especially the efficient management of litigation so as to minimize duplication of effort and to avoid wasting the judiciary's time and resources[,]" yet its request to sever the claim against it would do just the opposite. Doc. 727 at 11 (quoting *Hursh v. DST Sys., Inc.*, 666 F. Supp. 3d 947, 979-80 (W.D. Mo. Mar. 31, 2023)).

that if appeals arose, "two different circuit courts would be required to decide the same issue for the same litigants"); *Arnold v. LME, Inc.*, 2020 WL 13470567, at *7 (W.D. Mo. Sept. 22, 2020); *Williams*, 2017 WL 11025324, at *5; *Valspar Corp. v. Kronos Worldwide, Inc.*, 50 F. Supp. 3d 1152, 1157 (D. Minn. 2014). Defendants' motions turn this case law on its head.

For instance, in *Valspar.*, the court concluded that judicial economy favored transfer, even though the defendant was headquartered in Minnesota, because the plaintiff was litigating "duplicative claims" against another defendant in the Southern District of Texas, "[t]hat court's familiarity with the facts and issues underlying these claims support[ed] transfer of the related claims against Kronos[,]" and "trying the claims against [both defendants] in one venue eliminate[d] the possibility of inconsistent verdicts[.]" *Id.*; *see also Monsanto Tech. LLC v. Syngenta Crop Prot., Inc.*, 212 F. Supp. 2d 1101, 1103 (E.D. Mo. 2002) (noting that transfer is appropriate where "there is a serious danger of the two district courts making inconsistent determinations on material issues").

Transfer would also deprive the parties and the judiciary of this Court's expertise gained after five-plus years of intense litigation and presiding over the *Burnett* trial. This Court's experience exceeds the Western District of Pennsylvania, where one judge granted Hanna's motion to dismiss in an action limited to one non-NAR MLS, or either the Southern District of Iowa or the Western District of Tennessee, where no case involving broker commission rules is pending.

Lastly, Defendants contend that judicial economy supports transfer because they maintain this Court lacks jurisdiction over them, which will lead to "dismissal later in litigation or on appeal." Doc. 706 at 10; Doc. 714 at 9; Doc. 727 at 11. Hanna and Crye-Leike rely on cases where courts transferred a case because there were difficult questions of personal jurisdiction that could be cured through transfer. *See, e.g.*, *Bogard v. TikTok, Inc.*, 725 F. Supp. 3d 897, 911-912 (S.D.

-10-

Ind. 2024); *Interlink Prods. Int'l Inc. v. Crowfoot*, 2020 WL 6707946, at *9 (D.N.J. Nov. 16, 2020) (determining that transfer would "obviate[] the need for the parties and the Court to expend limited resources on jurisdictional preliminaries"); *Empire Gas Corp. v. True Value Gas of Fla., Inc.*, 702 F. Supp. 783, 785-87 (W.D. Mo. 1989) (same). But this Court has already decided the jurisdictional questions raised by Defendants, rejecting their motions to dismiss for lack of personal jurisdiction, and the Eighth Circuit denied Hanna's petition for writ of mandamus.

III.     **The Convenience of the Parties Does Not Support Transfer.**

Defendants contend the convenience of the parties supports transfer because: (1) Plaintiffs are not entitled to deference in their choice of forum, and (2) no meaningful connection exists between this District and the underlying events giving rise to this action. Defendants are wrong on both the law and the facts.

  a.   Deference to Plaintiffs' Choice of Forum.

Plaintiffs are entitled to deference in their choice of forum even when seeking to represent a nationwide class. Deference is appropriate where, as here, there is a connection between the named Plaintiffs, the events giving rise to their claims, and the forum. *See* 2 Newberg and Rubenstein on Class Actions § 6:42 (6th ed.) (noting that "plaintiff's choice of forum is accorded more deference when there is a significant material connection between the chosen forum and the events underlying the action," and "when the named plaintiffs reside in the chosen forum").

Three of the four named Plaintiffs sold homes in this District and allege they paid inflated broker commissions due to Defendants' conspiracy. One named Plaintiff currently resides in this forum, and another resides in the neighboring state of Kansas. Further, Plaintiffs, individual home sellers, will be inconvenienced by the costs of litigating the same conspiracy in four separate forums. While Defendants object to the cost and inconvenience of litigating outside a forum where

-11-

they are headquartered, they are large corporations with billions of dollars in revenue for whom the cost of litigating in Missouri (versus another forum) will be insubstantial. *See Cosm. Warriors Ltd. v. Abrahamson*, 723 F. Supp. 2d 1102, 1108 (D. Minn. 2010) (considering the relative ability of parties, including a large corporation, to absorb the cost and inconvenience of litigating in a forum). The cases Defendants rely on do not show otherwise.[6] *See C-Mart, Inc. v. Metro. Life Ins. Co.*, 2013 WL 2403666, at *4-5 (E.D. Mo. May 31, 2013) ("giv[ing] Plaintiff some deference with regard to its choice of forum"); *Geismann v. ZocDoc, Inc*, 2014 WL 4230910, at *4 (E.D. Mo. Aug. 26, 2014) (noting in a class case that plaintiff's "choice of forum may still warrant some deference"); *see also In re Vitamins Antitrust Litig.*, 263 F. Supp. 2d 67, 69 (D.D.C. 2003) ("[L]ess deference does not mandate a blanket transfer at the request of Defendants").

b. <u>There is No Merit to Defendants' Claim that Plaintiffs Engaged in Forum Shopping.</u>

Further, there is no merit to BHE's or Crye-Leike's assertion that no deference is owed due to Plaintiffs supposed "forum-shopping." Doc. 714 at 8-9; Doc. 727 at 12. BHE suggests forum shopping is evident from Plaintiffs naming BHE as a Defendant and filing this case in the same forum where a favorable jury verdict was obtained in *Burnett*. This allegation is baseless. Three of the co-lead firms are based in or near the District, and so naturally filed suit here. And the majority of the named Plaintiffs have a connection to this District (it is where they currently reside or sold

---

[6] The cases Defendants rely on to argue Plaintiffs' choice in forum should be afforded no deference all determined transfer was warranted based on factors distinguishable from this case. *See, e.g.*, *Geismann*, 2014 WL 4230910, at *3 (determining transfer was warranted where the lone witnesses identified by either party could only be compelled to testify in the Southern District of New York); *C-Mart*, 2013 WL 2403666, at *5 (concluding transfer was warranted where the events giving rise to the litigation did not occur in the plaintiff's chosen district, the "vast majority of witnesses" in the case resided in Florida, and there were concerns that plaintiff engaged in forum shopping); *Guenther v. Cooper Life Scis., Inc.*, 1988 WL 131340, at *4 (D. Minn. Dec. 5, 1988) (finding transfer was warranted where the defendants were all "California businesses with California individuals who did their work"); *Cunningham v. United Air Lines, Inc.*, 2013 WL 3984513, at *4 (E.D. Mo. Aug. 1, 2013) (giving minimal weight to plaintiffs' choice of forum where there was no relevant connection between the chosen forum and plaintiffs, defendants' potential witnesses, or the dispute); *In re Eyewear Antitrust Litig.*, 2024 WL 2956631, at *6, 9, 11 (D. Minn. June 12, 2024) (giving little deference to plaintiffs' choice in forum given concerns about forum shopping and transferring case to New York where material non-party witness was located, and where Defendants either had their principal place of business or primary marketing operations, which were relevant to the events giving rise to the case).

their homes and were injured by Defendants' conspiracy) and seek to obtain relief on behalf of a nationwide class of home sellers and hold Defendants, including BHE, liable for participating in the same conspiracy litigated in the *Burnett* action. *Contra In re Apple*, 602 F.3d at 913 (determining an increased risk that the plaintiff "chose the forum to take advantage of favorable law or to harass the defendant" existed when plaintiff "hail[ed] from a foreign nation"). Plaintiffs designated this case as related to *Burnett* because both cases involve the same conspiracy to implement and enforce NAR's anticompetitive rules.

BHE also falsely claims that Plaintiffs are "largely exclud[ing] Missouri home sellers from their putative class definition." Doc. 714 at 8. The class definition here carves out claims against certain defendants in *Burnett* for some Missouri home sellers whose claims were settled in *Burnett*. With respect to BHE, Hanna, Crye-Leike, and the other non-settling Defendants in *Gibson*, however, Plaintiffs are seeking relief for thousands of home sellers in Missouri who sold a home after December 27, 2019 and used a listing broker affiliated with any Corporate Defendant in this case (including co-conspirators Keller Williams and HomeServices).

The cases BHE and Crye-Leike rely on involving forum shopping concerns are inapposite. In *C-Mart*, the court determined the plaintiff's choice of forum "create[d] the perception of impermissible forum shopping" where plaintiff's counsel previously filed a similar lawsuit in Florida and review of that lawsuit and the "motions to transfer demonstrate[d] the likelihood that Plaintiff's counsel . . . dismissed the class allegations and the complaint in the Florida Lawsuit in order to find a more favorable forum." 2013 WL 2403666, at *5. Similarly, in *Italian Colors Restaurant v. American Express Co.*, plaintiffs previously filed a virtually identical action in New York, which they dismissed, and indicated during oral argument "that they brought suit in California so as to avail themselves of the Ninth Circuit's disfavor of arbitration clauses within

-13-

adhesion contracts." 2003 WL 22682482, at *4 (N.D. Cal. Nov. 10, 2003); *see also In re Eyewear Antitrust Litig.*, 2024 WL 2956631, at *11 (noting concerns with plaintiffs' choice of Minnesota as the unified forum for the proceedings due to a prior coordinated dismissal of entities to undermine defendants' request for centralization in New York).

None of these scenarios are present here. Plaintiffs' counsel successfully litigated the *Burnett* action on behalf of home sellers who listed their homes on four MLSs in Missouri. Now, named Plaintiffs, the majority of whom sold homes in Missouri, seek to hold additional Defendants liable for their participation in the conspiracy and obtain relief on behalf of a nationwide class.

c.   The Loci of Operative Facts Is in Multiple Forums.

Defendants seek transfer of the claims against them to separate forums where they are headquartered because that is where, they claim, any alleged misconduct would have "originated." Doc. 706 at 7; Doc. 714 at 12-13; Doc. 727 at 9. But the complaint alleges Defendants conspired, implemented, and enforced the conspiracy in multiple locations across the country—not solely at Hanna's headquarters in Pittsburgh, BHE's headquarters in Des Moines, or Crye-Leike's headquarters in Memphis. Defendants ignore that, because this is a conspiracy case, each of their co-conspirator's actions will also be relevant. As a result, the loci of operative facts include: the location of *each* conspiring brokerage company's headquarters (not just BHE's, Hanna's, or Crye-Leike's headquarters); NAR's headquarters; the locations of NAR meetings where its rules were reviewed and reissued; the locations of Defendants' franchisees, affiliates, and realtors who were required to join NAR and follow its rules; and the actions of MLSs and local realtor associations.

Where a case, like this one, involves a nationwide scheme with multiple loci of operative facts, courts have found that this factor is neutral. *See In re Extended Stay Hotel Antitrust Litig.*, 2024 WL 5089159, at *3 ("Because there is no one or key location of material events in this case,

-14-

this factor does not weigh in the Court's determination of venue."); *Clinton v. Sec. Benefit Life Ins. Co.*, 2020 WL 6120565, at *6 (S.D. Fla. June 29, 2020) ("When there are multiple loci of operative facts and no single locus is primary in this respect, courts treat this factor as neutral in the Section 1404(a) analysis."); *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 381 (W.D.N.Y. 2018) ("Where the locus of operative facts is split amongst several forums [. . .] courts have, at minimum, viewed this factor neutrally.").

Moreover, contrary to Hanna's assertion, *In re Apple* did not establish a rule that courts must focus only on where the alleged wrongs "originated from," while other "alleged misconduct [that] occurred elsewhere . . . is irrelevant." Doc. 706 at 7. In *In re Apple*, while the lone defendant Apple had sold its product in the plaintiff's chosen forum, "none of Apple's alleged abusive litigation[,]" which was at issue in the dispute, related to Arkansas. 602 F.3d at 913. Here, Plaintiffs allege that they paid artificially inflated broker commissions due to the conspiracy that all Defendants enforced and implemented. Hanna, Crye-Leike, and BHE are liable as co-conspirators for the harm that occurred in this District. *In re Apple* does not bar this Court from considering that alleged misconduct occurred outside of Hanna's, BHE's, and Crye-Leike's headquarters. In fact, all three urge this Court, relying on *In re Eyewear Antitrust Litigation*, to consider where "the locus of the allegedly unlawful conduct" took place—i.e., "where the defendants allegedly conspired or colluded to violate the antitrust laws." 2024 WL 2956631, at *10 (quoting *Associated Wholesale Grocers, Inc. v. Koch Foods, Inc.*, 2018 WL 4361188, at *5 (D. Kan. Sept. 13, 2018)).

BHE also contends that because Plaintiffs seek to pierce the corporate veil between BHE and HomeServices of America ("HSA"), the locus of operative facts for veil piercing is its Iowa corporate headquarters. Doc. 714 at 13. Neither of the cases BHE relies on support transfer. In *Wilshire Credit Corp. v. Barrett Capital Management Corp.*, 976 F. Supp. 174, 177 (W.D.N.Y.

-15-

1997), the entities plaintiff alleged were alter egos were based in New York. The same was true in *Arnold v. LME, Inc.*, 2020 WL 13470567, at *2-4. Here, BHE is headquartered in Iowa and HSA is headquartered in Minnesota. The loci of operative facts will include both forums (and others).

In sum, the convenience factor favors Plaintiffs' choice of forum. Given multiple loci of operative facts, no weight should be given to Defendants' arguments that the locus of operative facts supports transfer.

## IV. Defendants Have Not Met Their Burden to Show that Witness Convenience Supports Transfer.

Witness convenience counsels strongly against severance and transfer. If the claims against BHE, Crye-Leike, and Hanna are transferred, each witness risks being deposed multiple times in cases around the country and then having to testify at several trials. Even to the extent some coordination across cases were feasible, there is no way to guarantee it with four different cases all likely proceeding on different case schedules. In contrast, centralizing claims in this District minimizes burdens on witnesses, who can be deposed once in the cities where they reside or remotely. *See, e.g.*, *Hassett v. United Airlines, Inc.*, 2023 WL 6066739, at *3 (D. Ariz. Sept. 18, 2023) ("[T]he locations of documents and witnesses do not carry as much weight as they perhaps carried in the past. Documents routinely are shared electronically, and parties can take remote depositions."); *Bizzack Constr., LLC v. TRC Eng'rs, Inc.*, 2021 WL 1230482, at *3 (E.D. Ky. Mar. 31, 2021) ("To the extent there is additional expense or inconvenience to any of the witnesses, this may be alleviated [through] video depositions, remote testimony, or other technological means."); *Spertus, M.D. v. Epic Sys. Corp.*, 2022 WL 4367195, at *7 (W.D. Mo. Sept. 21, 2022) ("depositions may be conducted via teleconference" and not require witnesses to travel).

In addition, Plaintiffs and many of their witnesses would be especially inconvenienced by transferring the claims to several other districts. As noted above, this District is a convenient forum

for two of the named Plaintiffs, while none are located in Pennsylvania, Tennessee, or Iowa. Plaintiffs also anticipate calling nonparty witnesses from MLSs, including potentially from MLSs in Missouri, to testify regarding the enforcement and implementation of the broker commission rules. Hanna and BHE suggest that the likelihood that Plaintiffs will seek testimony from former Defendants in this case somehow weighs in favor of transfer but settling *Gibson* Defendants have agreed to cooperate in Plaintiffs' litigation against the non-settling Defendants, including by making witnesses available for trial in this District.[7] Most of those witnesses are not located in Pennsylvania, Tennessee, or Iowa. BHE also notes that Plaintiffs might seek testimony from HSA. Yet transfer would not be more convenient for HSA, which is headquartered in Minnesota, and is outside the 100-mile subpoena radius of the Southern District of Iowa.

Hanna and BHE base their witness convenience argument on the number of proposed document custodians who are current and former employees. But these arguments are speculative and premature. The individuals at issue are *proposed* custodians that have not been agreed to by the parties. Indeed, Hanna and BHE have argued to Plaintiffs that many of these individuals lack information relevant to the case, and neither Defendant provides legal support for its assertion that proposed custodians are a reasonable "proxy" for witnesses. *See* Doc. 706 at 7-8; Doc. 714 at 13. Crye-Leike's motion simply refers to "executives and officers . . . who are all potential witnesses," "high level employees . . . who will testify about Crye-Leike's business structure and operations," and "any mid-level employee with relevant knowledge of Plaintiffs' allegations[.]" Doc. 727 at 6. Neither Hanna's nor Crye-Leike's motion describes these witnesses or provides anything more than vague descriptions about the nature of their anticipated testimony. The declaration accompanying BHE's motion provides information on only two proposed custodians' potential

---

[7] *See* Doc. 655-1 at pp. 34, 69-70; Doc. 531-1 at pp. 33, 67, 101-02, 136.

-17-

testimony. The analysis of witness convenience is "not merely a consideration of the number of witnesses located in or near the respective forums, but the nature and quality of their testimony in relationship to the issues of the case." *Svec v. Davis*, 2023 WL 6536197, at *3 (W.D. Mo. May 31, 2023); *see also C-Mart*, 2013 WL 2403666, at *3 ("Typically, the party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." (cleaned up)); *accord In re Apple*, 602 F.3d at 914 (evaluating whether the non-party witnesses would have "likely possessed material information").

Hanna and BHE also exaggerate the degree to which even these speculative witnesses are concentrated in their requested transferee districts. Hanna notes that "28 of the 37 current employees on Plaintiffs' list [of proposed custodians . . . ] reside within driving distance of Pittsburgh," Doc. 706 at 7, but the accompanying declaration reveals that of these employees, 12 live in Ohio, two live in the Rochester, NY area, three live in Indiana, two live in Virginia, two live in North Carolina, one lives in Michigan, and one lives in New Jersey. Delvaux Decl. (Doc. 706-1) at ¶ 5.[8] Similarly, BHE's motion indicates that "[m]ost" of the proposed 12 current and former employees "reside within reasonable driving distance from BHE's headquarters." Doc. 714 at 13. But BHE's accompanying declaration shows that of its eight current employees, six live "in or nearby" Des Moines, Iowa (a less than three-hour drive from this District), one lives in Omaha, Nebraska (a two-hour drive from the Southern District of Iowa (Des Moines) and a two-and-a-half-hour drive from this District), one lives in Portland, Oregon, and one proposed custodian

---

[8] BHE and Hanna both rely on "last known" addresses for the employees who are proposed document custodians, which may not be accurate, particularly given that it will likely be years before a trial here. Based on "last known" addresses, many former employees live outside the forums BHE and Hanna are seeking transfer to, including outside the 100-mile subpoena radius. For instance, for Hanna, 10 of the 16 proposed document custodians who are former employees have last known addresses outside of Pennsylvania—in Ohio, Virginia, New York, and North Carolina—and would need to travel to either Missouri or Pennsylvania, and many of them would be outside the 100-mile subpoena radius of the Western District of Pennsylvania. *See* Delvaux Decl. (Doc. 706-1) at ¶ 4.

employed by Berkshire Hathaway, Inc. lives in Omaha. Hocken Decl. (Doc. 712) at ¶¶ 27, 29.[9]

Further, Defendants' current employees' locations is not a "paramount concern" in assessing convenience, including because they will likely appear voluntarily at any trial at their employer's request. *Harrison v. Gen. Motors Co.*, 2017 WL 11341317, at *3 (W.D. Mo. Sept. 25, 2017) ("[I]nconvenience caused to party-employees is not of paramount concern because it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." (cleaned up)); *see also Sitzer*, 2019 WL 11648563, at *2 ("[I]t is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum.").

Moreover, contrary to BHE's and Crye-Leike's assertion, this case is not similar to this Court's decision in *Svec* where this Court held that convenience of the parties and witnesses supported transfer. Doc. 714 at 14; Doc. 727 at 8. Notably, in *Svec*, the plaintiff "insist[ed] that the parties and documents" were in both plaintiff's selected forum and the forum defendants sought transfer to "and that the comparative costs of litigating in each forum [were] essentially the same." 2023 WL 6536197, at *2. As discussed above, the comparative costs of litigating one case in Missouri versus four cases involving the same conspiracy in separate forums are not the same and the interest of justice factor weighs heavily against transfer here, unlike in *Svec*.

Hanna suggests it intends to call as a witness a nonparty MLS based in Pittsburgh, West Penn Multi-List. Doc. 706 at 8. Crye-Leike says it plans to call as witnesses Crye-Leike customers and MLS representatives in "western and central Tennessee, Mississippi, Arkansas, Alabama, and North Georgia to testify regarding Crye-Leike, Inc.'s course of dealing when providing residential

---

[9] The declaration of Julie Moss accompanying Crye-Leike's motion provides residences for a handful of Crye-Leike's officers and employees—offering no information on whether these individuals would be potential witnesses or their anticipated testimony. Doc. 726-1 at ¶¶ 5-8. Some individuals listed in the declaration do not live in the Western District of Tennessee, but in other parts of the state over a two-to-three-hour drive from the Western District. *Id.*

brokerages services"—many of whom would be outside the Western District of Tennessee. Doc. 727 at 9. Neither addresses why alternative methods of testimony at trial would not suffice, such as recorded deposition testimony, and both speculate that nonparty witnesses would not appear voluntarily. *See Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 931 (W.D. Mo. 1985) (noting that "defendant has not shown that use of video-taped depositions would be inadequate" and failing to give weight to "defendant's argument [which] merely assumes that the witnesses in question would not appear voluntarily at a trial in Missouri"); *Campbell v. Anytime Lab.-Kan., LLC*, 2016 WL 2743541, at *8 (W.D. Mo. May 11, 2016) ("Defendants have not shown how they would be prejudiced by the presentation of deposition testimony from these witnesses."). Outside of former employees, BHE makes no mention of nonparty witnesses it intends to call.

Defendants also contend the location of documents favors transfer, relying on *In re Apple*. In *In re Apple*, the defendant argued "much of [its] relevant documentary evidence [was] located in its . . . headquarters" outside plaintiffs' chosen forum. 602 F.3d at 914. The Eighth Circuit recognized that "electronic filing may lessen the inconvenience of document handling" and determined the Northern District of California would be more convenient if the need for original documents arose. *Id.* Here, essentially all documentary evidence is stored or will be produced electronically. And it is not even clear that a need for original documents is present, as both Hanna and BHE question whether they have physical copies of records dating back to 1993. Doc. 706. at 9, Doc. 714 at 15; *See Masa LLC v. Apple Inc.*, 2016 WL 629263, at *3 (E.D. Mo. Feb. 17, 2016) (finding convenience of the parties weighed in favor of plaintiff's chosen forum where "the Court suspect[ed] that because much of the documentary evidence [was] stored electronically, any inconvenience resulting from accessibility of records [was] likely to be minimal"). Transfer should not be based on a hypothetical.

# CONCLUSION

For the foregoing reasons, this Court should deny Hanna's, BHE's, and Crye-Leike's motions to transfer the claims against them.

Date: April 18, 2025

<div style="display: flex;">

**COHEN MILSTEIN SELLERS & TOLL PLLC**

/s/ Robert A. Braun
Benjamin D. Brown (*pro hac vice*)
Robert A. Braun (*pro hac vice*)
Sabrina Merold (*pro hac vice*)
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
smerold@cohenmilstein.com

Daniel Silverman (*pro hac vice*)
769 Centre Street
Suite 207
Boston, MA 02130
Telephone: (617) 858-1990
dsilverman@cohenmilstein.com

**BOULWARE LAW LLC**
Brandon J.B. Boulware          MO # 54150
Jeremy M. Suhr                MO # 60075
Andrew J. Ascher              MO # 74551
1600 Genessee Street, Suite 956A
Kansas City, MO 64102
Tele:    (816) 492-2826
Fax:     (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com
andrew@boulware-law.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

**KETCHMARK AND MCCREIGHT P.C.**
Michael Ketchmark             MO # 41018
Scott McCreight               MO # 44002
11161 Overbrook Rd. Suite 210
Leawood, Kansas 66211
Tele:   (913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

**WILLIAMS DIRKS DAMERON LLC**
Eric L. Dirks                 MO # 54921
1100 Main Street, Suite 2600
Kansas City, MO 64105
Tele: (816) 945 7110
Fax: (816) 945-7118
dirks@williamsdirks.com

**SUSMAN GODFREY L.L.P.**
Marc M. Seltzer (*pro hac vice*)
Steven G. Sklaver (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Beatrice C. Franklin (*pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8330
bfranklin@susmangodfrey.com

Matthew R. Berry (*pro hac vice*)
Floyd G. Short (*pro hac vice*)
Alexander W. Aiken (*pro hac vice*)
401 Union St., Suite 3000

</div>

-21-

Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Rio S. Pierce (*pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
riop@hbsslaw.com

Nathan Emmons (Mo. Bar. No. 70046)
Jeannie Evans (*pro hac vice*)
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
nathane@hbsslaw.com
jeannie@hbsslaw.com

Seattle, Washington 98101
Telephone: (206) 516-3880
mberry@susmangodfrey.com
fshort@susmangodfrey.com
aaiken@susmangodfrey.com

**Attorneys for Plaintiffs and the Proposed Class**

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2025 a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

/s/ *Robert A. Braun*
Robert A. Braun