IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DON GIBSON, LAUREN CRISS, JOHN MEINERS, and DANIEL UMPA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ASSOCIATION OF REALTORS, ET AL.,<br><br>Defendants. | Case No. 4:23-cv-00788<br>[Consolidated with 4:23-cv-00945]<br><br>Hon. Stephen R. Bough |

**DEFENDANT BERKSHIRE HATHAWAY ENERGY COMPANY'S
SUGGESTIONS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

BERKSHIRE HATHAWAY ENERGY COMPANY'S STATEMENT OF
UNCONTROVERTED MATERIAL FACTS ............................................................................... 1
INTRODUCTION .......................................................................................................................... 6
LEGAL STANDARD .................................................................................................................... 7
ARGUMENT .................................................................................................................................. 9
I.     The Court Should Grant Summary Judgment Because The *Sitzer* Settlement and
      Release Bar Plaintiffs' Claim As a Matter of Law. ............................................................. 9
      A.     Under Plaintiffs' Theory, BHE's and HSA's Allegedly Coordinated
           Activity Is a "Single Enterprise" Under *Copperweld* and Cannot Give Rise
           to an Antitrust Conspiracy Claim. ........................................................................... 9
      B.     Plaintiffs Previously Released Their Claims Against the Single Alleged
           BHE-HSA Enterprise, Including BHE. ................................................................ 10
CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Copperweld* v. *Independence Tube*,
    467 U.S. 752 (1984) ...................................................................................1, 6, 9, 10

*Cremona* v. *R.S. Bacon Veneer Co.*,
    433 F.3d 617 (8th Cir. 2006) ..........................................................................................8

*Davidson & Schaaff, Inc.* v. *Liberty Nat'l Fire Ins. Co.*,
    69 F.3d 868 (8th Cir. 1995) ............................................................................................9

*First Nat'l Bank of Ariz.* v. *Cities Serv. Co.*,
    391 U.S. 253 (1968) .......................................................................................................8

*i-Sys., Inc.* v. *Softwares, Inc.*,
    2004 WL 742082 (D. Minn. Mar. 29, 2024) ..................................................................9

*Lenox MacLaren Surgical Corporation* v. *Medtronic, Inc.*,
    847 F.3d 1221 (10th Cir. 2017) ...............................................................................10, 11

*Liberty Ins. Corp.* v. *HNTB Corp.*,
    87 F.4th 886 (8th Cir. 2023) ..........................................................................................8

*Lomar Wholesale Grocery, Inc.* v. *Dieter's Gourmet Foods, Inc.*,
    824 F.2d 582 (8th Cir. 1987) ..........................................................................................8

*Medtronic, Inc.* v. *Shope*,
    135 F. Supp. 2d 988 (D. Minn. 2001) .............................................................................8

*Missouri Hous. Dev. Comm'n* v. *Brice*,
    919 F.2d 1306 (8th Cir. 1990) ........................................................................................8

*Ripplemeyer* v. *Nat'l Grape Coop. Ass'n*,
    807 F. Supp. 1439 (W.D. Ark. 1992) ..............................................................................9

*Royal Indem. Co.* v. *Werner*,
    784 F. Supp. 690 (E.D. Mo. 1992), *aff'd*, 979 F.2d 1299 (8th Cir. 1992) ....................8

**Statutes**

Sherman Act § 1 ...................................................................................................3, 8, 9

Sherman Act § 2 ............................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 56 ................................................................................................................8

Fed. R. Civ. P. 56(a) ...........................................................................................................7

Fed. R. Civ. P. 56(c)(1)(A) .................................................................................................8

The Plaintiffs in this case—individuals who bring claims on behalf of a putative nationwide class of home sellers—assert claims under the Sherman Act against Berkshire Hathaway Energy Company ("BHE") for the alleged conduct of its subsidiary, HomeServices of America, Inc. ("HSA"). Under Plaintiffs' theory, BHE and HSA acted as a "single enterprise," pursuant to the U.S. Supreme Court's holding in *Copperweld* v. *Independence Tube*, 467 U.S. 752 (1984). Because Plaintiffs settled and released all claims against HSA, BHE, as a member of Plaintiffs' alleged single enterprise, is likewise released, and summary judgment is warranted on this pure question of law under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

## BERKSHIRE HATHAWAY ENERGY COMPANY'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS

### *Berkshire Hathaway Energy Company and HomeServices of America, Inc.*

1. BHE "is a holding company that owns a . . . portfolio of locally managed and operated businesses principally engaged in the energy industry." *See* Berkshire Hathaway Energy Co., Annual Report (Form 10-K) (Feb. 26, 2024), ECF No. 638-11 at 118.

2. Among the many businesses that BHE owns is HSA, which owns or is affiliated with several other entities, including HSF Affiliates, LLC; BHH Affiliates, LLC; and The Long & Foster Companies, Inc. (the "HSA Defendants"). Consolidated Amended Class Action Compl. ¶¶ 32, 35, ECF No. 232 ("CAC").

3. HSA offers traditional real estate brokerage services, as well as other integrated real estate services, including mortgage originations and mortgage banking, title and closing services, property and casualty insurance, relocation services, and other home-related services, through its subsidiaries. *Id.* ¶ 36.

*The* Sitzer *Lawsuit*

4. On April 29, 2019, certain home sellers who had listed their homes on one of four Multiple Listing Services ("MLSs") (collectively, the "*Sitzer* Plaintiffs") filed an antitrust lawsuit alleging violations of the Sherman Act against HSA and several other defendants. Compl. at 1, *Sitzer* v. *Nat'l Ass'n of Realtors*, No. 4:19-cv-00332-SRB (W.D. Mo. Apr. 29, 2019), ECF No. 1 ("*Sitzer* Compl.").

5. The *Sitzer* Plaintiffs alleged that HSA and other defendants had engaged in a price-fixing conspiracy by requiring home sellers selling homes on certain MLSs to pay inflated commissions to buyer-brokers. *See id.*; Third Am. Class Action Compl., *Sitzer*, No. 4:19-cv-00322-SRB (W.D. Mo. May 6, 2022), ECF No. 759.

6. On October 31, 2023, a jury returned a verdict in favor of the *Sitzer* Plaintiffs, finding that HSA and other defendants had engaged in the alleged price-fixing conspiracy. Jury Verdict, *Sitzer*, No. 4:19-cv-00322-SRB (W.D. Mo. Oct. 31, 2023), ECF No. 1294.

*This Lawsuit*

7. On October 31, 2023, the very same day that the jury rendered the verdict in *Sitzer*, Plaintiffs' counsel here—who include counsel to the plaintiffs in *Sitzer*—filed this action, making substantially the same allegations made in *Sitzer*, but this time suing real estate brokerages across the country on behalf of a putative nationwide class. *See* Class Action Compl., ECF No. 1.

8. Then, on March 4, 2024, although BHE had never been named as a defendant in any prior real-estate-commission class action, Plaintiffs filed an amended complaint adding BHE as a defendant in this action for the first time. *See* First Am. Class Action Compl., ECF No. 130.

9. Plaintiffs later further amended and consolidated the complaint on April 23, 2024, and filed the operative complaint on June 11, 2024, naming HSA and BHE as defendants both times. *See* Consolidated Class Action Compl., ECF No. 146; CAC.

10. Just as in *Sitzer*, Plaintiffs allege that Defendants, including BHE, violated Section 1 of the Sherman Act, 15 U.S.C. § 1, through a nationwide conspiracy to fix the prices of buyer-broker commissions by creating and enforcing a National Association of Realtors ("NAR") rule purportedly requiring any NAR member who lists a home for sale on an MLS to make an offer of compensation to the broker representing the buyer in the eventual transaction. CAC ¶¶ 1–6.

11. Plaintiffs allege that these actions improperly inflated buyer-broker commissions and restrained competition among brokers in violation of the Sherman Act. *Id.* ¶¶ 6, 255–64.

12. Plaintiffs allege that "Berkshire Hathaway Energy has played an active role in controlling the day-to-day operation and oversight of HomeServices and Berkshire Hathaway HomeServices." *Id.* ¶ 58.

13. Plaintiffs further allege that Greg Abel, "in his role as CEO and Chairman of [BHE] and vice-president and board member of Berkshire Hathaway, has overseen and controlled the actions of [HSA's former CEO and president] Gino Blefari"; "Mr. Abel directed Mr. Blefari concerning the operation of HomeServices and Berkshire Hathaway HomeServices"; BHE "created the Code of Business Conduct that HomeServices and its personnel are required to follow," which "encourages participation in trade associations and includes corporate oversight as to such participation"; "HomeServices followed Berkshire Hathaway Energy's directions to participate in trade associations"; and BHE "encourages HomeServices agents to participate in

3

NAR and knows that they do, including the making of mandatory offers of compensation." *Id.* ¶¶ 58, 61–63, 67.

*Plaintiffs' Interrogatory Responses*

14. On September 9, 2025, Plaintiffs provided supplemental responses ("Responses") to BHE's Second Set of Interrogatories to Plaintiffs ("Interrogatories"). *See generally* Ex. 1, Pls.' Supp. Resps. to Def. BHE's Second Set of Interrogs. to Pls.

15. In its Interrogatories, BHE asked Plaintiffs to, among other things, "[s]tate whether Plaintiffs contend that BHE participated in any 'conspiracy' alleged in the Complaint, and, if so, provide the factual basis for such contention." *Id.* at 3.

16. Plaintiffs' theory of liability against BHE, as confirmed by Plaintiffs' sworn interrogatory responses, is that BHE participated in HSA's allegedly unlawful conduct "through its oversight and control of HSA." *Id.* at 5.

17. For example, in their interrogatory responses, Plaintiffs testified that BHE's leadership was "aware of and involved in directing HSA's strategy and decisionmaking"; "played an active role in overseeing and controlling HSA's day-to-day operations"; and "played formal roles in [HSA's] financial, strategy, and hiring decisions." *Id.* at 5–6.

18. Plaintiffs similarly testified through their interrogatory responses that BHE and HSA held regular joint "HomeServices of America/Berkshire Hathaway Energy strategy and discussion meetings," which "involved multiple executives, officers, and employees at both companies," and other strategic planning meetings. *Id.* at 7–8.

19. Plaintiffs further testified in their interrogatory responses that Mr. Abel served on HSA's board of directors for more than two decades; oversaw and controlled the actions of HSA's president and CEO; and "took a hands-on approach to overseeing BHE's subsidiaries, such as

4

HSA, including by closely scrutinizing their financial results and business operations." *Id.* at 6–7, 9.

20. Plaintiffs also testified in their interrogatory responses that Berkshire Hathaway, Inc. stated in public filings that "BHE . . . operates a residential real estate brokerage business and a large network of real estate brokerage franchises in the United States." *Id.* at 10–11.

21. Through their interrogatory responses, Plaintiffs further testified that BHE created a Code of Business Conduct, which HSA and its personnel are required to follow, that encourages participation in trade associations, and that HSA followed BHE's direction to participate in trade associations by participating in NAR. *Id.* at 11.

22. Finally, Plaintiffs testified that brokerage companies within BHE's umbrella required franchisees and realtors to comply with MLS rules and regulations, including the Buyer Broker Commission Rule; required associates to agree to maintain membership in the local realtor association and MLS; and required franchisees to comply at all times with the NAR Code of Ethics. *Id.* at 16–17.

### The Sitzer *Settlement Agreement and Final Judgment*

23. On November 27, 2024, the *Sitzer* Court granted the *Sitzer* Plaintiffs' motion for final approval of settlement with the HSA Defendants. Order Granting Mot. for Final Approval of Settlements, *Sitzer*, No. 4:19-cv-00322-SRB (W.D. Mo. Nov. 27, 2024), ECF No. 1622.

24. Plaintiffs here—Don Gibson, Lauren Criss, John Meiners, and Daniel Umpa—were among the plaintiffs who executed the Settlement Agreement on behalf of the Settlement Class, which included "all persons who sold a home that was listed on a multiple listing service anywhere in the United States where a commission was paid to any brokerage in connection with the sale of

the home [from] . . . October 31, 2019 to [the] date of notice." Ex. 2, Settlement Agreement 3, 8–9, *Sitzer*, No. 4:19-cv-00322-SRB (W.D. Mo. Aug. 7, 2024) ("Settlement Agreement").

25. As stated in the Settlement Agreement, Plaintiffs explicitly intended the "Settlement Agreement to provide for a nationwide class with a nationwide settlement and release." *Id.* at 9.

26. The putative class in this matter includes all "persons in the United States who, from December 27, 2019, through the present, used a listing broker affiliated with any Corporate Defendant in the sale of a home listed on an MLS, and who paid a commission to a cooperating broker in connection with the sale of the home." CAC ¶ 246.

27. The Settlement Agreement expressly excludes BHE from the definition of "Released Parties." Settlement Agreement 4, 7–8. BHE is not a party to the Settlement Agreement.

28. On January 15, 2025, the *Sitzer* Court entered a final judgment ordering Plaintiffs "to seek dismissal with prejudice of all claims" against the HSA Defendants in any of "the Actions," including this one. Final Judgment at 2, *Sitzer*, No. 4:19-cv-00322-SRB (W.D. Mo. Jan. 15, 2025), ECF No. 1674.

**INTRODUCTION**

The U.S. Supreme Court held in *Copperweld* that the coordinated activity of a parent corporation and its subsidiary is considered a "single enterprise," and therefore, cannot give rise to a combination or conspiracy necessary to sustain an antitrust conspiracy claim. 467 U.S. 752. Under the theory advanced by Plaintiffs in this action, BHE and its subsidiary HSA acted as a single enterprise. And, because the Settlement Agreement releases HSA from any liability associated with Plaintiffs' claims, BHE, as a member of that alleged single enterprise, is likewise released in equal measure.

More specifically, in 2019, the *Sitzer* Plaintiffs filed a federal class action in Missouri against HSA, a subsidiary of BHE, alleging a price-fixing conspiracy in violation of the Sherman Act. *See Sitzer* Compl. In 2023, Plaintiffs then filed this nationwide class-action lawsuit, which they later amended to add an antitrust claim against BHE on the sole basis that BHE, as HSA's parent, supposedly directed HSA in its participation in the same alleged conspiracy at issue in *Sitzer*. Under Plaintiffs' own theory of liability, the only party that took any direct action in furtherance of the alleged conspiracy was HSA—not BHE. In 2024, these Plaintiffs, together with the plaintiffs in *Sitzer* and another real-estate-commission antitrust class action ("*Moehrl*"), settled all price-fixing antitrust claims against HSA pending in *Sitzer*, *Moehrl*, and this case. In doing so, Plaintiffs expressly agreed to a "nationwide settlement and release" of such claims on behalf of a "nationwide class." Settlement Agreement 9. That release specifically carved out BHE, but only for BHE's *own* conduct—*not* HSA's conduct, which, by their own admissions and binding testimony, is the *only* conduct underlying Plaintiffs' claims in this action.

Now, in defiance of that broad release, Plaintiffs are seeking to get a second bite at the apple by attempting to impose on BHE the same real-estate-commission price-fixing liability they expressly released against HSA. And significantly, they are doing so, as noted, by making judicially binding admissions and offering interrogatory testimony claiming that BHE directed HSA—and thus in effect that BHE and HSA acted as a single enterprise—to commit the alleged conduct that is the subject of the Settlement Agreement release. Under these circumstances, there can be no question that Plaintiffs' claim against BHE is foreclosed and that summary judgment is warranted.

**LEGAL STANDARD**

Summary judgment is appropriately granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Summary judgment is appropriate where there is an "absence of any significant probative evidence tending to support the complaint." *First Nat'l Bank of Ariz.* v. *Cities Serv. Co.*, 391 U.S. 253, 290 (1968). A factual dispute is "genuine" within the meaning of Federal Rule of Civil Procedure 56 if the dispute has a real basis in the record such that "a reasonable jury could return a verdict for the nonmoving party" on the question. *Liberty Ins. Corp.* v. *HNTB Corp.*, 87 F.4th 886, 888 (8th Cir. 2023) (citations omitted). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). "[A]dmissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions." *Missouri Hous. Dev. Comm'n* v. *Brice*, 919 F.2d 1306, 1315 (8th Cir. 1990).

Summary judgment is often appropriate in cases involving pure questions of law. *See, e.g.*, *Royal Indem. Co.* v. *Werner*, 784 F. Supp. 690, 691, 693 (E.D. Mo. 1992), *aff'd*, 979 F.2d 1299 (8th Cir. 1992) (granting summary judgment where the dispute centered on a "pure question of law"); *see also Medtronic, Inc.* v. *Shope*, 135 F. Supp. 2d 988, 990, 992 (D. Minn. 2001) (granting summary judgment because the facts were not in dispute and the matter turned on a "pure question of law"); *Cremona* v. *R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006) (finding that, because the case involved only questions of law, it was "particularly appropriate for summary judgment" (citing *Lomar Wholesale Grocery, Inc.* v. *Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir. 1987))).

## ARGUMENT

I. **The Court Should Grant Summary Judgment Because The *Sitzer* Settlement and Release Bar Plaintiffs' Claim As a Matter of Law.**

   A. **Under Plaintiffs' Theory, BHE's and HSA's Allegedly Coordinated Activity Is a "Single Enterprise" Under *Copperweld* and Cannot Give Rise to an Antitrust Conspiracy Claim.**

*Copperweld* held that "the coordinated acts of a parent and its wholly owned subsidiary" cannot, "in the legal sense contemplated by § 1 of the Sherman Act, constitute a combination or conspiracy." 467 U.S. at 759; *see also id.* at 771 ("[T]he coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act."). Consistent with these principles, courts in the Eighth Circuit have routinely treated parents and their subsidiaries as single units that cannot conspire with each other and thus have dismissed claims alleging that parents have conspired with their subsidiaries. *See, e.g.*, *Davidson & Schaaff, Inc.* v. *Liberty Nat'l Fire Ins. Co.*, 69 F.3d 868, 871 (8th Cir. 1995) (dismissing conspiracy claim against two subsidiaries of the same parent because, under *Copperweld*, like "parents and subsidiaries," "two subsidiaries of the same parent" cannot conspire); *i-Sys., Inc.* v. *Softwares, Inc.*, 2004 WL 742082, at *18 (D. Minn. Mar. 29, 2024) (finding that "a conspiracy [could not] as a matter of law" exist between a parent and its two wholly owned subsidiaries); *Ripplemeyer* v. *Nat'l Grape Coop. Ass'n*, 807 F. Supp. 1439, 1459 (W.D. Ark. 1992) (finding a corporation and its wholly owned subsidiary "incapable of a section 1 conspiracy as a matter of law" under *Copperweld*).

The material facts on this issue are undisputed for purposes of summary judgment. In particular, there is no—and cannot be any—genuine dispute that HSA is BHE's wholly owned subsidiary. *See supra* ¶¶ 1–2. Plaintiffs' own pleadings and interrogatory responses rely on a theory that BHE directed HSA to engage in the alleged price-fixing conduct underlying Plaintiffs'

Sherman Act claim. *See supra* ¶¶ 16–22. Thus, Plaintiffs' own pleadings and admissions establish that, according to Plaintiffs, BHE and HSA acted as a single enterprise as contemplated by *Copperweld* and therefore could not have conspired with each other for Sherman Act purposes.

    **B.    Plaintiffs Previously Released Their Claims Against the Single Alleged BHE-HSA Enterprise, Including BHE.**

As noted earlier, Plaintiffs previously settled Sherman Act claims with HSA, thereby releasing those claims against HSA on behalf of a nationwide class. As also explained above, BHE's and HSA's allegedly coordinated activity is a single enterprise for antitrust liability purposes. *See supra* ¶¶ 23–28. As such, Plaintiffs' release of HSA for the claim asserted in this action also precludes them from bringing that claim against BHE. That is because BHE is, under Plaintiffs' theory of the case, part of the same supposed single enterprise that committed the alleged misconduct. Put another way, Plaintiffs cannot release part of HSA's "corporate consciousness," i.e., HSA, without releasing the rest, i.e., BHE. *Copperweld*, 467 U.S. at 753.

This is not novel. Indeed, the Tenth Circuit reached a similar conclusion under similar circumstances in *Lenox MacLaren Surgical Corporation* v. *Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017). There, the plaintiff sued Medtronic, Inc., and several subsidiaries for monopolization and attempted monopolization in violation of Section 2 of the Sherman Act. *Id.* at 1226. Several years earlier, however, the plaintiff had sued Medtronic Sofamor Danek USA, Inc. ("MSD USA"), a separate subsidiary of Medtronic that was not a party to the case at issue, in a separate case in Colorado in which MSD USA had been found liable. *Id.* at 1226–28. The Tenth Circuit concluded that the defendants—three of which were Medtronic subsidiaries—constituted a single enterprise for purposes of the plaintiff's antitrust claim. *Id.* at 1235–37. The Tenth Circuit also held that the plaintiff's antitrust claims against the defendants were precluded by the earlier Colorado case against MSD USA. *Id.* at 1239–44. The Tenth Circuit reasoned that, although Medtronic and MSD

10

USA were separate legal entities, they constituted a single enterprise under *Copperweld* such that "a final judgment against one bar[red] a subsequent action against the other for the same injury." *Id.* at 1241 (citing *Robinson* v. *VolkswagenwerkAG*, 56 F.3d 1268, 1275 (10th Cir. 1995)). As the Tenth Circuit observed, the plaintiff's earlier antitrust claims required the court to "treat Defendants and MSD USA as a *single entity*," meaning that "they must be treated as *actually the same*." *Id.* (emphases in original). Thus, the Tenth Circuit ruled that the plaintiff's claim was precluded by the prior final judgment against MSD USA. *Id.* at 1244. The Tenth Circuit's analysis and conclusion are fully applicable here.

Plaintiffs will no doubt argue in opposing this motion that the Settlement Agreement has a carveout excluding BHE from the definition of "Released Parties." Settlement Agreement 4, 7–8. That carveout presents no impediment to the relief BHE requests here because, as BHE has now shown, the antitrust claims brought against HSA in *Sitzer* and the antitrust claim that Plaintiffs have now brought against BHE here are effectively the same. In other words, while the Settlement Agreement's carveout could preserve claims on behalf of the nationwide class against BHE based on a theory *not* covered by the release as to HSA, Plaintiffs are not pursuing any such theory here. Instead, the theory of liability being advanced by Plaintiffs in this action is that BHE directed HSA's conduct—the very conduct that is the subject of the Settlement Agreement's release and that therefore applies in equal force to BHE.

## CONCLUSION

BHE respectfully requests that the Court grant summary judgment in BHE's favor and dismiss Plaintiffs' complaint in its entirety and with prejudice.

Dated: March 4, 2026

*/s/ Jeffrey J. Simon*
**HUSCH BLACKWELL LLP**
Jeffrey J. Simon, MO #35558
Taylor Concannon Hausmann, MO #67056
Sara A. Fevurly, MO #69076
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
Jeff.Simon@huschblackwell.com
Taylor.Hausmann@huschblackwell.com
Sara.Fevurly@huschblackwell.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Katherine B. Forrest (*pro hac vice*)
Andrew G. Gordon (*pro hac vice*)
Gregory F. Laufer (*pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
kforrest@paulweiss.com
agordon@paulweiss.com
glaufer@paulweiss.com

*Attorneys for Defendant Berkshire Hathaway Energy Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2026, a true and correct copy of the foregoing was filed via CM/ECF, which will automatically serve an electronic copy on all counsel of record.

> */s/ Gregory F. Laufer*
> Gregory F. Laufer