# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

DON GIBSON, LAUREN CRISS,        )
JOHN MEINERS, and DANIEL UMPA,   )
individually and on behalf of all others similarly )
situated,                        )
                                 )        Case No. 23-cv-00788-SRB
            Plaintiffs,          )
                                 )
      v.                         )
                                 )
THE NATIONAL ASSOCIATION OF      )
REALTORS, et al.,                )
                                 )
            Defendants.          )

## ORDER

Before the Court is Defendant Berkshire Hathaway Energy Company's ("BHE") Motion

for Summary Judgment.  (Doc. #878.)  For the reasons set forth below, the motion is DENIED.

## I.  FACTUAL BACKGROUND[1]

BHE is the parent company of HomeServices of America, Inc. ("HSA").  In a separate

lawsuit, certain home sellers who had listed their homes on one of four Multiple Listing Services

("MLSs") (collectively, "*Sitzer* Plaintiffs") filed an antitrust lawsuit alleging violations of the

Sherman Act against HSA and several other defendants.  *See Sitzer v. Nat'l Ass'n of Realtors*,

No. 4:19-cv-00332-SRB (W.D. Mo. Apr. 29, 2019).  *Sitzer* Plaintiffs alleged that HSA and other

defendants had engaged in a price-fixing conspiracy by requiring home sellers on certain MLSs

to pay inflated commissions to buyer-brokers.  A jury returned a verdict in favor of the *Sitzer*

---

[1] The following facts are taken from the parties' briefs and the record, and are either uncontroverted or deemed uncontroverted by the Court.  Additional facts relevant to the pending motion are discussed in Section III.  All page numbers refer to the pagination automatically generated by ECF.  The parties have been significantly litigating this dispute for more than a year.  As such, this Order assumes familiarity with the procedural background and background facts.

Plaintiffs, finding that HSA and other defendants had engaged in the alleged price-fixing conspiracy. On August 6, 2024, *Sitzer* Plaintiffs, HSA, and other HSA affiliates executed a settlement agreement (the "Settlement Agreement"), which released HSA from liability associated with *Sitzer* Plaintiffs' claims. The Settlement Agreement excluded BHE from the definition of "Released Parties:"

> "Released Parties" shall not include and this Settlement Agreement shall not release Berkshire Hathaway Energy Company ("BHE") or any of BHE's or HomeServices of America Inc.'s direct or indirect parents, or HomeServices of America Inc.'s direct or indirect parents' officers, directors or employees, in their capacity as such, from any claims or alleged liability for any of the claims asserted or that could have been asserted by Plaintiffs in the Actions on any theory or basis whatsoever.

(Doc. #892, p. 5.) Plaintiffs here—Don Gibson, Lauren Criss, John Meiners, and Daniel Umpa ("Plaintiffs")—were among the *Sitzer* Plaintiffs who executed the Settlement Agreement on behalf of the Settlement Class.

On November 20, 2024, *Sitzer* Plaintiffs moved for final approval of the Settlement Agreement. In support of their motion, *Sitzer* Plaintiffs stated that "[w]hile HomeServices has a parent company with additional funds, its parent would not step in and pay more. We did, however, ensure that the release of HomeServices did not include its parent company, and we sued HomeServices' corporate parent in *Gibson*." (Doc. #892, p. 12.) Thus, Plaintiffs explained that "[t]he Settlement Agreement . . . does nothing to abrogate the rights of any member of the Settlement Class to recover from any other Defendant, including Berkshire Hathaway Energy." (Doc. #892, p. 12.) In support of the settlement, HSA also argued that the settlement amount was fair and reasonable because BHE was not obligated to fund the settlement:

> [S]ome objectors suggest that $250 million is too low given that the HomeServices Defendants are "subsidiar[ies] of Berkshire Hathaway." E.g., Dkt. 1555-1 at 1. But Berkshire Hathaway (and Berkshire Hathaway Energy, itself a subsidiary of Berkshire Hathaway) are separate and distinct legal

entities that have no legal or contractual obligation to cover the liabilities of the HomeServices Defendants, including the *Burnett* judgment, or to fund a settlement. For that simple reason, the fairness of the Settlement must be judged against the resources of the HomeServices Defendants only—not those of their parent entities.

(Doc. #892, p. 13.)

On November 27, 2024, the Court granted Plaintiffs' motion for final approval of the settlement with HSA. The Court rejected certain objections to the settlement based on the Settlement Agreement's carveout of BHE from the scope of the release:

[T]he Pennsylvania objectors' argument that the HomeServices Defendants could have paid more lacks support. It supposes, without any evidence, that HomeServices' parent company would step in and pay into the Settlement. And the objection ignores that the HomeServices Settlement expressly excludes HomeServices' parent company from the release.

(Doc. #892, p. 14.) The Court's Order explained that "[t]he record supports the finding that Plaintiffs sought to obtain the largest recovery they could in light of the risks of continued litigation, including each Settling Defendant's ability to pay limitations." (Doc. #892, p. 14.)

BHE is named as a defendant in this case. Plaintiffs allege, among other things, that BHE "violated Section 1 of the Sherman Act, 15 U.S.C. § 1, through a nationwide conspiracy to fix the prices of buyer-broker commissions by creating and enforcing a National Association of Realtors ("NAR") rule purportedly requiring any NAR member who lists a home for sale on an MLS to make an offer of compensation to the broker representing the buyer in the eventual transaction." (Doc. #879, p. 7.) On March 4, 2026, BHE filed the pending motion for summary judgment, arguing that the *Sitzer* settlement and release bars Plaintiffs' claims against BHE. Plaintiffs oppose the motion, and the parties' arguments are addressed below.

## II. LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id*. (quotation marks omitted). If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Id*. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. (quotation marks omitted).

## III. DISCUSSION

### A. *Copperweld* does not foreclose Plaintiffs' antitrust conspiracy claim.

BHE argues that, under Plaintiffs' theory, BHE's and HSA's alleged coordination is a "single enterprise" under *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), and cannot give rise to an antitrust conspiracy claim. (Doc. #879, p. 13.) Plaintiffs do not dispute that the coordinated activity of BHE and HSA constitutes a single enterprise but argue that "*Copperweld* does not foreclose a theory that a parent and subsidiary independently could have formed a civil conspiracy with others." (Doc. #892, p. 24) (quotations omitted). The Court agrees with Plaintiffs.

In *Copperweld*, the Supreme Court held that a parent and its wholly owned subsidiary are incapable of conspiring in violation of § 1 of the Sherman Act. *Id.* at 777; *see also id.* at 771

("[T]he coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act."). However, the Supreme Court did not preclude a parent and subsidiary forming a conspiracy with separate entities in violation of § 1 of the Sherman Act. Unlike *Copperweld*, where the parent corporation and its wholly owned subsidiary were the only parties to the conspiracy, Plaintiffs here allege "a nationwide conspiracy to fix the prices of buyer-broker commissions." (Doc. #879, p. 7.) Thus, the Court finds that *Copperweld* does not foreclose Plaintiffs' antitrust conspiracy claim.

Similarly, the other cases that BHE relies on do not include co-conspirators separate from the single enterprise. *See Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co.*, 69 F.3d 868, 871 (8th Cir. 1995) (dismissing conspiracy claim against two subsidiaries of the same parent); *i-Sys., Inc. v. Softwares, Inc.*, No. 02–1951, 2004 WL 742082, at *18 (D. Minn. Mar. 29, 2024) (finding that a conspiracy could not exist between a parent and its two wholly owned subsidiaries). The Court finds that these cases also do not preclude Plaintiffs' antitrust conspiracy claim.

### B. The Settlement Agreement does not release Plaintiffs' single-enterprise theory against BHE.

BHE further argues that because "BHE's and HSA's allegedly coordinated activity is a single enterprise for antitrust liability purposes . . . Plaintiffs' release of HSA for the claim asserted in this action also precludes them from bringing that claim against BHE." (Doc. #879, p. 14.) Plaintiffs argue that BHE "cites no authority supporting" its position, and its position is "contradicted by other cases holding that parties may structure settlement agreements however they want, . . . including by . . . releasing a subsidiary but not a parent[.]" (Doc. #892, pp. 21, 23.) The Court agrees with Plaintiffs.

The primary case that BHE relies on, *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1226 (10th Cir. 2017), does not involve whether releasing a subsidiary company from liability under a settlement agreement also releases the parent company.  Instead, the Tenth Circuit found that Plaintiff's claims were "barred by the claim preclusion arm of res judicata[,]" *id.*, which BHE did not raise as an issue in its motion for summary judgment.[2]  The Tenth Circuit only engaged in an analysis of plaintiff's single-enterprise theory under *Copperweld* to place its "subsequent preclusion discussion in context."  *Id.* at 1232.

Further, the Court agrees with Plaintiffs that *Copperweld* does not address whether releasing a subsidiary company from liability under a settlement agreement also releases the parent company:

> In *Copperweld*, the Supreme Court did not address the scope of a contractual release, much less whether a plaintiff pursuing a single-enterprise theory of liability must settle with the entire enterprise or none of it. Instead, the Supreme Court addressed the "narrow issue" of "whether a parent and its wholly owned subsidiary are capable of conspiring in violation of § 1 of the Sherman Act." 467 U.S. at 767.

(Doc. #892, p. 23.)

The Court is instead persuaded by the case that Plaintiffs cite, *Lumpkin v. Envirodyne Indus., Inc.*, where the parent company argued that it was released from liability by virtue of its two subsidiaries being named in a prior settlement agreement.  933 F.2d 449, 459 (7th Cir. 1991).  The Seventh Circuit disagreed with the parent company, recognizing that if it were to

---

[2] BHE attempts to argue in its reply brief that "Plaintiffs cannot evade claim preclusion by leveraging a carveout of BHE[.]"  (Doc. #896, p. 25.)  However, BHE did not address claim preclusion in its initial brief.  *See Lenox MacLaren Surgical Corp.*, 847 F.3d at 1239 ("To apply claim preclusion, three elements must exist: (1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits. . . . In addition, even if these three elements are satisfied, there is an exception to the application of claim preclusion where the party resisting it did not have a full and fair opportunity to litigate the claim in the prior action.") (quotations omitted).  Instead, BHE raises the argument of claim preclusion for the first time in its reply brief, not even fully, so the Court will not consider it.  *See Mahaney v. Warren County*, 206 F.3d 770, 771 n.2 (8th Cir. 2000) ("Claims not raised in an initial brief are waived, and we generally do not consider issues raised for the first time . . . in a reply brief.").

accept the parent company's argument, it "would be sanctioning the abuse of the corporate form." *Id.* at 460. The Seventh Circuit concluded that "the scope of the settlement release [came] down to a question of the parties' intent[.]" *Id.* at 466.

The Court finds *Lumpkin*'s holding and rationale applicable to this case, and declines to accept BHE's argument that "Plaintiffs' release of HSA for the claim asserted in this action also precludes them from bringing that claim against BHE." (Doc. #879, p. 14.) Instead, the Court will look to the parties' intent to determine the scope of the release in the Settlement Agreement. Under Missouri law, "[n]ormal rules of contract construction apply to [the] interpretation of settlement agreements." *Cherry Hill Dental, Inc. v. Bentley Motors*, Inc., 711 F. Supp. 3d 1089, 1093 (W.D. Mo. 2024). If "there is no ambiguity, then the intention of the parties and interpretation of the contract is for the court to determine, as garnered from the four corners of the document." *Id.* "The Court must determine the parties' intention as manifested by the settlement agreement and not by what the parties now say they intended." *Id.*

Here, the Court finds that the release is unambiguous, and the four corners of the Settlement Agreement demonstrate the parties' intent to exclude BHE from the release:

> "Released Parties" shall not include and this Settlement Agreement shall not release Berkshire Hathaway Energy Company ("BHE") or any of BHE's or HomeServices of America Inc.'s direct or indirect parents, or HomeServices of America Inc.'s direct or indirect parents' officers, directors or employees, in their capacity as such, from any claims or alleged liability for any of the claims asserted or that could have been asserted by Plaintiffs in the Actions on any theory or basis whatsoever. BHE and any of BHE's direct or indirect corporate parents, and the officers and directors of each, are not third-party beneficiaries of this Settlement or Settlement Agreement. This Settlement Agreement does not settle or compromise any claim or potential claim by Plaintiffs or any other Settlement Class Member against any alleged co-conspirator or other Person or entity other than the Released Parties, including but not limited to the non-HomeServices Defendants in the Actions.

(Doc. #879-2, p. 8.)

7

The Court finds that the Settlement Agreement's context also confirms the parties' intent to exclude BHE from the release. *See Press Mach. Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 785 (8th Cir. 1984) ("The surrounding circumstances at the time of contracting and the positions and actions of the parties are relevant to the judicial interpretation of the contract."). In support of their motion for final approval of the settlement, *Sitzer* Plaintiffs stated that "[w]hile HomeServices has a parent company with additional funds, its parent would not step in and pay more. We did, however, ensure that the release of HomeServices did not include its parent company, and we sued HomeServices' corporate parent in *Gibson*." (Doc. #892, p. 12.) Thus, Plaintiffs explained that "[t]he Settlement Agreement . . . does nothing to abrogate the rights of any member of the Settlement Class to recover from any other Defendant, including Berkshire Hathaway Energy." (Doc. #892, p. 12.)

HSA also relied on BHE's exclusion from the release to argue that the settlement amount was fair and reasonable:

> [S]ome objectors suggest that $250 million is too low given that the HomeServices Defendants are "subsidiar[ies] of Berkshire Hathaway." E.g., Dkt. 1555-1 at 1. But Berkshire Hathaway (and Berkshire Hathaway Energy, itself a subsidiary of Berkshire Hathaway) are separate and distinct legal entities that have no legal or contractual obligation to cover the liabilities of the HomeServices Defendants, including the *Burnett* judgment, or to fund a settlement. For that simple reason, the fairness of the Settlement must be judged against the resources of the HomeServices Defendants only—not those of their parent entities.

(Doc. #892, p. 13.) Further, in granting the motion for final approval of the settlement, the Court rejected certain objections to the settlement based on the Settlement Agreement's carveout of BHE from the scope of the release. (Doc. #892, p. 14.)

Therefore, the Court rejects BHE's argument that the release in the Settlement Agreement bars Plaintiffs' claims against BHE.

## IV.  CONCLUSION

Accordingly, BHE's Motion for Summary Judgment (Doc. #878) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: April 9, 2026

9