**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, and JEREMY KEEL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, *et al.*,<br><br>Defendants. | Case No. 19-cv-00332-SRB |
| DON GIBSON, LAUREN CRISS, JOHN MEINERS, and DANIEL UMPA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, *et al.*,<br><br>Defendants. | Case No. 23-cv-00788-SRB<br><br>[Consolidated with 23-cv-00945-SRB] |

**ORDER**

Before the Court is Non-Party JND Legal Administration LLC's ("JND") Motion to Recuse Special Master Chris Hellums. (*Gibson*, Doc. #937); (*Burnett*, Doc. #1744.) For the reasons stated below, the motion is DENIED.

## I. BACKGROUND

The Court gave the parties notice of its intent to appoint a Special Master in this case and an opportunity to be heard. Fed. R. Civ. P. 53(b)(1); (*Gibson*, Doc. #920); (*Burnett*, Doc.

#1731). Plaintiffs stated they had "no objection to such court-appointment" (*Gibson*, Doc. #921); (*Burnett*, Doc. #1732), and Defendants filed no objections. JND, the settlement administrator in this case, filed objections. (*Gibson*, Doc. #923); (*Burnett*, Doc. #1734.) After reviewing JND's objections, the Court appointed Chris Hellums and Randall L. Sansom as Special Masters. (*Gibson*, Doc. #929); (*Burnett*, Doc. #1741.)

On August 7, 2026, JND filed the pending motion to recuse Mr. Hellums, arguing that "[i]n connection with his responsibilities in *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, No. 2:13-cv-20000-RDP (N.D. Ala.) ("*BCBS*"), where Mr. Hellums serves as Local Facilitating Counsel and JND serves as claims administrator, Mr. Hellums has expressed a bias against JND." (*Gibson*, Doc. #937, p. 4); (*Burnett*, Doc. #1744, p. 4.)[1] On August 20, 2026, the Court presided over a hearing on this motion and heard testimony from Jennifer M. Keough, the Chief Executive Officer, President, and Co-Founder of JND. The Court addresses JND's arguments below.

## II. DISCUSSION

### A. Non-parties cannot move for the disqualification of a Special Master.

JND files this motion for recusal under Fed. R. Civ. P. 53 and 28 U.S.C. § 455(a). Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "In analyzing whether recusal is required [under § 455(a)], we ask whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." *White v. Nat'l Football League*, 585 F.3d 1129, 1138 (8th Cir. 2009) (quotations omitted).

[1] All page numbers refer to the pagination automatically generated by CM/ECF.

Under Fed. R. Civ. P. 53(a)(2), "[a] master must not have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455, unless *the parties*, with the court's approval, consent to the appointment after the master discloses any potential grounds for disqualification." (emphasis added). Before appointing a master, "the court must give *the parties* notice and an opportunity to be heard. Any *party* may suggest candidates for appointment." Fed. R. Civ. P. 53(b)(1) (emphases added). A court may issue an order appointing a master only after:

> (A) the master files an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455; and
>
> (B) if a ground is disclosed, *the parties*, with the court's approval, waive the disqualification.

Fed. R. Civ. P. 53(b)(3) (emphasis added).

Here, JND is a non-party, and the rules it invokes provides no basis for non-parties to move for the disqualification of a Special Master. *Cf. In re Deepwater Horizon*, 824 F.3d 571, 579 (5th Cir. 2016) (holding that the Rule 53(b)(1) notice requirement does not extend to non-parties because Rule 53 "says nothing about non-parties"); *citing Cf. Glass v. UBS Fin. Servs., Inc.*, 331 Fed. Appx. 452, 455–56 (9th Cir. 2009) (affirming the appointment of a special master in a class action, even though the unnamed plaintiff was not provided with notice and an opportunity to object); *see also United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 135 (2007) ("Statutes must be read as a whole. . . . Applying that maxim, the language of [a subparagraph] can be understood only with reference to [the other subparagraph]." (quotations omitted)). The entirety of Rule 53 limits its procedural protections to "the parties." Accordingly, the Court finds that, as a matter of law, JND cannot move the for disqualification of Mr. Hellums.

**B. JND fails to demonstrate that Special Master Chris Hellums' impartiality might reasonably be questioned.**

Even if non-parties are permitted to move for the disqualification of a Special Master, the Court finds that JND has failed to provide adequate grounds to disqualify Mr. Hellums. JND and Huntington Bank both submitted proposals to handle the digital distributions in *BCBS*. JND's argument against Mr. Hellums can be summarized as follows:

> Mr. Hellums has expressed a bias against JND. The fact of his existing prejudgment is, alone, disqualifying here. But, even worse, Mr. Hellums cast judgment against JND without a factual basis and in direct contrast with the outcome of a competitive selection process that pitted JND against Huntington Bank and in which class counsel, *including a lawyer who is on the Executive Committee of the MDL prosecuting claims against JND*, agreed that JND should handle digital distribution services.

(*Gibson*, Doc. #937, pp. 12-13); (*Burnett*, Doc. #1744, pp. 12-13) (emphases in original).

In Mr. Hellums' initial email on December 18, 2025, to Ms. Keough, Mr. Hellums notes that JND's proposal states that JND "will receive no compensation other than what is outlined in this proposal and our Budget[,]" and asks Ms. Keough whether she can "be more specific on precisely the amount of revenue [JND is] budgeting to make from digital distributions?" (*Gibson*, Doc. #937-1, p. 10); (*Burnett*, #Doc. #1744-1, p. 10.) Neil Zola, former Executive Managing Director of JND and current Founder Emeritus, eventually responded to Mr. Hellums' inquiry, stating that "JND will not be receiving a dime from whichever card issuer we select, even though we are entitled to such compensation under paragraph 4 of the contract that was negotiated and signed by Boies Schiller, Hausfeld, Burns Charest, and JND *in this matter*." (*Gibson*, Doc. #937-1, p. 8); (*Burnett*, #Doc. #1744-1, p. 8) (emphasis added). Mr. Hellums responded:

> [JND's] contract provides, "JND may receive rebates or credits from vendors in connection with the volume of work performed *for all of its Clients*." This would indicate at the time it was presented to leadership, JND intended to

> receive some sort of undisclosed revenue sharing from "vendors." This begs the obvious question… what specific commissions, rebates, credits, and revenue sharing were you intending to receive and what have you already received?

(*Gibson*, Doc. #937-1, p. 7); (*Burnett*, #Doc. #1744-1, p. 7) (emphasis added).

According to Ms. Keough, the basis of Mr. Hellums' bias comes from an email that Mr. Hellums sent Ms. Keough and Mr. Zola on January 5, 2026, in which Mr. Hellums stated, "If asked by the special master, court, or leadership, my recommendation will be that JND not be allowed to handle any digital distributions." (*Gibson*, Doc. #937-1, pp. 4-5); (*Burnett*, #Doc. #1744-1, pp. 4-5); (Docs. #956 and #1754, tr. at 32:10-18.) Ms. Keough was unaware of Mr. Hellums' judicially appointed role as Local Facilitating Counsel in *BCBS*. (Docs. #956 and #1754, tr. at 34:19-25, 35:1-2.) In this role, Mr. Hellums "do[es] not have any specific authority to make decisions related to [*BCBS*]." (*Gibson*, Doc. #937-1, p. 5); (*Burnett*, #Doc. #1744-1, p. 5.)

While JND argues that "Mr. Hellums cast judgment against JND without a factual basis," the Court finds that JND claims bias against Mr. Hellums without a factual basis. To make his determination that he would not have recommended JND to handle digital distributions, Ms. Keough did not know whether Mr. Hellums had seen JND and Huntington Bank's proposals (Docs. #956 and #1754, tr. at 34:16-18), she did not know Huntington Bank was going to receive and pay back to the class approximately $3 million in credits and rebates (Docs. #956 and #1754, tr. at 39:22-25, 40:1-5), and she did not know whether Mr. Hellums told "[the special master] or the judge or anyone" that it was not his recommendation for JND to be allowed digital distributions (Docs. #956 and #1754, tr. at 58:2-5).[2]

[2] The Court also notes that when Mr. Hellums asked Ms. Keough about the custodial bank and card issuer JND was planning to use for digital distributions, and about the amount of revenue JND would be making from digital

The essential question regarding rebates or credits asked by Mr. Hellums was never answered in the email exchange and was only partially answered at the hearing. Counsel for JND could not answer questions on how the contract language allowing for "rebates or credits from vendors in connection with the volume of work performed for all of its Clients" gets modified by the statement of "in this matter." (*Gibson*, Doc. #937-1, p. 8); (*Burnett*, #Doc. #1744-1, p. 8); (Docs. #956 and #1754, tr. at 60:8-13, 61:7-24.) Ms. Keough admitted that separate vendor agreements set forth how to calculate rebates and credits. (Docs. #956 and #1754, tr. at 41:20-22.)

JND also appears to argue that Mr. Hellums' bias against JND is demonstrated by the fact that, although Mr. Hellums would not have recommended JND to handle the digital distributions, "a lawyer who is on the Executive Committee of the MDL prosecuting claims against JND[ ] agreed that JND should handle digital distribution services." (*Gibson*, Doc. #937, pp. 12-13); (*Burnett*, Doc. #1744, pp. 12-13.) JND provided that "David Boies is the head of the Executive Committee in *In re Class Action Settlement Admin. Litig.*[,]" (*Gibson*, Doc. #937, p. 5 n.2); (*Burnett*, Doc. #1744, p. 5 n.2), the MDL prosecuting claims against JND. When asked whether she had "any information that in November of 2025, David Boies and Boies Schiller recused themselves from participating in any distribution decisions in Blue Cross Blue Shield[,]" Ms. Keough responded, "No." (Docs. #956 and #1754, tr. at 42:22-25, 43:1.) When questioned whether she asked "anybody if they participated in the decision to give [JND] the distributions in Blue Cross Blue Shield," Ms. Keough responded, "No, Your Honor, I did not. I just assumed they did, but because they're lead counsel and nobody had informed me that they had recused themselves." (Docs. #956 and #1754, tr. at 44:6-10.) The Court finds that JND's assertion that

distributions, Mr. Hellums stated that he had "made similar requests to Huntington Bank." (*Gibson*, Doc. #937-1, pp. 9-10); (*Burnett*, Doc. #1744-1, pp. 9-10.)

"a lawyer who is on the Executive Committee of the MDL prosecuting claims against JND[ ] agreed that JND should handle digital distribution services" is unfounded, uninvestigated, and without any factual basis. (*Gibson*, Doc. #937, pp. 12-13); (*Burnett*, Doc. #1744, pp. 12-13.)

Lastly, JND provides that

> Mr. Hellums has, on at least two occasions, spoken on panels regarding these issues with the very lawyers leading the lawsuit against JND in *In re Class Action Settlement Admin. Litig*. JND has attempted to obtain recordings of those presentations but has been told they are only available to plaintiffs' counsel. *See HarrisMartin's MDL Conference*, HARRISMARTIN (Mar. 2026), https://www.harrismartin.com/conferences/1288/MDL_March2026/agenda; *HarrisMartin's MDL Conference: Dupixent, Spinal Cord Stimulator and MDL Updates,* HARRISMARTIN (May 2026), https://www.harrismartin.com/conferences/1354/MDL_May2026/agenda/.

(*Gibson*, Doc. #937, p. 5. n.1); (*Burnett*, Doc. #1744, p. 5 n.1.) On the websites provided by JND, the Honorable Judge R. David Proctor—who presided over *BCBS*—is also listed as a speaker on these panels. Ms. Keough was unaware of this:

> Q: On both of these CLE panels, was Judge Proctor?
> A: I did not know that.
> . . .
> Q: Any idea that something inappropriate was said on this panel with Judge Proctor?
> A: No, sir.
> Q: In Footnote No. 1, your lawyers also say on your behalf, JND has attempted to obtain recordings of those presentations but has been told they are only available to plaintiffs' counsel. Did I read that right?
> A: Yes, sir.
> Q: Do you know how they made that representation, on what factual basis?
> A: I do not.
> Q: I'll let you know I called Vickie Gilbracht, . . . She's in charge of all the educational programming. She told me they don't record it; so they don't have it for anybody. Do you have any knowledge about that?
> A: I do not.

(Docs. #956 and #1754, tr. at 49:3-24.)

In sum, JND's accusations of bias against Mr. Hellums lack factual basis. The Court finds that the information JND provided against Mr. Hellums does not demonstrate that his

impartiality might reasonably be questioned, but instead shows that Mr. Hellums has been navigating "a changing landscape in the settlement administration world" that involves "a whole different focus that hasn't existed for banks, administrators, card vendors, and class counsel[.]" (Docs. #956 and #1754, tr. at 51:15-25, 52:1-8.)[3] The Court continues to believe that Mr. Hellums will be an excellent Special Master based upon his prior experience in similar roles in *BCBS* and *3M*. *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406; *In re 3M Combat Arms Earplug Products Liability Litigation*, MDL No. 2885.

## III. CONCLUSION

For the reasons stated above, and for the additional reasons discussed on the transcript, JND's Motion to Recuse Special Master Chris Hellums (*Gibson*, Doc. #937) (*Burnett*, Doc. #1744) is DENIED.

It is further ORDERED that within fourteen (14) days from the date of this Order, JND shall fully comply with the Court's Order Appointing Special Masters regarding the information to be provided to the Special Masters. (*Gibson*, Doc. #929, pp. 5-6) (*Burnett*, Doc. #1741, pp. 5-6.) Any objections to this Court's Orders shall be directed to the Court, not the Special Masters.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: August 26, 2026

[3] As the Court finds that the information provided by JND does not amount to "ground[s] for disqualification under 28 U.S.C. § 455[,]" Mr. Hellums did not err in not disclosing this information on his affidavit. Fed. R. Civ. P. 53(b)(3); (*Gibson*, Doc. #937, p. 13); (*Burnett*, Doc. #1744, p. 13.)